CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq. (admission pro hac vice pending)
Bonnie L. Pollack, Esq. (admission pro hac vice pending)
Kelly McNamee, Esq. (admission pro hac vice pending)
Kyriaki Christodoulou, Esq. (admission pro hac vice pending)
(516) 357-3700

*Proposed Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
THE COLLEGE OF SAINT ROSE,                                   :    Case No. 24-11131 (REL)
                                                             :
                          Debtor.                            :
                                                             :
                                                             :
-------------------------------------------------------------x

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING,
OR DISCONTINUING UTILITY SERVICES, (II) DETERMINING
ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY
SERVICES, (III) ESTABLISHING PROCEDURES FOR DETERMINING
ADEQUATE ASSURANCE OF PAYMENT, AND
(IV) GRANTING RELATED RELIEF**

The College of Saint Rose, the above-captioned debtor and debtor-in-possession (the

"Debtor"), by and through its proposed attorneys, Cullen and Dykman LLP, hereby submits this

motion (the "Motion") pursuant to sections 105(a) and 366 of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules for the Northern District of New

York (the "Local Rules") for entry of interim and final orders, substantially in the forms attached

hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order," and

collectively, the "Orders"), (a) prohibiting utility providers from altering, refusing, or

discontinuing services; (b) determining adequate assurance of payment for future utility services;

(c) establishing procedures for determining adequate assurance of payment for future utility services; and (d) granting related relief.

## INTRODUCTION

1.      On October 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2.      The Debtor remains in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Northern District of New York in this chapter 11 case.

4.      Simultaneously with the filing of its petition, the Debtor filed the Declaration of Marcia J. White pursuant to Local Bankruptcy Rule 2015-2 (the "First Day Declaration").  A detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the First Day Declaration, incorporated herein by reference.

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Northern District of New York (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief sought herein are Bankruptcy Code sections 105(a) and 366, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1.

## BACKGROUND

7.    The College was established by provisional charter granted by the New York State Board of Regents on June 24, 1920 to issue bachelor's degrees, which charter was made absolute on March 19, 1931 and was amended in 1949 to authorize the offering of master's degrees. It was again amended in 2019 to authorize the offering of an associate's degree as part of its jointly registered BSN program with St. Peter's Health Partners Schools of Nursing. The College is located in Albany, New York and operates out of 72 buildings on 92 parcels of real estate (the "Real Property").

8.    For more than 10 years, as the College's structural deficit grew- caused by unachieved enrollment goals, a rising tuition discount rate, the financing structure of the College's bond debt, and a relatively low unrestricted endowment - the Board of Trustees (the "Board") and College leadership have been working to achieve financial sustainability. The College experienced a steady enrollment decline for more than a decade from 5,130 total enrollment in 2010 to a total of 2,566 in Fall 2023 due in part to a shrinking pool of high school graduates in New York and the northeast region overall and, in recent years, the prolonged negative impact of the COVID-19 pandemic.

9.    The College implemented several deficit reduction and strategic plans since 2015, but ultimately the Board determined, based on the College's financial and enrollment projections, that it was in the best interests of the students and the College to cease academic instruction no later than June 30, 2024, and thereafter wind-down the operations and settle the affairs of the College. On November 30, 2023, the Board directed the implementation of a closure plan, which included the authorization to the College's leadership to develop a Teach-Out Plan that would provide all students with seamless pathways to complete their academic

programs at Saint Rose or other institutions. Thus far, 720 students have taken advantage of the Teach-Out Plan by enrolling with teach-out partner institutions to continue their education. In addition, the College offered a summer session through June 21, 2024 that enabled another 460 students to graduate from the College.

10.     The filing of the College's chapter 11 case is a key part of the closure plan, and the College intends to provide for an orderly liquidation of its assets, including a sale of the Real Property, for the benefit of creditors while implementing the academic components of the Closure Plan. Thus, on the Petition Date, the College filed for chapter 11 protection.

11.     A full background of the events leading up to the filing of this case is set forth in the First Day Declaration of Marcia J. White filed on the Petition Date, and is incorporated herein by reference.

## I.     The Utility Services

12.     In connection with the operation of the College, the Debtor obtains, among other things, electricity, telephone, telecommunications, data service, internet, and other similar services (collectively, the "Utility Services") from a number of utility providers or their brokers (collectively, the "Utility Providers"). A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtor as of the Petition Date (the "Utility Providers List") is attached hereto as **Exhibit C**.[1]  The relief requested herein is requested with respect to all Utility Providers providing Utility Services to the Debtor.[2]

---

[1] Although **Exhibit C** is intended to be comprehensive, the Debtor may have inadvertently omitted one or more Utility Providers.  By this Motion, the Debtor requests relief applicable to all Utility providers, regardless of whether such Utility provider is specifically identified on **Exhibit C**.

[2] The Debtor does not concede that any entity is a "utility" by including such entity within the scope of this Motion and hereby reserves all rights with respect thereto.

13.     Preserving Utility Services on an uninterrupted basis is essential to the winddown of the Debtor's operations as a College serving the Albany area. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtor's efforts would be severely disrupted, and such disruption would jeopardize its ability to administer this chapter 11 case, particularly since the Debtor's real estate holdings consist of 72 buildings which need to remain operational pending the sale of same through the bankruptcy process.   Any utility service disruption would almost certainly negatively affect the Debtor's revenues from the sale of its assets.   Accordingly, it is essential that the Utility Services continue uninterrupted during the chapter 11 case.

14.     On average, the Debtor pays approximately $69,286 each month for third-party Utility Services.[3]  Accordingly, the Debtor estimates that the cost for Utility Services during the next thirty (30) days (not including any deposits to be paid) will be approximately the same amount.

**II.     The Proposed Adequate Assurance and Adequate Assurance Procedures**

15.     The Debtor intends to continue to pay post-petition obligations to the Utility Providers in a timely manner. Cash held by the Debtor, cash generated in the ordinary course of business, and cash available to the Debtor, including through proposed debtor-in-possession financing, will provide sufficient liquidity to pay the Debtor's Utility Service obligations in accordance with its prepetition practice.

16.     To provide additional assurance of payment, the Debtor proposes to deposit $34,650 into a segregated account (the "Adequate Assurance Deposit"), which represents an amount equal to approximately one-half of the Debtor' average monthly cost of Utility Services.

---

[3] This amount is based on an average of the utility costs incurred in June and July 2023 and 2024, when the campus was not occupied, the same conditions as presently exists.

The Adequate Assurance Deposit will be held in the segregated account for the benefit of the
Utility Providers (the "Adequate Assurance Account") for the duration of this chapter 11 case and
may be applied to any post-petition defaults in payment to the Utility Providers. The Adequate
Assurance Deposit will be held by the Debtor; no liens will encumber the Adequate Assurance
Deposit or the Adequate Assurance Account. The Debtor submits that the Adequate Assurance
Deposit, in conjunction with the Debtor's ability to pay for future Utility Services in accordance
with its prepetition practices (collectively, the "Proposed Adequate Assurance"), constitutes
sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the
Bankruptcy Code.

17.    Nevertheless, if any entity believes that they are a Utility Provider and seeks to
make a request for adequate assurance of future payment (each, an "Adequate Assurance
Request"), the Debtor requests they do so pursuant to the following procedures (the "Adequate
Assurance Procedures"):

  a.   The Debtor will serve a copy of this Motion and the Order granting the relief
       requested herein to each Utility Provider within three (3) business days after entry
       of the Interim Order by the Court.

  b.   Subject to paragraphs (e)-(h) herein, the Debtor will deposit the Adequate
       Assurance Deposit, in the aggregate amount of $34,650, in the Adequate
       Assurance Account within five (5) business days after entry of the order granting
       this Motion.

  c.   If an amount relating to Utility Services provided post-petition by a Utility
       Provider is unpaid, and remains unpaid beyond any applicable grace period, such
       Utility Provider may request a disbursement from the Adequate Assurance
       Account by giving notice to: (i) counsel for the Debtor; (ii) counsel to the trustee
       for the Pre-Petition Bondholders; (iii) counsel for any official committee
       appointed pursuant to the Bankruptcy Rules or the Bankruptcy Code; (iv) the
       Office of the United States Trustee for the Northern District of New York (the
       "U.S. Trustee"); (v) counsel to the proposed DIP Lender; and (vi) all other
       persons that have formally appeared and requested notice or copies of pleadings
       filed in this case under Bankruptcy Rule 2002 (collectively, the "Notice Parties").
       The Debtor shall honor such request within five (5) business days after the date

6

the request is received by the Debtor, subject to the ability of the Debtor and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court. To the extent a Utility Provider receives a disbursement from the Adequate Assurance Account, the Debtor shall replenish the Adequate Assurance Account in the amount disbursed.

d.   The portion of the Adequate Assurance Deposit attributable to each Utility Provider will be returned to the Debtor on the earlier of (i) reconciliation and payment by the Debtor of the Utility Provider's final invoice in accordance with applicable nonbankruptcy law following the Debtor's termination of Utility Services from such Utility Provider and (ii) the effective date of any chapter 11 plan confirmed in these chapter 11 cases.

e.   Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties.

f.   Any Additional Assurance Request must: (i) be made in writing; (ii) identify the location for which Utility Services are provided; (iii) include information regarding any security deposits paid by the Debtor; (iv) identify the outstanding balance and payment history; (v) provide evidence that the Debtor has a direct obligation to the Utility Provider; and (vi) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

g.   An Additional Assurance Request may be made at any time.  If a Utility Provider fails to file and serve an Additional Assurance Request, the Utility Provider shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtor on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h.   Upon the Debtor's receipt of an Adequate Assurance Request, the Debtor shall have twenty one (21) days from the receipt of the Adequate Assurance Request (the "Resolution Period") to negotiate with the Utility Provider to resolve the Utility Provider's Adequate Assurance Request.  During the Resolution Period, Utility Providers may not terminate any of the services they provide to the Debtor on account of the bankruptcy filing of unpaid charges for prepetition services.

i.   Without further order of the Court, the Debtor may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtor determines that the Additional Assurance Request is reasonable.

j.  If the Debtor determines, in its sole discretion, that the Additional Assurance Request is not reasonable and the Debtor is unable to reach an alternative resolution with the Utility Provider, the Debtor, during or immediately after the Resolution Period, may request a hearing (a "Determination Hearing") before the Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

k.  Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider will be prohibited from altering, refusing, or discontinuing service to the Debtor on account of: (i) unpaid charges for prepetition services; (ii) a pending Adequate Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

l.  At any time, the Debtor may terminate service from any Utility Provider, such termination being effective immediately upon the Debtor's notice to the Utility Provider.  At such time, the Debtor shall no longer be required to make any more payments to such Utility Provider for any services provided after such termination, and any excess shall be returned forthwith.

18.    The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while allowing the Debtor to administer the chapter 11 estate uninterrupted. More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by serving an Adequate Assurance Request upon the Notice Parties.  The Debtor, in its discretion, may then resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of the Court.  If the Adequate Assurance Request cannot be resolved by mutual agreement, the Debtor may seek Court resolution of the Adequate Assurance Request.

19.    Absent compliance with the Adequate Assurance Procedures, the Debtor requests that the Utility Providers, including subsequently added Utility Providers, be forbidden from altering, refusing, or discontinuing service or requiring additional assurance of payment other than the Proposed Adequate Assurance, pending entry of a final order approving the relief requested herein.

### III.    Subsequently Identified Utility Providers

20.     To the extent the Debtor identifies new Utility Providers not currently listed on **Exhibit C** attached hereto, the Debtor will serve such Utility Provider a copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures. The Debtor requests that the terms of that order and the Adequate Assurance Procedures apply to any subsequently identified Utility Provider, provided, however, that any subsequently identified Utility Provider shall be provided twenty (20) days from the date of service of the Court's order to object to its inclusion in such order.  If an objection is received within such twenty (20) day period, a hearing shall be heard on such date as mutually agreed to by the parties and acceptable to the Court.

## RELIEF REQUESTED

21.     By this Motion, the Debtor seeks entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) prohibiting utility providers from altering, refusing, or discontinuing services; (b) determining adequate assurance of payment for future utility services; (c) establishing procedures for determining adequate assurance of payment for future utility services; and (d) granting related relief.

## BASIS FOR RELIEF REQUESTED

22.     Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date.  *See* 11 U.S.C. § 366.  Section 366(c)(2) requires a debtor to provide "adequate assurance" of payment for post-petition services in a form "satisfactory" to the utility provider within thirty (30) days of the Petition Date, or the utility provider may alter, refuse, or discontinue service.  11 U.S.C. § 366(c)(2).  Section 366(c)(1) enumerates what constitutes "assurance of payment."   11 U.S.C. § 366(c)(1).

Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of a debtor's ability to pay. *See, e.g., Long Is. Lighting Co. v. The Great Atl. Pac. Tea Co., Inc. (In re Great Atl. & Pac. Tea Co., Inc.)*, No. 11-CV-1338, 2011 U.S. Dist. LEXIS 131621, at *18 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.-NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996), *aff'd sub nom., Va. Elec. & Power Co. v. Caldor, Inc.-NY*, 117 F.3d 646 (2d Cir. 1997) ("Section 366(b) requires . . . 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted); *In re Spencer*, 218 B.R. 290, 293 (Bankr. W.D.N.Y. 1998); *In re 499 West Warren Street Associates, L.P.,* 138 B.R. 363, 365 (Bankr. N.D.N.Y. 1991) (finding that "the statute simply does not limit a utility's right to adequate assurance on the basis of a debtor's pre-petition account status.").

23.     When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *Va. Elec. And Power Co. v. Cunha (In re Cunha)*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82-83 (Bankr. S.D.N.Y. 2002). Courts have recognized that, in determining the requisite level of adequate assurance, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted); *see also Great Atl. & Pac. Tea Co.*, 2011 U.S. Dist. LEXIS 131621, at *22 (holding that no additional adequate assurance

deposit was necessary where such deposit would impose an unreasonable burden on reorganizing debtor). Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtor's specific circumstances already afford adequate assurance of payment.

24.     Here, the Utility Providers are adequately assured against any risk of nonpayment for future services.  The Adequate Assurance Deposit and the Debtor's ongoing ability to meet obligations as they come due in the ordinary course provides assurance of the Debtor's payment of its future obligations. Moreover, termination of the Utility Services could result in the Debtor's inability to winddown its operations to the detriment of all stakeholders and would negatively impact the ability to sell the Debtor's real estate. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321-22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtor "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").  Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code.  *See, e.g., In re Circuit City Stores Inc.*, No. 08-35653, 2009 Bankr. LEXIS 237, at *16-17 (Bankr. E.D. Va. Jan. 14, 2009) ("The plain language of § 366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order.").  Such procedures are important because, without them, the Debtor "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id*. at *19.

25.     Here, notwithstanding a determination that the Debtor's Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See Id*. at *17.  The Utility Providers still may choose, in

accordance with the Adequate Assurance Procedures, to request modification of the Proposed

Adequate Assurance. *See Id*.   The Adequate Assurance Procedures, however, avoid a

disorganized process whereby each Utility Provider could make a last-minute demand for

adequate assurance that would force the Debtor to pay under the threat of losing critical Utility

Services. *See Id*.

26.   Because the Adequate Assurance Procedures are reasonable and in accord with

the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested

herein. Similar procedures have been approved by courts in this and neighboring districts. *See,

e.g., The Roman Catholic Diocese of Albany,* Case No. 23-10244 (Bankr. N.D.N.Y. Apr. 4,

2023) [Docket Nos. 42, 82]*; In re 499 W. Warren Street Assoc. Ltd. Partnership*, Case No. 91-

01973 (Bankr. N.D.N.Y. Nov 15, 1991); *In re Utica Floor Maintenance, Inc.*, 31 B.R. 509

(Bankr. N.D.N.Y. Jul 14, 1983); *In re Spencer*, 218 B.R. 290 (Bankr. W.D.N.Y. Feb 12, 1998)

[Docket No. 33]; *In re Colad Group, Inc.*, 324 B.R. 208 (Bankr. W.D.N.Y. Mar. 7, 2005)

[Docket No. 121]*.

27.   Further, the Court possesses the power, under section 105(a) of the Bankruptcy

Code, to "issue *any* order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  1l U.S.C. § 105(a). The Adequate Assurance Procedures and the

Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the

Bankruptcy Code, particularly section 366. Accordingly, the Court should exercise its powers

under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate

Assurance Procedures and the Proposed Adequate Assurance.

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

28.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, preventing the interruption of Utility Services and granting the other relief requested herein is integral to the Debtor's ability to winddown its operations. Failure to receive such authorization and other relief during the first twenty one (21) days of the chapter 11 case would severely disrupt the Debtor's ability to administer the estate at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtor to preserve and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **RESERVATION OF RIGHTS**

29.    Nothing contained in this Motion or any actions taken by the Debtor pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought

herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

30.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the l4-day stay period under Bankruptcy Rule 6004(h).  As set forth above, the payments proposed herein are essential to the Debtor's continued operations during the winddown. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

31.     Notice of this Motion has been given to (a) the United States Trustee for the Northern District of New York; (b) the Debtor's twenty (20) largest unsecured creditors; (c) counsel to the Pre-Petition Bondholders; (d) counsel to the proposed DIP Lender; (e) the Utility Providers; and (f) all other persons that have formally appeared and requested notice or copies of pleadings filed in this case under Bankruptcy Rule 2002. The Debtor submits that, under the circumstances, no other or further notice is required.

32.     No previous application for the relief sought herein has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order and Final Order granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

Dated: Albany, New York
October 10, 2024

CULLEN AND DYKMAN LLP

By: /s/    *Bonnie Pollack*
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
Kelly McNamee, Esq.
Kyriaki A. Christodoulou, Esq.
80 State Street, Suite 900
Albany, New York 12207
(516) 357-3700
mroseman@cullenllp.com
bpollack@cullenllp.com
kmnamee@cullenllp.com
kchristodoulou@cullenllp.com
*Proposed Counsel for The College of Saint Rose*

## EXHIBIT A

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
                        :

In re:                       :    Chapter 11
                        :

THE COLLEGE OF SAINT ROSE,    :    Case No. 24-_____(REL)
                        :

          Debtor.         :
                        :
--------------------------------------------------------------x

**INTERIM ORDER (I) PROHIBITING UTILITY PROVIDERS
FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES, (II)
DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY
SERVICES, (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE
<u>ASSURANCE OF PAYMENT, AND (IV) GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>")[1] of The College of Saint Rose, debtor and debtor-in-

possession (the "<u>Debtor</u>"), for entry of an interim order (this "<u>Interim Order</u>") pursuant to section

105(a) and 366 of title 11 of the United States Code, Rules 6003 and 6004 of the Federal Rules

of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 9013-1 of the Local Rules for the

Northern District of New York (the "<u>Local Rules</u>") (a) prohibiting Utility Providers from

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

altering, refusing, or discontinuing services; (b) determining adequate assurance of payment for future Utility Services; (c) establishing procedures for determining adequate assurance of payment for future Utility Services; (d) granting related relief; and (e) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon consideration of the Declaration of Marcia J. White pursuant to Rule 2015-2 of the Local Bankruptcy Rules for the Northern District of New York; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the relief being requested being in the best interests of the Debtor and its estate and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; IT IS HEREBY ORDERED THAT:

1.      The Motion is granted in an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2024, at __:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern time, on _____, 2024, and shall be served on: (i) proposed counsel for the Debtor; (ii) the Debtor's twenty (20) largest unsecured creditors; (iii) counsel for the Pre-Petition Bondholders;

(iv) counsel for any official committee appointed pursuant to the Bankruptcy Rules or the

Bankruptcy Code; (v) the Office of the United States Trustee for the Northern District of New

York (the "U.S. Trustee"); (vi) counsel to the proposed DIP Lender; and (vii) all other persons

that have formally appeared and requested notice or copies of pleadings filed in this case under

Bankruptcy Rule 2002.  In the event no objections to entry of a final order on the Motion are

timely received, this Court may enter such final order without need for the Final Hearing.

   3.  The following Adequate Assurance Procedures are hereby approved on an interim

basis:

  a. The Debtor will serve a copy of this Motion and the Order granting the relief requested herein to each Utility Provider within three (3) business days after entry of the Interim Order by the Court.

  b. Subject to paragraphs (e)-(h) herein, the Debtor will deposit the Adequate Assurance Deposit, in the aggregate amount of $34,650, in the Adequate Assurance Account within five (5) business days after entry of the order granting this Motion.

  c. If an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to: (i) counsel for the Debtor; (ii) counsel to the trustee for the Pre-Petition Bondholders; (iii) counsel for any official committee appointed pursuant to the Bankruptcy Rules or the Bankruptcy Code; (iv) the Office of the United States Trustee for the Northern District of New York; (v) counsel to the proposed DIP Lender; and (vi) all other persons that have formally appeared and requested notice or copies of pleadings filed in this case under Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtor shall honor such request within five (5) business days after the date the request is received by the Debtor, subject to the ability of the Debtor and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court.  To the extent a Utility Provider receives a disbursement from the Adequate Assurance Account, the Debtor shall replenish the Adequate Assurance Account in the amount disbursed.

  d. The portion of the Adequate Assurance Deposit attributable to each Utility Provider will be returned to the Debtor on the earlier of (i) reconciliation and payment by the Debtor of the Utility Provider's final invoice in accordance with applicable nonbankruptcy law following the Debtor's termination of

Utility Services from such Utility Provider and (ii) the effective date of any chapter 11 plan confirmed in this chapter 11 case.

e.  Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "<u>Additional Assurance Request</u>") on the Notice Parties.

f.  Any Additional Assurance Request must: (i) be made in writing; (ii) identify the location for which Utility Services are provided; (iii) include information regarding any security deposits paid by the Debtor; (iv) identify the outstanding balance and payment history; (v) provide evidence that the Debtor has a direct obligation to the Utility Provider; and (vi) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

g.  An Additional Assurance Request may be made at any time. If a Utility Provider fails to file and serve an Additional Assurance Request, the Utility Provider shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtor on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h.  Upon the Debtor's receipt of an Adequate Assurance Request, the Debtor shall have twenty-one (21) days from the receipt of the Adequate Assurance Request (the "<u>Resolution Period</u>") to negotiate with the Utility Provider to resolve the Utility Provider's Adequate Assurance Request.  During the Resolution Period, Utility Providers may not terminate any of the services they provide to the Debtor on account of the bankruptcy filing of unpaid charges for prepetition services.

i.  Without further order of the Court, the Debtor may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtor determines that the Additional Assurance Request is reasonable.

j.  If the Debtor determines, in its sole discretion, that the Additional Assurance Request is not reasonable and the Debtor is unable to reach an alternative resolution with the Utility Provider, the Debtor, during or immediately after the Resolution Period, may request a hearing (a "<u>Determination Hearing</u>") before the Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

4

k.  Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider will be prohibited from altering, refusing, or discontinuing service to the Debtor on account of: (i) unpaid charges for prepetition services; (ii) a pending Adequate Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

l.  At any time, the Debtor may terminate service from any Utility Provider, such termination being effective immediately upon the Debtor's notice to the Utility Provider.  At such time, the Debtor shall no longer be required to make any more payments to such Utility Provider for any services provided after such termination, and any excess shall be returned forthwith.

4.  The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

5.  The Debtor will cause a copy of this Interim Order, including the Adequate Assurance Procedures, to be served on any subsequently identified Utility Provider and any such Utility Provider shall be bound by the Adequate Assurance Procedures, provided, however, that any subsequently identified Utility Provider shall be provided twenty (20) days from the date of service of the Court's order to object to its inclusion in such order.  If an objection is received within such twenty (20) day period, a hearing shall be heard on such date as mutually agreed to by the parties and acceptable to the Court.

6.  Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens

(contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

7. Any and all payments authorized to be made pursuant to this Interim Order shall be subject to and made only to the extent authorized under any interim or final orders governing the Debtor's use of cash collateral and terms of Debtor-in-Possession financing, including any Budget in connection therewith.

8. The findings and rulings in this Interim Order are without prejudice to the rights of any party in interest in connection with any further interim or final order on the Motion.

9. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

10. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

12. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

13. This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## EXHIBIT B

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

```
 ----------------------------------------------------------------x
                                            :
In re:                                      :    Chapter 11
                                            :
THE COLLEGE OF SAINT ROSE,                  :    Case No. 24-_____(REL)
                                            :
              Debtor.                       :
                                            :
 ----------------------------------------------------------------x
```

## FINAL ORDER (I) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES, (II) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] of The College of Saint Rose, as debtor and debtor in possession (the "Debtor"), for entry of a final order (this "Final Order") pursuant to section 105(a) and 366 of title 11 of the United States Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules for the Northern District of New York (the "Local Rules") (a) prohibiting Utility Providers from

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

altering, refusing, or discontinuing services; (b) determining adequate assurance of payment for future Utility Services; (c) establishing procedures for determining adequate assurance of payment for future Utility Services; (d) granting related relief; and (e) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon consideration of the Declaration of Marcia J. White pursuant to Rule 2015-2 of the Local Bankruptcy Rules for the Northern District of New York; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the relief being requested being in the best interests of the Debtor and its estate and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; IT IS HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtor shall serve a copy of this Final Order on any Utility Provider identified prior to the entry of this Final Order no later than three (3) business days after the date this Final Order is entered.

3.      All Utility Providers are prohibited from altering, refusing, or discontinuing services on account of any unpaid prepetition charges, the commencement of this chapter 11 case, or any perceived inadequacy of the Proposed Adequate Assurance.

4.      The following Adequate Assurance Procedures are hereby approved on a final basis:

 a.  The Debtor will serve a copy of this Motion and the Order granting the relief requested herein to each Utility Provider within three (3) business days after entry of the Interim Order by the Court.

 b.  Subject to paragraphs (e)-(h) herein, the Debtor will deposit the Adequate Assurance Deposit, in the aggregate amount of $34,650, in the Adequate Assurance Account within five (5) business days after entry of the order granting this Motion.

 c.  If an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to: (i) counsel for the Debtor; (ii) the Debtor's combined thirty (30) largest unsecured creditors; (iii) counsel for any official committee appointed pursuant to the Bankruptcy Rules or the Bankruptcy Code; (iv) the Office of the United States Trustee for the Northern District of New York; (v) counsel to the proposed DIP Lender; and (vi) all other persons that have formally appeared and requested notice or copies of pleadings filed in this case under Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtor shall honor such request within five (5) business days after the date the request is received by the Debtor, subject to the ability of the Debtor and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court.  To the extent a Utility Provider receives a disbursement from the Adequate Assurance Account, the Debtor shall replenish the Adequate Assurance Account in the amount disbursed.

 d.  The portion of the Adequate Assurance Deposit attributable to each Utility Provider will be returned to the Debtor on the earlier of (i) reconciliation and payment by the Debtor of the Utility Provider's final invoice in accordance with applicable nonbankruptcy law following the Debtor's termination of Utility Services from such Utility Provider and (ii) the effective date of any chapter 11 plan confirmed in these chapter 11 cases.

e.  Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "<u>Additional Assurance Request</u>") on the Notice Parties.

f.  Any Additional Assurance Request must: (i) be made in writing; (ii) identify the location for which Utility Services are provided; (iii) include information regarding any security deposits paid by the Debtor; (iv) identify the outstanding balance and payment history; (v) provide evidence that the Debtor have a direct obligation to the Utility Provider; and (vi) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

g.  An Additional Assurance Request may be made at any time.  If a Utility Provider fails to file and serve an Additional Assurance Request, the Utility Provider shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtor on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h.  Upon the Debtor's receipt of an Adequate Assurance Request, the Debtor shall have twenty one (21) days from the receipt of the Adequate Assurance Request (the "<u>Resolution Period</u>") to negotiate with the Utility Provider to resolve the Utility Provider's Adequate Assurance Request.  During the Resolution Period, Utility Providers may not terminate any of the services they provide to the Debtor on account of the bankruptcy filing of unpaid charges for prepetition services.

i.  Without further order of the Court, the Debtor may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtor determine that the Additional Assurance Request is reasonable.

j.  If the Debtor determines, in its sole discretion, that the Additional Assurance Request is not reasonable and the Debtor are unable to reach an alternative resolution with the Utility Provider, the Debtor, during or immediately after the Resolution Period, may request a hearing (a "<u>Determination Hearing</u>") before the Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

k.  Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider will be prohibited from altering, refusing, or discontinuing service to the Debtor on account of: (i) unpaid charges for prepetition

services; (ii) a pending Adequate Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

l.    At any time, the Debtor may terminate service from any Utility Provider, such termination being effective immediately upon the Debtor's notice to the Utility Provider.  At such time, the Debtor shall no longer be required to make any more payments to such Utility Provider for any services provided after such termination, and any excess shall be returned forthwith.

5.    The Debtor will cause a copy of this Final Order, including the Adequate Assurance Procedures, to be served on any subsequently identified Utility Provider and any such Utility Provider shall be bound by the Adequate Assurance Procedures, provided, however, that any subsequently identified Utility Provider shall be provided twenty (20) days from the date of service of the Court's order to object to its inclusion in such order.  If an objection is received within such twenty (20) day period, a hearing shall be heard on such date as mutually agreed to by the parties and acceptable to the Court.

6.    Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

7.      Any and all payments authorized to be made pursuant to this Final Order shall be subject to and made only to the extent authorized under any interim or final orders governing the Debtor's use of cash collateral and terms of Debtor-in-Possession financing, including any Budget in connection therewith.

8.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

11.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

12.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## <u>EXHIBIT C</u>

**Utility Providers List**

**Utility Providers**

| # | Name of Utility Provider | Address | Services Provided | Last Four Digits of Account Number | Average Monthly Bill[6] |
|---|---|---|---|---|---|
| 1 | Albany Water Board | P.O. Box 4570 Buffalo, NY 14240 | Water | See attached | $4,155.00 |
| 2 | National Grid | P.O. Box 371326 Pittsburgh, PA 15250 | Electric/Gas | See attached | $39,488.00 |
| 3 | NRGB Direct Energy | P.O. Box 32179 New York, NY 10087 | | See attached | $3,390.00 |
| 4 | First Light Fiber | P.O. Box 1301 Williston, VT 05495 | Telephone/Internet | 8092 | $17,800.00 |
| 5 | Spectrum | P.O. Box 6030 Carol Stream, IL 60197 | Cable television | 9093 | $300.00 |
| 6 | Verizon | P.O. Box 408 Newark, NJ 07101 | Mobile phones | See attached | $570.00 |
| 7 | CGD Provider | (included in National Grid bill) | Solar service | See attached | (included in National Grid bill) |
| 8 | Green Street Power Partners | 355 Madison Ave., 4th Floor New York, NY 10017 | Solar service | See attached | $3,583.00 |

521839121v.2

---

[6] This amount is based on an average of the utility costs incurred in June and July 2023 and 2024, when the campus was not occupied, the same conditions as presently exists.