CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq. (admission pro hac vice pending)
Bonnie L. Pollack, Esq. (admission pro hac vice pending)
Kelly McNamee, Esq. (admission pro hac vice pending)
Kyriaki Christodoulou, Esq. (admission pro hac vice pending)
(516) 357-3700

*Proposed Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                            :
In re:                           :   Chapter 11
                            :
THE COLLEGE OF SAINT ROSE,   :   Case No. 24-24-11131 (REL)
                            :
           Debtor.           ::
----------------------------------------------------------------x

## MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO PAY (A) PREPETITION EMPLOYEE OBLIGATIONS AND (B) PREPETITION WITHHOLDING OBLIGATIONS, (II) AUTHORIZING THE DEBTOR TO CONTINUE PERFORMING UNDER THE COLLECTIVE BARGAINING AGREEMENT, (III) AUTHORIZING THE DEBTOR TO CONTINUE TO PROVIDE EMPLOYEE BENEFIT PROGRAMS, (IV) DIRECTING BANKS TO HONOR RELATED PREPETITION TRANSFERS, AND (V) GRANTING RELATED RELIEF

The College of Saint Rose, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed attorneys Cullen and Dykman LLP, hereby submits this motion (the "Motion") pursuant to sections 105, 363, 507, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules of the Northern District of New York (the "Local Rules") for entry of an order (i) authorizing the Debtor to pay (a) certain prepetition employee obligations, and (b) prepetition withholding obligations and payroll taxes, (ii) authorizing the Debtor to perform under the terms of the

collective bargaining agreement with its union, (iii) authorizing the Debtor to continue to provide

certain employee benefit programs to its non-union employees; (iv) directing banks to honor

prepetition transfers related to the foregoing, and (v) granting related relief. In support of the

Motion, the Debtor respectfully represents as follows:

## INTRODUCTION

1.    On October 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition

for relief pursuant to chapter 11 of the Bankruptcy Code.

2.    The Debtor remains in possession of its property and continues in the operation

and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of

the Bankruptcy Code.

3.    No official committee of unsecured creditors has been appointed by the Office of

the United States Trustee for the Northern District of New York in this chapter 11 case.

4.    Simultaneously with the filing of its petition, the Debtor filed the Declaration of

Marcia J. White pursuant to Local Bankruptcy Rule 2015-2 (the "First Day Declaration").  A

detailed factual background of the Debtor's business and operations, as well as the events

leading to the filing of this chapter 11 case, is more fully set forth in the First Day Declaration,

incorporated herein by reference.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2).

6.    The statutory predicates for the relief sought herein are sections 105, 363, 507,

1107 and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

7.      The College was established by provisional charter granted by the New York State Board of Regents on June 24, 1920 to issue bachelor's degrees, which charter was made absolute on March 19, 1931 and was amended in 1949 to authorize the offering of master's degrees. It was again amended in 2019 to authorize the offering of an associate's degree as part of its jointly registered BSN program with St. Peter's Health Partners Schools of Nursing. The College is located in Albany, New York and operates out of 72 buildings on 92 parcels of real estate (the "Real Property").

8.      For more than 10 years, as the College's structural deficit grew- caused by unachieved enrollment goals, a rising tuition discount rate, the financing structure of the College's bond debt, and a relatively low unrestricted endowment - the Board of Trustees (the "Board") and College leadership have been working to achieve financial sustainability. The College experienced a steady enrollment decline for more than a decade from 5,130 total enrollment in 2010 to a total of 2,566 in Fall 2023 due in part to a shrinking pool of high school graduates in New York and the northeast region overall and, in recent years, the prolonged negative impact of the COVID-19 pandemic.

9.      The College implemented several deficit reduction and strategic plans since 2015, but ultimately the Board determined, based on the College's financial and enrollment projections, that it was in the best interests of the students and the College to cease academic instruction no later than June 30, 2024, and thereafter wind-down the operations and settle the affairs of the College. On November 30, 2023, the Board directed the implementation of a closure plan, which included the authorization to the College's leadership to develop a Teach-Out Plan that would provide all students with seamless pathways to complete their academic

programs at Saint Rose or other institutions. Thus far, 720 students have taken advantage of the Teach-Out Plan by enrolling with teach-out partner institutions to continue their education. In addition, the College offered a summer session through June 21, 2024 that enabled another 460 students to graduate from the College.

10.     The filing of the College's chapter 11 case is a key part of the closure plan, and the College intends to provide for an orderly liquidation of its assets, including a sale of the Real Property, for the benefit of creditors while implementing the academic components of the Closure Plan. Thus, on the Petition Date, the College filed for chapter 11 protection.

11.     A full background of the events leading up to the filing of this case is set forth in the First Day Declaration filed on the Petition Date, and is incorporated herein by reference.

## RELIEF REQUESTED

12.     By this Motion, the Debtor seeks authority, in its discretion, to pay and/or honor in the ordinary course of business, (a) all prepetition wage claims of employees up to the statutory cap of $15,150 per employee, and (b) all prepetition withholding obligations and payroll taxes related to such wages. The Debtor seeks further authority to continue to perform under the terms of the collective bargaining agreement with UPSEU (defined below), including withholding Union Dues (defined below), to provide for the continuation of certain employee benefit programs. The Debtor similarly seeks authority to continue to provide the employee benefit programs that were in place prior to the Petition Date, as well as to make payment for Business Expenses (as defined below).

13.     The Debtor also requests that the Court enter an order directing all banks to honor the Debtor's prepetition checks or electronic transfers for payment of the foregoing, and prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing.  Finally, the Debtor requests authority, in their discretion, to issue new

4

postpetition checks or effect new postpetition fund transfers on account of their prepetition obligations to their employees to replace any prepetition checks or fund transfer requests that may be dishonored or rejected inadvertently.

14.     The Debtor's employees are an extremely valuable asset, and the Debtor's ability to maintain their workforce is critical to their ability to continue without interruption during the chapter 11 cases.  The Debtor's success in obtaining the highest value in liquidation is dependent on their ability to minimize the disruption to employees.   Absent the relief requested herein, not only would the employees suffer enormous personal hardship, but the Debtor's liquidation efforts would suffer tremendously.

15.     In addition, the filing of a chapter 11 petition is a stressful and uncertain time for a debtor corporation and its employees.  The uncertainty of any debtor-employer's future often damages employee morale at a critical time when the debtor requires its employees' loyalty the most. In this case, honoring the pre-petition employee obligations described herein will minimize the hardship that the employees would otherwise endure if payroll and benefit programs were interrupted. Honoring these obligations will also prevent a rapid loss of employees that otherwise may occur if the employees lost their reasonable expectation of compensation for their services. The Debtor therefore believes that the continued payment of prepetition employee obligations in the ordinary course of business is both critical and justified based on the importance of the employees to the Debtor's operations.

I.     **Payment of Employee Wages and Withholding Obligations**

*Wages*

16.     As of the Petition Date, the Debtor's aggregate workforce consisted of approximately forty-four (44) employees, twenty-nine (29) of which are regular salaried or

5

hourly paid employees and the remaining employees are temporary or on-call employees. Approximately two (2) employees (the "Union Employees") are members of the United Professional & Service Employees Union Local 1222 ("UPSEU"). Furthermore, approximately five (5) are members of The Security Officers and Drivers, Association Employed at The College of Saint Rose ("SODA"). The Debtor is obligated to UPSEU through a collective bargaining agreement ("CBA"). The SODA collective bargaining agreement has expired and the union has not requested negotiation.

17.    As of the Petition Date, the Debtor's average two-week gross payroll for the employees is approximately \$124,551[1]. The Debtor's payroll process is administered in-house. The employees are paid every other Wednesday by the Debtor from a payroll account (Account No. 8094) held at Key Bank. Salaried employees are paid on the tenth (10th) day of the two-week pay period and hourly employees are paid for the two weeks ending ten (10) days prior to the pay date. For example, salaried employees were paid on October 2, 2024 for the period of September 23, 2024 through October 6 , 2024 and hourly employees were paid on October 2, 2024 for the period of September 9, 2024 through September 22, 2024. Thus, on each pay day, there are four (4) days of paid, but unearned (i.e. prepaid) wages for salaried employees and ten (10) days accrued, but unpaid wages for hourly employees. The first payroll due following the Petition Date would therefore be made on Wednesday October 16, 2024 covering unpaid wages (the "Wages") for the time period from October 7, 2024 to October 20, 2024 for salaried employees and September 23, 2024 to October 6, 2024 for hourly employees.  The Debtor therefore estimates that, prior to the Petition Date, their salaried and hourly employees will have accrued pre-petition Wages in the aggregate amount of approximately \$86,626.  As of the Petition Date,

---

[1] This amount varies based on the payroll for hourly employees during any given pay period.

no employee is owed ordinary Wages in an amount exceeding the $15,150 priority cap imposed by section 507(a)(4) of the Bankruptcy Code.

### *Withholding Obligations and Payroll Taxes*

18.    In connection with its payroll the Debtor, as employers, are required by law to withhold federal, state and local taxes, including Social Security taxes, unemployment taxes, Medicare taxes, and garnishments (collectively, the "Withholding Obligations") from Wages for remittance to appropriate authorities every two (2) weeks.  The Debtor's estimated total Withholding Obligations for the October 16, 2024 payroll are approximately $29,158.33.

19.    In addition, the Debtor is required to match, from their own funds, the Social Security and Medicare taxes and pay, based on a percentage of gross payroll, and subject to state-imposed limits, additional amounts for state and federal unemployment insurance (the "Payroll Taxes") and remit the same to the appropriate authorities. The Debtor pays these Payroll Taxes every two (2) weeks to various taxing authorities in accordance with the Internal Revenue Code and applicable state law. The Debtor's estimated total obligation for Payroll Taxes for the October 16, 2024 payroll is approximately $6,274.23.

20.    Prior to each payroll, the Debtor calculates the Withholding Obligations and Payroll Taxes for the applicable pay period. The Debtor's payroll account is funded so that disbursements can be made in accordance with the appropriate payment schedule. Thereafter, the Debtor withhold the Withholding Obligations from employee paychecks and remits the Withholding Obligations, together with the Payroll Taxes, to third parties.  Withholding Obligations to taxing authorities are remitted on a bi-weekly basis.  As a result, as of the Petition Date, the Debtor is in possession of Withholding Obligations and/or Payroll Taxes relating to the prepetition period.

21.     The Debtor believes that such withheld funds, to the extent they remain in the Debtor's possession, constitute monies held in trust and therefore do not constitute property of the Debtor's bankruptcy estate.  Moreover, the Withholding Obligations and Payroll Taxes likely give rise to priority claims pursuant to section 507(a)(8) of the Bankruptcy Code if not paid. Accordingly, the Debtor requests authority to pay any accrued and unpaid Withholding Obligations and Payroll Taxes that may relate to the prepetition period as and when they become due in the ordinary course of the Debtor's business.

22.     The Debtor also believes that all of their employees hold priority claims with respect to their accrued but unpaid prepetition Wages pursuant to section 507(a)(4) of the Bankruptcy Code.  Due to the critical importance of the employees to the Debtor's business operations and the inability of the Debtor to replace the employees without significant disruption to ongoing operations, the Debtor hereby requests authority to pay the Wages due and owing to their employees for the prepetition period as well as any Withholding Obligations and Payroll Taxes associated with the Wages.

*Union Dues*

23.     The Debtor also withholds certain amounts from the employees' paychecks for the payment of dues to UPSEU (the "Union Dues").  These withheld amounts are remitted to UPSEU in accordance with the terms of the CBA.  The Union Dues are collected bi-weekly from the Union Employees and remitted to UPSEU on a bi-weekly basis.

## II.    **Employee Benefit Programs**

24.     The Debtor provides certain Employee Benefit Programs and other employment-related policies and practices to all employees in the ordinary course of business which they seek to continue during the post-petition period.

*Health Care Programs*

25.    The Debtor offers employer-funded health insurance through Mohawk Valley Physicians Health (the "Health Care Programs"). The Health Care Programs include medical, dental and life insurance premiums. The Debtor's expected cost for the Health Care Programs in October 2024 is approximately $34,283.07.

26.    By this Motion, the Debtor seeks authority, in their sole discretion, to continue to provide the Health Care Programs for their employees in the ordinary course of business and to continue to honor obligations under such programs including, without limitation, the payment of all amounts owed under the Health Care Programs to the extent that any may be owed related to the prepetition period.

*Paid Time Off*

27.    The Debtor provides their employees with paid time off vacation benefits that allow salaried employees four (4) weeks of paid time off, earned five (5) days each quarter, and hourly employees paid time off based on their years of service earned each pay period. Employees are also offered paid time off for illness, personal reasons, and paid holidays.

28.    By this Motion, the Debtor seeks authority, in their sole discretion, to continue to honor their paid vacation and holiday policies (the "PTO Policies") in the ordinary course of business during this chapter 11 case.

### III.    **Reimbursement of Business Expenses**

29.    The Debtor customarily reimburse employees who incur business expense in the ordinary course of performing their duties on behalf of the Debtor including travel expenses, automobile expenses, cell phone expenses and CPE classes (the "Business Expenses"). On a

monthly basis, the Debtor reimburses approximately $2000 in Business Expenses incurred by the employees.

30.     The Debtor submits that it would be inequitable to require employees to bear personally any approved Business Expenses they incurred in furtherance of their responsibilities to the Debtor. Accordingly, the Debtor requests authority, in their sole discretion and in the exercise of their business judgment, to continue to honor all of their Business Expense obligations in the ordinary course of business, regardless of when such obligations arose.

**IV.    Direction to Banks**

31.     The Debtor also requests that the Court authorize and direct the banks with which the Debtor maintains accounts relating to its employee obligations to receive, process, honor, accept and pay any and all checks or electronic transfers drawn on the Debtor's accounts related to ordinary course obligations, including the proposed payments outlined above, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

32.     Finally, the Debtor requests that the Court authorize the Debtor to issue new postpetition checks or effect new postpetition fund transfers on account of their prepetition obligations to employees to replace any prepetition checks or fund transfer requests that may be dishonored or rejected inadvertently. The Debtor submits that this relief is integral in order to implement the relief sought by this Motion.

**BASIS FOR RELIEF REQUESTED**

33.     The Debtor requests authority to (i) pay the prepetition Wages and related Payroll Taxes and Withholding Obligations in the ordinary course of business, (ii) continue performing under the terms of the CBA for the benefit of the Union Employees, including withholding the

Union Dues, (iii) continue the Employee Benefit Programs, including without limitation the Health Care Programs and the PTO Policies, in the ordinary course of business and in the same manner as such programs were administered prior to the Petition Date. The Debtor requests further authorization to pay reimbursement of Business Expenses in the ordinary course of business.

34.    The Debtor submits that any delay in paying its employees could severely disrupt the Debtor's business operations. At this critical stage, the Debtor cannot risk losing any more of their workforce due to the uncertainty and decline in morale attributable to a chapter 11 filing. Moreover, failure to continue to perform under the CBA with UPSEU or provide the Employee Benefit Programs would jeopardize the employees' ability to receive the benefits of the Employee Benefit Programs which may lead to a decline in morale among the employees and a diminution in the Debtor's already sparce workforce.

35.    Accordingly, by this Motion, the Debtor seeks authority pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the "necessity of payment" doctrine to pay outstanding prepetition obligations to their employees.   Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b).  Section 105(a) of the Bankruptcy Code further empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court is authorized to grant the relief requested herein.

36.    A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under

Section 105, a court can permit pre-plan payment of pre-petition obligations when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, 98 B.R. at 177).

37.     The "necessity of payment" doctrine further supports the relief requested herein. This doctrine recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor. In re Ionosphere Clubs, 98 B.R. at 176; see also In re Chateaugay Corp., 80 B.R. 279 (S.D.N.Y. 1987); In re Just For Feet, Inc., 242 B.R. 821, 825-26 (D. Del. 1999) ("[n]ecessity of payment doctrine recognizes that paying certain prepetition claims may be necessary to realize the goal of chapter 11 – a successful reorganization"). This doctrine is consistent with the paramount goal of chapter 11 –"facilitating the continued operation and rehabilitation of the debtor . . . ." In re Ionosphere Clubs, 98 B.R. at 176.

38.     Courts have also permitted postpetition payment of prepetition claims pursuant to section 105(a) of the Bankruptcy Code in situations where non-payment of prepetition obligations would trigger a withholding of goods or services essential to the debtor's business reorganization plan.  See In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (noting that "necessity of payment doctrine . . . permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their prepetition reorganization claims shall have been paid"); In re UNR Industries, Inc., 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtor's successful reorganization).

39.     In order to achieve a successful winddown, the Debtor requires its employees to continue working in the ordinary course of business and in the same manner that the employees performed their respective services to the Debtor prior to the Petition Date. The requested authority to continue to pay the Employees' Wages and maintain Employee Benefit Programs, including with respect to the Union Employees through the withholding of Union Dues in accordance with the terms of the CBA, is necessary to ensure that the Debtor can retain their employees at a time when they are clearly needed.  The "necessity of payment" doctrine authorizes the relief requested in this Motion because the employees are indispensable to the Debtor's operations and the successful resolution of the chapter 11 case.

40.     In addition, the Debtor believes that the unpaid Wages and other benefits earned within the one hundred eighty (180) days prior to the Petition Date that the Debtor seek to pay are entitled to priority status under sections 507(a)(4) and (a)(5) of the Bankruptcy Code and individually do not exceed $15,150. Courts have recognized future priority status as a valid basis for allowing the payment of wage claims.  See, e.g., In re Braniff, Inc., 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (explaining that prepetition wage and wage-related claims are often allowed to be paid postpetition where the claims are entitled to priority because "in all but the direst of circumstances, the debtor will ultimately pay the prepetition wages because of their very high priority [and, therefore, the] court authorizes their payment early in the case rather than requiring that the employees wait for payment at the end of the case"). Accordingly, the Debtor submits that granting the relief requested herein will not have an adverse effect on other unsecured creditors of the Debtor's estate.  The payment of these amounts is necessary here, and the Debtor has articulated a sound business justification for the payment of these obligations.

41.    Similarly, allowing the Debtor to remit the Withholding Obligations and Payroll Taxes to the appropriate authorities will not prejudice the Debtor's creditors because such amounts are being held in trust by the Debtor for the benefit of the employees and thus do not constitute property of the Debtor's estate within the meaning of section 541 of the Bankruptcy Code.  See Begier v. Internal Revenue Svc., 496 U.S. 53, 65 (1990) (taxes such as excise taxes, FICA taxes and withholding taxes are property held by debtor in trust for another and do not constitute property of the estate); In re Am. Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (funds held in trust for federal excise and withholding taxes are not property of debtor's estate and, therefore, not available for distribution to creditors).

42.    The Debtor's employees are essential to the success of the winddown of its operations. As such, it is critical that the Debtor continue performing under the CBA in the ordinary course of business through the withholding of Union Dues on the Union Employees' behalf so that the employees will receive the same Employee Benefit Programs that were in place prior to the Petition Date. Similarly, it is equally critical that the Debtor be permitted to continue to administer the Employee Benefit Programs that it has established for the benefit of all of their employees that perform services necessary to the continued operation of the Debtor's business.

43.    Moreover, if checks issued and fund transfers requested on account of payment of these amounts are dishonored, or if such accrued obligations are not timely paid postpetition, the Debtor's employees may suffer extreme personal hardship.

44.    Authorizing, but not directing, the Debtor to pay its prepetition employee obligations in accordance with its prepetition business practices is in the best interests of the Debtor, its creditors, and all parties in interest, as it will enable the Debtor to continue to operate

its business efficiently without disruption while it winds down its affairs. The total amount proposed to be paid if the relief sought herein is granted is modest when compared to the size of the Debtor's estate and the importance of the employees to the winddown effort.

45.    Pursuant to section 363 of the Bankruptcy Code, the Court is empowered to authorize a debtor to expend funds outside the ordinary course of business.  Payment of the prepetition obligations described in this Motion in order to preserve the Debtor's business, retain the Debtor's employees and ultimately reorganize, even if such payment were deemed to be outside the ordinary course of business, is a sufficient business justification for such authorization.  See In re Ionosphere Clubs, 98 B.R. at 175. The payments hereunder would be consistent with any Debtor-in-Possession financing approved by the Court and any Budget in connection therewith.

46.    This Court and neighboring Courts have authorized the postpetition payment of prepetition wage obligations on the first day or in the early stages of other chapter 11 bankruptcy cases.  *See, e.g., In re The Roman Catholic Diocese of Albany*, Case No. 23-10244 (Bankr. N.D.N.Y. May 11, 2023) [Docket No. 192]; *In re The Roman Catholic Diocese of Syracuse, New York*, Case No. 20-30663 (Bankr. N.D.N.Y. Aug. 10, 2020) [Docket No. 74]; *In re The Diocese of Buffalo, N.Y.*, Case No. 20-10322 (Bankr. W.D.N.Y. Apr. 21, 2020) [Docket Nos. 250, 253]; *In re Diocese of Rochester, Inc.*, Case No. 19-20905 (Bankr. W.D.N.Y. Nov. 11, 2019) [Docket No. 269].

## <u>REQUEST FOR WAIVER OF STAY</u>

47.    The Debtor further submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, for all of the foregoing

reasons, Bankruptcy Rule 6003 has been satisfied and it is essential that the Court approve payment of the prepetition obligations described in this Motion.

48.    The Debtor also seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court others otherwise."  As set forth above, the payments proposed herein are essential to prevent irreparable damage to the Debtor's operations and value. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

49.    Notice of this Motion has been given to (a) the United States Trustee for the Northern District of New York; (b) the Debtor's twenty (20) largest unsecured creditors; (c) counsel to the trustee for the Pre-Petition Bondholders; (d) counsel to the proposed DIP Lender; (e) the Union; and (f) any other party who requests to receive notices.  The Debtor submits that, under the circumstances, no other or further notice is required.

50.    No previous application for the relief sought herein has been made to this or any other Court.

## CONCLUSION

51.    For the reasons set forth herein, it is critically important that the Debtor be able to maintain its remaining workforce through the payment of Wages and continued performance under the Employee Benefit Programs, whether directly or through continued performance under the CBA.  If the Debtor was to experience a further decline in its workforce due to concerns that the Debtor would be unable to continue to pay its employees in the same manner it had prior to

the Petition Date, it would cause severe disruption to the Debtor's ability to winddown and therefore result in irreparable harm to the Debtor's estate and reorganization efforts.

WHEREFORE, the Debtor respectfully requests entry of the Order annexed hereto as Exhibit "A" granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

Dated: Albany, New York
   October 10, 2024

         CULLEN AND DYKMAN LLP

         By: /s/  *Bonnie Pollack*
         Matthew G. Roseman, Esq.
         Bonnie L. Pollack, Esq.
         Kelly McNamee, Esq.
         Kyriaki A. Christodoulou, Esq.
         80 State Street, Suite 900
         Albany, New York 12207
         (516) 357-3700
         mroseman@cullenllp.com
         bpollack@cullenllp.com
         kmnamee@cullenllp.com
         kchristodoulou@cullenllp.com
         *Proposed Counsel for The College of Saint Rose*

**<u>EXHIBIT A</u>**

**<u>Proposed Order</u>**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                                 :
In re:                                                           :   Chapter 11
                                                                 :
THE COLLEGE OF SAINT ROSE,                                       :   Case No. 24-_____(REL)
                                                                 :
                          Debtor.                                :
                                                                 :
-----------------------------------------------------------------x

**ORDER (I) AUTHORIZING THE DEBTOR TO PAY (A) PREPETITION EMPLOYEE
OBLIGATIONS AND (B) PREPETITION WITHHOLDING OBLIGATIONS, (II)
AUTHORIZING THE DEBTOR TO CONTINUE PERFORMING UNDER THE
COLLECTIVE BARGAINING AGREEMENT, (III) AUTHORIZING THE DEBTOR TO
CONTINUE TO PROVIDE EMPLOYEE BENEFIT PROGRAMS, (IV) DIRECTING
BANKS TO HONOR RELATED PREPETITION TRANSFERS, AND
(V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] filed by The College of Saint Rose, the above-
captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed attorneys
Cullen and Dykman LLP, pursuant to sections 105, 363, 507, 1107 and 1108 of title 11 of the
United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for entry of an order (i) authorizing the Debtor to pay (a) certain prepetition employee obligations, and (b) prepetition withholding obligations and payroll taxes, (ii) authorizing the Debtor to perform under the terms of the collective bargaining agreement with UPSEU, (iii) authorizing the Debtor to continue to provide certain employee benefit programs to its employees; (iv) directing banks to honor prepetition transfers related to the foregoing, and (v) granting related relief; and the Court, having reviewed the Motion and having heard the statements of counsel in support of the relief requested in the Motion at the hearing before the Court (the "<u>Hearing</u>"), finds that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant to 28 U.S.C. § 157(b)(2), notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given, and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED to the extent set forth herein.

2. The Debtor shall be and hereby is authorized but not directed to pay, in their discretion, the prepetition Wages relating to their employees up to the statutory cap of $15,150 per employee, and to remit all prepetition Withholding Obligations and Payroll Taxes to the appropriate third parties as and when such obligations come due.

3. The Debtor shall be and hereby is authorized to withhold Union Dues under the terms of the CBA in the ordinary course of business.

4. The Debtor shall be and hereby is authorized to continue to perform under the CBA with UPSEU. Notwithstanding anything to the contrary herein, nothing in this Order

authorizes the assumption of the CBA pursuant to section 365 of the Bankruptcy Code or any other provision of the Bankruptcy Code.

5.      The Debtor shall be and hereby is authorized to continue to provide the Employee Benefit Programs to the Debtor's employees that were in place prior to the Petition Date in the ordinary course of business and in accordance with the Debtor's stated policies and prepetition practices including, without limitation, the Health Care Programs and the PTO Policies.

6.      The Debtor shall be and hereby is authorized but not directed to make payment of reimbursement for prepetition Business Expenses to the Debtor's employees.

7.      All banks shall be and hereby are authorized and directed to receive, process, honor and pay all checks drawn on the Debtor's accounts with the banks and fund transfers on account of the Debtor's prepetition obligations to its employees, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

8.      Notwithstanding anything to the contrary herein, no individual shall receive more than $15,150 based on the authority granted in this Order absent further order of the Court, heard on notice.

9.      Any and all payments authorized to be made pursuant to this Order shall be subject to and made only to the extent authorized under any interim or final orders governing the Debtor's use of cash collateral and terms of Debtor-in-Possession financing, including any Budget in connection therewith.

10.     The Debtor shall be and hereby is authorized to issue, in its discretion, new postpetition checks or effect new postpetition fund transfers on account of its prepetition

obligations to its employees to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

11.     Notwithstanding Bankruptcy Rules 6004(h) or 7062, the terms and conditions of this order shall be immediately effective upon its entry.

12.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.