CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq. (admission pro hac vice pending)
Bonnie L. Pollack, Esq. (admission pro hac vice pending)
Kelly McNamee, Esq. (admission pro hac vice pending)
Kyriaki Christodoulou, Esq. (admission pro hac vice pending)
(516) 357-3700

*Proposed Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                                  :
In re:                                                            :   Chapter 11
                                                                  :
THE COLLEGE OF SAINT ROSE,                                        :   Case No. 24-11131 (REL)
                                                                  :
                            Debtor.                               ::
------------------------------------------------------------------x

## MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO (I) CONTINUE ITS CASH MANAGEMENT SYSTEM, (II) MAINTAIN EXISTING BANK ACCOUNTS, RESTRICTED ACCOUNTS AND CREDIT CARD, AND (III) RECEIVE A WAIVER OF CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS

The College of Saint Rose, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed attorneys Cullen and Dykman LLP, hereby submits this motion (the "Motion") pursuant to sections 105, 345, 363 and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (a) authorizing, but not directing, the Debtor to (i) continue using its cash management system, including making payment of sums due under a credit card, (ii) maintain and continue to use existing bank accounts, restricted accounts and credit card, and (iii) receive a waiver of certain operating guidelines relating to bank accounts, restricted accounts and credit cards.  In support of the Motion, the Debtor respectfully represents as follows:

## INTRODUCTION

1.      On October 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2.      The Debtor remains in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Northern District of New York in this chapter 11 case.

4.      Simultaneously with the filing of its petition, the Debtor filed the Declaration of Marcia J. White pursuant to Local Bankruptcy Rule 2015-2 (the "First Day Declaration").  A detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the First Day Declaration, incorporated herein by reference.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief sought herein are sections 105, 345, 363, 503, 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

7.      The College was established by provisional charter granted by the New York State Board of Regents on June 24, 1920 to issue bachelor's degrees, which charter was made absolute on March 19, 1931 and was amended in 1949 to authorize the offering of master's degrees. It was again amended in 2019 to authorize the offering of an associate's

2

degree as part of its jointly registered BSN program with St. Peter's Health Partners Schools of Nursing. The College is located in Albany, New York and operates out of 72 buildings on 92 parcels of real estate (the "Real Property").

8.  For more than 10 years, as the College's structural deficit grew- caused by unachieved enrollment goals, a rising tuition discount rate, the financing structure of the College's bond debt, and a relatively low unrestricted endowment - the Board of Trustees (the "Board") and College leadership have been working to achieve financial sustainability. The College experienced a steady enrollment decline for more than a decade from 5,130 total enrollment in 2010 to a total of 2,566 in Fall 2023 due in part to a shrinking pool of high school graduates in New York and the northeast region overall and, in recent years, the prolonged negative impact of the COVID-19 pandemic.

9.  The College implemented several deficit reduction and strategic plans since 2015, but ultimately the Board determined, based on the College's financial and enrollment projections, that it was in the best interests of the students and the College to cease academic instruction no later than June 30, 2024, and thereafter wind-down the operations and settle the affairs of the College. On November 30, 2023, the Board directed the implementation of a closure plan, which included the authorization to the College's leadership to develop a Teach-Out Plan that would provide all students with seamless pathways to complete their academic programs at Saint Rose or other institutions. Thus far, 720 students have taken advantage of the Teach-Out Plan by enrolling with teach-out partner institutions to continue their education. In addition, the College offered a summer session through June 21, 2024 that enabled another 460 students to graduate from the College.

22484.3 21081437v2

10.     The filing of the College's chapter 11 case is a key part of the closure plan, and the College intends to provide for an orderly liquidation of its assets, including a sale of the Real Property, for the benefit of creditors while implementing the academic components of the Closure Plan. Thus, on the Petition Date, the College filed for chapter 11 protection.

11.     A full background of the events leading up to the filing of this case is set forth in the First Day Declaration filed on the Petition Date, and is incorporated herein by reference.

*Description of the Debtor's Cash Management System and Bank Accounts*

12.     Prior to the Petition Date, in the ordinary course of the Debtor's business, the Debtor maintained a cash management system comprised of approximately eight (8) bank accounts (the "Bank Accounts") at various bank accounts including Key Bank ("Key") and Bank United ("United"; together with Key, the "Banks"), and a credit card bank account at M&T Bank (the "Credit Card") which provide established mechanisms for the collection, management, and disbursement of funds used in the Debtor's operations (the "Cash Management System"). In addition to the eight accounts at the Banks, the Debtor holds funds in approximately six (6) restricted accounts which will be transferred upon Attorney General approval as discussed below. The Cash Management System enables the Debtor to manage and control funds and ensure cash availability and to provide segregation of endowment and other restricted funds.

13.     The Debtor's cash management system operates as follows. The Debtor has its main bank accounts at Key and United. United is the Debtor's main bank. It holds the following accounts at United:

- Operating Account (#0430)
- Golden Knights Cash Account (from which certain vendors can pull payments directly) (#0494)
- EFT Account (#7037) into which NY State reimburses the College for outstanding expenses

4

14.    The EFT Account is swept into the United Operating Account daily. The Operating Account is used to pay all operating expenses of the Debtor, and to fund the Key General Checking Account discussed below.

15.    The Debtor also holds accounts at Key Bank, consisting of the following:

- General Checking Account (#8078)
- Self-Insurance Plan Account (from which its self-insured insurance claims processed through MVP are directly pulled)(#8136)
- Payroll Account (#8094)
- Security Deposit Account (for bankruptcy utility security deposits) (#8102)

16.    The Key general checking account is funded by the United operating account as needed, and those monies are then used to fund the payroll account, pay payroll taxes and pay student refunds.

17.    The Debtor's P Card Account at M&T Bank (#0381) operates as the account by which payments for the Credit Card are made.

18.    In addition to the foregoing, the Debtor holds the following restricted accounts (the "Restricted Accounts"):

- Broadview Federal Credit Union (#4100). These funds are from a restricted pledge by Broadview itself, and will be transferred to another institution upon approval of the Albany County Supreme Court and the New York State Attorney General.
- Charitable Gift Annuity- Key Private Bank (#7430). These funds are restricted gifts and will be transferred to another institution upon approval of the Albany County Supreme Court and the New York State Attorney General.
- Heuther Bequest- Fidelity (#1082). These funds are from a restricted bequest and will be transferred to another institution upon approval of the Albany County Supreme Court and the New York State Attorney General.
- Restricted Endowment- Wilmington Trust (#0107). These funds are from restricted gifts and bequests and will be transferred to another institution upon approval of the Albany County Supreme Court and the New York State Attorney General.
- Donor Restricted Funds- Key Bank Highly Sensitive Communication        Please        u (#7008).  These unspent funds are from the endowment earnings based on the donor authorized spend rate and will be transferred to another institution upon approval of the Albany County Supreme Court and New York State Attorney General.
- Pension Plan Account- Key Trust (#8860)

19.     None of the Restricted Accounts are being used for deposits or payments by the Debtor, and all will be transferred to another institution upon attorney general approval, except for the Pension Plan Account. Those monies will be distributed to participants of the pension plan as required by the pension plan documents.[1]

20.     The Debtor has historically also used the Credit Card to pay various business expenses as necessary. Maintenance of the Credit Card on an ongoing and uninterrupted basis is essential to the Debtor's operations because, among other things, the Credit Card provides a source of immediate liquidity. As of the Petition Date, the current amount outstanding on the Credit Card was $3,533.02 and the credit limit is $300,000. By this Motion, the Debtor seeks authority, but not the obligation, to pay certain of the charges on the Credit Card including payments for business expenses incurred in the ordinary course of business that will not include any payments made for the benefit of insiders, in an amount to be determined by the Court.

## **RELIEF REQUESTED**

21.     By this Motion, the Debtor seeks entry of an order, pursuant to sections 105(a), 345, 363, 364 and 503 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, authorizing the Debtor to (i) continue its Cash Management System in the ordinary course of business, consistent with its prepetition practices, including making payments of certain sums

---

[1] There were also three (3) accounts established in connection with the Bonds issued by the City of Albany Capital Resource Corporation ("CRC"). All of these accounts were swept by the Pre-Petition Bondholders prior to the Petition Date and the Debtor has not been able to obtain any information on how the Bondholders applied the funds:

- Debt Service Reserve Account- Wilmington Trust (#190-001). This fund was established upon issuance of the Bonds and transfers are made from this account to the Bond Fund Account for payments of principal and interest to the Bondholders. This account is restricted.
- Bond Fund Account- Wilmington Trust (#190-000). This account is used for payments of principal and interest to the Bondholders. This account is restricted.
- Project Fund Account- Wilmington Trust (#190-004). This account is comprised of funds from the proceeds of the sale of eight (8) properties. This account is not restricted, but CRC would not release these funds for any purpose other than reinvestment into other properties.

due under the Credit Card, (ii) maintain its existing Bank Accounts and Credit Cards, and (iii) (iii) receive a waiver of certain operating guidelines relating to the Bank Accounts set forth in the U.S. Trustee Guidelines.

22.     The Debtor submits that the relief requested herein is a reasonable exercise of its business judgment and will help ensure the Debtor's orderly entry into chapter 11 and avoid many of the possible disruptions to its operations and employees during the critical early days of this chapter 11 case.

<b><u>BASIS FOR RELIEF REQUESTED</u></b>

**A.     The Debtor Should Be Authorized (1) to Continue to Use the Cash Management System Under Section 363 of the Bankruptcy Code and (2) to Pay Certain Pre-Petition Charges on the Credit Card Incurred in the Ordinary Course of Business**

23.     The Debtor requests authority to continue to use its Cash Management System in order to avoid disruption to its business operations and preserve its going concern value.  The Cash Management System constitutes a customary and essential business practice for the Debtor. It allows the Debtor to track all cash payments, control and monitor funds and ensure cash availability.  Requiring the Debtor to establish a new system of accounts would be unduly burdensome with little corresponding benefit since, among other things, such an exercise would be (a) costly, (b) disrupt the Debtor's ability to satisfy post-petition payables in a timely manner, and (c) interfere with the efficient management of the Debtor's resources and their winddown operations. In addition, endowment and other restricted funds must remain segregated from operating funds. Accordingly, the Debtor respectfully request that the Court authorize the Debtor's continued use of the Cash Management System described herein.

7

       (i)     *Continued Use of the Cash Management System is Permissible Under Section 363 of the Bankruptcy Code*

24.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. §363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor with the flexibility to engage in its day-to-day transactions without incurring excessive monitoring costs that would result from the need to provide notice of, and obtain approval for, ordinary course activities. *See, e.g., Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Anything Elec. Contrs. Co.,* 2005 Bankr. LEXIS 3447, *11 (Bankr. N.D.N.Y. 2005). The Debtor's ability to continue using the Cash Management System and engage in related routine transactions falls within the parameters of section 363(c)(1) of the Bankruptcy Code. *See Amdura Nat'l Distrib. Co. v. Amdura Corp., Inc. (In re Amdura Corp., Inc.)*, 75 F.3d 1447, 1453 (10th Cir. 1996); *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (holding that a debtor's request for authority to continue using its existing cash management system is consistent with section 363(c)(1) of the Bankruptcy Code).

25.     To the extent that continuing to use the Cash Management System is beyond the ordinary course of the Debtor's business, the Debtor submits that such use is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b). Courts generally hold that a debtor's decision to enter into a transaction outside the ordinary course of business is governed by the business judgment standard. *See Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Further, section 105(a) of the Bankruptcy Code further empowers

the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

26.    In addition, cash management orders are routinely entered in the Northern District. *See e.g., The Roman Catholic Diocese of Albany*, Case No. 23-10244 (Bankr. N.D.N.Y. Mar. 22, 2023) [Docket No. 39]; *In re Good Samaritan Lutheran Health Care Center*, Case No. 19-12215 (Bankr. N.D.N.Y. Feb. 3, 2020) [Docket No. 119]; *In re Centerstone Linen Services, LLC*, Case No. 18- 31754 (Bankr. N.D.N.Y., Dec. 20, 2018) [Docket No. 26]; *In re Datacom Systems, Inc.*, Case No. 18-30766-5 (Bankr. N.D.N.Y. June 7, 2018) [Docket No. 38]; *In re Carthage Specialty Paperboard, Inc.*, Case No. 18-30226 (Bankr. N.D.N.Y. Mar. 2, 2018) [Docket No. 34]; *In re Auburn Armature, Inc.*, Case No. 17-30743) (Bankr. N.D.N.Y. May 24, 2017) [Docket No. 29].

27.    Accordingly, the Debtor requests to maintain its existing Cash Management System.

> (ii)    *Payment of Certain Amounts Due Under the Credit Cards is Essential to the Debtor's Winddown Operations*

28.    The Debtor utilizes the Credit Cards to make payments of costs that would typically otherwise be paid from the Operating Account towards vendors and other miscellaneous operating costs.  The Credit Cards afford the Debtor enhanced liquidity and flexibility in managing its cash flow and represent an important component of the Debtor's Cash Management System.

29.    Accordingly, by this Motion, the Debtor seeks authority but not direction to, in its sole discretion, maintain the Credit Card in the ordinary course of business and to pay certain of the prepetition obligations due and owing to M&T Bank under the Credit Card including payments for business expenses incurred in the ordinary course of business that will not include

any payments made for the benefit of insiders.  The Debtor submits that maintaining access to the Credit Card is essential to a smooth transition into chapter 11.

30.     For all of the foregoing reasons, the Debtor submits that the Cash Management System is beneficial to the Debtor, its estates and its creditors because it enables the Debtor to (i) reduce the administrative expense associated with moving funds, (ii) maintain accurate information regarding receipts, account balances and disbursements, (iii) maintain an efficient process for investment of cash and (iv) ensure compliance with the Debtor's accounting and disbursement procedures.  Under the circumstances and in light of the Debtor's belief, in the exercise of its business judgment, that continued use of the prepetition Cash Management System is in the best interest of its estate, the Debtor requests that the Court authorize the Debtor to continue using the Cash Management System, including paying certain amounts due and owing under the Credit Card.

**B.      Certain U.S. Trustee Guidelines Regarding the Debtor's
          Bank Accounts Should be Waived**

> *(i)     The Court Should Grant the Debtor a Waiver of the U.S. Trustee
>          Guidelines Regarding its Bank Accounts*

31.     The operating guidelines relating to bank accounts set forth by the Office of the United States Trustee for the Northern District of New York (the "U.S. Trustee") pursuant to the *U.S. Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines"), which were adopted in order to assist the U.S. Trustee in supervising the administration of chapter 11 cases, require chapter 11 debtors to, among other things, (a) close all existing bank accounts; (b) open new debtor-in-possession operating, payroll and tax accounts at certain financial institutions designated as authorized depositories by the U.S. Trustee; and (c) obtain and utilize new checks for all debtor-in-possession accounts which bear

the designation "Debtor-in-Possession" and contain certain other information relating to the chapter 11 case. The U.S. Trustee Guidelines are not legally enforceable, although they represent good practice. *See In re Johnson*, 106 B.R. 623, 624 (Bankr.D. Neb.1989) ("[T]he Guidelines themselves cannot require bankruptcy debtors to comply with their provisions because the Guidelines do not carry the force or effect of law."); *In re Crosby*, 93 B.R. 798, 802-805 (Bankr. S.D. Ga. 1988) (noting that "requirements" established by the U.S. Trustee are subject to the bankruptcy court's judicial oversight). Accordingly, bankruptcy courts can and do authorize debtors to deviate from the requirements of the U.S. Trustee Guidelines in appropriate circumstances. Here, strict enforcement of the U.S. Trustee Guidelines would disrupt the Debtor's ordinary operations and cause administrative hardship, thereby reducing efficiency and causing avoidable expense.

32.    The Debtor's continued use of the Bank Accounts held at Key and United as well as the M&T Credit Card, is critical to its smooth and orderly transition into chapter 11. All three (3) of those institutions are designated as an authorized depository by the U.S. Trustee. Maintaining the existing Bank Accounts will facilitate the Debtor's ability to collect, deposit and account for receipts and pay post-petition bills. Closing the Bank Accounts would require the Debtor to open new accounts and arrange alternative procedures for electronic and manual transfers to and from the Bank Accounts. The results would be a disruption of processing payments, and similarly would disrupt ACH transfers, payroll obligations, and post-petition obligations to vendors and other creditors.

33.    The Restricted Accounts cannot be utilized by the Debtor in this case; instead, they will be transferred to other educational or charitable institutions upon approval of the New

York State Attorney General and the Albany County Supreme Court. The pension account will be distributed in accordance with a plan.

34.     Courts in this District and neighboring Districts have waived the U.S. Trustee Guidelines to allow the continued use of cash management and pre-petition bank accounts employed in the ordinary course of the debtor's pre-petition business. *See, e.g., In re Good Samaritan Lutheran Health Care Center*, Case No. 19-12215 (Bankr. N.D.N.Y. Feb. 3, 2020) [Docket No. 119]; *In re Rochester Drug Co-Operative, Inc.*, Case No. 20-20230 (Bankr. W.D.N.Y. May 19, 2020) [Docket No. 316]; *In re The Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y., Sep. 13, 2019) [Docket No. 29]; *In re Centerstone Linen Services, LLC*, Case No. 18-31754 (Bankr. N.D.N.Y., Dec. 20, 2018) [Docket No. 26]; *In re Datacom Systems, Inc.*, (Bankr. N.D.N.Y., June 7, 2018) [Docket No. 38]; *In re Carthage Specialty Paperboard, Inc.*, Case No. 18-30226 (Bankr. N.D.N.Y., Mar. 2, 2018) [Docket No. 34]; *In re Auburn Armature, Inc.*, Case No. 17-30743(Bankr. N.D.N.Y., May 24, 2017) [Docket No. 29].

35.     All parties in interest in this case will be best served by the continued use of the pre-petition Bank Accounts because it will minimize disruption to the Debtor's business operations.  To ensure that the maintenance of the Cash Management System does not prejudice any parties in interest, the Debtor will separately record the balances of each of the Bank Accounts as of the Petition Date and track postpetition activity by documenting any postpetition transactions in the Debtor's books and records.  These transactions will also be incorporated into the monthly operating reports that will be filed with the Court during the pendency of this chapter 11 case. In addition, the Debtor will designate the Bank Accounts as debtor-in-possession accounts in its books and records and with the affected financial institutions.

22484.3 21081437v2

Accordingly, the Debtor requests that this Court waive the U.S. Trustee Guidelines requiring that the Debtor close all existing Bank Accounts and open new debtor-in-possession accounts.

36.     Furthermore, as set forth above, the Golden Knights Cash Account at United, and the Self-Insurance Plan Account at Key, are utilized by third parties for automatic withdrawals. Certain vendors send invoices to the Debtor for goods and services provided, and the Debtor deposits the amount of the invoices into the Golden Knights Cash Account which is then withdrawn directly by such vendors. The vendors with whom the Debtor has this arrangement consist of Green Street solar service and NRGB, a third-party energy and electricity supplier, and Marshall & Sterling, the Debtor's employee benefits broker, for medical reimbursements. In addition, the New York State Department of Taxation and Finance withdraws withholding and sales tax from the Golden Knights Account. Likewise, MVP, the Debtor's third-party self-insurance provider, operates on the same basis with respect to the Self-Insurance Plan Account. Once self-insurance claims are processed, the Debtor deposits the funds into the Self-Insurance Plan Account at Key, and the funds are withdrawn directly by MVP. Finally, M&T withdraws money directly from the P Card Account at M&T for payments on the Credit Card. It is submitted that it is important that the Debtor be authorized to continue this withdrawal system post-petition. Even though these vendors can withdraw their payments directly from the foregoing accounts, the Debtor controls the amount of money deposited into the account, which is tied directly to the invoices being paid. Without maintaining these accounts and the withdrawal privileges afforded those vendors, they may terminate service to the detriment of the Debtor and the estate. Indeed, the Debtor has already been advised that the self-insurance policy with MVP will be terminated absent the continuation of the automatic deductions from the Self-Insurance Plan Account.

37.     The Debtor also seeks a waiver of the requirement to establish specific accounts for operating, payroll and tax obligations, as they believe that these obligations can be paid most efficiently out of the Debtor's current Bank Accounts through the Cash Management System that was in place prepetition, as the Debtor's Cash Management System is comprised of separate bank accounts for payroll and operating costs.  The Debtor submits that the U.S. Trustee can adequately monitor the flow of funds into and out from such accounts and that the creation of new debtor-in-possession accounts designated solely for such obligations would be inefficient and unnecessary.

      *(ii)*     *The Court Should Authorize the Debtor to Continue to Maintain and Utilize the Restricted Accounts, and Cause Exists for Waiving the Investment and Deposit Guidelines of Section 345 of the Bankruptcy Code with Respect to the Restricted Accounts.*

38.     The Debtor respectfully requests authority to continue its prepetition investment practices and to maintain each of its Restricted Accounts in the ordinary course of business.

39.     Section 345(a) of the Bankruptcy Code provides that a debtor in possession may invest money of the estate "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). Section 345(b) provides that a Debtor's investments should be either federally guaranteed or backed by a bond or collateral securities "*unless the court for cause orders otherwise.*" 11 U.S.C. § 345(b). (emphasis added).  The Debtor respectfully submits that there is sufficient cause to waive the section 345(b) investment requirements in this case and respectfully requests that the Court enter an order waiving compliance with section 345(b) with respect to the Debtor's investments in the Restricted Accounts.

40.     As an initial matter, any investments held in the Restricted Accounts are restricted-use or endowed funds or are otherwise held by the Debtor in trust; therefore, those

funds are not available to creditors and do not constitute part of the Debtor's bankruptcy estate pursuant to section 541 of the Bankruptcy Code. *See, e.g.*, *Tort Claimants Comm. v. Roman Catholic Archbishop of Portland in Oregon (In re Roman Catholic Archbishop)*, 345 B.R. 686 (Bankr. D. Ore. 2006); *Hunter v. St. Vincent Medical Ctr. (In re Parkview Hosp.)*, 211 B.R. 619 (Bankr. N.D. Ohio 1997). To the extent any of the funds at issue represent property of the Debtor's bankruptcy estate, the Debtor respectfully submits that cause to waive the bonding requirement of section 345(b) nevertheless exists.

41.    Section 345(b) allows a court to waive compliance "for cause". The bankruptcy court for the Middle District of Tennessee identified a number of factors to be considered as part of a "totality of the circumstances inquiry." *In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999):

    a.  The sophistication of the Debtor's business;

    b.  The size of the Debtor's business operations;

    c.  The amount of the investments involved;

    d.  The bank ratings (Moody's and Standard & Poor) of the financial institutions where the Debtor-in-possession funds are held;

    e.  The complexity of the case;

    f.  The safeguards in place within the Debtor's own business of insuring the safety of the funds;

    g.  The Debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

    h.  The benefit to the Debtor;

    i.  The harm, if any, to the estate; and

    j.  The reasonableness of the Debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

*Id.* at 896; *accord In re Ditech Holding Corp.*, Case No. 19-10412 (JLG), 2019 Bankr. LEXIS 1892, at *14 (Bankr. S.D.N.Y. June 24, 2019). Here, the relevant factors clearly favor waiving the investment requirements of section 345(b) with respect to the Debtor's Restricted Accounts.

42.     First, Debtor's investment practices are overseen by various independent professional financial advisors who ensure that a diversified mix of investments is maintained to achieve moderate targeted growth with minimal exposure to down-side risk in any particular investment. The Debtor works with LVW Advisors, LLC as investment advisor. In addition, the Debtor consults with investment advisors at the institutes holding the Restricted Accounts. The Debtor has not and is not seeking to make unnecessarily risky or speculative investments, but merely to utilize its resources consistent with the recommendations of its professional advisors in an organized and diversified manner as most institutions of similar size do in the ordinary course, pending transfer of those accounts to other entities.

43.     Moreover, the Debtor has approximately $17,632,114 in its various Restricted Accounts. Accordingly, the Debtor is not the unsophisticated debtor with minimal assets Congress sought to protect when it enacted the requirements of section 345(b). Rather, the Debtor is precisely the type of debtor that the 1994 amendment allowing a waiver of those requirements "for cause" was meant to address. If the Debtor were forced to liquidate its current holdings and instead invest in treasury securities or to maintain a collateralized deposit account in strict compliance with section 345(b), it would not be able to obtain a comparable rate of interest or growth, to the detriment of the ultimate recipient of the restricted funds.

44.     In addition, the Debtor respectfully submits that the sheer size of its investments will make it difficult and unnecessarily expensive, if not outright impossible, to obtain a bond

16

or collateral securities to cover the full amount invested in in the Restricted Accounts and/or to find an authorized depository willing to take on such a deposit, particularly given the short-term nature of the deposits at this point.

45.     The Debtor submits that the financial institutions with which the Restricted Accounts are held, are stable and financially secure institutions. The majority of the Debtor's funds are held in Wilmington Trust and Fidelity, large well-known institutions. Accordingly, the Debtor respectfully submits that there is no reason to believe the institutions with whom the Investment Accounts are held present an unreasonable risk of loss.

46.     Furthermore, the Debtor's Restricted Accounts will imminently be transferred to other institutions. Forcing the Debtor to liquidate the Restricted Accounts and set up alternative arrangements would require a substantial amount of time and effort which would distract from the Debtor's ability to focus on its goal of successfully liquidating its assets and confirming a plan of reorganization.  Liquidation of the Restricted Accounts may also cause the Debtor to incur tax liabilities.  Accordingly, the Debtor respectfully submits that this case is sufficiently complex and therefore it should not be required to strictly comply with section 345(b).

47.     The Debtor also believes that appropriate safeguards are in place which render strict adherence with the investment requirements of section 345(b) unnecessary. First, the Debtor is already subject to statutory requirements under New York State laws which mandate the prudent and responsible investment of its funds. The New York Prudent Management of Institutional Funds Act, codified in sections 550-558 of the New York Not-for-Profit Corporation Law ("NPCL") requires the Debtor to manage and invest its funds with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

NPCL § 552(b).

48.    Second, the Debtor has engaged the assistance of independent, professional outside financial advisors who actively monitor the Debtor's Restricted Account portfolios and ensure that a diversified mix of investments is maintained to achieve moderate targeted growth with minimal exposure to down-side risk in any particular investment.

49.    Third, the Debtor's investments are comprised primarily of professionally managed mutual funds and other securities which are widely traded and thus exposed to constant market scrutiny and valuation – reducing the risk of unexpected or severe fluctuations in value and avoiding unduly speculative investments in favor of steady growth over a long-term investment horizon. Accordingly, the Debtor submits that there are sufficient safeguards in place to justify a waiver of the section 345(b) investment requirements.

50.    Because each of the Debtor's Restricted Accounts is comprised of a diversified portfolio of securities, the failure of any individual investment should result in minimal adverse effects on the overall value of its investments.

51.    The Debtor's estate will suffer if it is not allowed to continue its existing investment program. It is highly unlikely that the Debtor could even procure a bond or collateral security to cover the significant amount of investments currently held in the Restricted Accounts. Even if such security could be obtained, it would almost certainly be at an extraordinary expense to the Debtor's estate and would need to be funded out of unrestricted funds, to the detriment of the Debtor's creditors (particularly since the creditors will not ultimately benefit from the funds in the Restricted Account).

52.    Accordingly, the only realistic way for the Debtor to strictly comply with section 345(b) would be to liquidate the holdings in each of the Restricted Accounts, reducing

the current investment positions to cash, and then to place such cash into a deposit account with one of the U.S. Trustee's authorized depositories. The Debtor submits that doing so would be neither practical nor prudent, and that doing so would put the Debtor at risk of failing to comply with its state law obligations under the New York Prudent Management of Institutional Funds Act to act as a prudent investor of the funds placed under its control. This is particularly detrimental, given that the funds will soon be transferred to another institution.

53.     On balance, the Debtor respectfully submits that its request for a waiver of compliance with the investment requirements of section 345(b) of the Bankruptcy Code is reasonable and justified by the circumstances of this Chapter 11 Case, and respectfully requests that the Court enter an order granting the relief sought herein, including a waiver of the section 345(b) investment requirements.

54.     Courts in this district and throughout the Second Circuit have found cause to waive the requirements of section 345(b) under appropriate circumstances such as those in this case. *See, e.g.*, *In re The Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y. Jan. 14, 2020) [Docket No. 368]; *In re Maxcom USA Telecom, Inc.*, 19-23489 (Bankr. S.D.N.Y. Sept. 27, 2019) [Docket No. 73]; *In re Décor Holdings, Inc., et al.*, Case No. 19-71020 (Bankr. E.D.N.Y. Feb. 27, 2019)[Docket No. 84]; *In re Eagle Bulk Shipping, Inc.*, Case No. 14-12303 (Bankr. S.D.N.Y. Sept. 18, 2014) [Docket No. 100]; *In re Northeast Biofuels, LP*, Case No. 09-30057 (Bankr. N.D.N.Y. Jan 15, 2009) [Docket No, 12]; *In re Auburn Memorial Hospital*, Case No. 07- 31126 (Bankr. N.D.N.Y. June 12, 2007) [Docket No. 158]. The Debtor respectfully submits that the present circumstances warrant similar relief in this chapter 11 case.

22484.3 21081437v2

*(iii)* *Business Forms*

55.    In the ordinary course of business, the Debtor uses a variety of checks, and other business forms (collectively, the "Business Forms").  By virtue of the nature and scope of the Debtor's business, and the numerous parties with whom the Debtor interacts, it is imperative that the Debtor be permitted to continue to use the Business Forms without alteration or change.

56.    After the Petition Date, the Debtor seeks to continue using its current Business Forms, including its existing check stock, not having a debtor-in-possession designation. When reordering checks, however, the Debtor will ensure that the new check stock printed for the Debtor reflects its status as a debtor-in-possession. The Debtor submits that changing correspondence and other Business Forms would be unnecessary and burdensome to the estate as well as expensive and disruptive to ongoing operations.

57.    Accordingly, the Debtor requests that this Court approve modifications to the U.S. Trustee Operating Guidelines relating to closing all accounts, opening new payroll, tax and operating accounts, and obtaining new business forms bearing a debtor-in-possession designation.  The Debtor submits that the proposed course of action described above will satisfy the purposes of the U.S. Trustee Operating Guidelines without unnecessary disruption to the estate.

## REQUEST FOR WAIVER OF STAY

58.    The Debtor further submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, for all of the foregoing reasons, Bankruptcy Rule 6003 has been satisfied and it is essential that the Court approve payment of the prepetition obligations described in this Motion.

22484.3 21081437v2

59.     The Debtor further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court others otherwise." As set forth above, maintenance of the Debtor's Cash Management System and continued access to its Bank Accounts is essential to prevent irreparable damage to the Debtor's operations. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

60.     Notice of this Motion has been given to (a) the United States Trustee for the Northern District of New York; (b) the Debtor's twenty (20) largest unsecured creditors; (c) counsel to the trustee for the Pre-Petition Bondholders; (d) counsel for the proposed DIP Lender; (e) Key Bank; (f) Bank United; (g) M&T Bank; (h) New York State Attorney General; and (i) any other party who requests to receive notices. The Debtor submits that, under the circumstances, no other or further notice is required.

61.     No previous application for the relief sought herein has been made to this or any other Court.

22484.3 21081437v2

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests entry of the Interim and Final Orders

annexed hereto as Exhibit "A" and Exhibit "B" granting the relief requested herein, together with

such other and further relief as the Court deems just and proper.

Dated: Albany, New York
       October 10, 2024

CULLEN AND DYKMAN LLP

By: /s/    *Bonnie Pollack*
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
Kelly McNamee, Esq.
Kyriaki A. Christodoulou, Esq.
80 State Street, Suite 900
Albany, New York 12207
(516) 357-3700
mroseman@cullenllp.com
bpollack@cullenllp.com
kmnamee@cullenllp.com
kchristodoulou@cullenllp.com
*Proposed Counsel for The College of Saint Rose*

22484.3 21081437v2

**<u>Exhibit A</u>**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                                   :
In re:                                                             :    Chapter 11
                                                                   :
THE COLLEGE OF SAINT ROSE,                                         :    Case No. 24-_____(REL)
                                                                   :
                              Debtor.                              :
                                                                   :
------------------------------------------------------------------x

**INTERIM ORDER (A) AUTHORIZING THE DEBTOR TO
(I) CONTINUE ITS CASH MANAGEMENT SYSTEM, (II) MAINTAIN EXISTING
BANK ACCOUNTS, RESTRICTED ACCOUNTS AND CREDIT CARD,
AND (III) RECEIVE A WAIVER OF CERTAIN OPERATING
GUIDELINES RELATING TO BANK ACCOUNTS**

Upon the motion (the "Motion")[1] filed by The College of Saint Rose, the above-

captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed attorneys

Cullen and Dykman LLP, pursuant to sections 105, 345, 363 and 503 of chapter 11 of title 11 of

the United States Code, 11 U.S.C. §§ 101-1532, et seq. (the "Bankruptcy Code") and Rules 6003

and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

order (a) authorizing, but not directing, the Debtor to (i) continue using its cash management system, including making payment of sums due under a credit card, (ii) maintain and continue to use existing bank accounts, restricted accounts and credit card, and (iii) receive a waiver of certain operating guidelines relating to bank accounts; and the Court, having reviewed the Motion and having heard the statements of counsel in support of the interim relief requested in the Motion at the hearing before the Court (the "Hearing"), finds that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant to 28 U.S.C. § 157(b)(2), notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given, and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED on an interim basis to the extent set forth herein.

2.     The Debtor shall be and hereby are authorized to continue to manage the collection and disbursement of its revenues utilizing their Cash Management System in the ordinary course of business consistent with its prepetition practices.

3.     The Debtor shall be and hereby is authorized, but not directed, to maintain the Credit Card in the ordinary course of business and to make payment of the prepetition amounts due and owing under the Credit Card as of the Petition Date as further set forth in the Motion.

4.     Unless otherwise set forth herein, the requirements of the U.S. Trustee Guidelines that the Debtor (i) close all existing Bank Accounts and Restricted Accounts and open new debtor-in-possession accounts, (ii) establish specific bank accounts for operating, payroll and tax payments, and (iii) obtain and utilize new checks which bear the designation "Debtor-in-

Possession" and contain certain other information regarding the chapter 11 cases are hereby waived, and the Debtor is authorized to maintain its existing Bank Accounts, Restricted Accounts and Credit Card.

5.      The Debtor may disburse funds from the Bank Accounts by checks, drafts, wires, debits, ACH transfers or by any other means, including the withdrawal of funds by vendors from the Golden Knights Cash Account and the Self-Insurance Plan Account.

6.      The banks where the Debtor holds its Bank Accounts and Restricted Accounts shall be and hereby are authorized to (a) continue to administer the Bank Accounts and Restricted Accounts in the manner maintained prior to the Petition Date in the usual and ordinary course; and (b) receive, process and honor and pay any and all checks, drafts, wires or ACH transfers drawn on the Bank Accounts and Restricted Accounts by the holders or makers thereof, as the case may be, drawn or issued by the Debtor (i) after the Petition Date, or (ii) prior to the Petition Date, for the payment of any and all amounts approved by this Court.

7.      Subject to section 553 of the Bankruptcy Code and any orders of this Court approving post-petition secured financing, all banks that maintain the Bank Accounts and Restricted Accounts should be prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtor's use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in section 101(5) of the Bankruptcy Code) of any such bank or other entity against the Debtor that arose before the Petition Date, absent further order of the Court.

8.      The Debtor is authorized to maintain and continue using its current Business Forms, including its existing check stock, not having a debtor-in-possession designation;

3

provided that any new check stock printed for the Debtor shall reflect its status as a debtor-in-possession.

9.      The Debtor shall separately record the balances of each of the Bank Accounts and Restricted Accounts as of the Petition Date and track postpetition activity by documenting any postpetition transactions in the Debtor's books and records to the same extent maintained by the Debtor prior to the Petition Date.

10.      To the extent that the Debtor's deposit and investment practices do not conform with the approved investment practices identified in section 345(b) of the Bankruptcy Code, the Court hereby approves such practices and waives the requirements of section 345(b) of the Bankruptcy Code.

11.      Any and all payments authorized to be made pursuant to this Order shall be subject to and made only to the extent authorized under any interim or final orders governing the Debtor's use of cash collateral and terms of Debtor-in-Possession financing, including any Budget in connection therewith.

12.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this order shall be immediately effective upon its entry.

13.      The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

14.      The findings and rulings in this Order are without prejudice to the rights of any party in interest in connection with any further interim or final order on the Motion.

15.      A hearing shall be held to consider the relief granted herein on a final basis on _____ __, 2024 at __:00 _.m. before the Honorable Robert E. Littlefield, Jr., United States Bankruptcy Judge, in Courtroom 306 of the United States Bankruptcy Court for the

Northern District of New York, 445 Broadway, Suite 330, Albany, New York, 12207 (the "Final

Hearing") and, pending entry of an order following the conclusion of the Final Hearing, the relief

granted herein shall remain in effect on an interim basis.

**<u>Exhibit B</u>**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
 -----------------------------------------------------------------x
                                                          :
In re:                                                    :    Chapter 11
                                                          :
THE COLLEGE OF SAINT ROSE,                                :    Case No. 24-_____(REL)
                                                          :
                              Debtor.                     :
                                                          :
 -----------------------------------------------------------------x

**FINAL ORDER (A) AUTHORIZING THE DEBTOR TO
(I) CONTINUE ITS CASH MANAGEMENT SYSTEM, (II) MAINTAIN EXISTING
BANK ACCOUNTS, RESTRICTED ACCOUNTS
AND CREDIT CARD, AND (III) RECEIVE A WAIVER OF CERTAIN OPERATING
GUIDELINES RELATING TO BANK ACCOUNTS**

Upon the motion (the "Motion")[1] filed by The College of Saint Rose, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed attorneys Cullen and Dykman LLP, pursuant to sections 105, 345, 363 and 503 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, et seq. (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an

_____

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

order (a) authorizing, but not directing, the Debtor to (i) continue using its cash management system, including making payment of sums due under a credit card, (ii) maintain and continue to use existing bank accounts, restricted accounts and credit card, and (iii) receive a waiver of certain operating guidelines relating to bank accounts and restricted accounts; and the Court, having reviewed the Motion and having heard the statements of counsel in support of the final relief requested in the Motion at the hearing before the Court (the "Hearing"), finds that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant to 28 U.S.C. § 157(b)(2), notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given, and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis to the extent set forth herein.

2.      The Debtor shall be and hereby are authorized to continue to manage the collection and disbursement of its revenues utilizing their Cash Management System in the ordinary course of business consistent with its prepetition practices.

3.      The Debtor shall be and hereby is authorized, but not directed, to maintain the Credit Cards in the ordinary course of business and to make payment of the prepetition amounts due and owing under the Credit Card as of the Petition Date as further set forth in the Motion.

4.      Unless otherwise set forth herein, the requirements of the U.S. Trustee Guidelines that the Debtor (i) close all existing Bank Accounts and Restricted Accounts and open new debtor-in-possession accounts, (ii) establish specific bank accounts and restricted accounts for operating, payroll and tax payments, and (iii) obtain and utilize new checks which bear the

designation "Debtor-in-Possession" and contain certain other information regarding the chapter 11 cases are hereby waived, and the Debtor is authorized to maintain its existing Bank Accounts, Restricted Accounts and Credit Card.

5.      The Debtor may disburse funds from the Bank Accounts and Restricted Accounts by checks, drafts, wires, debits, ACH transfers or by any other means, including the withdrawal of funds by vendors from the Golden Knights Cash Account and the Self-Insurance Plan Account.

6.      The banks where the Debtor holds their Bank Accounts and Restricted Accounts shall be and hereby are authorized to (a) continue to administer the Bank Accounts and Restricted Accounts in the manner maintained prior to the Petition Date in the usual and ordinary course; and (b) receive, process and honor and pay any and all checks, drafts, wires or ACH transfers drawn on the Bank Accounts and Restricted Accounts by the holders or makers thereof, as the case may be, drawn or issued by the Debtor (i) after the Petition Date, or (ii) prior to the Petition Date, for the payment of any and all amounts approved by this Court.

7.      Subject to section 553 of the Bankruptcy Code and any orders of this Court approving post-petition secured financing, all banks that maintain the Bank Accounts and Restricted Accounts should be prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtor's use of any funds deposited in the Bank Accounts and Restricted Accounts on account of, or by reason of, any claim (as defined in section 101(5) of the Bankruptcy Code) of any such bank or other entity against the Debtor that arose before the Petition Date, absent further order of the Court.

8.      The Debtor is authorized to maintain and continue using its current Business Forms, including its existing check stock, not having a debtor-in-possession designation;

3

provided that any new check stock printed for the Debtor shall reflect its status as a debtor-in-possession.

9.      The Debtor shall separately record the balances of each of the Bank Accounts and Restricted Accounts as of the Petition Date and track postpetition activity by documenting any postpetition transactions in the Debtor's books and records to the same extent maintained by the Debtor prior to the Petition Date.

10.      To the extent that the Debtor's deposit and investment practices do not conform with the approved investment practices identified in section 345(b) of the Bankruptcy Code, the Court hereby approves such practices and waives the requirements of section 345(b) of the Bankruptcy Code until entry of a final order on the Motion.

11.      Any and all payments authorized to be made pursuant to this Order shall be subject to and made only to the extent authorized under any interim or final orders governing the Debtor's use of cash collateral and terms of Debtor-in-Possession financing, including any Budget in connection therewith.

12.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this order shall be immediately effective upon its entry.

13.      The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.