CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq. (admission pro hac vice pending)
Bonnie L. Pollack, Esq. (admission pro hac vice pending)
Kelly McNamee, Esq. (admission pro hac vice pending)
Kyriaki Christodoulou, Esq. (admission pro hac vice pending)
(516) 357-3700

*Proposed Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

```
 ----------------------------------------------------------------x
                                          :
In re:                                    :   Chapter 11
                                          :
THE COLLEGE OF SAINT ROSE,                :   Case No. 24-11131 (REL)
                                          :
              Debtor.                     ::
 ----------------------------------------------------------------x
```

### MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO CONTINUE TO MAINTAIN PREPETITION INSURANCE POLICIES, AND (II) GRANTING RELATED RELIEF

The College of Saint Rose, the above-captioned debtor and debtor-in-possession (the

"Debtor"), by and through its proposed attorneys Cullen and Dykman LLP, hereby submits this

motion (the "Motion") pursuant to sections 105 and 363 of title 11 of the United States Codes

(the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules of the Northern District of New

York (the "Local Rules") for entry of interim and final orders, substantially in the forms attached

hereto as **Exhibit A** and **Exhibit B**, (i) authorizing, but not directing, the Debtor to continue to

maintain its prepetition insurance policies and revise, extend, renew, replace or supplement such

insurance policies in the ordinary course of business consistent with prepetition practices, and (ii)

granting related relief. In support of the Motion, the Debtor respectfully represents as follows:

## INTRODUCTION

1.      On October 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2.      The Debtor remains in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Northern District of New York in this chapter 11 case.

4.      Simultaneously with the filing of its petition, the Debtor filed the Declaration of Marcia J. White pursuant to Local Bankruptcy Rule 2015-2 (the "First Day Declaration").  A detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the First Day Declaration, incorporated herein by reference.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief sought herein are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

7.      The College was established by provisional charter granted by the New York State Board of Regents on June 24, 1920 to issue bachelor's degrees, which charter was made absolute on March 19, 1931 and was amended in 1949 to authorize the offering of master's degrees. It was again amended in 2019 to authorize the offering of an associate's

degree as part of its jointly registered BSN program with St. Peter's Health Partners Schools of Nursing. The College is located in Albany, New York and operates out of 72 buildings on 92 parcels of real estate (the "Real Property").

8.      For more than 10 years, as the College's structural deficit grew- caused by unachieved enrollment goals, a rising tuition discount rate, the financing structure of the College's bond debt, and a relatively low unrestricted endowment - the Board of Trustees (the "Board") and College leadership have been working to achieve financial sustainability. The College experienced a steady enrollment decline for more than a decade from 5,130 total enrollment in 2010 to a total of 2,566 in Fall 2023 due in part to a shrinking pool of high school graduates in New York and the northeast region overall and, in recent years, the prolonged negative impact of the COVID-19 pandemic.

9.      The College implemented several deficit reduction and strategic plans since 2015, but ultimately the Board determined, based on the College's financial and enrollment projections, that it was in the best interests of the students and the College to cease academic instruction no later than June 30, 2024, and thereafter wind-down the operations and settle the affairs of the College. On November 30, 2023, the Board directed the implementation of a closure plan, which included the authorization to the College's leadership to develop a Teach-Out Plan that would provide all students with seamless pathways to complete their academic programs at Saint Rose or other institutions. Thus far, 720 students have taken advantage of the Teach-Out Plan by enrolling with teach-out partner institutions to continue their education. In addition, the College offered a summer session through June 21, 2024 that enabled another 460 students to graduate from the College.

10.     The filing of the College's chapter 11 case is a key part of the closure plan, and the College intends to provide for an orderly liquidation of its assets, including a sale of the Real Property, for the benefit of creditors while implementing the academic components of the Closure Plan. Thus, on the Petition Date, the College filed for chapter 11 protection.

11.     A full background of the events leading up to the filing of this case is set forth in the First Day Declaration of Marcia J. White filed on the Petition Date, and is incorporated herein by reference.

12.     Prior to the Petition Date, in the ordinary course of business, the Debtor maintained insurance policies providing coverage for, *inter alia*: property, general liability, workers compensation, automobile liability, umbrella, D&O, excess liability, professional liability, fiduciary liability, cyber liability, crime, and environmental liability. (collectively, the "Policies" or the "Insurance Policies")[1].  The Debtor obtains the Policies through its insurance broker, Arthur J. Gallagher & Co. (the "Insurance Broker").

13.     All of the Policies have a term of 6 months from July1, 2024 through December 31, 2024, with the exception of property insurance which has a one-year term that expires August 31, 2025; and the general liability, automobile, inland marine, cyber liability and storage tank liability coverages which have a one-year term which expires on June 30, 2025. The annual premium cost of the Policies in place as of the Petition Date is approximately $1,419,487.30, and have been or will be paid directly to the carriers. All policy premiums are paid upfront except General Liability, which is paid quarterly, and Automobile and Inland Marine, which are paid monthly. The Debtor is current on its premium payments for the current policies.

---

[1] A schedule of the current Policies in effect as of the Petition Date, the terms of coverage and premium amounts (exclusive of taxes and surcharges) is annexed hereto as **Exhibit C** and incorporated herein by reference.

14.     The Policies are essential to the preservation of the Debtor's operation and assets and, in many cases, such insurance coverage is required by various regulations, laws and contracts that govern the Debtor's business conduct. Moreover, the operating guidelines established by the Office of the United States Trustee for debtor-in-possession to supervise the administration of chapter 11 cases (the "U.S. Trustee Guidelines") require the Debtor to maintain insurance coverage throughout this chapter 11 case.

15.     The Debtor's ability to continue making payments under the Insurance Policies without any lapse when the Policies renew is essential to the continued operation of the Debtor's business in chapter 11. Even a temporary suspension of the Debtor's ability to pay the premium amounts due under the Policies would create a significant risk of the Debtor losing its insurance coverage.  The ability to maintain coverage during the pendency of this chapter 11 case is critical to the Debtor. Any payments made for the Debtor's insurance obligations will be in accordance with any Debtor-in-Possession financing and the Budget in connection herewith.

16.     Accordingly, the Debtor believes it is in the best interest of its estate to continue to honor its obligations under the current insurance contracts and continue its Policies in the ordinary course of business. Any other alternative would likely require considerable additional cash expenditures and would be detrimental to the Debtor's efforts to preserve its assets and maximize the value of its estate.

## **RELIEF REQUESTED**

17.     By this Motion, the Debtor seeks entry of an interim order, substantially in the form annexed hereto as **Exhibit A**, (a) authorizing, but not directing, the Debtor to continue to maintain its Policies and revise, extend, renew, replace or supplement such Policies in the ordinary course of business and consistent with prepetition practices, and (b) granting related

relief. The Debtor further seeks entry of a final order, in the form annexed hereto as **Exhibit B**, granting the requested relief.

### BASIS FOR RELIEF REQUESTED

I.      **Sections 105 and 363 of the Bankruptcy Code Authorize the Debtor to Continue the Policies and Honor the Obligations Related Thereto**

18.     The Debtor believes that the maintenance and continuation of its prepetition Policies constitutes "ordinary course of business" practice and, therefore, does not require Court approval. However, to the extent doing so would be viewed as a use of property outside the ordinary course of business, the Debtor submits that this Court has the authority to grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code.

19.     Section 363 of the Bankruptcy Code authorizes a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this provision, a court may authorize a debtor to pay certain prepetition claims if the Debtor "articulate[s] some business justification, other than the mere appeasement of major creditors." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Further, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the Debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175. *See also In re Upright*, 1 B.R. 694, 697 (Bankr. N.D.N.Y. 1979) (finding that "the legislative history with respect to Section 363(b) indicates that this subsection permits the trustee to use, sell, or lease property of the estate other than in the ordinary course of business provided that the trustee gives notice . . if there are no

6

objections." *See also In re Jon J. Peterson, Inc.*, 411 B.R. 131, 136 (Bankr. W.D.N.Y. 2009) ("Although the Bankruptcy Code does not recite a standard of justification for a sale outside the ordinary course . . . the debtor must demonstrate 'that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.'"

20.     The "necessity of payment" doctrine further supports the relief requested herein. This doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs*, 98 B.R. at 176; *see also In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987). This doctrine is consistent with the paramount goal of chapter 11 –"facilitating the continued operation and rehabilitation of the Debtor . . ." *In re Ionosphere Clubs*, 98 B.R. at 176.

21.     It is essential that the Debtor maintain the Policies and honor its obligations thereunder upon the terms agreed to prior to the Petition Date. Failure to do so could have a devastating impact on the Debtor's ability to operate during the bankruptcy and to successfully winddown its operations. The premium payments that will become due upon renewal are insignificant in relation to the potential disruption that would occur absent payment of the Debtor's insurance obligations. The payment of these amounts is necessary here, and the Debtor has articulated a sound business justification for the payment of these obligations.  Accordingly, the Debtor requests authority to pay, in its discretion, any and all undisputed amounts due and owing with respect to the Policies and to otherwise continue its Policies in the same manner as it did prior to the Petition Date.

22.     Moreover, in addition to being required by the various regulations, laws and contracts that govern the Debtor's commercial activities, section 1112(b)(4)(C) of the

Bankruptcy Code also provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. *See* 11 U.S.C. § 1112(b)(4)(C). The U.S. Trustee Guidelines further require the Debtor to maintain appropriate insurance coverage for all estate property. Therefore, the Debtor submits that the use of estate funds to continue and maintain the Insurance Policies, and to pay the insurance obligations related thereto, in the ordinary course of business and consistent with past practice, is not only appropriate under the circumstances, but also authorized and required by the Bankruptcy Code.

Courts in this District and neighboring districts routinely grant the relief sought in this Motion. *See e.g., The Roman Catholic Diocese of Syracuse, New York* (Case No. 20-30663) (Bankr. N.D.N.Y., Aug. 10, 2020) [Doc. No. 76]; *In re The Diocese of Buffalo, N.Y.*, Case No. 20-10322 (CLB) (Bankr. W.D.N.Y. Apr. 21, 2020) [Docket No. 253]; *In re Diocese of Rochester, N.Y.*, Case No. 19-20905 (PRW) (Bankr. W.D.N.Y. Nov. 8, 2019) [Docket No. 199].

23. Accordingly, the Debtor believes that, for all of the foregoing reasons, it is essential that the Court approve payment of any amounts due or to become due under the Policies as set forth in this Motion.

## II. Immediate Relief is Necessary to Avoid Immediate and Irreparable Harm

24. As set forth above, the Debtor submits that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor. Accordingly, for all of the foregoing reasons, the Debtor further submits that Bankruptcy Rule 6003 has been satisfied and it is essential that the Court approve payment of the prepetition obligations described in this Motion.

25.    The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court others otherwise." As set forth above, the payments proposed herein are essential to prevent irreparable damage to the Debtor's operations and value. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

26.    Notice of this Motion has been given to (a) the United States Trustee for the Northern District of New York; (b) the Debtor's twenty (20) largest unsecured creditors; (c) the Debtor's insurance carriers; (d) the Debtor's Insurance Broker; (e) counsel to the trustee for the Pre-Petition Bondholders; (f) counsel to the proposed DIP Lender; and (g) any other party who requests to receive notices. The Debtor submits that, under the circumstances, no other or further notice is required.

27.    No previous application for the relief sought herein has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests entry of the annexed Order granting the

relief requested herein, together with such other and further relief as the Court deems just and

proper.

Dated: Albany, New York
       October 10, 2024

                             CULLEN AND DYKMAN LLP

                             By: /s/   *Bonnie Pollack*
                             Matthew G. Roseman, Esq.
                             Bonnie L. Pollack, Esq.
                             Kelly McNamee, Esq.
                             Kyriaki A. Christodoulou, Esq.
                             80 State Street, Suite 900
                             Albany, New York 12207
                             (516) 357-3700
                             mroseman@cullenllp.com
                             bpollack@cullenllp.com
                             kmnamee@cullenllp.com
                             kchristodoulou@cullenllp.com
                             *Proposed Counsel for The College of Saint Rose*

## EXHIBIT A

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

```
 -----------------------------------------------------------------x
                                              :
In re:                                        :   Chapter 11
                                              :
THE COLLEGE OF SAINT ROSE,                    :   Case No. 24-_____(REL)
                                              :
              Debtor.                         :
                                              :
 -----------------------------------------------------------------x
```

### INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO CONTINUE TO MAINTAIN PREPETITION INSURANCE POLICIES, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] filed by The College of Saint Rose, the above-captioned debtor and debtor-in-possession (the "Debtor") pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an interim order (i) authorizing, but not directing, the Debtor to continue to maintain its prepetition insurance policies and revise, extend, renew, replace or supplement such insurance policies in the ordinary

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

course of business consistent with prepetition practices, and (ii) granting related relief; the Court, having reviewed the Motion and having heard the statements of counsel in support of the interim relief requested in the Motion at the hearing before the Court (the "Hearing"), finds that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant to 28 U.S.C. § 157(b)(2), notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given, and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis to the extent set forth herein.

2.      The Debtor is authorized in its discretion to (a) continue to maintain and perform under the Polices, including without limitation the Policies identified on **Exhibit C** to the Motion, and (b) revise, extend, renew, supplement or replace such Policies, if necessary, in the ordinary course of business and consistent with past practice. Any such payments shall be in accordance with any Debtor-in-Possession financing and the Budget in connection therewith.

3.      Notwithstanding Bankruptcy Rules 6003 or 6004(h), the terms and conditions of this order shall be immediately effective upon its entry.

4.      The Debtor is authorized to take all actions it deems necessary or appropriate to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

5.      All banks shall be and hereby are authorized and directed to receive, process, honor and pay all checks drawn on the Debtor's accounts with the banks and fund transfers on account of the Debtor's prepetition obligations to its insurance carriers, whether presented before

or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

6. Any and all payments authorized to be made pursuant to this Interim Order shall be subject to and made only to the extent authorized under any interim or final orders governing the Debtor's use of cash collateral and terms of Debtor-in-Possession financing, including any Budget in connection therewith.

7. The findings and rulings in this Interim Order are without prejudice to the rights of any party in interest in connection with any further interim or final order on the Motion.

8. A hearing shall be held to consider the relief granted herein on a final basis on _____, 2024 at __:00 _.m. before the Honorable Robert E. Littlefield, Jr., United States Bankruptcy Judge, in Courtroom 306 of the United States Bankruptcy Court for the Northern District of New York, 445 Broadway, Suite 330, Albany, NY  12207 (the "Final Hearing") and, pending entry of an order following the conclusion of the Final Hearing, the relief granted herein shall remain in effect on an interim basis.

9. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

3

**<u>EXHIBIT B</u>**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                    :
In re:                                              :   Chapter 11
                                                    :
THE COLLEGE OF SAINT ROSE,                          :   Case No. 24-_____(REL)
                                                    :
                    Debtor.                         :
                                                    :
-----------------------------------------------------------------x

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO CONTINUE TO
MAINTAIN PREPETITION INSURANCE POLICIES, AND (II)
<u>GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>")[1] filed by The College of Saint Rose, the above-
captioned debtor and debtor-in-possession (the "<u>Debtor</u>") pursuant to sections 105 and 363 of

chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 6003 and

6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for entry of a final

order (i) authorizing, but not directing, the Debtor to continue to maintain its prepetition

insurance policies and revise, extend, renew, replace or supplement such insurance policies in the

_____

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

ordinary course of business consistent with prepetition practices, and (ii) granting related relief; the Court, having reviewed the Motion and having heard the statements of counsel in support of the relief requested in the Motion at the hearing before the Court (the "Hearing"), and having entered the *Interim Order (I) Authorizing the Debtor to (A) Continue to Maintain Prepetition Insurance Policies and (II) Granting Related Relief* (the "Interim Order") [Docket No. ____], finds that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant to 28 U.S.C. § 157(b)(2), notice of the Motion and the Interim Order were sufficient under the circumstances and that no further notice need be given, and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis.

2.      The Debtor is authorized in its discretion to (a) continue to maintain and perform under the Insurance Policies, including without limitation the Policies identified on **Exhibit C** to the Motion; and (b) revise, extend, renew, supplement or replace such Insurance Policies, if necessary, in the ordinary course of business and consistent with past practice. Any such payments shall be in accordance with any Debtor-in-Possession financing and the Budget in connection therewith.

3.      Notwithstanding Bankruptcy Rules 6003, 6004(h) or 7062, the terms and conditions of this order shall be immediately effective upon its entry.

4.      The Debtor is authorized to take all actions it deems necessary or appropriate to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

5.      All banks shall be and hereby are authorized and directed to receive, process, honor and pay all checks drawn on the Debtor's accounts with the banks and fund transfers on account of the Debtor's prepetition obligations to its insurance carriers, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

6.      Any and all payments authorized to be made pursuant to this Final Order shall be subject to and made only to the extent authorized under any interim or final orders governing the Debtor's use of cash collateral and terms of Debtor-in-Possession financing, including any Budget in connection therewith.

7.      The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

<u>**EXHIBIT C**</u>

**Policy and Carrier Schedule**

| <u>Carrier</u> | <u>Coverage</u> | <u>Policy No.</u> | <u>Premium</u> | <u>Term</u> |
|---|---|---|---|---|
| Twin City Fire Insurance Company | General Liability | 08 CES OF0AM9 | $40,487 (paid quarterly) | July 1, 2024-June 30, 2025 |
| Twin City Fire Insurance Company | Automobile | 08 UEN BC6117 | $31,877 (paid monthly) | July 1, 2024-June 30, 2025 |
| Hartford Fire Insurance Company (Hartford Financial Services Group) | Inland Marine | 08 MS BC6201 | $25,599 (paid monthly) | July 1, 2024-June 30, 2025 |
| See attached list of participating insurance companies | Property | See attached list of account numbers | $911,776.52 | September 1, 2024-August 31, 2025 |
| Indian Harbor Insurance Company (XL Group PLC) | Property-Standalone Terrorism | US00120519SP23A | $4,626.21 | July 1, 2024-December 31, 2024 |
| Indian Harbor Insurance Company (XL Group PLC) | Excess ELL/D&O | ELE954259-03 | $12,136.68 | July 1, 2024-December 31, 2024 |
| Great American Insurance Company (American Financial Group, Inc.) | Crime | SAA E600807 04 00 | $5,463 | July 1, 2024-December 31, 2024 |
| Great American Insurance Company (American Financial Group, Inc.) | Fiduciary Liability | FDP3120755 | $7,628 | July 1, 2024-December 31, 2024 |
| United Educators Insurance | Excess General Liability; Educators Legal Liability | T57-77F | $175,002 | July 1, 2024-December 31, 2024 |
| At Bay | Cyber Liability | ATB-6677-184-03 | $30,260 | July 1, 2024-June 30, 2025 |
| RSUI Indemnity Company (Allegheny Corporation) | Excess ELL/D&O | NHS706047 | $23,605 | July 1, 2024-December 31, 2024 |
| Travelers | Workers Compensation | UB-6X079554-24-14-G | $104,634 | January 1, 2024 – December 31, 2024 |
| Berkshire Hathaway | Side A DIC Directors & Officers | 47-EMC-324584-02 | $42,500 | July 1, 2024-December 31, 2024 |
| Berkley Insurance Company | Storage Tank Liability | FEI-EST-60016-01 | $3,893 | July 1, 2024 – June 30, 2025 |

1

Participating Insurance Coverage- Property Insurance

| **Carrier** | **Policy No.** |
| --- | --- |
| Aspen Specialty Insurance Company | PR0122A24 |
| Certain Underwriters at Lloyd's | B1230AP01102A24 |
| Certain Underwriters at Lloyd's | B1230QAP01102B24 |
| Westfield Specialty Insurance Company | PAR-437822H-00 |
| Arch Specialty Insurance Company | PHH100534200 |
| Bridgeway Insurance Company | 7EA7XP1004075-00 |
| Scottsdale Insurance Company & Convex Insurance UK | BXS0005497/CVX240388-00 |
| Kinsale Insurance Company | 0100320702-0 |
| Great Lakes Insurance SE | GLSE181618 |
| Southwest Marine & General Insurance Company | PE202400005323 |
| Convex Insurance UK Limited | CPR000507-082 |
| Landmark American Insurance Company | LHD945938 |
| | |
| AXA XL, A Division of AXA Greenwich Insurance Company (Boiler and Machinery) | TBD |

521839114v.2