CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq. (admission pro hac vice pending)
Bonnie L. Pollack, Esq. (admission pro hac vice pending)
Kyriaki Christodoulou, Esq. (admission pro hac vice pending)
Kelly McNamee, Esq. (admission pro hac vice pending)
(516) 357-3700

*Proposed Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                  :

In re:                            :   Chapter 11
                             :

THE COLLEGE OF SAINT ROSE,  :   Case No. 24-11131 (REL)
                             :

          Debtor.           :
                             :
-----------------------------------------------------------------x

## DEBTOR'S APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE FOR AUTHORITY TO EMPLOY FTI CONSULTING, INC. AS FINANCIAL ADVISORS

The College of Saint Rose, the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby submits this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014, 2016 and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules for the Northern District of New York (the "Local Rules"), authorizing the retention and employment of FTI Consulting, Inc. ("FTI") as financial advisors to the Debtor as of the Petition Date. The facts and circumstances supporting the Application are set forth herein and in the Declaration of Sean Harding (the "Harding Declaration"), annexed hereto as **Exhibit B**. In further support of this Application, the Debtor respectfully states as follows:

22484.3 21085226v2

## Introduction

1.      On October 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2.      The Debtor remains in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request for appointment of a trustee or examiner has been made in this chapter 11 case.

3.      No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Northern District of New York in this chapter 11 case.

4.      Simultaneously with the filing of its petition, the Debtor filed the Declaration of Marcia J. White pursuant to Local Bankruptcy Rule 2015-2 (the "First Day Declaration"). A detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the First Day Declaration, incorporated herein by reference.[1]

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief sought herein are sections 327, and 328 of the Bankruptcy Code, Bankruptcy Rules 2014, 2016 and 5002 and Local Rule 2014-1.

---

[1] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the First Day Declaration.

21085226

## **RELIEF REQUESTED**

7.      By this Application, the Debtor respectfully requests the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, authorizing the retention and employment of FTI as financial advisors to the Debtor.

8.      The employment of FTI is a sound exercise of the Debtor's business judgment. FTI is a nationally recognized turnaround, restructuring and advisory firm serving a wide spectrum of industries. FTI's seasoned professionals have notable track records of creating strong value through operational turnarounds and financial restructurings. FTI has deep expertise in overcoming liquidity challenges and creating value. As detailed herein, FTI has acquired significant knowledge of the Debtor and its business operations as a result of the extensive prepetition work performed on the Debtor's behalf, making FTI the obvious choice to provide the services detailed in the Engagement Letter (as defined below). As discussed above and in the Harding Declaration, FTI (i) does not hold or represent an interest adverse to the Debtor's estate and (ii) is a "disinterested person" as required by section 327(a) of the Bankruptcy Code. Thus, the employment of FTI is necessary and its services are appropriate in this chapter 11 case.

9.      In addition, the Debtor seeks approval of the Engagement Letter, including the fee structure set forth therein, pursuant to section 328(a) of the Bankruptcy Code which provides, in relevant part, that the Debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

10.      Sean Gumbs and Sean Harding will be the Senior Managing Directors of FTI primarily responsible for handling the Debtor's financial consulting needs. Together, they have over 50 years of professional experience.

3

21085226

### A.    FTI's Qualifications

11.    FTI provides services in areas ranging from corporate finance and interim management to economic consulting, forensic and litigation consulting, strategic communications, and technology. FTI's clients include many of the world's largest public companies, as well as a majority of the twenty-five largest banks and top one hundred law firms in the world. FTI's expertise includes liquidity and capital structure assessment, debt and equity restructuring advice and identification of reorganization alternatives. FTI has significant experience assisting distressed companies with day-to-day management activities, including development of pro forma financials and business plans, cash flow management, and implementation of liquidity-enhancing and cost-saving strategies.

12.    The Debtor is familiar with the professional standing and reputation of FTI. FTI has a wealth of experience in providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtor and creditors throughout the United States.

13.    The Debtor's board has authorized the Debtor's officers to retain and employ FTI to provide all assistance they deem necessary or proper to successfully resolve the Debtor's chapter 11 case and the Debtor has determined that the employment of FTI to serve as its financial advisor is necessary and proper.

14.    On June 1, 2022, FTI was engaged to provide financial advisory services to the Debtor. Accordingly, FTI has developed a great deal of institutional knowledge regarding the Debtor's operations, finances, and systems. FTI has taken an active role in spearheading the Debtor's efforts to prepare for its chapter 11 filings. FTI's experience and knowledge will be essential to the Debtor in its efforts in this case. Accordingly, the Debtor wishes to retain FTI to provide assistance during its chapter 11 case.

4

15.     FTI's services are necessary to enable the Debtor to maximize the value of its estates and reorganize successfully. Further, FTI is well qualified and able to represent the Debtor in a cost-effective, efficient, and timely manner.

**B. Scope of Employment**

16.     The Debtor seeks to employ FTI as financial advisor in this chapter 11 case. The Debtor has selected FTI because it has extensive experience in all aspects of financial restructuring, and because the Debtor believes that such firm is well qualified to represent it as a debtor and debtor-in-possession. FTI will provide such consulting and advisory services as FTI and the Debtor deem appropriate and feasible to advise the Debtor in the course of this chapter 11 case including but not limited to the following:

a. Assistance to the Debtor in the preparation of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

b. Assistance with discussions/negotiations with stakeholders, including the indenture trustee and bondholders under the 2021 City of Albany Capital Resource Corporation bonds issued on behalf of the Debtor;

c. Assistance to the Debtor and its real estate advisor to provide due diligence materials to aid in the sales process strategy and valuation;

d. Assistance to the Debtor with information and analyses required pursuant to the Debtor's Debtor-In-Possession ("DIP") financing including, but not limited to, preparation for hearings regarding the use of cash collateral and DIP financing;

e. Assistance with the identification and implementation of short-term cash management procedures;

f. Advisory assistance in connection with the development and implementation of critical employee benefit programs;

g. Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the assumption or rejection of each;

21085226

h. Assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

i. Attendance at meetings and assistance in discussions with potential investors, banks and other lenders, any official committee(s) appointed in this chapter 11 case, the Office of the U.S. Trustee, other parties in interest, and each of the foregoing's respective professionals, as requested;

j. Analysis of creditor claims by type, entity and individual claim, including assistance with development of databases, as necessary, to track such claims;

k. Assistance in the preparation of information and analysis necessary for the confirmation of a plan in this chapter 11 case;

l. Assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

m. Assistance with communications with bondholders to include preparation of analyses and presentations in furtherance of any potential negotiations; and

n. Render such other general business consulting or such other assistance as Debtor's management or counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this proceeding.

## C. FTI's Disinterestedness

17.     To the best of the Debtor's knowledge, FTI neither represents nor holds any interest adverse to or conflicting with the interests of the Debtor's estate or the creditors of the Debtor's estate or the Debtor with respect to the matters upon which FTI is to be employed.

18.     To the best of the Debtor's knowledge information, and belief, except as set forth in the Harding Declaration, FTI (a) has no connection with the Debtor, its creditors or other parties of interest or its respective attorneys or accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any United States district judge or bankruptcy judge in this district in any matter related to the Debtor's estate; and (b) does not represent or

6

serve any materially adverse interests to the Debtor, as debtor and debtor-in-possession or otherwise, or to the Debtor's estate, regarding the matters upon which it is to be engaged. FTI should be employed under a general retainer because of the variety and complexity of the services that will be required during this proceeding. FTI received a retainer of $100,000 from the Debtor, which will not be segregated by FTI in a separate account and will be held until the end of this case and applied to FTI's fees and expenses approved by the Court on a final basis. FTI is not owed any money for prepetition services to the Debtor. The Debtor believes that the employment of FTI as financial advisors is in the best interests of its estate and that FTI is a "disinterested person" within the meaning of sections 101(14) and 327(a) of the Bankruptcy Code as such term is understood by the Debtor.

19.    FTI has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with this case.

20.    Subject to the Court's approval, the Debtor has agreed to compensate FTI on an hourly-fee basis, plus reimbursement of actual and necessary expenses incurred by FTI. Actual and necessary expenses would include any reasonable legal fees incurred by FTI related to FTI's retention in this case, subject to Court approval. FTI understands that interim and final fee awards are subject to approval by this Court.

21.    The customary hourly rates, subject to periodic adjustments, charged by FTI professionals anticipated to be assigned to this case are as follows:

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $1,095 – 1,495 |
| Directors / Senior Directors / Managing Directors | 825 – 1,110 |
| Consultants/Senior Consultants | 450 – 790 |
| Administrative / Paraprofessionals | 185 – 370 |

22.    The Debtor and FTI have agreed that services to be rendered plus reimbursement of expenses incurred in connection therewith shall be subject to proper written application(s) by

7

21085226

FTI filed with the Court pursuant to sections 330 and 331 of the Bankruptcy Code and in accordance with any compensation order entered by the Court.

23. FTI intends to apply to the Court for allowances of compensation and reimbursement for all expenses, including administrative costs, reasonably incurred in the performance of services (*e.g.*, telephone conference call charges, faxes, overnight delivery charges, mileage, etc.) at the actual cost to FTI for charges by third-party vendors without markup.

24. FTI will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in this chapter 11 case. In the event FTI needs to retain counsel to represent it in connection with this case and seeks reimbursement for attorneys' fees during the term of the Debtor's chapter 11 case, FTI will include the applicable invoices and supporting time records from such attorneys (in summary form and redacted for privilege and work product). Such attorneys do not need to have been retained under section 327 of the Bankruptcy Code.

25. The Debtor believes that FTI's fee structure is fair and reasonable in light of the type of services being provided and compares favorably with the fee structures generally offered by firms of similar stature to FTI for comparable engagements. In addition, given the numerous issues FTI has addressed prior to the Petition Date and may need to address during this chapter 11 case, FTI's commitment to the variable level of time and effort necessary to address all such related issues as they arise, and the market prices for FTI's services for engagements of this nature in an out-of-court context, the Debtor believes that the FTI fee arrangement is fair and reasonable.

26. The Debtor's pre-petition engagement letter with FTI has been attached hereto as **Exhibit D** (the "Engagement Letter"). During the pendency of the Debtor's chapter 11 case until

8

the earlier of (i) the effective date of a chapter 11 plan approved by the Court or (ii) the entry of

an order closing this chapter 11 case, the Engagement Letter's indemnification provisions are

subject to the following:

1. FTI shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

2. Notwithstanding anything to the contrary in the Engagement Letter, the Debtor shall have no obligation to indemnify FTI, or provide contribution or reimbursement to FTI, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from FTI's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of FTI's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law, or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified; and

3. If, before the earlier of (i) the effective date of a chapter 11 plan in this chapter 11 case or (ii) the entry of an order closing this chapter 11 case, FTI believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, FTI must file an application therefor in this Court, and the Debtor may not pay any such amounts to FTI before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify FTI. All parties in interest shall retain the right to object to any demand by FTI for indemnification, contribution, or reimbursement.

**D. Dispute Resolution Provisions**

27.    The Debtor and FTI have agreed, subject to the Court's approval of this

Application, that: (a) any controversy or claim with respect to, in connection with, arising out of,

or in any way related to this Application or the services provided by FTI to the Debtor as

outlined in this Application, including any matter involving a successor in interest or agent of the

9

Debtor or of FTI, shall be brought in this Court or the United States District Court for the Northern District of New York (the "District Court"), if the reference is withdrawn; (b) FTI and the Debtor and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions or lawsuits; (c) FTI and the Debtor, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court or the District Court, as applicable, does not have or retain jurisdiction over the foregoing claims and controversies, FTI and the Debtor, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in **Exhibit C** to this Application; and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction. By this Application, the Debtor seeks approval of this agreement by the Court. Further, FTI has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention, or otherwise to the jurisdiction and venue of this Court or the District Court to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

### E. No Duplication of Services

28.     The services that FTI will provide to the Debtor will be appropriately directed by the Debtor so as to avoid duplication of efforts among the other professionals retained in this chapter 11 case and performed in accordance with applicable standards of the profession. FTI will work collaboratively with the Debtor's management and other professionals to avoid duplication of services. The Debtor believes that the services to be provided by FTI will complement and will not be duplicative of any services of the Debtor's other professionals.

10

21085226

**F. No Prior Request**

29.     No prior Application for the relief requested herein has been made to this or any

other Court.

**G. Notice**

30.     No trustee or examiner has been appointed in the Debtor's case. A copy of this

Application has been provided to the United States Trustee pursuant to Bankruptcy Rule 2014(a).

31.     No previous application for the relief sought herein has been made to this or any

other Court.

WHEREFORE, the Debtor respectfully requests that it be authorized to employ and retain the

firm of FTI Consulting, Inc. as financial advisors in this chapter 11 case as of the Petition Date,

and that it have such other and further relief as to this Court may seem just and proper.

Dated: Albany, New York
      October 10, 2024

CULLEN AND DYKMAN LLP

By: /s/ *Bonnie Pollack*
    Matthew G. Roseman, Esq.
    Bonnie L. Pollack, Esq.
    Kyriaki Christodoulou, Esq.
    Kelly McNamee Esq.
    80 State Street, Suite 900
    Albany, New York 12207
    (516) 357-3700

    *Proposed Attorneys for The College*
    *of Saint Rose*

21085226

# EXHIBIT A

## PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                 :

In re:                             :   Chapter 11

                                 :

THE COLLEGE OF SAINT ROSE,    :   Case No. 24-11131 (REL)

                                 :

          Debtor.              :

                                 :

-------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT OF FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO THE DEBTOR

Upon the application dated October 10, 2024 (the "Application")[2] of The College of Saint Rose, debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), for an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") authorizing and approving the employment of FTI Consulting, Inc. ("FTI") as financial advisors to the Debtor as of the Petition Date, as more fully set forth in the Application; and upon the declaration of Sean Harding sworn to on October 10, 2024 (the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

"Harding Declaration"); and the Court being satisfied, based on the representations made in the Application and in the Harding Declaration that FTI represents or holds no interest adverse to the Debtor or to its estate as to the matters upon which it is to be engaged and is disinterested under section 101(14) of the Bankruptcy Code, and that the employment of FTI is necessary and in the best interests of the Debtor, its estate, and its creditors; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided; and it appearing that no other or further notice need be provided; and the Court having reviewed the Application and the statements in support of the relief requested therein; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; IT IS HEREBY ORDERED THAT:

1.    The Application is granted as set forth herein.

2.    Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtor, as debtor in possession, is authorized to employ FTI as financial advisors as of the Petition Date, pursuant to the terms set forth in the Application, to perform the services described in the Application.

3.    FTI shall be compensated and reimbursed in accordance with the terms of the Application, subject to the approval of this Court after proper application therefor under 11 U.S.C. §§ 330 and 331 and in accordance with any Court order establishing procedures for monthly, interim or period compensation.

4.      The indemnification provisions set forth in the Engagement Letter are subject to the following during the pendency of the Debtor's chapter 11 case until the earlier of (i) the effective date of a chapter 11 plan approved by the Court or (ii) the entry of an order closing this chapter 11 case:

a.  FTI shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

b.  Notwithstanding anything to the contrary in the Engagement Letter, the Debtor shall have no obligation to indemnify FTI, or provide contribution or reimbursement to FTI, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from FTI's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of FTI's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law, or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified; and

c.  If, before the earlier of (i) the effective date of a chapter 11 plan in this chapter 11 case or (ii) the entry of an order closing this chapter 11 case, FTI believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's

indemnification, contribution, or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, FTI must file an application therefor in this Court, and the Debtor may not pay any such amounts to FTI before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify FTI. All parties in interest shall retain the right to object to any demand by FTI for indemnification, contribution, or reimbursement.

5.      Prior to applying any increases in its hourly rates beyond the rates set forth in the Application, FTI shall provide ten days' notice of any such increases to the Debtor, the United States Trustee, and any statutory committee and will file such notice with the Court. FTI shall file a Supplemental Declaration with the Court that explains the basis for the rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and states whether the Debtor has received notice of, and approved, the proposed rate increase. The United States Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code.

6.      To the extent that FTI uses the services of independent or third-party contractors or subcontractors (the "Contractors") in this chapter 11 case and FTI seeks to pass through the fees and costs of the Contractors, FTI shall (i) pass through the fees of such Contractors at the same rate that FTI pays the Contractors and (ii) seek reimbursement for actual costs of the Contractors only. In addition, FTI shall ensure that the Contractors perform the conflicts checks

and file such disclosures as required by the Bankruptcy Code and Bankruptcy Rules.

7. FTI shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals.

8. If there is any inconsistency between the terms of the Application, the Harding Declaration, and this Order, this Order shall govern.

9. This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.

No objection:


_____
Office of the United States Trustee

## <u>EXHIBIT B</u>

## HARDING DECLARATION

CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq. (admission pro hac vice pending)
Bonnie L. Pollack, Esq. (admission pro hac vice pending)
Kyriaki Christodoulou, Esq. (admission pro hac vice pending)
Kelly McNamee, Esq. (admission pro hac vice pending)
(516) 357-3700

*Proposed Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                              : 
In re:                       :   Chapter 11
                            : 
THE COLLEGE OF SAINT ROSE,     :   Case No. 24-11131 (REL)
                            : 
            Debtor.             : 
                            : 
------------------------------------------------------------x

## DECLARATION IN SUPPORT OF THE DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISORS FOR THE DEBTOR

Sean Harding, pursuant to 28 U.S.C. § 1746, declares:

1.     I am a Senior Managing Director with FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees "FTI"), a financial advisory services firm with numerous offices throughout the country. I submit this Declaration on behalf of FTI (the "Declaration") in support of the application (the "Application") of The College of Saint Rose, the debtor and debtor-in-possession in the above-captioned chapter 11 case, for an order authorizing the employment and retention of FTI as financial advisors under

the terms and conditions set forth in the Application. Except as otherwise noted[3], I have personal knowledge of the matters set forth herein.

## Disinterestedness and Eligibility

2.    In connection with the preparation of this Declaration, FTI conducted a review of its contacts with the Debtor, its affiliates and certain entities holding large claims against or interests in the Debtor that were made reasonably known to FTI. A listing of the parties reviewed is reflected on Exhibit 1 to this Declaration. FTI's review, completed under my supervision, consisted of a query of the Exhibit 1 parties within an internal computer database containing names of individuals and entities that are present or recent former clients of FTI. A summary of such relationships that FTI identified during this process is set forth on Exhibit 2 to this Declaration.

3.    Based on the results of its review, FTI does not have a relationship with any of the parties on Exhibit 1 in matters related to these proceedings. FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtor's case for the various entities shown on Exhibit 2. FTI's assistance to these parties has been related to providing various financial restructuring, litigation support and/or engineering and scientific investigation consulting services. To the best of my knowledge, no services have been provided to these parties in interest which involve their rights in the Debtor's case, nor does FTI's involvement in this case compromise its ability to continue such consulting services.

4.    Further, as part of its diverse practice, FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys,

---

[3]    Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

3

accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtor's chapter 11 case. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in this proceedings. In addition, FTI has in the past, may currently and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Debtor and this case. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtor in matters upon which FTI is to be employed, and none are in connection with this case.

5.      FTI does not believe it is a "Creditor" with respect to fees and expenses of the Debtor within the meaning of Section 101(10) of the Bankruptcy Code. Further, neither I nor any other member of the FTI engagement team serving the Debtor, to the best of my knowledge, is a holder of any outstanding debt instruments.

6.      FTI has not reviewed the relationship that the members of the FTI engagement team may have against a comprehensive list of employees within the U.S. Trustee's office in this District, but will do so upon being provided with a list of such persons by the office of the U.S. Trustee.

7.      As such, to the best of my knowledge, FTI is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that FTI:

(a)      is not a creditor, equity security holder or insider of the Debtor;

(b)      is not and was not an investment banker for any outstanding security of the Debtor;

4

(c)     has not been, within three years before the date of the filing of the
        Debtor's chapter 11 petition, (i) an investment banker for a security of the
        Debtor or (ii) an attorney for such an investment banker in connection
        with the offer, sale, or issuance of a security of the Debtor; and

(d)     was not, within two years before the date of filing of the Debtor's chapter
        11 petition, a director, officer, or employee of the Debtor or of any
        investment banker as specified in subparagraph (b) or (c) of this
        paragraph.

8.      In addition, to the best of my knowledge and based upon the results of the
relationship search described above and disclosed herein, FTI neither holds nor represents an
interest adverse to the Debtor within the meaning of Section 327(a) of the Bankruptcy Code. It is
FTI's policy and intent to update and expand its ongoing relationship search for additional
parties in interest in an expedient manner. If any new material relevant facts or relationships are
discovered or arise, FTI will promptly file a Bankruptcy Rule 2014(a) Supplemental Declaration.

**Professional Compensation**

9.      Subject to Court approval and in accordance with the applicable provisions of title
11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy
Procedure, applicable U.S. Trustee guidelines and the local rules of this District, FTI will seek
payment for compensation on an hourly basis, plus reimbursement of actual and necessary
expenses incurred by FTI. FTI's customary hourly rates as charged in bankruptcy and non-
bankruptcy matters of this type by the professionals assigned to this engagement are outlined in
the Application for the employment of FTI. These hourly rates are adjusted annually.

10.     As of the date hereof, FTI has received a pre-petition retainer of $100,000, a
portion of which was applied to pre-petition services rendered to the Debtor. FTI will apply the
balance of the retainer to post-petition fees and expenses pursuant to further Order of the Court.

5

As of the Petition Date, the Debtor does not owe FTI and amounts for services rendered before the Petition Date.

11.    To the best of my knowledge, (a) no commitments have been made or received by FTI with respect to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code and (b) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with these chapter 11 cases.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated this 10th day of October 2024.

*s/ Sean Harding*
Sean Harding

## EXHIBIT 1

### Listing of Parties-in-Interest Reviewed for Current Relationships

Adirondack Combustion Technologies
Albany Fire Extinguisher
Albany Fire Protection, Inc.
Cap Financial Partners, LLC dba Captrust Financial Advisors
Center for Integrated Teacher Education, Inc.
Century Line (Lumen)
City of Albany
County Waste and Recycling
DDCues LLC
Eastern Heating and Cooling Inc.
Envisions LLC
Ferilli
Fire, Security & sound Systems, Inc.
H.T. Lyons
Heartland
IBM
Integrated Security and Communications
LVW Advisors
Mark's Organic Pest Control
MERCOMP
Michael Sutter Company
MVP Select Care Inc.
National Student Clearinghouse
Otis Elevator
RAVE Mobile Safety
SmartCatalog
Tab Service Company
TIAA
Touchnet Information Systems
Tri County Refrigeration
Usherwood
Vertical Transportation Consulting LLC
Zoom Video Communications Inc.
Barnes and Noble
Crown Castle
EAB
Elsevier
First Light
Sodexo Operatings LLC
Watermark
Berkley Insurance Company
Berkshire Hathaway
Evanston Insurance Company
Great American Insurance Group
Hartford Fire Insurance Co.
Indian Harbor Insurance Company
MEMIC Indemnity Co.
Princeton Excess & Surplus Lines Inc. Co.
RSUI Indemnity Company
Trisura Specialty Insurance Company
Twin City Fire Insurance Co.

**United Educators Insurance**
**Blackrock Advisors, LLC**
**Canon Financial Services Inc.**
**City of Albany Capital Resource Corporation**
**Invesco Advisers, Inc.**
**Manufacturers and Traders Trust Company, as Trustee**
**Summitbridge National Investments VIII LLC**
**Albany Water Board**
**Bullrock**
**CGD Provider**
**First Light Fiber/Tech Valley Communication**
**Green Street Power Partners**
**Hope Solar Farm LLC**
**National Grid**
**NRGB Direct Energy**
**Salmon River Solar LLC**
**Saratoga Solar II, LLC**
**Spectrum**
**Sunvestment Energy Group**
**Verizon**
**Washington Avenue Solar**

## EXHIBIT 2

### Parties-in-Interest Noted for Court Disclosure

**Relationships in Matters Related to These Proceedings**

**None**

**Relationships in Unrelated Matters**

**Century Line (Lumen)**
**County Waste and Recycling**
**H.T. Lyons**
**IBM**
**Otis Elevator**
**TIAA**
**Zoom Video Communications Inc.**
**Crown Castle**
**Berkley Insurance Company**
**Berkshire Hathaway**
**Evanston Insurance Company**
**Great American Insurance Group**
**Hartford Fire Insurance Co.**
**Indian Harbor Insurance Company**
**RSUI Indemnity Company**
**Twin City Fire Insurance Co.**
**Blackrock Advisors, LLC**
**Canon Financial Services Inc.**
**Invesco Advisers, Inc.**
**Manufacturers and Traders Trust Company, as Trustee**
**National Grid**
**Spectrum**
**Verizon**

## **EXHIBIT C**

## **DISPUTE RESOLUTION PROCEDURES**

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in the Application. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

**Mediation**

A dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator will be designated by the American Arbitration Association ("AAA") or JAMS/Endispute at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

**Arbitration**

If a dispute has not been resolved within ninety (90) days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration and judgment on the award rendered by the arbitration may be entered in any Court having jurisdiction thereof. The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA ("AAA Rules").

## EXHIBIT D

## ENGAGEMENT LETTER



Sean M. Harding
FTI Consulting, Inc.
1201 W. Peachtree St.
Atlanta, GA 30309
404.460.6258
Sean.harding@FTIConsulting.com

<u>PRIVATE & CONFIDENTIAL</u>

September 5, 2024

Mr. Jeffrey Stone
Chairman
The College of Saint Rose
432 Western Ave.
Albany, NY 12203

Re: <u>The College of Saint Rose</u>

Dear Mr. Stone:

1. **Introduction**

   This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, The College of Saint Rose (the "Client"), to provide certain financial advisory and consulting services (the "Services") set out below. This letter of engagement (the "Engagement Letter") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided (the provision of such Services, the "Engagement"). This letter modifies the Engagement Letter dated June 1, 2022, as modified on March 4, 2024.

2. **Scope of Services**

   The Services, to be performed at your direction, are expected to include the following:

   - Assistance to the Debtors in the preparation of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

   - Assistance to the Debtors with information and analyses required pursuant to the Debtors' Debtor-In-Possession ("DIP") financing including, but not limited to, preparation for hearings regarding the use of cash collateral and DIP financing;

   - Assistance with the identification and implementation of short-term cash management procedures;

   - Advisory assistance in connection with the development and implementation of employee benefit programs as may be necessary;

   - Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the assumption or rejection of each;

   - Assistance regarding the valuation of the present level of operations and

Mr. Jeffrey Stone
September 5, 2024

identification of areas of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

- Assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

- Attendance at meetings and assistance in discussions with potential investors, banks and other lenders, any official committee(s) appointed in these chapter 11 cases, the Office of the U.S. Trustee, other parties in interest, and each of the foregoing's respective professionals, as requested;

- Analysis of creditor claims by type, entity and individual claim, including assistance with development of databases, as necessary, to track such claims;

- Assistance in the preparation of information and analysis necessary for the confirmation of a plan in these chapter 11 cases;

- Assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers; and

- Render such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this proceeding.

The Services may be performed by FTI or by any subsidiary or affiliate of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' or affiliates' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary, each affiliate, and to any such agents or independent contractors and their employees. For purposes of this Engagement Contract, the term "affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract, or otherwise.

The Services, as outlined above, are subject to change as mutually agreed between us in writing.

FTI is engaged by the Client to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Client, its management and board of directors. FTI and its employees will not make any management decisions for the Client and will not be responsible for communicating information concerning the Client to the public, the Client's shareholders, or others.

Mr. Jeffrey Stone
September 5, 2024

As part of the Services, FTI may be requested to assist the Client (and its legal or other advisors) in negotiating with the Client's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Client and its management, not FTI or its employees.

If cases under title 11 of the United States Code (the "Bankruptcy Code") are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

As usual, our Engagement is to represent the Client and not its individual directors, officers, employees or shareholders. We, however, anticipate that we may provide information or advice to directors, officers or employees in their corporate capacities over the course of the Engagement.

3.      **Fees**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

**United States**

|  | Per Hour (USD) | |
| --- | --- | --- |
| Senior Managing Directors | $1,095 – | 1,495 |
| Directors / Senior Directors / Managing Directors | 825 – | 1,110 |
| Consultants/Senior Consultants | 450 – | 790 |
| Administrative / Paraprofessionals | 185 – | 370 |

Hourly rates are generally revised periodically. To the extent this Engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable on International engagements. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the Engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this Engagement, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto. Client shall be responsible for all sales, use, and excise taxes, and any other similar taxes, duties, and charges of any kind imposed by any federal, state, or local governmental entity on any amounts payable by Client hereunder.

**Cash on Account**.

Mr. Jeffrey Stone
September 5, 2024

Client shall forward to FTI the amount of $100,000, which funds FTI will hold "on account" to be applied to FTI's professional fees, charges, and disbursements (including estimates of the foregoing) for the term of this Engagement Contract (the "Cash on Account"). To the extent the Cash on Account exceeds FTI's fees, charges and disbursements after the completion of this Engagement Contract, FTI will refund any unused portion. Client agrees to increase or supplement the Cash on Account from time to time during the term of this Engagement Contract in such amounts as FTI reasonably determines are sufficient to ensure that FTI is not a pre-petition creditor in the event Client files a petition for relief under the Bankruptcy Code.

FTI will provide periodic invoices (not less frequently than monthly) to Client for Services performed in the previous invoice period plus any incidental services and other amounts approved in writing. All expenses will be billed at cost without markup. In certain circumstances, an invoice may be for estimated fees, charges, and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of FTI's Services.

Upon transmittal of an invoice, FTI may immediately draw upon the Cash on Account (as replenished from time to time) in the amount of the invoice. **Client agrees that invoices are due upon receipt.** Client further agrees to wire the invoice amount to FTI promptly as replenishment of the Cash on Account (together with any supplemental amount to which FTI and the Client mutually agree), without prejudice to the Client's right to advise FTI of any differences Client may have regarding such invoice set forth in the below paragraph. FTI has the right, at any time, to apply any Cash on Account (as it may be supplemented from time to time) to any outstanding invoice (including amounts billed prior to the date hereof), subject to (and without prejudice to) the Client's opportunity to review FTI's invoices.

Client shall make any objections to the invoice in writing to FTI within fifteen (15) business days of receipt of the invoice. FTI shall have fifteen (15) business days of receipt of such an objection to send a (i) revised invoice, (ii) written response to the objection(s), or (iii) combination of (i) and (ii). Any reductions made to an invoice pursuant to this paragraph shall be credited to the Cash on Account and reflected on the next invoice sent by FTI. Notwithstanding anything to the contrary in this Engagement Contract, Client agrees that it will not reduce or delay any replenishments to the Cash on Account due to any objections Client may have to a particular invoice. If Client reduces or delays any replenishments to the Cash on Account, Client agrees that FTI may cease work immediately and without notice until it receives the full amount due. To the extent the parties are unable to consensually resolve a dispute over an invoice, such disputes shall be resolved in accordance with the applicable dispute resolution provisions of this Engagement Contract.

**Additional Payment Terms**

If any of the Client's entities becomes a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as Cash on Account to be applied to our final invoice in any case under the Bankruptcy Code.

Mr. Jeffrey Stone
September 5, 2024

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Client agrees to file a motion in the bankruptcy court seeking the establishment of procedures for the payment of interim (monthly) fees and expenses during the case. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our Engagement.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the bankruptcy court. The Client understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Client shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under Bankruptcy Code section 503(b)(1). Bankruptcy Code section 1129(a)(9)(A) provides that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Cash on Account (as may be supplemented from time to time) shall be held by us and applied against the final fee application filed and approved by the bankruptcy court.

If a dispute develops about our fees, the Client may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

4.    **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this Engagement Letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, pre-engagement confidentiality agreements, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

5.    **Conflicts of Interest**

FTI has undertaken a limited review of its records to determine FTI's professional relationships with the Client and this Engagement. From the results of such review, we were not made aware of any conflicts of interest or relationships that we believe would preclude us from performing the Services.

However, as you know, FTI is a large consulting firm with numerous offices globally. FTI is regularly engaged by new clients, which may include one or more parties with interests potentially adverse to the Client. The FTI professionals providing Services hereunder will not accept an engagement that directly conflicts with this Engagement without Client's prior written consent.

6.    **Acknowledgement and Acceptance**

-5-

Mr. Jeffrey Stone
September 5, 2024

Please acknowledge your acceptance of the terms of this Engagement Contract by signing the confirmation below and returning a copy to us at the above address.

If you have any questions regarding this Engagement Letter or the attached Standard Terms and Conditions, please do not hesitate to contact Sean Harding at 404-460-6258 or Sean Gumbs at 212-499-3633.

Yours faithfully,


FTI CONSULTING, INC.


By: _____
Sean M. Harding
Senior Managing Director

Attachment – As stated

Mr. Jeffrey Stone
September 5, 2024
Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms of this Engagement Contract, which includes the attached Standard Terms and Conditions.**

The College of Saint Rose

By

Mr. Jeffrey Stone
Chairman

Date:   10/1/24

## FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached Engagement Letter with The College of Saint Rose dated September 5, 2024.   The Engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services to the exclusion of any other express or implied terms, including any conditions, warranties and representations, and shall supersede all previous proposals, pre-engagement confidentiality agreements, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.    Capitalized terms used but not defined shall have the meanings assigned in the Engagement Letter to which these Standard Terms and Conditions are attached.

**1.     Reports and Advice**

1.1     **Use and purpose of advice and reports** – Any advice given, or report issued by FTI is provided solely for Client's use and benefit and only in connection with the purpose for which the Services are rendered. Unless required by law, Client shall not provide any advice given or report issued by FTI to any third party, or refer to FTI or the Services, without FTI's prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. Notwithstanding the foregoing, the Client may disclose any advice given or report issued by FTI to its affiliates and its and their respective directors, officers, employees, legal counsel, accountants and auditors who have a need to know, and who are bound by written agreements and/or rules of professional conduct/ethics to maintain confidentiality.  In no event, regardless of whether consent has been provided, shall FTI assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.     Information and Assistance**

2.1     **Provision of information and assistance** – FTI's performance of the Services is dependent upon Client providing FTI with such information and assistance as FTI may reasonably require from time to time.  FTI shall rely on such information without independent verification.  If FTI's performance of its obligations under this Engagement Contract is prevented or delayed by any act or omission of Client or its agents, subcontractors, consultants, or employees, FTI shall not be deemed in breach of its obligations under this Engagement Contract or otherwise liable for any damages sustained or incurred by Client, in each case, to the extent arising directly or indirectly from such prevention or delay.

2.2     **Punctual and accurate information** – Client and FTI shall use reasonable skill, care and attention to ensure that all information the other party may reasonably require is provided on a timely basis and is accurate, complete and relevant for the purpose for which it is required. Client and FTI shall also notify the other party if it subsequently learns that any information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3 **No assurance on financial data** – While FTI's work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Client management will be responsible for any and all financial information they provide to FTI during the course of this Engagement, and FTI will not examine, compile, or verify any such financial information. Moreover, the circumstances of the Engagement may cause FTI's advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, FTI will not express any opinion or other form of assurance on financial statements of the Client or any other person.

2.4 **Prospective financial information** - In the event the Services involve prospective financial information, FTI's work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and FTI will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. FTI will take no responsibility for the achievability of results or events projected or anticipated by Client's management.

3. **Additional Services**

3.1 **Responsibility for other parties** – Client shall be solely responsible for the work and fees of any other party engaged by Client to provide services in connection with the Engagement, regardless of whether such party was introduced to Client by FTI. Except as provided in this Engagement Contract, FTI shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, FTI acknowledges that it is not authorized under this Engagement Contract to engage any third party to provide services or advice to Client, other than FTI's affiliates, agents or independent contractors engaged to provide Services, without Client's written authorization.

4. **Confidentiality**

4.1 **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall not include information that:

    4.1.1 is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

    4.1.2 is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3   is or has been independently developed by the recipient.

4.2   **Disclosing confidential information** – Notwithstanding Clauses 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable, not less than 2 business days' notice in writing is first given to the other party.

4.3   **Citation of Engagement** – Without prejudice to Clauses 4.1 and 4.2 above, the Client hereby agrees that FTI shall be entitled to cite the performance of the Services hereunder to our clients and prospective clients as an indication of our experience and use the Client name and logo in connection with such disclosure, unless FTI and the Client specifically agree otherwise in writing.

4.4   **Internal quality reviews** – Notwithstanding the above, FTI may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5   **Maintenance of workpapers** – Notwithstanding the above, FTI may keep one archival set of its working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with FTI's internal policies.

4.6   **Data Protection** - In this paragraph, the terms "controller", "personal data", "processed", "processor", "processing" shall have the meaning given to them, or any equivalent terms, in applicable data protection laws. FTI and the Client will each act as separate and individual controllers in relation to any personal data processed by the Client or FTI in connection with this Engagement Contract. FTI and the Client will each comply with its own respective obligations under applicable data protection laws in relation to their processing of personal data under this Engagement Contract.  Should the Services involve crossborder transfers of personal data, FTI and the Client hereby enter into Module 1 of the EU Standard Contractual Clauses published by the European Commission and the UK Addendum to the EU Standard Contractual Clauses published by the ICO (where applicable) (together the "**Standard Contractual Clauses**"), with either the Client or FTI acting as data exporter and either the Client or FTI as data importer, as appropriate), in respect of any international transfer of personal data which would be prohibited by applicable data protection law in the absence of the Standard Contractual Clauses, in the form and manner set out at https://ftitechnology.com/trust.cidta. The Client acknowledges that FTI may appoint processors to process personal data on its behalf in connection with the Services.  Such processors may be located overseas.  Where required by applicable data protection law, FTI will enter into appropriate safeguards with these processors.  Client and FTI agree that agree that no "sale" (as that term is defined under applicable data protection laws) of personal data is intended as part of the Engagement Contract, and both parties will take steps to ensure no sale occurs. The parties agree that any provision of personal data by one party to another under the Engagement Contract is necessary to perform a business purpose and is not part of, and explicitly excluded from, the exchange of consideration, or any other thing of value, between the parties.

5.   **Termination**

5.1 **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, FTI will stop all work immediately. Client will be responsible for all fees and expenses incurred by FTI through the date termination notice is received

5.2 **Continuation of terms** - The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement Letter, and Clauses 1.1, 4, 6 and 7 of these Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6. **Indemnification, Liability Limitation, and Other Matters**

6.1 **Indemnification** - The Client agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors, and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted (an "Adverse Determination"). The Client shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance. FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2 **Limitation of liability** - Client agrees that no Indemnified Person shall be liable to the Client, or its successors, affiliates, or assigns, for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind. In the event that FTI agrees hereunder and/or in writing to accept liability to more than one party, the limit of FTI's liability set forth in this Section 6.2 shall be shared between the parties, and in no event shall FTI's aggregate liability exceed the total amount of the fees paid to FTI under this Engagement Contract.

7. **Governing Law, Jurisdiction, WAIVER OF JURY TRIAL, Compliance with Law, Notice, and Miscellaneous**

7.1 **Governing Law** - The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2 **Jurisdiction; Service** - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of

Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The Bankruptcy Court having jurisdiction over the Client's bankruptcy case shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising form it. The parties submit to the jurisdiction of such courts and irrevocably waive any right they may have to object to any action being brought in these courts, to claim that the action has been brought in an inconvenient forum or to claim that those courts do not have jurisdiction. Each party agrees that it may be served with legal process, including a summons and complaint, by recognized overnight courier (e.g., Federal Express, UPS) and agrees to waive personal service of the same in any action or lawsuit. Service under this provision may be directed to each party's notice address as provided in Section 7.5. The notice address shall be deemed valid unless updated or changed by written notice.

7.3    **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE CLIENT AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

7.4    **Compliance with Laws** – Each of FTI and the Client agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. The Client further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI. Each of FTI and the Client shall promptly notify the other party in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by such party or its directors, officers, employees or agents.

7.5    **Notice** - All notices, requests, consents, claims, demands, waivers, and other formal communications under this Engagement Contract shall be in writing and shall be deemed to have been given (a) when delivered by hand, (b) when received by the addressee, if sent by a nationally recognized overnight courier (evidence of receipt requested), (c) on the date sent by email if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient (in each case, if successfully transmitted and with a copy sent via one of the other methods of delivery specified in this paragraph), or (d) upon delivery, if mailed by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses indicated below, or at such other address for a party as shall be specified in a notice given in accordance with this paragraph:

If to FTI:    FTI Consulting, Inc.
555 12th Street NW, Suite 700
Washington, D.C., 20004

                        Attn: Legal Department
                            Email: legal@fticonsulting.com

    If to Client:       The College of Saint Rose
                        432 Western Avenue
                        Albany, NY 12203
                        Attn: [Insert]
                        Email: [Insert]

    With a copy to :    Cullen and Dykman LLP
                        333 Earle Ovington Boulevard, 2nd Floor
                        Uniondale, New York 11553Attn: Dina Vespia, Esq.

7.6    **Miscellaneous** – Client shall not assign any of its rights or delegate any of its obligations
       under this Engagement Contract without the prior written consent of FTI. Any purported
       assignment or delegation in violation of this provision is null and void. No assignment or
       delegation relieves Client of any of its obligations under this Engagement Contract. This
       Engagement Contract represents the entire understanding of the parties hereto and supersedes
       any and all other prior agreements among the parties regarding the subject matter hereof; shall
       be binding upon and inure to the benefit of the parties and their respective heirs,
       representatives, successors, and permitted assigns; may be executed and sent electronically
       (followed by originals sent via regular mail if requested by a party), and in two or more
       counterparts, each of which shall be deemed to be an original, but all of which together shall
       constitute one and the same instrument; and may not be waived, modified or amended unless
       in writing and signed by a representative of the Client and FTI. The provisions of this
       Engagement Contract shall be severable. No failure to delay in exercising any right, power or
       privilege related hereto, or any single or partial exercise thereof, shall operate as a waiver
       thereof. This Engagement Contract is for the sole benefit of the parties hereto and their
       respective successors and permitted assigns and nothing herein, express or implied, is intended
       to or shall confer upon any other person or entity any legal or equitable right, benefit, or
       remedy of any nature whatsoever under or by reason hereof.

**SCHEDULE A**

**FTI STANDARD RELEASE LETTER**

[Date]

Third Party Name
ADDRESS
CITY, STATE, ZIP

To whom it may concern.

Pursuant to that engagement letter dated _____ __, 202_ (the "Engagement Letter") between FTI Consulting, Inc. ("FTI") and _____ ("Client"), FTI has been engaged to perform certain services solely for the Client (the "Services") in connection with _____.

Client has requested that FTI provide [name of recipient] (the "Recipient") access to the report of its findings dated [date] and including any subsequent revisions, updates or addendums thereto (together, the "Report"). Recipient acknowledges that this Report was prepared at the direction of Client, was performed exclusively for Client's sole benefit and use, may not include all procedures deemed necessary for the purposes of Recipient, and that certain findings and information may have been communicated to Client that are not reflected in the Report. Recipient further acknowledges that (a) the Report is being provided for informational purposes only; (b) the Report shall not constitute, either expressly or impliedly, any representation or affirmation by FTI as to the accuracy, completeness and/or fairness of presentation of the Report or any statements or information contained therein; and (c) Recipient will make any decisions based on its own investigation, due diligence and analysis, independent of, and without reliance on or reference to, the contents of the Report or any other opinions or conclusions of FTI.

In consideration of FTI allowing Recipient access to the Report and, if requested by Recipient, discussing the Report, Recipient agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that FTI does not assume any duties or obligations to Recipient in connection with such access.

Recipient agrees to release FTI and its personnel from any claims or causes of action by Recipient that arise as a result of FTI permitting Recipient access to the Report. Recipient agrees not to sue or participate in any way (except as required by a validly issued court order or subpoena) in any legal proceeding, dispute, or cause of action against FTI arising out of or relating to the Report, including any claim that Recipient has in any way relied upon the Report. Recipient acknowledges that FTI does not owe or accept a duty to Recipient, whether in contract or in tort, or however otherwise arising.

Further, Recipient agrees not to disclose or distribute the Report, or any other information received orally or in writing from FTI, to any other parties without FTI's prior written consent. Notwithstanding the foregoing, Recipient may disclose the Report (a) to its Affiliates and its and their respective directors, officers, and employees, (the "Representatives") who have a need to receive the Report in connection with the purpose for which the Report is being provided to you and solely for informational purposes,

(b) to its legal counsel, accountants and auditors who are bound by written agreements and/or rules of professional conduct/ethics to maintain the Report as confidential ("Professional Advisors"), (c) to its advisors (including but not limited to financial advisors), consultants, lenders and/or potential investors, provided that, before any disclosure of the Report, each advisor, consultant, lender and/or potential investor executes its own release letter with FTI with terms no less restrictive than those contained herein, provided, further that Recipient remains responsible for any breach of this letter agreement by its Representatives or Professional Advisors. Recipient may also disclose the Report as required by any applicable law, or by order or ruling of any competent judicial, governmental, regulatory or supervisory body, provided, to the extent legally permissible, Recipient provides FTI with written notice promptly upon becoming aware of such obligation and reasonably cooperates with FTI, at FTI's expense, in FTI's efforts to obtain a protective order and/or limit the scope of such disclosure. Notwithstanding the foregoing, no notice is required regarding any disclosure of any information to a regulator or governmental agency having jurisdiction over Recipient or its Affiliates in the course of such regulator's or governmental agency's routine examination, reporting, audit or inspection not targeting the Report or the Services. For purposes of this letter agreement, the term "Affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with Recipient, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract or otherwise.

Recipient's obligations hereunder do not prohibit Recipient from disclosing, without attribution or reference in any matter to FTI or the Report, any information that: (a) is or becomes publicly available other than by a breach of this letter agreement; (b) is or becomes available to Recipient from a third party who is known by Recipient to not be prohibited from disclosing such information by a contractual, or legal obligation; (c) is known to Recipient prior to the date of this letter agreement; or (d) that Recipient develops independently without the use of or reliance on the Report. FTI is not authorized to and does not waive any other non-use or non-disclosure obligations which may apply to Client's or any other party's information that may be subject to confidentiality agreements.

This letter agreement constitutes the entire agreement between the parties regarding the subject matter hereof and shall be governed by the laws of the State of New York, without giving effect to the choice of law provisions thereof.

Please confirm your agreement with the foregoing by signing and dating a copy of this letter and returning it to FTI.

Sincerely,

_____

[INSERT FTI SMD or MD name here]
[Senior Managing Director/Managing Director]
FTI Consulting, Inc.

Acknowledged, accepted and agreed:

[ENTER RECIPIENT NAME]

-8-

By: _____

    (Name of Company official)