CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq. (admission pro hac vice pending)
Bonnie L. Pollack, Esq. (admission pro hac vice pending)
Kelly McNamee Esq. (admission pro hac vice pending)
Kyriaki Christodoulou, Esq. (admission pro hac vice pending)
(516) 357-3700

*Proposed Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                              :
In re:                                                        :  Chapter 11
                                                              :
THE COLLEGE OF SAINT ROSE,                                    :  Case No. 24-11131 (REL)
                                                              :
                    Debtor.                                   :
                                                              :
------------------------------------------------------------- x

**MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363(b), AUTHORIZING CONSIGNMENT AGREEMENT FOR SALE OF ARTWORK, AND AUTHORIZING SALES THEREUNDER FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

**TO THE HONORABLE ROBERT E. LITTLEFIELD, JR.,
UNITED STATES BANKRUPTCY JUDGE:**

The College of Saint Rose (the "Debtor"), by and through its proposed counsel Cullen and Dykman LLP, as and for its motion for an order authorizing consignment agreement for sale of artwork, and authorizing sales thereunder free and clear of liens, claims and encumbrances, respectfully alleges as follows:

**JURISDICTION**

1.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and venue of this case and the Motion is proper in this District pursuant 28 U.S.C. §§ 1408 and 1409.

1

22484.3 21218277

**RELIEF REQUESTED**

2. By this motion, the Debtor respectfully requests the entry of an order pursuant to sections 105 and 363 of title 11, United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), substantially in the form annexed hereto as Exhibit "A", authorizing the Debtor to enter into the consignment agreement with Carlsen Gallery, Inc. ("Carlsen") annexed as Exhibit "B" hereto (the "Agreement") through which the Debtor's artwork and decorative materials (the "Property") will be sold at auction, and authorizing such Property sales free and clear of all liens, claims and encumbrances.

**BACKGROUND**

3. On October 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

4. The Debtor has remained in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. No official committee of unsecured creditors (the "Committee") has been appointed by the Office of the United States Trustee for the Northern District of New York.

6. Simultaneously with the filing of its petition, the Debtor filed the Declaration of Marcia J. White, pursuant to Local Bankruptcy Rule 2015-2 (the "First Day Declaration"). A more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the First Day Declaration, the contents of which are incorporated herein by reference.

7. The Debtor's largest asset consisted of its campus (the "Campus") from which it operated as a College prior to the Petition Date. Prior to the Petition Date, and in furtherance of its wind down efforts, the Debtor employed Carlsen to sell at public auction items of artwork owned

2

22484.3 21218277

by the Debtor. The Debtor wishes to enter into a further Agreement with Carlsen by which its artwork would be sold during the bankruptcy case, and specifically at an auction to be conducted on December 8, 2024.

8. To the terms of the Agreement, Carlsen shall inventory, pack and remove the artwork to be sold, store the artwork and auction the pieces from its gallery. Carlsen will provide insurance on the consigned items while they are in its care and custody at no additional cost to the Debtor, and shall maintain a commercial general liability insurance policy in a minimum amount of $500,000 and a policy of workers compensation. Carlsen will at its own expense catalog, clean, photograph and prepare all items for inclusion in its website as well as two different online bidding platforms. Carlen shall hold an initial live auction on December 8, 2024 and such other auctions as shall be reasonably required to sell the goods. Further, the auctions will be advertised in newspapers and periodicals throughout the Hudson Valley, the cost of which will be borne by Carlsen. In consideration for the services to be rendered by Carlsen under the Agreement, Carlsen shall receive a commission of 20% of the selling price of all artwork sold by Carlsen.

9. The Debtor believes that the auction of the Property will inherently generate the highest value for those assets. As a result, and as discussed below, the Debtor requests that it be authorized to enter into the Agreement, and to sell the Property thereunder free and clear of liens, claims and encumbrances. In connection with any such sale of Property under the Agreement, the Debtor shall remit payment for sales and use tax without further order or approval by the Court.

## BASIS FOR RELIEF REQUESTED

**A. The Debtor Should be Authorized to Enter into the Agreement under Section 363(b) of the Bankruptcy Code**

10. Pursuant to section 363(b)(1) of the Bankruptcy Code, after notice and a hearing, the Debtor may use, sell or lease property of the estate outside the ordinary course of business.

3

Section 363(b)(1) authorizes, among other things, the Debtor to enter into postpetition contracts and agreements outside of the ordinary course of business, subject to the approval of the Court. As a general rule, actions by the Debtor pursuant to section 363(b)(1) are subject to review under the business judgment standard. *In re Borders Group, Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("In approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment."). *See also In re Lahijani*, 325 B.R. 282, 288 (9th Cir. BAP 2005). In assessing whether a debtor's decision satisfies the business judgment standard, courts typically consider whether the following elements are present: (i) a business decision, (ii) disinterestedness, (iii) due care, (iv) good faith and (v) no abuse of discretion or waste of corporate assets. *See, e.g., In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010).

11. Courts have uniformly held that approval of a proposed use of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. *See e.g., In re Chrysler LLC*, 405 B.R. 84, 97–100 (Bankr. S.D.N.Y. 2009), aff'd, 576 F.3d 108 (2d Cir. 2009); *In re General Motors Corp.*, 407 B.R. 463 (S.D.N.Y. 2009); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *Ionosphere Clubs, Inc.*, 100 B.R. at 675; *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

12. Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In*

4

*re Integrated Resources, Inc.*), 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)).

13. Here, since the Debtor is liquidating, it is necessary for the Debtor to sell the Property, a process begun by the Debtor prior to the Petition Date. The sale of the Property at auction under the Agreement represents the best terms to sell the Property received by the Debtor.

14. The Debtor therefore believes that the sale of the Property through the Agreement is justified by sound business reason and in the best interest of the Debtor and its estate. Accordingly, pursuant to section 363(b) of the Bankruptcy Code, the Debtor requests approval of the Agreement.

B. **The Property Should be Sold Under the Agreement Free and Clear of Liens, Claims and Encumbrances**

15. Pursuant to section 363(f) of the Bankruptcy Code, property may be sold . . . free and clear of any interest in such property of an entity other than the estate, only if:

  (i)   applicable nonbankruptcy law permits sale of such property free and clear of such interest;

  (ii)  such entity consents;

  (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

  (iv)  such interest is in bona fide dispute; or

  (v)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Thus, a debtor may sell property of a bankruptcy estate free and clear if one of the five conditions under section 363(f) is satisfied. *See In re Grubb & Ellis Co.*, Case No. 12-10685 (MG), 2012 Bankr. LEXIS 1279, at *31 (Bankr. S.D.N.Y. Mar. 27, 2012) (discussing section 363(f) of the Bankruptcy Code); *In re Borders Group, Inc.*, 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011) (same). Property may be sold free and clear to the extent that holders' liens and

5

encumbrances do not object. *See Borders Group*, 453 B.R. at 484 ("Under 363(f)(2), a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens.")

16. Here, the Debtor does not believe that there are any liens against the Property. Artwork is not included in the collateral of the prepetition bondholders and constitutes excluded assets under its proposed agreement with the DIP Lender. Nevertheless, in an abundance of caution, the Debtor requests that the Property be sold free and clear of any lien, claim or encumbrance that there may be.

C. <u>Section 363(d) of the Bankruptcy Code is Satisfied by the Proposed Sale</u>

17. Pursuant to section 363(d) of the Bankruptcy Code, a transfer of property by a not-for-profit entity must be made in compliance with applicable nonbankruptcy law governing such transfer. Specifically, section 363(d) provides that "[t]he trustee may use, sell or lease property under subsection (b) or (c) of this section - (1) in the case of a debtor that is a corporation or trust that is not a moneyed business, commercial corporation, or trust, only in accordance with nonbankruptcy law applicable to the transfer of property by a debtor that is such a corporation or trust." 11 U.S.C. § 363(d)(1).

18. The inclusion of section 363(d) of the Bankruptcy Code was not intended to provide states with a "veto" of sales of a debtor's assets under the Bankruptcy Code that otherwise take into account legitimate interests of the state over the transfer or sale of a non-profit's assets. *See* H. REP. NO. 109-31, pt. 1, title XII (Judiciary. Comm.) (listing section 1221 of the BAPCPA under the heading "Technical Amendments").

19. Here, the Debtor requests that this Court approve the sale of the Property as satisfying applicable non-bankruptcy law including without limitation the New York Not-for-Profit Corporation Law. Outside of bankruptcy, an insolvent not-for-profit corporation that is

seeking to sell all or substantially all of its assets is required, pursuant to Sections 510 and 511 of the New York Not-for-Profit Corporation Law, to submit a verified petition to the Supreme Court where the corporation has its principal office for approval of such sale transaction, on notice to the Attorney General. The Supreme Court will approve the proposed sale transaction if it finds that "the consideration and the terms of the transaction are fair and reasonable to the corporation and that the purposes of the corporation or the interests of the members will be promoted." N.Y. Not-for-Profit Corp. Law § 511(d).

20.    As with the sale of the Campus pending before the Court, the Debtor requests that this Court approve the sales under the Agreement on the grounds that the sales will not violate Sections 510 and 511 of the New York Not-for-Profit Corporation Law. The transfer of the Property does not invoke specific regulatory requirements which might restrict its transfer. The Debtor submits that the terms of the sale comply with all applicable not-for-profit laws, including the not-for-profit laws of the State of New York, and any applicable federal laws. Accordingly, the Debtor submits that the proposed sale satisfies the requirements of section 363(d) of the Bankruptcy Code.

## NOTICE AND NO PRIOR REQUEST

21.    The Debtor will provide notice of this motion in accordance with the Court's Order Establishing Notice Procedures dated October 16, 2024 [Docket No. 21]. The Debtor respectfully submits that in light of the nature of the relief requested, no other or further notice is necessary.

22.    No previous request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that this Court grant the relief requested herein, together with such further relief as this Court deems just and proper.

Dated: Albany, New York
October 21, 2024

CULLEN AND DYKMAN LLP

By: /s/ *Elizabeth Usinger*
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
Elizabeth Usinger, Esq.
80 State Street, Suite 900
Albany, New York 12207
(516) 357-3700
mroseman@cullenllp.com
bpollack@cullenllp.com
*Proposed Counsel for The College of Saint Rose*

22484.3 21218277

# EXHIBIT A

# PROPOSED SALE ORDER

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
In re:                                                         :   Chapter 11
                                                               :
THE COLLEGE OF SAINT ROSE,                                     :   Case No. 24-11131 (REL)
                                                               :
            Debtor.                                            :
                                                               :
-------------------------------------------------------------- x

## ORDER AUTHORIZING THE DEBTOR TO ENTER INTO CONSIGNMENT AGREEEMENT AND AUTHORIZING THE SALE OF ARTWORK PURSUANT TO THE CONSIGNMENT AGREEMENT <u>FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES</u>

Upon the motion (the "Motion") of The College of Saint Rose ("Debtor"), seeking entry of an order pursuant to sections 105 and 363 of title 11, United States Code ("Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") authorizing the Debtor to enter into the consignment agreement annexed as Exhibit "B" to the Motion[1] and authorizing the sale of property pursuant to the Agreement free and clear of liens, claims and encumbrances; and a hearing on the Motion having been held on _____, 2024 (the "Hearing");

---

[1] Defined terms not otherwise defined herein shall have the same meanings ascribed to them in the Motion.

and good and sufficient notice of the Motion and Hearing having been given and no other or further notice being required; and objections, if any, having been overruled, withdrawn, or resolved:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334.

B. The statutory predicates for the relief sought in the Motion and the basis for the approvals and authorizations contained in this Order are Bankruptcy Code sections 105 and 363, and Bankruptcy Rules 2002, 6004 and 9014.

C. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

D. Venue of this case and the Motion in this district is proper under 28 U.S.C. § 1408.

E. Sufficient notice of the relief sought in the Motion has been given and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to interested persons and entities.

F. The Debtor determined in its best business judgment that selling the Property pursuant to the Agreement is in the best interests of the Debtor's estate and creditors.

G. The Property may be sold pursuant to the Agreement free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code because to the extent any such liens and encumbrances exist, the holder of same have either consented, subject to the terms and conditions of this Order, or have not objected to the sale and are therefore deemed to consent to the sale of the Property.

BASED ON THE FOREGOING, AND AFTER DUE CONSIDERATION AND GOOD CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

2

22484.3 21218277

1. All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, settled, or otherwise dealt with as expressly provided herein, and all reservation of rights included in such objections, are overruled on the merits with prejudice.

2. Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized to enter into the Agreement, and to sell the Property thereunder pursuant to the terms of the Agreement, and upon such sale(s), all right title and interest of the Debtor in and to the Property shall vest in the purchaser(s) free and clear of any and all liens, claims and encumbrances of whatever kind or nature, with such liens, claims and encumbrances, if any, to attach to the proceeds of sale(s) in order of their priority and each and every Entity (as defined in Bankruptcy Code section 101(15)) is forever barred from asserting against Carlsen, its successors and assigns, or against the Property, any mortgages, liens, interests, Claims (as defined in Bankruptcy Code 101(5)) or other encumbrances of any kind or nature (including, without limitation, any judgment liens) (collectively "Encumbrances") held by such Entity against the Debtor or the Property.

3. The Debtor is authorized to take all actions and execute all documents necessary or appropriate to effectuate the sale of the Property pursuant to the Agreement consistent with this Order.

4. In connection with any such sale of Property under the Agreement, the Debtor shall remit payment for sales and use tax without further order or approval by the Court.

5. Following the closing of the sale(s), no holder of any Encumbrance against the Debtor or the Property shall interfere with the purchaser(s)' rights in, title to or use and enjoyment of the Property.

6. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any sale authorized by this Order.

3

22484.3 21218277

7. This Court shall retain jurisdiction to enforce the provisions of this Order and to resolve any disputes concerning this Order.

22484.3 21218277

# EXHIBIT B

# CONSIGNMENT AGREEMENT

THE COLLEGE OF SAINT ROSE
AGREEMENT WITH
CARLSEN GALLERY, INC.

This agreement, made this 21st day of October 2024 (the "Effective Date"), between The College of Saint Rose (hereinafter called the "Seller") and Carlsen Gallery, Inc. (hereinafter called the "Auctioneer").

It is agreed as follows:

1. The Seller hereby employs the Auctioneer to sell at public auction items of artwork owned by and presently located at The College of Saint Rose, Albany NY campus. The Auctioneer hereby accepts such employment on the terms herein set forth.

2. The Auctioneer shall inventory, pack and remove all goods to be sold by Carlsen Gallery Inc. (the "Goods"), to be stored at (except for sculptures installed at the Seller's premises) and auctioned solely from the Auctioneer's gallery at 9931 State Route 32, Freehold, New York (the "Premises"), and provide a copy of such inventory to the Seller prior to removing any Goods from the Seller's premises. It is understood and agreed by the parties to this Agreement that the Auctioneer reserves the right to include similar merchandise from other sources at the same auction. The Seller retains title to all Goods until title is conveyed to purchasers. Title to Goods shall pass to the Auctioneer's buyers upon full payment to the Auctioneer. The Auctioneer shall ensure that no portion of Seller's Goods are sold, given away or otherwise removed from the Premises prior to sale at auction.

3. The Auctioneer will provide insurance on the consigned items, while they are in its care and custody at no additional cost to the Seller. The Auctioneer shall maintain a commercial general liability insurance policy in the minimum amount of $500,000 and a policy of workers' compensation insurance if and as required by law. Such policies shall remain in force through the term of this Agreement and shall be payable on a "per occurrence" basis. The Seller shall be named as an additional insured under such policy. The Auctioneer shall supply a certificate of insurance and endorsement signed by its insurer evidencing such insurance to the Seller prior to commencement of work, which certificate shall provide for a thirty (30) days advance notice to the Seller of any termination or reduction in coverage.

1

4871-4641-9130, v. 5

4. The Auctioneer will at its own expense catalogue, clean, photograph and prepare all items, which will then be included on the Auctioneer's website at www.carlsengallery.com, as well as two different online internet bidding platforms. The Auctioneer shall not sell any Goods at a final sale price that is less than any reserve price for such Goods that the Auctioneer and Seller agree upon.

5. The Auctioneer shall hold an initial live online auction for Seller's goods no later than December 8th, 2024 (the "Auction Date"), and such other auctions during the Term as shall reasonably be required to sell the Goods. The Auctioneer will advertise the auction in newspapers and periodicals throughout the Hudson Valley to attract buyers. Additionally, the Auctioneer agrees to advertise in trade publications used by dealers and collectors. The auctioneer will send notices to prospective buyers from its database via e-mail and or brochure through the US post office.

6. The cost of such advertising shall be borne by the Auctioneer.

7. The Auctioneer will schedule and conduct previews for prospective customers at least three days prior to the auction. The auctioneer will conduct a live auction where live, absentee, phone and internet bidding will be available.

8. The Auctioneer will invoice successful bidders and collect payment prior to delivery of the Seller's goods and transfer of title thereto to purchaser. The Auctioneer shall deposit the entire proceeds from the auction in the Auctioneer's business account.

9. The Seller shall pay the Auctioneer as its commission, twenty percent (20%) of the selling price of all Seller's goods sold by the Auctioneer.

10. The Auctioneer agrees to provide the Seller with a complete written accounting of the merchandise removed and sold by it. The Auctioneer further agrees to pay the Seller the gross amount of the proceeds, less the Auctioneer's commission, within twenty-five days after the auction.

11. The Auctioneer may not subcontract or assign any portion of the work required by this Agreement. This Agreement shall be binding on the parties' respective administrators, successors and assigns. The rights, responsibilities and duties of the Auctioneer under this Agreement are personal to the Auctioneer and may not be transferred or assigned without the express prior written consent of the Seller.

12. The Auctioneer shall maintain in force throughout the term of this Agreement all licenses required for the performance of its services.

4871-4641-9130, v. 5

13. The term of this Agreement ("Term") shall commence on the Effective Date and shall expire upon the first to occur of (a) the sale and payment to the Seller of all items of the Seller's property in the Auctioneer's possession, (b) termination by either party upon ten (10) days prior written notice to the other party, or (c) March 31, 2024. Following expiration or early termination of this Agreement, the Auctioner shall return all unsold goods to the Seller at the Seller's expense in the same condition as when they were removed from the Seller's premises.

14. This Agreement shall be governed by, construed and enforced exclusively in accordance with the laws of the State of New York, including its statutes of limitations, but without regard to any borrowing statute that would result in the application of the statute of limitations of any other jurisdiction. Unless waived by either party in a particular instance, the exclusive venue for any action or proceeding arising under this Agreement shall be the state courts in the state of New York and each party hereby consents to the jurisdiction thereof. In any action relating to the subject matter of this Agreement, the prevailing party will be entitled to recover reasonable legal fees and related costs.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed by their duly authorized representatives.

By: _____ PRES.
Carlsen Gallery Inc., Russell Carlsen, Pres. (Auctioneer)

By: _____
Seller's Signature, on behalf of The College of Saint Rose

3

4871-4641-9130, v. 5