**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE COLLEGE OF SAINT ROSE,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 24-11131 (REL) |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN
POSTPETITION FINANCING, (B) USE ~~CASH~~BOND COLLATERAL AND (C) GRANT
LIENS AND PROVIDE SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS,
(II) MODIFYING AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF**

---

[1]    The last four digits of the Debtor's federal tax identification number is 8371.

Upon the motion (the "Motion")[2] of above-captioned debtor and debtor-in-possession

(the "Debtor"), pursuant to sections 105, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2),

364(c)(3), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et

seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Northern

District of New York (the "Local Bankruptcy Rules"), seeking entry of a final order (the "Order")

including:

(a) authorizing the Debtor to obtain postpetition financing pursuant to a senior secured debtor-in-possession credit facility (the "DIP Facility") in an aggregate principal amount equal to $10.8 million (the commitments in respect thereof, the "DIP Commitments"), on the terms and conditions set forth in the DIP Documents (as defined below), including a credit agreement (as amended, restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement"), a copy of which in substantially final form is attached hereto as **Exhibit A**, by and between the Debtor, as borrower, and the DIP Lender;

(b) authorizing the Debtor to execute, deliver, and perform under the DIP Credit Agreement and all other loan documentation related thereto, in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively with this Order, the "DIP Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(c) authorizing the Debtor to incur obligations, including to borrow under the DIP Facility (collectively, the "DIP Obligations") and to use the proceeds thereof as provided in the DIP Documents, this Order, and the Approved Budget (as defined below);

(d) granting to the DIP Lender allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations and authorizing and approving the Carve-Out Provisions (as defined below);

(e) subject to Permitted Prior Liens (as defined below), granting to the DIP Lender valid, enforceable, non-avoidable, and automatically perfected first priority liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code on the DIP Collateral (as defined below);

---

[2]    Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the Motion.

(f)     authorizing the Debtor to pay principal, interest, fees, expenses and other DIP Obligations payable under the DIP Documents as they become due, including DIP Fees and Expenses (each as defined below);

(g)     authorizing the Debtor to pay the Origination, Extension and Exit Fees, the Break-Up Fee to the extent due and payable, and approving the prior payment of the Deposit;

(h)     authorizing the Debtor to use ~~Cash~~Bond Collateral ~~(as defined below):~~associated with the Bonds and providing the Bond Trustee adequate protection for its interests in the Bond Collateral from and after the Petition Date;

(i)     vacating and modifying the automatic stay under section 362 of the Bankruptcy Code (the "Automatic Stay") on the terms set forth herein, including to the extent necessary to permit the Debtor to implement and effectuate the terms and provisions of this Order and the other DIP Documents, and for the DIP Lender to deliver any notices of termination described below and as further set forth herein;

(j)     authorizing the Debtor ~~and,~~ the DIP Lender and the Bond Trustee to take all commercially reasonable actions to implement and effectuate the terms of this Order;

(k)     authorizing the Debtor to waive its right to surcharge the DIP Collateral or the Bond Collateral pursuant to section 506(c) of the Bankruptcy Code; and

(l)     waiving any applicable stay and providing for immediate effectiveness of this Order.

The hearing to approve the Motion having been held by this Court on [_____], 2024 (the "Hearing"), and this Court having considered the relief requested in the Motion, the exhibits attached hereto and thereto, the Declaration of Sean Harding filed in support of the Motion [Docket No. [ ] (the "Harding Declaration"), the available DIP Documents, and the evidence submitted and arguments made at the Hearing; due and sufficient notice of the Hearing having been given in accordance with Bankruptcy Rules 2002 and 4001, and all applicable Local Bankruptcy Rules; and the Hearing having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtor and its estate, and is essential for the administration of this Chapter 11 Case, the continued

operation of the Debtor in the ordinary course, and the preservation of the value of the Debtor's

assets; and it appearing that the Debtor's entry into the DIP Documents is a sound and prudent

exercise of the Debtor's business judgment; and after due deliberation and consideration, and good

and sufficient cause appearing therefor,

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE COURT**

**MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    *Petition Date*.   On October 10, 2024 (the "Petition Date"), the Debtor filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

B.    *Debtor in Possession*.   The Debtor has continued in the management and operation

of its business and properties as a debtor in possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code.   No trustee or examiner has been appointed in the Chapter 11 Case.

C.    *Jurisdiction and Venue*.   This Court has core jurisdiction over the Chapter 11 Case,

the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and

1334 and the *Amended Standing Order of Reference from the United States District Court for the*

*Northern District of New York*.   Consideration of the Motion constitutes a core proceeding pursuant

to 28 U.S.C. § 157(b)(2).   The Court may enter this Order consistent with Article III of the United

States Constitution.   Venue for the Chapter 11 Case and proceedings on the Motion is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   The predicates for the relief sought herein are

sections 105, 362, 363(c), 363(e), 363(m), 364(c), 364(e), and 507 of the Bankruptcy Code and

Bankruptcy Rules 2002, 4001, 6004 and 9014.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the
extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the
extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

51638959.2

D.    *Notice*.  The Hearing was held pursuant to Bankruptcy Rule 4001(c)(2). Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

E.    *Findings Regarding the DIP Facility*.

(i)    Good and sufficient cause has been shown for the entry of this Order and for authorization of the Debtor to obtain financing pursuant to the DIP Documents.

(ii)    The Debtor has a critical need to obtain the DIP Facility and to use the proceeds thereof to maintain an orderly wind down of the operations of its not-for-profit business, to meet payroll obligations, to satisfy other operational needs, and to fund expenses of this Chapter 11 Case.  Access to sufficient working capital and liquidity through the incurrence of new indebtedness under the DIP Documents is necessary and vital to the successful wind down of the Debtor's operations.

(iii)    The Debtor is unable to obtain financing on more favorable terms, taken as a whole, including on a timetable sufficient to meet the Debtor's liquidity needs, from sources other than the DIP Lender under the DIP Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code solely as an administrative expense.  The Debtor is also unable to obtain credit without granting to the DIP Lender the DIP Liens and the DIP Superpriority Claims (each as defined herein) under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code, as applicable, in each case, subject to the Permitted Prior Liens, and otherwise on the terms and conditions set forth in this Order and in the other DIP Documents.

(iv)    Based on the Motion, the Harding Declaration, and the record presented to the Court at the Hearing, the terms of the DIP Facility and the DIP Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(v)    The DIP Facility has been negotiated in good faith and at arm's length among the Debtor and the DIP Lender, and the Debtor's obligations and indebtedness arising under, in respect of, or in connection with, the DIP Facility and the DIP Documents shall be deemed to have been for credit extended by the DIP Lender and its affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender (and any successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(vi)    The Debtor has prepared and delivered to the DIP Lender and the Bond Trustee an initial budget (collectively, the "Initial DIP Budget"), attached hereto as **Exhibit "B"**. The Initial DIP Budget reflects, among other things, the Debtor's anticipated cash receipts and anticipated disbursements for each calendar week covered thereby, including the funding of an interest reserve account and a professional fee carve-out reserve.[4]  The Initial DIP Budget may be modified, extended, amended, and updated from time to time in accordance with the DIP Credit Agreement and this Order, and such modified, extended, amended and/or updated budget shall, for the period covered thereby, supplement, modify, extend or replace, as applicable, the Initial

---

[4]    The DIP Documents require as a condition to the extension of the initial maturity that the interest reserve account be replenished through any extended maturity.

DIP Budget (the Initial DIP Budget and each subsequently approved budget shall constitute for the then applicable period, the "Approved Budget").  The Debtor believes that the Initial DIP Budget is reasonable under the facts and circumstances of the Debtor and this Chapter 11 Case.

F.    *Relief Essential; Best Interest.*    The Hearing was held in accordance with Bankruptcy Rule 4001(c)(2).  Consummation of the DIP Facility in accordance with this Order and the other DIP Documents is therefore in the best interests of the Debtor's estate and consistent with the Debtor's exercise of its fiduciary duties.

G.    *Prepetition Bond Financing.*

(i)    In September 2021, the The Debtor is indebted to Manufacturers and Traders Trust Company, in its capacity as indenture trustee (the "Bond Trustee") for those certain City of Albany Capital Resource Corporation issued $48,150,000 of tax-exempt revenue refunding bonds for the benefit of Tax-Exempt Revenue Refunding Bonds (The College of Saint Rose (the "Bonds" and Project), Series 2021 (the "Bonds").  The Bonds were issued in the original aggregate principal amount of $48,150,000.  As of the holdersPetition Date, the amounts due and owing on account of the Bonds, the "Bondholders").  The Bonds (collectively, the "Bond Obligations") are (i) the outstanding principal due on the Bonds, in the amount of $45,093,609.29, (ii) the accrued interest on the Bonds as of the Petition Date, in the amount of $3,447,109.66, and (iii) other amounts due and owing under the documents that evidence and otherwise secure the Bonds, subject to review and reconciliation of funds applied by the Bond Trustee to the amounts due at the time of acceleration of the Bond Obligations.

(ii)    The Bonds are secured by a duly perfected liens and security interests in gross revenue pledgerevenues, selected campus facilities, and real property, tangible personal property located in, on, or around the mortgaged campus facilities and real property, and certain

other personal property (collectively, the "Bond Collateral") as described and defined in the documents that evidence and otherwise secure the Bonds (the "Bond Collateral").each a "Bond Document"). The Debtor has reserved rights as to the extent to which funds held by the Debtor as of the Petition Date are Pre-Petition Bond Collateral but does not otherwise dispute the existence and scope of the Pre-Petition Bond Collateral.

(iii)    The Debtor's obligations under the Bond Documents constitute legal, valid, binding, enforceable and non-avoidable obligations of the Debtors not subject to subordination.

(iv)    Events of default have occurred under the Bond Documents.  The Bond Trustee has demanded adequate protection for its Bond Collateral.

(i)(v)    There is no overlap in the Bond Collateral and the collateral securing the DIP Facility.  None of the Bond Collateral shall be encumbered by DIP Liens or otherwise serve as collateral for the DIP Facility.  For the avoidance of doubt, the security for the Bonds does not constitute a Permitted Prior Lien as there is no overlap in the collateral securing the Bonds and the DIP Facility.

(vi)    In addition to The Court previously entered its *Interim Order (I) Authorizing Use of Pre-Petition Bond Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief* [Dkt. No. 60] (the DIP Facility, it"Interim Order").

(vii)    The Bond Trustee is necessaryentitled to adequate protection for its interests in the Bond Collateral from and after the Petition Date.

(ii)(viii)    The Debtor has a need to use the Bondholders' cash collateral pursuantBond Collateral to section 363(b)continue an orderly wind down of the Bankruptcy Code (operations of its not-for-profit business and the "Cash Collateral").fund expenses of this Chapter 11 Case.  In the absence of the use of Pre-Petition Bond Collateral, immediate and irreparable

harm to the Debtor, its estate and its creditors would occur. The Debtor and the Bond Trustee have negotiated at arm's-length and in good faith regarding the Debtor's consensual use of Bond Collateral. Entry of this Order is in the best interests of the Debtor, its estate and its creditors.

Based upon the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted*.  The relief sought in the Motion is granted on a final basis and the. The DIP Facility is authorized and approved, subject to the terms and conditions set forth in this Order and the other DIP Documents.  The use of Bond Collateral is authorized and approved, subject to the terms and conditions set forth in this Order.  All objections to this Order, to the extent not withdrawn, waived, settled, or resolved on the terms of this Order, are hereby denied and overruled on the merits.

2.    *Authorization of the DIP Facility and the DIP Documents*.

(a)    The Debtor is hereby authorized to execute, deliver, enter into and, as applicable, perform all of its obligations under the DIP Documents and such other and further acts as may be necessary, appropriate or desirable in connection therewith.  The Debtor is hereby authorized to borrow money pursuant to the DIP Credit Agreement in an aggregate principal amount not to exceed $10.8 million, the proceeds of which shall be allocated in accordance with the Approved Budget, and used only for the purposes permitted herein, under the DIP Credit Agreement and the Approved Budget.

(b)    In furtherance of the foregoing and without further approval of this Court, the Debtor hereby is authorized and directed to perform all acts, to make, execute, and deliver all

instruments, certificates, agreements, charges, deeds and documents (including, without limitation, the execution or recordation financing statements and other similar documents), to file any necessary confirmatory or corrective deeds with respect to the DIP Collateral, including to add, where applicable, a metes and bounds description of the relevant property based on an authorized survey thereof, and to pay all fees and expenses in connection with, or that may be reasonably required, necessary, or desirable for the Debtor's performance of its obligations under or related to the DIP Facility, including, without limitation:

(i)        the execution and delivery of, and performance under, each of the DIP Documents, including to the extent reasonably requested by the DIP Lender to record one or more mortgages on the DIP Collateral;

(ii)        the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, including any extensions of the maturity thereof, in each case, in such form as the Debtor and the DIP Lender may agree, it being understood that except as expressly provided in this Order no further approval of this Court shall be required for (A) any authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder or (B) any updates, modifications, extensions, and supplements to the Approved Budget;

(iii)        the payment to the DIP Lender, as the case may be, of (A) all fees (which when paid shall be fully earned and nonrefundable), including, to the extent applicable: (a) an origination fee equal two and one quarter percent (2.25%) on the principal amount of the DIP Facility to be capitalized into the DIP Facility (the "Origination Fee"); (b) a one and a one-half percent (1.5%) exit fee on the principal amount of the DIP Facility payable upon the repayment in full of the DIP Facility (the "Exit Fee"), (c) if the maturity date is extended in accordance with the DIP Documents, a one percent (1%) fee for the extension (the "Extension Fee"); and (d) a break-up fee of fifty thousand dollars ($50,000) (the

"Break-Up Fee"), if applicable;[5] (B) any amounts due (or that may become due) in respect of the indemnification and other reimbursement obligations, in each case referred to in the DIP Credit Agreement or the other DIP Documents; and (C) reimbursement of all reasonable and documented out-of-pocket expenses of the DIP Lender, including the reasonable fees and expenses of its counsel (subject to the review procedures set forth in paragraph 18).[22]), as provided for in the DIP Documents (the "Expense Reimbursement" and, together with the foregoing (A) and (B), the "DIP Fees and Expenses"), including the Debtor's payment of an initial fifty thousand dollar ($50,000) deposit to the DIP Lender (the "Deposit") toward the Expense Reimbursement; and

(iv)        the performance of all other acts required under or in connection with the DIP Documents, or reasonably requested by the DIP Lender, including the granting of the DIP Liens and the DIP Superpriority Claims and perfection of the DIP Liens as provided herein and therein.

3.        *Segregation of DIP Loan Proceeds*.  Other than the Interest Payment Reserve (as defined in the DIP Credit Agreement), the Debtor shall deposit and maintain the proceeds of the DIP Loan or any DIP Collateral in the Segregated Funding Account (as defined in the DIP Credit Agreement) until disbursed in accordance with the DIP Documents and shall not commingle the funds on deposit in the Segregated Funding Account with funds received from any other source. From the Segregated Funding Account, the Debtor shall only make withdrawals in order to make payments in accordance with the Approved Budget.

4.        *DIP Obligations*. Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute (and shall continue to constitute) legal, valid, binding, and non-avoidable obligations of the Debtor, enforceable against the Debtor and its estate, and any successors thereto, including any trustee appointed in the Chapter 11 Case, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other

---

[5]    The Break-Up Fee shall only be payable at the closing of an alternative debtor-in-possession facility that is approved by the Court.

proceedings superseding or related to any of the foregoing (the "Successor Case"), in accordance

with the terms of this Order and the other DIP Documents. Upon execution and delivery of the

DIP Documents, the DIP Obligations shall include (and shall continue to include) all loans and

any other indebtedness which may now or from time to time be owing by the Debtor to the DIP

Lender under the DIP Documents, including all principal, interest, costs, fees, expenses,

indemnities and other amounts payable to the DIP Lender under the DIP Documents. No

obligation incurred, transfer or grant of security hereunder or under the other DIP Documents to

the DIP Lender shall be stayed, restrained, voidable, avoidable, or recoverable, under the

Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d),

544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable

Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or

similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment,

offset, recharacterization, subordination (whether equitable, contractual, or otherwise),

disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the

Bankruptcy Code or any applicable law or regulation by any person or entity.

     5.    *Carve-Out.*

     (a)    *Generally.* As used in this Order, the term "Carve-Out" means the sum of:

(i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under

section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, if any,

pursuant to 31 U.S.C. § 3717; (ii) all reasonable fees and expenses up to $25,000 incurred by a

trustee under section 726(b) of the Bankruptcy Code; (iii) subject, in each case, to application of

any retainers that may be held, the aggregate fees and expenses as provided for in any Approved

Budget less any fees and expenses already paid, and to the extent allowed at any time, whether by

interim order, procedural order, final order or otherwise (the "Allowed Professional Fees")
incurred by persons or firms retained by the Debtor pursuant to section 327, 328 or 363 of the
Bankruptcy Code and the fees of any statutory committee pursuant to sections 328 or 1103 of the
Bankruptcy Code (collectively, the "Professional Persons"), at any time on or prior to the first
business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined
below), whether allowed prior to or after delivery of a Carve-Out Trigger Notice by interim order,
procedural order, final order or otherwise, and (iv) Allowed Professional Fees of Professional
Persons in an aggregate amount not to exceed $100,000 incurred after the first business day
following delivery by the DIP Lender of the Carve-Out Trigger Notice, to the extent allowed at
any time, whether by interim order, procedural order, final order or otherwise (the amounts set
forth in this clause (iv) being the "Post Carve-Out Trigger Notice Cap").  For purposes of the
foregoing, the "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other
electronic means) by the DIP Lender to the DIP Notice Parties,[6] which notice may be delivered
following the occurrence and during the continuation of an uncured Event of Default (as defined
in the DIP Credit Agreement), stating that the Post Carve-Out Trigger Notice Cap has been invoked.

(b)    *Carve-Out Reserve.*  Consistent with the Approved Budget, a portion of the
proceeds of the DIP Facility shall be set aside in a carve-out reserve for the sole benefit of
Professional Persons (the "Carve-Out Reserve") to fund Carve-Out expenses when due.  The DIP
Liens shall not attach to the Carve-Out Reserve and the DIP Obligations shall have no recourse to
the Carve-Out Reserve unless and until all Carve-Out expenses in subparagraph (a) above have
been fully paid.  Nothing in this Order, the Approved Budget, Carve-Out, the Carve-Out Reserve,

---

[6]    The "DIP Notice Parties" shall include: (a) Debtor's counsel, Cullen and Dykman, LLP; (b) the U.S. Trustee;
(c) counsel to any statutory committee; (d) counsel to the ~~trustee to the Bondholders~~Bond Trustee; and (e) counsel
to the DIP Lender, Eversheds Sutherland (US) LLP.

or any of the foregoing shall be construed as a cap or limitation on the amount of Allowed Professional Fees due and payable ~~by the Debtor.~~to Professional Persons.  The DIP Lender shall not be responsible for funding the Carve-Out Reserve except as provided in this paragraph and to the extent the Debtor lacks funds to fund the Carve-Out Reserve, the DIP Lender shall not be obligated to fund the Carve-Our Reserve.  The foregoing shall be referred to herein as the "Carve-Out Provisions."

(c)    *Reservation of Rights*.  The payment of any fees or expenses of the Professional Persons pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any of the DIP Obligations or (ii) modify, alter, or otherwise affect any of the liens and security interests of such parties, except as provided herein.

(d)    *No Direct Obligation to Pay Allowed Professional Fees*.  The DIP Lender shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Case or any Successor Case under any chapter of the Bankruptcy Code.  Nothing in this Order or otherwise shall be construed to obligate the DIP Lender, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

(e)    *Payment of Carve-Out on or after the Carve-Out Trigger Date.* Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees incurred thereafter shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

6.    *Limitation on Use of ~~DIP Proceeds and Carve-Out.  No portion~~Funds.*  Except as expressly provided in this Order, no funds of the ~~Carve-Out~~Debtor or the estate, whether in the

form of the Carve-Out, proceeds of any DIP Obligations or Bond Collateral or otherwise may be used to (or support any other party to) investigate,  litigate, prosecute, object to, contest or challenge in any manner or raise any defenses to the debt, collateral position, liens or claims of the DIP Lender or the Bond Trustee, whether by challenging the validity, extent, amount, perfection, priority or enforceability of the indebtedness under the DIP Facility or the Bond Documents, as applicable, or the validity, extent, perfection, priority or enforceability of any mortgage, security interest or lien with respect thereto or any other rights or interests or replacement liens with respect thereto or any other rights or interests of the DIP Lender or the Bond Trustee, or by seeking to subordinate or recharacterize the DIP Facility or the Bonds (or amounts outstanding thereunder) or to disallow or avoid any claim, mortgage, security interest, lien, or replacement lien or by asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the DIP Lender or the Bond Trustee, or any of their respective officers, directors, agents, or employees, in each case in their respective capacities as such.  In addition, no funds of the Debtor or the estate, whether in the form of the Carve-Out, proceeds of any DIP Obligations or Bond Collateral or otherwise shall be used in connection with (a) preventing, hindering or delaying the DIP Lender's or Bond Trustee's enforcement or realization upon the DIP Collateral or Bond Collateral, as applicable, or the exercise of rights by the DIP Lender following the Remedies Notice Period once an Event of Default has occurred and is continuingor the Bond Trustee or (b) selling or otherwise disposing of the DIP Collateral or the Bond Collateral other than as provided herein, permitted under the DIP Credit Agreement or the Bond Documents or with the consent of the DIP Lender or the Bond Trustee, as applicable. Notwithstanding the foregoing, up to $25,000 may be made available to any Committee (if appointed) to investigate the Bonds, the Bond Liens and/or any potential Challenge, and nothing

in this paragraph shall impair the Debtor's ability to assert that funds in its accounts do not constitute Bond Collateral.

7.    *DIP Superpriority Claims*.    Subject to and junior to the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtor (without the need to file any proof of claim), with priority over any and all unsecured claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under section 105, 326, 327, 328, 330, 331, 361, 363, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "DIP Superpriority Claims") shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable in accordance with the DIP Documents, including this Order.   The DIP Superpriority Claims shall include recovery against the proceeds of avoidance actions of the Debtor's estate arising under chapter 5 of the Bankruptcy Code, provided that the DIP Lender shall first look to be paid from all other assets from which the Debtor's obligations under the DIP Facility may be paid. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

8.    *DIP Liens*.    As security for the DIP Obligations, effective and automatically and properly perfected as of the date of this Order without the necessity of the execution, recordation

or filing by the Debtor or the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the DIP Lender of, or over, the DIP Collateral, subject and junior to the Carve-Out, the DIP Lender is granted valid, binding, continuing, enforceable, and non-avoidable first priority security interests and liens (all such liens and security interests granted to the DIP Lender pursuant to this Order and the DIP Documents, the "DIP Liens") in the DIP Collateral as defined in the DIP Agreement (the "DIP Collateral"), subject only to the exceptions contained in the DIP Documents, including the Permitted Prior Liens (as defined below).  The DIP Liens shall not attach to any Bond Collateral, avoidance actions of the Debtor's estate arising under chapter 5 of the Bankruptcy Code, or any proceeds thereof. This Order shall be sufficient and conclusive evidence of the creation, validity, perfection and priority of all liens and security interests granted herein, including the DIP Liens.

9.    *Authorization to Use ~~Cash~~Bond Collateral.* ~~Pursuant to section 363(b) of the Bankruptcy Code, the~~The Debtor is authorized to use the ~~Cash~~Bond Collateral of the ~~Bondholders~~Bond Trustee on the terms and conditions set forth in this Order and in accordance with the Approved Budget.

10.    *Adequate Protection to the ~~Bondholders~~Bond Trustee.*

(a)    The ~~Bondholders~~Bond Trustee shall be granted to secure any diminution in value from and after the Petition Date in the value of its valid, enforceable and non-avoidable interest in the Bond Collateral (the "Diminution Claim") replacement security interests and liens upon all assets of the Debtor, whether now existing or hereafter acquired and the proceeds and products thereof, which security interests and liens shall be, however, junior to the Carve-Out and

the DIP Liens. The replacement liens shall not attach to avoidance actions of the Debtor's estate arising under chapter 5 of the Bankruptcy Code or any proceeds thereof.

(b)    ~~(b)~~    The ~~Bondholders~~Bond Trustee shall receive a superpriority administrative expense claim pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, junior to the Carve-Out and the DIP Superpriority Claim, equal to the Diminution Claim to the extent not satisfied under paragraph (10)(a) hereof, which shall include recovery against the proceeds of avoidance actions of the Debtor's estate arising under chapter 5 of the Bankruptcy Code, provided that the ~~Bondholders~~Bond Trustee shall first look to be paid first from all other assets from which the Debtor's obligations to the ~~Bondholders may be paid~~Bond Trustee may be paid. Other than the Carve Out and DIP Superpriority Claims, no cost or expense of administration under sections 105, 503 or 507 of the Bankruptcy Code shall be senior to, or pari passu with, the superpriority claim described in this paragraph.

(c)    The security interests and liens granted to the Bond Trustee herein as adequate protection (the "Adequate Protection Liens") shall be effective and automatically and properly perfected as of the date of entry of the Interim Order without the necessity of the execution, recordation or filing by the Debtor or the Bond Trustee of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the Bond Trustee of any collateral subject to such Adequate Protection Liens.

(d)    The Debtor shall substantially comply with the Approved Budget.  The Debtor shall not amend the Approved Budget without providing prior written notice and a copy of the proposed amended budget to the Bond Trustee.  The Bond Trustee shall have three (3) business days from the date of receipt to give to the Debtor and DIP Lender written objections to the

18

proposed amendment setting forth the nature of the objections and identifying the line items subject to such objection (a "Budget Objection").  If no Budget Objection is timely given, the amendment shall take effect without further order.  If a Budget Objection is timely given, any line items that are not subject to the Budget Objection shall, but only with DIP Lender's consent, also take effect, provided the balance shall not take effect until such Budget Objection is resolved.  The Debtor, DIP Lender and Bond Trustee shall attempt to consensually resolve the any Budget Objection, and any Budget Objection shall otherwise be presented to the Court for resolution and the parties shall support any request for an expedited determination by the Court.  The foregoing shall be without prejudice to the Debtor's right to seek approval from the Court of any budget amendment on an expedited basis.

(e)    The Debtor shall provide to the Bond Trustee a timely copy of each notice or report given to the DIP Lender, whether pursuant to the DIP Documents or otherwise. The Debtor shall provide the Bond Trustee such other information as the Bond Trustee reasonably requests.

11.    *No Obligation to Extend Credit*.  The DIP Lender has no obligation to make any loan under the DIP Documents unless (and subject to the occurrence of the Closing Date, as defined in the DIP Credit Agreement) all of the conditions precedent to the making of such extension of credit under the DIP Documents have been satisfied in full or waived by the DIP Lender in accordance with the terms of the DIP Credit Agreement.

12.    *Limitation on Charging Expenses*.  No costs or expenses of administration of the Chapter 11 Case or any Successor Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Bond Collateral pursuant to

section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written

consent of the DIP Lender or the Bond Trustee, as the case may be, and no consent shall be implied

from any other action, inaction or acquiescence by the DIP Lender or Bond Trustee, and nothing

contained in this Order shall be deemed to be a consent by the DIP Lender or Bond Trustee to any

charge, lien, assessment or claim against the DIP Collateral or the  Bond Collateral under section

506(c) of the Bankruptcy Code or otherwise.

13.      *Disposition of ~~DIP~~ Collateral*.  The Debtor shall not sell, transfer, lease, encumber

or otherwise dispose of any portion of the DIP Collateral, except as permitted by the DIP

Documents or consented to by the DIP Lender~~.~~, or any portion of the Bond Collateral, except as

permitted by the Bond Documents, consented to by the Bond Trustee, or, with respect to Bond

Collateral, as otherwise authorized by order of the Court.  Upon any disposition of any portion of

the DIP Collateral (other than any Release Parcel (as defined in the DIP Credit Agreement)), the

net cash proceeds thereof will be paid directly to the DIP Lender to the extent provided in the DIP

Credit Agreement until the DIP Obligations are satisfied in full. Upon any disposition of any

Release Parcel (as defined in the DIP Credit Agreement), the Release Prepayment Amount (as

defined in the DIP Credit Agreement) will be paid directly to the DIP Lender to the extent provided

in the DIP Credit Agreement until the DIP Obligations are satisfied in full~~.~~; provided that, for the

avoidance of doubt, no payment to the DIP Lender on account of a Release Payment amount shall

be satisfied, in any part, from Bond Collateral or proceeds thereof unless and until the Bond

Obligations have been satisfied in full.

14.      *Maintenance of ~~DIP~~ Collateral*.  Until the payment in full of all DIP Obligations

(excluding contingent indemnification obligations for which no claim has been asserted) and the

termination of the DIP Lender's obligation to extend credit under the DIP Facility, the Debtor shall

continue to maintain and insure the DIP Collateral as required under the DIP Documents.  The Debtor shall continue to maintain and insure the Bond Collateral consistent with existing practices.

15.   *Insurance Proceeds and Policies*.  As of the date of entry of this Order and to the fullest extent provided by applicable law, the DIP Lender shall be deemed to be and shall continue to be, as applicable, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtor that in any way relates to the DIP Collateral and in accordance with the priorities set forth herein.

17.16.  *Perfection of DIP Liens.*

(a)     The DIP Lender is authorized, but not required, to file or record mortgages, financing statements, notices of lien or similar instruments in any jurisdiction, including as may be reasonably required or deemed appropriate by the DIP Lender, under applicable local laws, to validate the liens and security interests granted to them under this Order and hereunder (the "Perfection Actions").  Whether or not the DIP Lender shall take such Perfection Actions, the liens, mortgages, and security interests granted under this Order and the other DIP Documents shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination.

(b)     A certified copy of this Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept a certified copy of this Order for filing and/or recording, as applicable, without any requirement to pay transfer or mortgage recording taxes.

(c)17.  *Automatic Stay.*  The Automatic Stay shall be modified to the extent necessary to permit the Debtor and, the DIP Lender and the Bond Trustee to take all actions, as applicable, referenced in subparagraphs (a) and (b) aboveor contemplated by this Order, including to (i) permit the Debtor to grant the DIP Liens and DIP Superpriority Claims; (ii) permit the Debtor to perform such acts as the DIP Lender may reasonably request to assure the perfection and priority of the liens and security interests granted herein; (iii) permit the Debtor to incur all liabilities and obligations to the DIP Lender under the DIP Documents, the DIP Facility, and this Order, as applicable; and (iv) authorize the Debtor to pay and the DIP Lender to retain and apply any payments made to it in accordance with the terms of this Order.

18.     *Preservation of Rights Granted under This Order.*

(a)     Subject to the Prior Permitted Liens, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to the DIP Lender against the DIP Collateral shall be permitted, ~~and~~ other than the claims and liens granted hereunder and, with respect to all other assets, no claim or lien shall be granted or permitted on any property of the Debtor's estate having a value in excess of $100,000~~.~~ (other than liens in Bond Collateral associated with the Bonds), while any of the DIP Obligations remain outstanding, and, except as otherwise expressly provided in this Order, the DIP Liens shall not be: (i) subject or junior to any lien or security interest in the DIP Collateral that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest in the DIP Collateral, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens on the DIP Collateral arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Debtor in the DIP Collateral.  As used in this Order, "Permitted Prior Liens" shall mean liens on the DIP Collateral that are valid and non-avoidable senior liens in existence immediately prior to the Petition Date or a valid and non-avoidable lien in existence immediately prior to the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, except that existence of a Permitted Prior Lien may result in an Event of Default under the DIP Documents if not otherwise expressly permitted thereunder.

(b)    If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Liens incurred prior to the actual receipt of written notice by the DIP Lender and Bond Trustee of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the DIP Liens, the Adequate Protection Liens or the Carve-Out Provisions.  The DIP Lender shall be entitled to, and is hereby granted, all the rights, remedies, privileges and benefits arising under section 364(e) of the Bankruptcy Code, this Order and the DIP Documents with respect to all DIP Obligations.

(c)    Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and all other rights and remedies of the DIP Lender or the Bond Trustee granted by the provisions of this Order and the DIP Documents and the Carve-Out Provisions shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, dismissing the Chapter 11 Case; (ii) the entry of an order approving the sale of any assets, including any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents);; or (iii) the entry of an order confirming a chapter 11 plan in the Chapter 11 Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Order and the DIP Documents shall continue in the Chapter 11 Case, in any Successor Case, and in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and all other rights and remedies of the DIP Lender and the Bond Trustee granted by the provisions of this Order and the

DIP Documents shall continue in full force and effect until the DIP Obligations or the Bond Obligations, as applicable, are indefeasibly paid in full, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated, and the Carve-Out shall continue in full force and effect.

19.     *Credit Bidding.*   In connection with any sale process authorized by the Court, whether effectuated through section 363, 725, or 1123 of the Bankruptcy Code, the DIP Lender may credit bid for any of the DIP Collateral up to the full amount of the outstanding DIP Obligations (other than any contingent obligations for which no claim has been asserted), as applicable, including any accrued and unpaid interest, expenses, fees, and other ~~DIP Obligations~~obligations (each such bid, a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code, subject to  the right of any party in interest under section 363(k) of the Bankruptcy Code to object to any such Credit Bid. The ~~Bondholders~~Bond Trustee shall also have the right to Credit Bid for any of the Bond Collateral in connection with any sale process authorized by the Court up to the full amount ~~due to~~of the ~~Bondholders~~obligations on the Bonds.

20.     *Proceeds of Subsequent Financing.*   If the Debtor, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in this Chapter 11 Case or any Successor Case shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Documents or this Order at any time prior to the repayment in full of all DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted) and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, then all the cash proceeds derived from such credit or debt shall immediately be paid directly to the DIP Lender to the extent provided herein and in the DIP Credit Agreement until the DIP Obligations are satisfied in full.

21.    *No Marshaling; 552 Waiver; Applications of Proceeds.*  In no event shall the DIP Lender, or Bond Trustee ~~or the Bondholders~~ be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Bond Collateral, except as provided in paragraph 7 and 10 hereof. In addition, the Debtor ~~shall waive~~has waived any "equities of the case" claims as against the DIP Lender, Bond Trustee, and the Bondholders under section 552(b) of the Bankruptcy Code.

22.    *Payment of Fees and Expenses.* The Debtor was and hereby is authorized to and shall pay the DIP Fees and Expenses, including the Deposit which has already been paid, in each case as provided for in this Order and the other DIP Documents.  Subject to the review procedures set forth in this paragraph ~~21~~22, payment of all DIP Fees and Expenses shall not be subject to allowance or review by the Court. Professionals for the DIP Lender entitled to payment under this Order shall not be required to comply with the U.S. Trustee fee guidelines, however any time that any such professional hereinafter seeks payment of fees and expenses from the Debtor prior to confirmation of a chapter 11 plan, such professional shall provide summary copies of its invoices including aggregate amounts of fees and expenses and total amount of time to the Debtor, the Bond Trustee and the U.S. Trustee (together, the "Review Parties").  Any objections raised by any Review Party with respect to such invoices must be in writing, limited to reasonableness, and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) business days after the receipt by the Review Parties (the "Review Period").  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the end date of the Review Period, the Debtor shall pay such invoices within five (5) business days thereafter.  If an objection to a professional's invoice is received within the Review Period, the Debtor shall promptly pay the undisputed amount of the invoice, without the necessity of filing formal fee applications,

regardless of whether such amounts arose or were incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the Debtor is authorized and directed to pay, including application of the previously paid Deposit, on the Closing Date (as defined in the DIP Credit Agreements) the DIP Fees and Expenses incurred on or prior to such date without the need for any professional engaged by, or on behalf of, the DIP Lender to first deliver a copy of its invoice or other supporting documentation to the Review Parties (other than the Debtor). If the Debtor is invoiced for DIP Fees and Expenses incurred prior to the Closing Date after closing, the Debtor shall pay such DIP Fees and Expenses promptly after receipt of invoice. Invoices delivered to the Debtor and other Review Parties may be redacted for privilege. No attorney or advisor to the DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

23. *Released Parties.* Effective as of the date of entry of this Order, the Debtor absolutely and unconditionally releases and forever discharges and acquits the DIP Lender, the Bond Trustee, the Bondholders, and their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, each in such capacity (collectively, the "Lender Released Parties") from any and all obligations and liabilities to the Debtor (and its successors and assigns) and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type (in each case,

arising on or prior to the date of this Order), whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, in each case, arising in connection with or relating to the DIP Facility, the DIP Liens and security interests or any of the DIP Documents, or the Bonds ~~and,~~ the Bond Collateral or any of the Bond Documents; *provided*, that nothing herein shall relieve the Lender Released Parties from fulfilling their obligations under the DIP Documents or ~~Bonds~~the Bond Documents, as the case may be, and/or this Order or release the DIP Lender, Bond Trustee, or Bondholders from fraud or gross negligence.

24.    *Challenge Procedures.*  Subject to the challenge rights described in this Order, the Debtor's stipulations respecting the Bonds in the Interim Order and herein and the release in paragraph 23 shall be binding upon the Debtor and its estate and any representatives, successors and assigns thereto (including, without limitation, any chapter 7 or chapter 11 trustee in the Chapter 11 Case or any successor case).  Nothing in this Order prejudices the right of any Committee or other party in interest, in each case, if and to the extent granted standing by the Court, to seek to avoid, object to or otherwise challenge ~~(each, a "Challenge")~~ the findings or Debtor's stipulations or to challenge, initiate any proceeding or assert any claim or cause of action with respect to (i) the validity, enforceability, extent, priority or perfection of the Bond Documents or the pre-petition liens in Bond Collateral; or (ii) the validity, allowability, priority, secured status or amount of the Bond Obligations~~,~~ (each, a "Challenge"), no later than the date that is the earlier of (60) days after the entry of this Order or (90) days after the Petition Date (such time period, the "Challenge Period").  If no Challenge is timely brought within the Challenge Period, then: (i) any Challenge by any party in interest shall be deemed to be forever released, waived and barred; (ii) the

obligations on account of the Bonds shall be deemed to be fully allowed and secured (to the extent of the value of Bond Collateral) within the meaning of section 506 of the Bankruptcy Code; and (iii) the Debtor's stipulations shall be binding on all parties in interest, including any trustee subsequently appointed in the Chapter 11 Case (or any successor case).  Nothing in this Order vests or confers on any person or entity, including any Committee, standing or authority to bring, pursue or settle any claim or cause of action belonging to the Debtor or its estate with respect to the Bond Documents, the Bonds or the Bond Collateral.

25.    *Events of Default; Exercise of Remedies*.

25.(a)  Except as otherwise provided herein, or to the extent the DIP Lender may otherwise agree in writing, (a) any violation of any of the terms of this Order or (b) any occurrence of an "Event of Default" under the DIP Credit Agreement or the other DIP Documents, as applicable, shall be deemed to be an Event of Default under this Order.  Unless this Court orders otherwise, the Automatic Stay shall be modified to the extent necessary to permit the DIP Lender to exercise, upon the occurrence and during the continuance of an Event of Default (as defined herein and in the DIP Credit Agreement), all rights and remedies provided for under the DIP Documents, including accelerating the DIP Obligations, but subject to the terms of this Order; provided that no less than five (5) business days' prior written notice (which may run concurrently with any notice required to be provided under the DIP Documents following an Event of Default) (the "Remedies Notice Period") shall first be provided via email to the DIP Notice Parties, which notice shall also be filed on the docket of the Court (the Carve-Out Trigger Notice shall constitute such notice).  During the Remedies Notice Period, the Debtor shall be entitled to contest before the Bankruptcy Court that an Event of Default has occurred, and the Bankruptcy Court shall address such matter on an expedited basis.  On the first calendar day following the end of the

Remedies Notice Period, except as provided herein or unless otherwise ordered by this Court, the Debtor will immediately cease using the DIP Lender's cash collateral and the proceeds of the DIP Facility, and the automatic stay under section 362 of the Bankruptcy Code shall be deemed immediately modified and terminated so that the DIP Lender may exercise the rights and remedies available under the DIP Documents or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the DIP Collateral in order to collect any amounts payable to the DIP Lender pursuant to this Order and the other DIP Documents and apply the same to the DIP Obligations.

(b)     The authority to use Bond Collateral pursuant to this Order, including under the Bond Collateral, shall terminate upon the occurrence and continuation of any of the following events, unless waived in writing by the Bond Trustee: (i) this Order is reversed, vacated or stayed; (ii) the appointment of a chapter 11 trustee or an examiner in the Chapter 11 Case; (iii) expiration of any Remedies Notice Period; (iv) the Debtor uses or seeks to use Bond Collateral for any purpose or in a manner other than permitted in this Order and in accordance with the Approved Budget; (v) the Debtor seeks to incur indebtedness secured by Bond Collateral on a priming basis or to sell any assets constituting Bond Collateral without the prior written consent of the Bond Trustee; (vi) the Debtor fails to cure any material non-compliance with this Order within five (5) business days after written notice from the Bond Trustee; or (vii) the dismissal or conversion of the Chapter 11 Case.  The Debtor's and Bond Trustee's rights as to continued use of Bond Collateral thereafter are reserved.

26.     *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the other DIP Documents, the provisions of this Order shall govern.

51638959.2

27.    *Binding Effect; Successors and Assigns.* The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, including, without limitation, the DIP Lender, the Bond Trustee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Case, the Debtor and its respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender, the Bond Trustee and the Debtor and its respective successors and assigns.

28.    *Exculpation; No Liability to Third Parties.* Nothing in this Order, the other DIP Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or Bond Trustee of any liability for any claims arising from the prepetition or postpetition activities of the Debtor in the operation of its business, or in connection with its restructuring efforts.  ~~The~~Neither the DIP Lender nor the Bond Trustee shall ~~not~~, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Bond Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral and Bond Collateral shall be borne by the Debtor.  ~~In its capacity as~~Neither the DIP Lender nor the Bond Trustee, including in connection with exercising any rights or remedies as and when permitted pursuant to this Order, ~~the DIP Lender~~ shall ~~not~~ be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or

management of the Debtor (as such terms, or any similar terms, are used in the United States

Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et*

*seq.*, as amended, or any similar federal or state statute), nor shall the DIP Lender or Bond Trustee

owe any fiduciary duty to the Debtor, its creditors or estates, or shall constitute or be deemed to

constitute a joint venture or partnership with the Debtor.

29.    *Effectiveness*.  This Order shall constitute findings of fact and conclusions of law

in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro*

*tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rule

4001(a)(3), 6004(h), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or

Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and

enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

30.    *Modification of DIP Documents*. The Debtor is hereby authorized, without further

order of this Court, to enter into agreements with the DIP Lender providing for any consensual

non-material amendments, modifications, waivers or supplements to the DIP Documents, or of

any other amendments, modifications, waivers or supplements to the DIP Documents necessary to

conform the terms of the DIP Documents to this Order, in each case consistent with the amendment

provisions of the DIP Documents; provided, however, that notice of any ~~material~~ amendment,

modification, waivers or supplement to the DIP Documents shall be provided to the DIP Notice

Parties~~, each of whom~~; and provided, further, that if such amendment, modification, waiver or

supplement is material, than each Notice Party shall have five (5) business days from the date of

such notice within which to object, in writing, to the amendment, modification, waiver or

supplement.  If any such party timely objects to any such material amendment, modification,

waivers or supplement to the DIP Documents, the material amendment, modification, waiver or

51638959.2

supplement shall only be permitted pursuant to an order of the Court.  The foregoing shall be without prejudice to the Debtor's right to seek approval from the Court of ~~a material~~any amendment, modification, waiver or supplement agreed to by the DIP Lender on an expedited basis.

31.    *Modification of Order*.  The Debtor irrevocably waives any right to seek any modification or extension of this Order without the prior written consent of the DIP Lender and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender.

32.    *No Waiver*.  The failure of the DIP Lender or Bond Trustee to seek relief or otherwise exercise its rights and remedies, as applicable, under the DIP Documents, this Order or otherwise, shall not constitute a waiver of any of the DIP Lender's or Bond Trustee's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Lender or Bond Trustee under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the DIP Lender or Bond Trustee to (i) request conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Case, or the appointment of a trustee in the Chapter 11 Case, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code and this Order, a plan, or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable or otherwise) the DIP Lender or Bond Trustee may have pursuant to this Order, the DIP Documents or applicable law.  Nothing herein shall constitute a finding by the Court or an acknowledgement by the Bond Trustee that the adequate protection granted herein does in fact adequately protect the Bond Trustee.

33.    *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

34.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

35.    *No Third Party Rights*. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

36.    *Discharge.*  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization or liquidation in the Chapter 11 Case, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such plan of reorganization.  No plan of reorganization shall be confirmed pursuant to section 1129 unless the DIP Obligations are paid in full or the DIP Lender otherwise consents.

37.    *Survival.*  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Chapter 11 Case; (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Chapter 11 Case or any Successor Case; provided, that in no event shall an order be entered dismissing the Chapter 11 Case or any Successor Case or converting the Chapter 11 Case to a case under chapter 7 on less than 30 days' prior written notice to the DIP Lender.  The terms and provisions of this Order shall continue in the Chapter 11 Case, in any Successor Case, or following dismissal of the Chapter 11 Case or any Successor Case

notwithstanding the entry of any orders described in clauses (a)-(d) above, and all claims, liens, security interests, and other protections granted to the DIP Lender and the Bond Trustee pursuant to this Order and/or the DIP Documents shall maintain their validity and priority as provided by this Order until, in respect of the DIP Facility, all the DIP Obligations or, in respect of the Bonds, all the Bond Obligations, have been paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted).

38.    *Necessary Action*. The Debtor, the DIP Lender and Bond Trustee are authorized to take all actions as are necessary or appropriate to implement the terms of this Order.

39.    *Retention of Jurisdiction*. The Court shall retain jurisdiction to enforce the provisions of this Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

521912929v.2

51638959.2