CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
(516) 357-3700

*Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                                         :   Chapter 11
                                                               :
THE COLLEGE OF SAINT ROSE,                                     :   Case No. 24-11131 (REL)
                                                               :
                Debtor.                                        ::
---------------------------------------------------------------x

## REPLY TO LIMITED OBJECTION TO BID PROCEDURES FILED BY ALBANY COUNTY PINE HILLS LAND AUTHORITY

The College of Saint Rose, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its attorneys, Cullen and Dykman LLP, hereby submits this reply to the limited objection (the "Objection") filed by the Albany County Pine Hills Land Authority (the "Authority") to the Debtor's Motion for Entry of Orders (I) (A) Approving Bidding Procedures for the Sale of the Debtor's Campus; (B) Approving the Form of Purchase Agreement; (C) Approving Bid Protections in Favor of Any Stalking Horse Purchaser; (D) Approving the Form and Manner of Service of the Auction Notice; and (E) Scheduling an Auction;  (II) Approving Sale of the Campus Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (III) Granting Related Relief (the "Motion"). In support of this Reply, the Debtor respectfully represents as follows:

**INTRODUCTION**

1. On October 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2. The Debtor remains in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Northern District of New York in this chapter 11 case.

4. Simultaneously with the filing of its petition, the Debtor filed the Declaration of Marcia J. White pursuant to Local Bankruptcy Rule 2015-2 (the "First Day Declaration")

## THE MOTION

5. On the Petition Date, the Debtor filed the Motion[1], seeking to establish the bidding procedures and the sale process by which the Debtor will look to sell its campus consisting of 72 buildings on 92 parcels of real estate in Albany, New York (the "Campus"). As the Court has noted at recent hearings, the relief sought in the Motion is the linchpin of the Debtor's bankruptcy process.

6. The bid procedures (the "Procedures") sought to be approved through the Motion contain several conditions for a bidder to be a "qualified bidder" to participate in the process, as is standard in virtually every bankruptcy sale process. The Procedures here have eighteen (18) requirements, the majority of which are ministerial and/or procedural conditions. Substantively, the Procedures require that a good faith deposit of five (5%) of the purchase price be made at the time of a bid (the "Deposit").

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Motion.

7. As the Court has been advised previously, the Authority was formed by the New York State Legislature for the sole purpose of exploring development options and the purchase of the Campus. The Authority was created through the passage of legislation by the NYS Legislature in June and signed by Governor Hochul on June 30, 2024, although it only convened in September 2024. The Debtor has been forthcoming in its desire to enter into a Stalking Horse Agreement with the Authority, as it sees this as the best path forward to a sale of the entire Campus. Despite this desire, the Authority still needs to participate in the process subject to the same conditions and requirements of other bidders.

8. The Authority filed a limited Objection to the Motion, requesting that it be exempt from "certain conditions required of qualifying bidders." Objection, ¶6. To that end, the Authority asserts that any bid it would make "will not meet several of the proposed criteria necessary for [the Authority] to be considered a "Qualified Bidder." Objection, ¶5. Notwithstanding this broad request for exemption, the Authority only cites to 2 of the 18 conditions of qualified bids as ones that it will be unable to achieve. The Debtor disagrees that the Authority does not have the ability to satisfy those (or any other) qualifications for bidding.

## THE OBJECTION SHOULD BE OVERRULED

9. First, it is worth noting that the Authority draws a distinction between making a stalking horse bid (i.e., by December 4, 2024) and making a bid by the proposed bid deadline of December 6, 2024. Its Objection creates the sense that if it is the stalking horse bidder, the qualifications in the Procedures would be obviated. That is not the case, as the qualifications are equally pertinent in a stalking horse bid.

10. Regardless of the nature of its bid, the Authority appears to be asking for a broad exemption from the qualification requirements, but other than one or two conditions,

it does not assert what it requests exemption from. Its broad request must certainly be denied. In reality, it appears that the main objection of the Authority is to the requirement that they pay a Deposit, asserting that the bond financing process will not be completed in time to do so.[2] Despite their claims otherwise, the Authority is not unique in its alleged inability to put up funds. Upon information and belief, the Authority has access to funding from Albany County that it can avail itself of in connection with the Deposit. Indeed, the Authority has retained consultants, including legal counsel, and presumably is paying such consultants. The same funds being utilized to pay the consultants, can perhaps be used to fund a Deposit. If the Authority desires to be part of the process, it must participate in the process fully, and not dictate the terms on which it will participate.

11. Moreover, allowing the Authority exemption from making a Deposit opens the door to any bidders making the same request. The Deposit is essential. It not only establishes that a bidder is "real" by putting up money to not only participate in the process, but also serves to ensure that the successful bidder will close the transaction. Waiving the Deposit for the Authority may also send a message (albeit incorrectly) that a sale to the Authority is a fait accompli, thereby discouraging bidding from others. Permitting the Authority to avoid making the Deposit sets an untenable precedent here, one which should be avoided to every extent possible. While certain terms of the sale may need to be modified if the Authority is the successful bidder (for instance, since it needs to sell bonds to fund the purchase, it will be unable to close a transaction within 30 days), paying the Deposit is absolutely not one of them.

---

[2] The Authority also suggests that it will not have the requisite corporate authority to enter a transaction until its bond financing process is complete. While the Debtor does not believe that the bond financing is the equivalent of corporate authority, the Debtor would deem the condition of authority satisfied by the enactment of the legislation and the constitution of the Authority in the first place, subject to approval of the Consultation Parties.

12. Finally, to the extent that the Authority is asserting that it does not have sufficient time to make a bid by the proposed deadline, the Debtor submits that, although the Authority only convened in September, it was created in June. In those intervening months, the Debtor believes that the Authority (or its members) has done diligence to put it in a position to make a bid for the Campus and that it is fully able to make a bid by the proposed deadline. The deadlines proposed in the Motion are necessary under the terms of the Debtor's DIP loan and the Debtor's budgetary constraints.

13. Accordingly, the Debtor submits that the Objection should be overruled and that the Procedures, and the Motion, should be approved. The Debtor and the Consultation Parties will work with the Authority in connection with any procedural changes needed (i.e., the closing deadline), but substantively, the Procedures should apply equally to the Authority and any other bidder.

WHEREFORE, the Debtor respectfully requests that the Court enter the Bidding Procedures Order and grant the Motion in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: Albany, New York
November 8, 2024

CULLEN AND DYKMAN LLP

By: /s/    Bonnie Pollack
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
(516) 357-3700
mroseman@cullenllp.com
bpollack@cullenllp.com

*Counsel for The College of Saint Rose*

22484.3 21235606v1