So Ordered.

Signed this 15 day of November, 2024.



_____

Robert E. Littlefield, Jr.

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
 --------------------------------------------------------------------

In re:

THE COLLEGE OF SAINT ROSE,

              Debtor.

Chapter 11

Case No. 24-11131  (REL)

 --------------------------------------------------------------------

**ORDER (I) (A) APPROVING BIDDING PROCEDURES FOR
THE SALE OF THE DEBTOR'S CAMPUS; (B) APPROVING FORM
OF PURCHASE AGREEMENT; (C) APPROVING BID PROTECTIONS IN
FAVOR OF ANY STALKING HORSE PURCHASER; (D) APPROVING THE FORM
AND MANNER OF SERVICE OF THE AUCTION NOTICE; AND (E)
<u>SCHEDULING AN AUCTION; AND (II) GRANTING RELATED RE RELIEF</u>**

Upon the motion (the "Motion")[1] filed by The College of Saint Rose, the above captioned debtor and debtor-in-possession (the "Debtor"), by and through its attorneys, Cullen and Dykman LLP, for entry of an order (this "Bidding Procedures Order"), pursuant to sections 105, 363, 365, and 503 of chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101-1532, et seq. (the "Bankruptcy Code"), and Rules 2002, 6004, 9006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) approving bidding procedures ("Bidding Procedures"), substantially in the form annexed hereto as Exhibit "1", related to the sale and proposed auction of the Campus pursuant to sections 363(b), (d) (f), and (m) of the Bankruptcy Code; (b) approving the proposed asset purchase agreement (the "Purchase Agreement"), a copy of which is annexed to the Motion as Exhibit "B", solely to the extent of its use as a form which all bidders for the Campus must follow; (c) approving proposed bid protections in favor of any stalking horse purchaser (a "Stalking Horse Purchaser"), if one is selected; (d) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to approve the sale of the Campus; (e) approving the form and manner of notice (the "Auction Notice") of the Auction and Sale Hearing substantially in the form annexed to the Motion as Exhibit "C"; and due and sufficient notice of the hearing on the Motion (the "Bidding Procedures Hearing") and the relief sought therein having been given under the particular circumstances; and upon the declaration of David Carlos in support of the Motion; and it appearing that no other or further notice need be provided; and a Limited Objection (the "Limited Objection") of the Albany County Pine Hills Land Authority (the "Authority") having been filed to the Motion; and the Debtor having filed a Reply to the Limited Objection; and the Court having heard the arguments with respect to the Limited Objection proffered by the Debtor, the Authority and the Trustee for the Pre-Petition Bondholders; and the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

22484.3 21176667v2

Court having determined over objection to exempt the Authority from the requirement that it make

the Good Faith Deposit (as defined in the Bidding Procedures) but otherwise approving the

Bidding Procedures requested by the Debtor; and it appearing that the relief requested in the

Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest;

and after due deliberation thereon and good cause appearing therefore, it is hereby:

**FOUND, CONCLUDED AND DETERMINED THAT:**[2]

A.      This Court has jurisdiction over the Motion and the relief requested therein pursuant

to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion and the relief requested therein is a

core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409.

B.      The relief granted herein is in the best interests of the Debtor, its estate and

creditors, and other parties in interest.

C.      Due, sufficient and adequate notice of the Motion and the Bidding Procedures

Hearing and the relief granted in this Bidding Procedures Order has been given in accordance with

applicable law and orders of this Court and such notice is appropriate in light of the circumstances

and the nature of the relief requested, and no other or further notice thereof is required.

D.      The proposed Auction Notice is reasonably calculated to provide timely and

adequate notice to the Debtor's creditors and those persons potentially interested in bidding on the

Campus, and no further notice is necessary or required upon service of the Auction Notice by first-

class mail postage prepaid or, if no mailing address is available, via electronic mail, upon (i) the

U.S. Trustee, (ii) counsel for the Committee, if one is appointed, (iii) all known creditors of the

Debtor, (iv) the indenture trustee for the Bonds; (v) the Debtor's DIP Lender, SummitBridge

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact, when appropriate. See FED. R. BANKR. P. 7052.

National Investments VIII LLC (the "<u>DIP Lender</u>"), (vi) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (vii) the following taxing and regulatory authorities: (a) the United States Attorney for the Northern District of New York, (b) the Attorney General of the State of New York, not-for-profit office, (c) United States Department of Education, (d) New York State Department of Education, (e) the IRS, (f) the NYS Tax Dept., and (g) the Securities and Exchange Commission; (viii) all parties who are known to assert a lien, claim, encumbrance or other interest on any portion of the Campus; and (ix) all parties identified by the Debtor as potentially having an interest in acquiring some or all of the Campus (collectively, the "<u>Notice Parties</u>").

E.      The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, including this Court's (i) approval of the Bidding Procedures, attached hereto as Exhibit 1, (ii) approval of the form of Purchase Agreement, (iii) approval of the Bid Protections in favor of a Stalking Horse Purchaser, if one is selected and is not the Successful Bidder at an Auction, and (iv) approval of the form and manner of service of the Auction Notice.

F.      The Debtor has articulated good and sufficient reasons for, and the best interests of the Debtor's estate will be served by, this Court scheduling a Sale Hearing to consider whether to grant the remainder of the relief requested in the Motion, including approving and authorizing the proposed Sale of the Campus, free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon, pursuant to the Purchase Agreement, as modified to incorporate the terms of any Successful Bid.

G.      The Termination Fee, to the extent payable under certain circumstances set forth in the Motion and in the Bidding Procedures, is (i) an actual and necessary cost and expense of preserving the Debtor's estate within the meaning of section 503(b) of the Bankruptcy Code, (ii)

4

providing a material benefit to the estate by enabling the Debtor to obtain a commitment from a

Stalking Horse Purchaser for its money, time and effort formulating and negotiating an offer for

the Campus, and (iii) fair and reasonable when considering the potential amount of time, effort,

cost, and expense that a Stalking Horse Purchaser will likely incur in negotiating a Stalking Horse

Agreement.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**

**THAT:**

1.      The Motion is GRANTED, to the extent set forth herein.

2.      All objections to entry of this Bidding Procedures Order or to the relief provided

herein and requested in the Motion that have been withdrawn, waived, resolved, or settled are

hereby denied and overruled in their entirety.

### The Bidding Procedures

3.      The Bidding Procedures, as set forth in Exhibit 1 hereto and incorporated herein by

reference, are hereby APPROVED in all respects and shall govern all bids and bid proceedings

relating to the Campus, and the Debtor is authorized to take any and all actions necessary or

appropriate to implement the Bidding Procedures.  Notwithstanding the foregoing, the Authority

is exempt from the requirement of making a Good Faith Deposit in connection with any Bid which

may be submitted by the Authority. The failure to specifically include or reference any particular

provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair

the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures

be authorized and approved in their entirety.

4.      As further described in the Bidding Procedures, each Bid must be delivered on or

before **December 6, 2024 at 5:00 p.m. (EST)** (the "<u>Bid Deadline</u>").

5.      The Debtor is authorized to extend the deadlines set forth in this Bidding Procedures Order and/or adjourn, continue or suspend the Auction and/or the Sale Hearing as it may reasonably determine to be in the best interest of its estate, in consultation with the Consultation Parties.

## The Auction

6.      The Auction, if necessary, shall commence at 10:00 a.m. (prevailing Eastern Time) **December 12, 2024** at the offices of Cullen and Dykman LLP, 80 State Street, Suite 900, Albany, New York 12207, or such other place and time as the Debtor shall notify all Qualified Bidders and the Consultation Parties; provided, however, in the event that no Qualified Bids are received by the Bid Deadline, then the Auction shall be cancelled, or if the only Qualified Bid is the Bid of the Stalking Horse Purchaser, then the Stalking Horse Agreement shall be the Successful Bid for the Campus and the Debtor shall not be required to conduct an Auction, and in such event the Debtor shall proceed with the approval of the Stalking Horse Agreement with the Stalking Horse Purchaser as the Successful  Bidder.

## The Termination Fee

7.      The Debtor is authorized and directed to pay the Termination Fee, to the extent one is incurred in accordance with the Bidding Procedures and solely in the event of the consummation of an Alternate Transaction for the Campus, from the first proceeds of such transaction to the extent set forth in any Stalking Horse Agreement, without further order of the Court.

8.      The terms of any Stalking Horse Agreement shall govern (i) the conditions under which the bid of the Stalking Horse Purchaser is terminable and (ii) the Termination Fee payable in the event of an Alternate Transaction for the Campus.

22484.3 21176667v2

## Auction Notice

9.      The Auction Notice substantially in the form attached to the Motion as Exhibit C is hereby approved.

10.     Not later than three (3) days after the entry of this Bidding Procedures Order, the Debtor will cause a copy of this Bidding Procedures Order, the Bidding Procedures and the Auction Notice, to be sent by first-class mail postage prepaid to the Notice Parties or, if no mailing address is available, via electronic mail.

## Objections to Motion

11.     Objections, if any, to the Motion must be made in writing, must state with particularity the reasons for the objection or response, and must be filed with the Clerk of the Bankruptcy Court, with copies delivered to the Bankruptcy Court and received by the Chambers of the Honorable Robert E. Littlefield, Jr., United States Bankruptcy Judge, at the United States Bankruptcy Court, Northern District of New York, 445 Broadway, Suite 330, Albany, New York, 12207, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and basis of the objection and the specific grounds therefore and must be served upon: (a) United States Trustee for Northern District New York, 10 Broad Street, Room 105, Utica, New York 13501; (b) counsel to the Debtor,  Cullen and Dykman LLP, 80 State Street, Suite 900, Albany, New York 12207, Attn: Matthew G. Roseman, Esq. and Bonnie L. Pollack, Esq.; (c) counsel to the DIP Lenders, Eversheds Sutherland (US) LLP, The Grace Building, 40th Floor, 1114 Avenue of the Americas, New York, NY 10036, Attn. Todd Meyers, Esq. and Sameer Alifarag, Esq.; (d) counsel to the indenture trustee for the Bonds, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn: Ian A. Hammel, Esq. and P. Miyoko Sato, Esq.; and (e) counsel to any the Committee

22484.3 21176667v2

appointed, so as to be received no later than 12:00 p.m. (prevailing Eastern Time) on **December 17, 2024** (the "Sale Objection Deadline").

## The Sale Hearing

12.     The Sale Hearing shall be held before the Honorable Robert E. Littlefield, Jr., United States Bankruptcy Judge, on **December 19, 2024 at 1:30 p.m. (EST)** at the United States Bankruptcy Court for the Northern District of New York, 445 Broadway, Suite 330, Albany, New York, 12207, at which time this Court shall consider (i) approval of the Sale of the Campus to a Successful Bidder; (ii) the entry of the proposed Sale Order, substantially in the form attached to the Motion as Exhibit D; (iii) any issues or objections that are timely interposed by any parties; and (iv) such other or further relief as this Court may deem just or proper.

13.     The Sale Hearing may be adjourned by the Court upon request of the Debtor, in consultation with the Consultation Parties and the Successful Bidder, without further order of this Court, in which event a notice of adjournment will be filed with this Court and served on all Qualified Bidders and Consultation Parties or by announcing such adjournment on the record of the Sale Hearing.

## Additional Provisions

14.     The Debtor is authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the requirements established by this Bidding Procedures Order.

15.     Nothing contained in this Bidding Procedures Order precludes any party in interest from objecting to the Sale in accordance with the objection procedures set forth herein and no party shall be deemed to have consented to the Sale by virtue of not having objected to the Motion.

22484.3 21176667v2

16.    The Debtor is hereby authorized and empowered to take such actions as may be reasonably necessary to implement and effect the terms and requirements established by this Bidding Procedures Order.

17.    This Bidding Procedures Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

18.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7052, 9014 or otherwise, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

19.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order.

### ###

# **Exhibit 1**

## BIDDING PROCEDURES AND TERMS AND CONDITIONS OF SALE

These bidding procedures (the "Bidding Procedures") set forth the process by which The College of Saint Rose, the debtor and debtor-in-possession herein (the "Debtor" or the "Seller") shall conduct a sale (the "Sale") by auction (the "Auction") of certain real property consisting of the parcels itemized on Schedule A hereto (the "Campus"), in whole or in Lots (as hereinafter defined), free and clear of liens, claims and encumbrances.

On November 13, 2024, the United States Bankruptcy Court for the Northern District of New York (the "Court") authorized the Seller to determine the highest and otherwise best offer(s) for the Campus through the process and procedures set forth below.

The Court presides over the Seller's chapter 11 bankruptcy case (the "Chapter 11 Case") captioned *In re The College of Saint Rose,* Ch. 11 Case No. 24-11131 (Bankr. N.D.N.Y.).

On November [• ], 2024, the Court entered an order (the 'Bidding Procedures Order") granting the Seller's motion (the' Bidding Procedures Motion")[1] insofar as it sought approval of the Bidding Procedures. The Bidding Procedures Order and the order approving the Sale are referred to herein, collectively, as the "Sale Orders."

The Seller reserves the right to enter into and publicly announce an agreement (the "Stalking Horse Agreement") with a stalking horse purchaser (the "Stalking Horse Purchaser") in consultation with the Consultation Parties provided Seller must do so on or before December 4, 2024. In that event, the Stalking Horse Agreement will be filed with the Court and the bidding will continue as set forth herein.

## I.    PROPERTY TO BE SOLD

The Bidding Procedures Motion contemplates one or a combination of multiple offers to purchase the Campus, in whole or in lots.  A party may participate in the bidding process by submitting a Bid (as defined below) for the entire Campus or for smaller subsets of the Campus (as described in more detail below, the "Lots").

Subject to the terms of the Sale Orders, and with all rights of the Consultation Parties (as defined below) reserved, all of the Seller's right, title and interest in and to the Campus shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Liens"), with such Liens to attach to the proceeds of the Sale(s) with the same validity and priority as such Liens applied against the Campus or the Lots, except as otherwise specifically provided in an Asset Purchase Agreement (as defined below) submitted by a Successful Bidder (as defined below) (including any exhibits or schedules thereto) and consented to by the Secured Parties (as defined below) and reflected in the Sale Orders.

---

[1]  Capitalized terms used but not defined herein have the meaning ascribed to them in the Bidding Procedures Motion.

## II.    THE CONSULTATION PARTIES

The Seller will consult (a) (i) SummitBridge National Investments VIII LLC and (ii) the indenture trustee for the Bonds (each a "Secured Party" and collectively, the "Secured Parties•), (b) any official committee of unsecured creditors appointed to represent unsecured creditors in the Chapter 11 Case pursuant to Bankruptcy Code Section 1102 (the "Committee"), and (c) each of their respective counsel and advisors (each, a "Consultation Party" and collectively, the "Consultation Parties') as provided in these Bidding Procedures; provided, however, that the Seller shall not be required to consult with any Consultation Party during the Auction process to the extent such Consultation Party has submitted a Bid (as defined below) or has had a Bid submitted on its behalf for so long as such Bid remains open, if the Seller determines, in its reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection or determination would be likely to have a chilling effect on potential bidding or otherwise be contrary to the goal of maximizing value for the Seller's estate from the sale process; provided, further, however, that no Consultation Party shall independently communicate with any prospective purchaser, Potential Bidder (as defined below), or Bidder (as defined below), in each case, without the prior express consent of Seller.

To the extent the Bidding Procedures require the Seller to consult with any Consultation Party in connection with making a determination or taking an action, or in connection with any other matter related to the Bidding Procedures or the Auction, the Seller will do so in a regular and timely manner prior to making such determination or taking such action.

Subject to the terms of any Orders entered in the Chapter 11 Case, after consultation with the Consultation Parties, and with all rights of the Consultation Parties to seek or oppose any relief in the Chapter 11 Case reserved, the Seller shall have the right and obligation to make all decisions regarding Bids and the Auction as provided herein as it determines to be in the best interest of its estate.

## III.    BIDDING PROCESS

### A.    Overview

The Seller and its advisors will, subject to the other provisions of these Bidding Procedures, in consultation with the Consultation Parties:

1.    coordinate the efforts of Potential Bidders (as defined below) in conducting their due diligence investigations;

2.    receive offers from Bidders (as defined below);

3.    determine whether any person is a Qualified Bidder (as defined below); and

4.    conduct the Auction and further negotiate any offers made to purchase the Campus, either as a whole or in Lots.

B.      Key Dates

The Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Seller and to submit competing bids for the Campus, either as a whole or in Lots.  The Seller will assist Potential Bidders in conducting their respective due diligence investigations and may accept Bids until **December 6, 2024 at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

The key dates for the Sale process are as follows:[2]

| | |
|---|---|
| December 4, 2024 at 5:00 p.m. EST | **Stalking Horse Selection Deadline:** Due date to enter into a Stalking Horse Agreement. |
| December 6, 2024 at 5:00 p.m. EST | **Bid Deadline:** Due date to submit a Qualified Bid and Good Faith Deposit (each as defined below) |
| December 12, 2024 at 10:00 a.m. EST | **Auction:**  To be held at the offices of Cullen and Dykman LLP, 80 State Street, Suite 900, Albany, New York 12207 |
| December 13, 2024 at 4:00 p.m. EST | **Deadline to File Results of Auction** |
| December 17,  2024 at 12:00 p.m. EST | **Sale Objection Deadline** |
| December 19, 2024 at 1:30 p.m. | **Sale Hearing:**  To be held at the United States Bankruptcy Court for the Northern District of New York, 445 Broadway, Suite 330, Albany, NY  12207 |

C.      Access to Diligence Materials

To participate in the bidding process either as a Stalking Horse Purchaser or to effectuate on alternative sale transaction for all or a portion of the Campus (a "Transaction") and to receive access to due diligence materials (the "Diligence Materials"), a party must submit to the Seller an executed confidentiality agreement in substantially the same form as that which was previously

---

[2]These dates are subject to extension or adjournment as provided for herein and in consultation with the Consultation Parties.  The schedule set forth above may be delayed and the qualification of bids may be  relaxed in the event that the Seller, in consultation with the Consultation Parties, determines that additional time or adjustment to qualifications will likely result in greater overall value for the Seller's estate based on an expression(s)  of  interest or bid(s) received from an identified party which the Seller, in consultation with the Consultation Parties, believes  could  be a Qualified Bid (as hereinafter defined).

circulated to Prospective Purchasers, and otherwise in form and substance satisfactory to the Seller (a "Confidentiality Agreement").

A party who executes such a Confidentiality Agreement for access to Diligence Materials shall be a "Potential Bidder." The Seller will afford any Potential Bidder the time and opportunity to conduct reasonable due diligence in accordance with a diligence protocol determined by the Seller and its advisors; provided, however, that the Seller shall not be obligated to furnish any due diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid (as defined below) on or before the Bid Deadline and may, in consultation with the Consultation Parties, limit the amount of further due diligence available to Qualified Bidders after the Bid Deadline.

Neither the Seller nor its representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

All due diligence requests must be directed to the Seller's real estate advisors, Jones Lang LaSalle Brokerage, Inc., Attn: David Carlos (David.Carlos@jll.com).

D.    Due Diligence from Bidders

Each Potential Bidder and each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Seller or its advisors regarding such Potential Bidder or Bidder, as applicable, and its contemplated Transaction. Failure by a Potential Bidder or Bidder to comply with requests for additional information and due diligence access may be a basis for the Seller to determine that such Bidder is not a Qualified Bidder.

## IV.    AUCTION QUALIFICATION PROCESS

A.    Qualifying Bids

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be reasonably determined by the Seller, in consultation with the Consultation Parties, to satisfy each of the following conditions:

1.    Good Faith Deposit: Each Bid must be accompanied by a cash deposit, paid by wire transfer of immediately available funds or a certified check, in the amount of five percent (5%) of the purchase price contained in the Asset Purchase Agreement (as defined below), which deposit shall be held in an escrow account to be established by the Seller (the "Good Faith Deposit"). In addition, each Potential Bidder must also supplement its Good Faith Deposit by an additional one and one-half (1.5%) percent of the purchase price contained in the Asset Purchase Agreement with the Seller in the form of a certified check or wire transfer before the Auction. Notwithstanding anything herein to the contrary, the **Albany County Pine Hills Land Authority** is exempt from the requirement of making the Good Faith Deposit in connection with any Bid it may make.

2.    Higher and Better Terms: In connection with any Bid for the Campus, either

4

in whole or for the Lots, such Bid must be on terms that the Seller, in its business judgment and after consulting with the Consultation Parties, determines is higher and better for the Seller on a cash (or cash equivalent) basis than the terms of any Stalking Horse Agreement (including all exhibits, schedules and ancillary agreements related thereto, and as amended and in effect); provided, however, a Secured Party shall be permitted to submit a credit bid pursuant to section 363(k) of the Bankruptcy Code, including at any Auction, so long as such bid includes cash in an amount necessary to satisfy any Bid Protections (as defined in Section VII herein).

3.    Executed Agreement: Each Bid must include a binding, executed, irrevocable asset purchase agreement (an "Asset Purchase Agreement"), signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Transaction. A Bid must also include a copy of the Asset Purchase Agreement (including all exhibits thereto) marked against the form of Asset Purchase Agreement to be provided by the Seller or any Stalking Horse Agreement to show all changes requested by the Bidder and to remove Bid Protections that only apply to a Stalking Horse Purchaser. Both the Asset Purchase Agreement and the marked copy thereof must be provided in both Microsoft Word and PDF format.

4.    Scope of Bid/Lots: A Bid must be for the entire Campus or for one or more of the Lots identified on Schedule A hereto.

5.    Minimum Bid: Except in connection with any Bid for one or more (but not all) of the Lots, and if there is a Stalking Horse Purchaser, a purchase price must exceed the purchase price in the Stalking Horse Agreement by at least the amount of the Bid Protections and Initial Overbid Amount (each as hereinafter defined).

6.    Corporate Authority: A Bid must include written evidence reasonably acceptable to the Seller demonstrating appropriate corporate authorization to consummate the proposed Transaction; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Transaction then the Bidder must furnish written evidence reasonably acceptable to the Seller of the approval of the Transaction by the equity holder(s) of such Bidder.

7.    Disclosure of Identity of Bidder: A Bid must fully disclose the identity of each entity and principal that will be bidding for or purchasing the Campus or any Lot(s), including any equity holders in the case of a Bidder which is an entity specially formed for the purpose of effectuating the contemplated Transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation. A Bid must also fully disclose any connections or agreements with the Seller, or any other known, potential, prospective Bidder or Qualified Bidder, and/or any officer or trustee of the Seller.

8.     <u>Proof of Financial Ability to Perform:</u>  A Bid must include detailed, written evidence that the Seller and its advisors may conclude, in consultation with the Consultation Parties, demonstrates that the Bidder has and will continue to have the necessary financial ability to close the Transaction. Such information must include, *inter alia,* the following:

(a)     contact names and numbers for verification of financing sources;

(b)     evidence of the Bidder's internal resources and proof of funding commitments in an aggregate amount equal to the cash portion of such Bid as are needed to close the Transaction;

(c)     the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Seller;

(d)     a description of the Bidder's proforma capital structure; and

(e)     any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Seller, in consultation with the Consultation Parties, demonstrating that such Bidder has the ability to close the Transaction.

9.     <u>Contact Information and Affiliates:</u>  A Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the Bidder.

10.    <u>Contingencies</u>:  Each Bid (a) may not contain representations and warranties, covenants, or termination rights of any kind and (b) may not be conditioned on (i) obtaining financing, (ii) any internal approvals or credit committee approvals, or (iii) the outcome or review of due diligence.

11.    <u>Irrevocable:</u>  Each Bid must be irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order, (ii) closing of the Sale with the Successful Bidder(s), or (iii) the date the Bid is otherwise rejected under these Bidding Procedures.

12.    <u>Compliance with Diligence Requests:</u>  The Bidder submitting the Bid must have complied with reasonable requests for additional information and due diligence access from the Seller to the reasonable satisfaction of the Seller, in consultation with the Consultation Parties.

13.    <u>As-Is. Where-ls:</u>  Each Bid must include a written acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Campus or applicable Lot(s) prior to

6

making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Campus or applicable Lot(s) in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Campus or applicable Lot(s) or the completeness of any information provided in connection therewith or the Auction.

14. <u>Termination Fees:</u>  The Bid (other than a Bid pursuant to (a) the Stalking Horse Agreement or (b) the written agreement of Seller after consultation with the Consultation Parties) must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement and, by submitting the Bid, the Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction.

15. <u>Adherence to Bid Procedures:</u>  By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

16. <u>No Late Bids:</u>  Unless otherwise ordered by the Court, the Seller shall not consider any Bids submitted after the conclusion of the Auction, and any and all such bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

17. <u>Additional Information:</u> The Debtor, in consultation with the Consultation Parties, reserves the right to request additional information from a Bidder in connection with its Bid.

18. <u>Bid Notice:</u>  The following parties (the "**Bid Notice Parties**") must receive a Bid in writing, on or before the Bid Deadline:

| Debtor | Proposed Counsel to the Debtor |
|---|---|
| The College of Saint Rose<br>432 Western Ave<br>Albany, NY 12203<br>Attn: Marcia White and<br>Debbie Polley | Cullen and Dykrnan LLP<br>80 State Street, Suite 900<br>Albany, New York 12207<br>Attn: Matthew G. Roseman Esq.<br>Bonnie L. Pollack, Esq.<br>mroseman@cullenllp.com<br>bpollack@cullenllp.com |
| **Office of the United States Trustee** | **Proposed Real Estate Advisor to the Debtor** |
| United States Trustee for Region 2<br>l lA Clinton Avenue, Room 620<br>Albany, NY 12207<br>Attn: Lisa M. Penpraze | ones Lang LaSalle<br>330 Madison Avenue<br>New York, NY 10017<br>Attn: David M. Carlos<br>david.carlosl@ill.com |
| **Counsel to Summit<br>National Investments<br>VIII LLC** | **Counsel to the Indenture Trustee for the<br>Bonds** |
| Kilpatrick Townsend & Stockton LLP<br>1100 Peachtree Street NE, Suite 2800<br>Atlanta, GA 30309-4528<br>Attn: Paul Rosenblatt, Esq.<br>prosenblatt@kilpatricktownsend.com | Mintz, Levin, Cohn, Ferris, Glovsky and<br>Popeo, P.C.<br>One Financial Center<br>Boston, MA 02111<br>Attn:  Ian A. Hammel, Esq.,<br>Miyoko Sato, Esq.<br>Iahanunel@mintz.com<br>Msato@mintz.com |

A Bid received from a Bidder before the Bid Deadline that meets all of the above requirements for the entire Campus and/or applicable Lot(s) shall constitute a "Qualified Bid" and such Bidder shall constitute a "Qualified Bidder"; provided that if the Seller receives a Bid prior to the Bid Deadline that is not a Qualified Bid, the Seller may, in consultation with the Consultation Parties, provide the Bidder with the opportunity to remedy any deficiencies prior to the Auction; provided, further, that, for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Seller to its satisfaction, the Seller, in consultation with the Consultation Parties, may disqualify any Qualified

Bidder and Qualified Bid, in the Seller's discretion, and such Bidder shall not be entitled to attend or participate in the Auction.

Any amendments, supplements or other modifications to any Bids (including pursuant to this paragraph) shall be delivered to the Bid Notice Parties. All Qualified Bids will be considered, but the Seller reserves the right to reject any or all Bids, in consultation with the Consultation Parties. However, Bids that are unconditional and contemplate sales that may be consummated on or soon after the Sale Hearing are preferred. Additionally, notwithstanding anything herein to the contrary, a Stalking Horse Agreement submitted by a Stalking Horse Purchaser and a Bid from a Secured Party shall be deemed a Qualified Bid, and the Stalking Horse Purchaser or Secured Party, as applicable, shall be deemed a Qualified Bidder. The Seller will, after consultation with the Consultation Parties, inform counsel to the Consultation Parties, counsel to a Stalking Horse Purchaser and any Qualified Bidders whether the Seller considers any Bid to be a Qualified Bid as soon as practicable but in no event later than one (1) day before the Auction.

Each Qualified Bidder, by submitting a Bid, shall be deemed to acknowledge and agree that it is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party, including the Seller and its agents and representatives (other than as may be set forth in a definitive agreement executed by the Seller), regarding the Seller, any of the Campus, the Auction, these Bidding Procedures or any information provided in connection therewith.

Without the consent of the Seller, after consultation with the Consultation Parties, a Qualified Bidder may not amend, modify or withdraw its Bid, except for proposed amendments to increase the amount or otherwise improve the terms of the Bid, during the period that such Bid is required to remain irrevocable and binding.

## V.   AUCTION

### A.   Auction

If multiple Qualified Bids with respect to the entire Campus and/or the Lot(s) are submitted by the Bid Deadline, the Seller will conduct the Auction to determine the highest and otherwise best Qualified Bid with respect to such Campus, either as a whole or in Lots.

### B.   Assessment Criteria

The Seller's determination of the highest and otherwise best Qualified Bid with respect to the entire Campus and/or the Lot(s) will take into account any factors the Seller, in consultation with the Consultation Parties, reasonably deems relevant to the value of the Qualified Bid to the estate and may include, but are not limited to, the following:

1.   the amount and nature of the consideration;

2.   the type and nature of any modifications to the Asset Purchase Agreement requested by each Bidder in such Bidder's Asset Purchase Agreement;

9

3.   the extent to which such modifications are likely to delay closing of the sale of the entire Campus and/or Lot(s) and the cost to the Seller of such modifications or delay;

4.   the likelihood of the Bidder's ability to close a Transaction and the timing thereof, including the ability to obtain, or waive, as applicable, regulatory and Court approvals;

5.   compliance with section 54l(f) of the Bankruptcy Code;

6.   the net benefit to the Seller's estate (collectively, the "Bid Assessment Criteria").

C.   Cancellation of the Auction

If multiple Qualified Bids for the entire Campus and/or Qualified Bids for Lot(s) have not been timely received, then the Auction will be cancelled. If the only Qualified Bid is the Bid of a Stalking Horse Purchaser, then the Stalking Horse Agreement shall be the Successful Bid for those portions of the Campus described in its Bid, and the Stalking Horse Purchaser shall be the Successful Bidder.

## VI.   PROCEDURES FOR THE AUCTION

If multiple Qualified Bids for the entire Campus and/or Lot(s) have been timely received by the Bid Deadline, then the Seller may, after consulting the Consultation Parties, commence the Auction on **December 12, 2024 at 10:00 a.m.** (prevailing Eastern Time) at the offices of Cullen and Dykman LLP, 80 State Street, Suite 900, Albany, New York 12207, or such other place and time as the Seller shall notify all Qualified Bidders and the Consultation Parties.

The Auction will be conducted according to the following procedures:

A.   Participation

Only the Seller, the Consultation Parties, any Stalking Horse Purchaser, and any other Qualified Bidder, in each case, along with their respective representatives and counsel, may attend the Auction (such attendance to be in person) and only the Qualified Bidders and the Stalking Horse Purchaser will be entitled to make any Bids at the Auction.

B.   The Seller Shall Conduct the Auction

The Seller and its advisors shall direct and preside over the Auction, and the Auction shall be transcribed.  The Seller (in consultation with the Consultation Parties) may conduct the Auction and may augment or modify the procedures described herein in any manner it reasonably determines will result in the highest and otherwise best Qualified Bid(s), including, without limitation, by establishing rules at any Auction that include, without limitation, a single or multiple rounds of bulk and/or Lot bidding, the combination of Lots for purposes of bidding, the use of sealed bidding, open outcry, or any other form of Bid submission (including in connection with any bulk or Lot bidding). The Seller will consult in good faith with the Consultation Parties

10

throughout the Auction process to the extent reasonably practicable. Any rules developed by the Seller will provide that each Qualified Bidder will be permitted what the Seller determines to be an appropriate amount of time to respond to the previous bid at the Auction.

C.     Auction Baseline Bids

Prior to commencement of the Auction, the Seller may provide each Qualified Bidder participating in the Auction with a copy of the Asset Purchase Agreement(s) that are the highest and otherwise best Qualified Bid for the Campus and/or applicable Lot(s) as determined by the Seller, in consultation with the Consultation Parties (such highest and otherwise best Qualified Bid(s), the "Auction Baseline Bid"). In addition, at the start of the Auction, the Seller may describe the terms of the Auction Baseline Bid.

D.     Anti-Collusion Representations

Each Qualified Bidder participating in the Auction must confirm that it (1) has not engaged in any collusion with respect to the bidding or Sale, (2) has reviewed, understands and accepts the Bidding Procedures and (3) has consented to the core jurisdiction of the Court.

E.     Terms of Overbids

The Seller will accept Overbids, as further described below. An "Overbid" is any bid made at the Auction subsequent to the Seller's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

1.     Initial Overbid:  The initial Overbid after and above the Auction Baseline Bid (the "Initial Overbid") shall be in an amount of not less than 105 percent of the Auction Baseline Bid for any Auction Baseline Bid that is less than $1 million, otherwise $100,000 in excess of the Auction Baseline Bid plus the amount of any Bid Protections.

2.     Minimum Overbid Increments:  Any Overbid after and above the Initial Overbid shall be made in increments (the "Minimum Overbid Increment") valued at not less than 105 percent of the next highest Bid for any Bid that is less than $1 million, otherwise $100,000, in cash or in cash equivalents or, once the cash (or cash equivalent) amount of such Overbid exceeds the cash (or cash equivalent) amount of the next highest Bid, other forms of consideration acceptable to the Seller in consultation with the Consultation Parties. The Seller, in consultation with the Consultation Parties, reserves the right to modify the Minimum Overbid Increment during the Auction.

3.     Remaining Terms Are the Same as for Qualified Bids:  Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Stalking Horse Agreement or the Asset

Purchase Agreement, as the case may be, in connection therewith. Any Overbid must remain open and binding on the Bidder as provided herein.

At the Seller's discretion, in consultation with the Consultation Parties, to the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Seller), reasonably demonstrating such Bidder's ability to close the Transaction proposed by such Overbid.

F.    Other Procedures

1.    <u>Jurisdiction of the Comt:</u> All Qualified Bidders (including the Stalking Horse Purchaser) at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the marketing process, the determination of what constitutes a Qualified Bid and the procedures used to make that determination, the Auction, and the construction and enforcement of the Qualified Bidder's fully executed sale and Transaction documents, as applicable.

2.    <u>Additional Bids; Modifications:</u> All Qualified Bidders shall have the right to submit additional Bids and make additional modifications to the Stalking Horse Agreement or Asset Purchase Agreement at the Auction, as applicable, provided that any such modifications to such Stalking Horse Agreement or the Asset Purchase Agreement on an aggregate basis and viewed in whole, shall not, in the Seller's business judgment, in consultation with the Consultation Parties, be less favorable to the Seller than the terms of such original agreement.

3.    <u>Subsequent Bids:</u> Each Qualified Bidder must submit a subsequent Bid that satisfies the Minimum Overbid Increment in each round of bidding in order to continue participating in the Auction. Unless approved by the Seller, in consultation with the Consultation Parties, Qualified Bidders shall not be allowed to skip rounds of bidding for the entire Campus and/or applicable Lot(s) once they participate in the Auction for the entire Campus and/or applicable Lot(s).

4.    <u>Continuance/Adjournment of Auction:</u> Subject to the deadlines set forth herein, the Seller reserves the right, in its reasonable business judgment, in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Seller and individual Qualified Bidders, allow individual Qualified Bidders to consider how they wish to proceed, modify or supplement any or all of the Auction procedures or rules, or give Qualified Bidders the opportunity to provide the Seller with such additional evidence as the Seller, in its reasonable business judgment, in consultation with the Consultation Parties may require, that the Qualified Bidder has sufficient

12

internal resources, or has received sufficient funding commitments, to consummate the proposed Transaction at the prevailing Overbid amount.

G.    Additional Procedures

The Seller (after consulting with the Consultation Parties) may announce at the Auction other or additional procedural rules for conducting the Auction or may modify the rules specified in these Bidding Procedures in any manner the Seller reasonably determines will result in the highest and otherwise best Qualified Bid(s). Any Auction rules adopted by the Seller that would modify any of the terms of the Stalking Horse Agreement or the rights of the Stalking Horse Purchaser to Bid Protections (as may be consensually modified at the Auction) requires the consent of the Stalking Horse Purchaser.

H.    Sale Is As Is/Where Is

Except as otherwise may be provided in any Stalking Horse Agreement or Asset Purchase Agreement, or any order by the Court approving any Sale as contemplated hereunder, the property sold pursuant to the Bidding Procedures, whether as an entire Campus or in one or more Lots, shall be conveyed at the closing of the purchase and sale in its then-present condition, **"AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED."**

I.    Closing the Auction

The Auction will continue until the Seller selects, after consulting with the Consultation Parties, the Bid(s) that represent the highest and otherwise best offer(s) for the entire Campus and/or Lot(s) (a "Successful Bid," and the Bidder(s) submitting such Successful Bid(s), a "Successful Bidder'). The Successful Bidder(s) shall have the rights and responsibilities of the purchaser as set forth in the Asset Purchase Agreement. In selecting each Successful Bid, the Seller, in consultation with the Consultation Parties, will consider the Bid Assessment Criteria.

The Seller will announce that the Auction is closed upon receipt of fully executed sale and Transaction documents memorializing the terms of the Successful Bid(s) from the Successful Bidder(s). Unless otherwise agreed to by the Seller in consultation with the Consultation Parties, within one (1) business day after the conclusion of the Auction, each Successful Bidder(s) shall supplement its Good Faith Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such Good Faith Deposit equals ten (10%) percent of the Successful Bid(s) plus the amount required for the payment of Bid Protections, if any.

The Seller shall not consider any Bids submitted after the conclusion of the Auction.

J.    Backup Bidder

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest and otherwise best Bid at the Auction with respect to the entire Campus and/or one or more Lot(s), as applicable, as determined by the Seller, in the exercise of its business judgment and after consulting with the Consultation Parties, will be designated as a backup bidder (a "Backup Bidder"). A Backup Bidder shall be required to keep

its last submitted Bid (the "Backup Bid") open and irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order, and (ii) closing of the Sale.

Following the Sale Hearing, if a Successful Bidder fails to consummate the purchase of the entire Campus and/or one or more Lot(s), as applicable, the Seller, in consultation with the Consultation Parties, may deem the Backup Bidder for such property to have the new Successful Bid, and the Seller will be authorized, without further order of the Court, to consummate the Transaction with such Backup Bidder at the price of its last bid. Such Backup Bidder will be deemed to be the Successful Bidder and the Seller will be authorized, but not directed, to effectuate a sale to such Backup Bidder subject to the terms of the Backup Bid without further order of the Court. All Qualified Bids (other than the Successful Bid and the Backup Bid) shall be deemed rejected by the Seller on and as of the date that the Court approves the Successful Bid. The Seller, on its behalf and on behalf of each of its estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

## VII.   BID PROTECTIONS

Pursuant to the Bidding Procedures Order, a Stalking Horse Purchaser is entitled to a Termination Fee in an amount to be negotiated as between the Debtor and the Stalking Horse Purchaser after consultation with the Consultation Parties and not to exceed two (2) percent of the cash purchase price (the "Bid Protections") as further set forth in, and in accordance with the terms of, the Stalking Horse Agreement and the Bidding Procedures Order. In the event that there is more than one Successful Bid, the Bid Protections will be calculated and allocated on a pro rata basis.

Pursuant to the Bidding Procedures Order, except for any Stalking Horse Purchaser, no other party submitting an offer or Bid or a Qualified Bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment unless Seller, in consultation with the Consultation Parties, agrees in writing to provide any such bid protections.

## VIII.   SALE HEARING

The Successful Bid and Backup Bid will be subject to approval by the Court. The sale hearing to approve the Successful Bids and any Backup Bids shall take place on **December 19, 2024 at 1:30 p.m.** (EST) before the Court (the "Sale Hearing").

Nothing herein or contemplated hereby constitutes, or will be deemed to constitute or otherwise result in, the consent or approval of any Consultation Party or any other party in interest to the Sale, any Sale Order, or any Bid, or to any agreement or motion or other pleading relating thereto, or the waiver or modification of any of the terms of, or any rights under, any existing agreement, instrument or document, or any default arising thereunder or relating thereto. Any and all rights of such parties and parties in interest to object or otherwise oppose any Sale, Sale Order, or Bid, or any agreement or pleading related thereto are hereby expressly preserved and reserved.

The Sale Hearing may be adjourned by the Seller, in consultation with the Consultation Parties and the Stalking Horse Purchaser.

## IX.    RETURN OF GOOD FAITH DEPOSITS

The Good Faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Seller, but shall not become property of the Seller's estate absent further order of the Court or as expressly provided below.  The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after entry of the Sale Order.  The Good Faith Deposit of a Backup Bidder, if any, shall be returned to such Backup Bidder no later than five (5) business days after the closing of the Transaction with the Successful Bidder or as otherwise provided in these Bidding Procedures. If the Successful Bidder (or Backup Bidder, if applicable) timely closes on the winning Transaction, its Good Faith Deposit shall be credited towards the applicable purchase price.  If the Successful Bidder (or Backup Bidder, if applicable) fails to consummate a Transaction because of a breach or failure to perform on the part of such Successful Bidder (or Backup Bidder, if applicable), the Successful Bidder (or Backup Bidder, if applicable), shall forfeit the Good Faith Deposit as liquidated damages, Seller will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder (or Backup Bidder, if applicable), and such Good Faith Deposit shall irrevocably become property of the Seller.

## X.    CONSENT TO JURISDICTION AND AUTHORITY AS CONDITION TO BIDDING

All Potential Bidders shall be deemed to have (A) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to the Bidding Procedures, the Auction, or the construction and enforcement of any agreement or any other document relating to the sale Transaction, (B) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or the construction and enforcement of any agreement or any other document relating to the sale Transaction, and (C) consented to the entry of a final order or judgment in any way related to the Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## XI.    RESERVATION OF RIGHTS OF THE SELLERS

The Seller further reserves the right as it may reasonably determine to be in the best interest of its estate, in consultation with the Consultation Parties, to:

22484.3 21085169v3

A.    determine which Bidder(s) is a Qualified Bidder(s);

B.    determine which Bid(s) is a Qualified Bid(s);

C.    determine which Qualified Bid is the highest or best proposal for the entire Campus
and/or Lot(s) and which is the next highest or best proposal for the entire Campus
and/or Lot(s);

D.    reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the
requirements of the Bidding Procedures or the requirements of the Bankruptcy
Code or (3) contrary to the best interests of the Seller and its estate;

E.    impose additional terms and conditions with respect to all potential Bidders;

F.    extend the deadlines set forth herein; and

G.    modify the Bidding Procedures and implement additional procedural rules that the
Seller determines, in its business judgment, will better promote the goals of the
bidding process and discharge the Seller's fiduciary duties.

####

521951245v.2

22484.3 21085169v3