**THE COLLEGE OF SAINT ROSE**

**NON-CONTRACT EMPLOYEES'**

**PENSION PLAN**

**(AS AMENDED 2019)**

01/20

# TABLE OF CONTENTS

**Page No.**

## ARTICLE 1 - DEFINITIONS

| | | |
|---|---|---|
| 1.1 | Accrued Benefit | 1 |
| 1.2 | Actuarial Equivalent | 3 |
| 1.3 | Anniversary Date | 4 |
| 1.4 | Annuity | 4 |
| 1.5 | Annuity Starting Date | 4 |
| 1.6 | Applicable Computation Period | 4 |
| 1.7 | Average Compensation | 5 |
| 1.8 | Beneficiary | 5 |
| 1.9 | Board of Trustees | 5 |
| 1.10 | Code | 5 |
| 1.11 | Committee | 5 |
| 1.12 | Company | 5 |
| 1.13 | Compensation | 5 |
| 1.14 | Controlled or Affiliated Service Group | 7 |
| 1.15 | Defined Benefit Plan | 7 |
| 1.16 | Disability | 7 |
| 1.17 | Earliest Commencement Date | 8 |
| 1.18 | Effective Date/Supplemental Effective Date | 8 |
| 1.19 | Election Period | 8 |
| 1.20 | Employee/Eligible Employee/Leased Employee | 8 |
| 1.21 | Employer | 9 |
| 1.22 | ERISA | 9 |
| 1.23 | Highly Compensated Employee/ Nonhighly Compensated Employee | 9 |
| 1.24 | Normal Form of Retirement Income | 10 |
| 1.25 | PBGC | 10 |
| 1.26 | Participant (Active, Inactive, Retired and Vested) | 10 |
| 1.27 | Plan | 11 |
| 1.28 | Plan Year | 11 |
| 1.29 | Protected Spouse | 11 |
| 1.30 | Qualified Domestic Relations Order | 11 |
| 1.31 | Retirement | 11 |
| 1.32 | Retirement Dates (Normal, Early, Deferred and Disability) | 11 |
| 1.33 | Service (Break-in-Service, Month of Service, Year of Service, Hour of Employment, Credited Service) | 12 |
| 1.34 | Severance From Employment Date | 13 |
| 1.35 | Social Security Retirement Age | 13 |
| 1.36 | Straight Life Annuity | 14 |
| 1.37 | Trust Agreement or Insurance Contract | 14 |
| 1.38 | Trustee or Funding Agent | 14 |
| 1.39 | Trust Fund or Pension Fund | 14 |

# TABLE OF CONTENTS

**Page No.**

## ARTICLE 2 - ELIGIBILITY AND PARTICIPATION

| | | |
|---|---|---|
| 2.1 | Eligibility for Participation | 15 |
| 2.2 | Change in Employment Status | 15 |

## ARTICLE 3 - CONTRIBUTIONS

| | | |
|---|---|---|
| 3.1 | Company Contributions | 16 |
| 3.2 | Participant Contributions | 16 |
| 3.3 | Payment of Contributions | 16 |
| 3.4 | Management of Trust Fund | 16 |
| 3.5 | Payment of Expenses | 16 |

## ARTICLE 4 - AMOUNT OF RETIREMENT INCOME

| | | |
|---|---|---|
| 4.1 | Upon Normal Retirement Date | 17 |
| 4.2 | Upon Deferred Retirement Date | 17 |
| 4.3 | Upon Early or Disability Retirement Date | 18 |
| 4.4 | Upon Other Termination of Employment | 18 |
| 4.5 | Maximum Benefit Limitation | 18 |

## ARTICLE 5 - BENEFITS PAYABLE UPON TERMINATION OF EMPLOYMENT

| | | |
|---|---|---|
| 5.1 | Upon Retirement | 28 |
| 5.2 | Special Rules Upon Disability Retirement | 28 |
| 5.3 | Upon Other Termination of Employment | 28 |
| 5.4 | Reemployment and Repayment of Benefits | 29 |
| 5.5 | Suspension of Benefits | 30 |

## ARTICLE 6 - OPTIONAL FORMS

| | | |
|---|---|---|
| 6.1 | Optional Forms | 32 |
| 6.2 | Rules and Regulations | 34 |
| 6.3 | Automatic Spouse Benefit | 35 |
| 6.4 | Determination of Amount to be Distributed Each Year | 35 |
| 6.5 | Changes to Annuity Payment Period | 38 |

## ARTICLE 7 - BENEFITS PAYABLE UPON DEATH

| | | |
|---|---|---|
| 7.1 | Before Income Commencement | 39 |
| 7.2 | Subsequent to Income Commencement | 40 |
| 7.3 | Definitions and Rules Governing Death Benefits | 40 |

# TABLE OF CONTENTS

**Page No.**

**ARTICLE 8 - REGULATIONS GOVERNING PAYMENT OF BENEFITS**

| | | |
|---|---|---|
| 8.1 | Duplication of Benefits | 43 |
| 8.2 | Claim Procedure for Benefits | 43 |
| 8.3 | Commencement of Benefits | 49 |
| 8.4 | Method and Form of Payment of Benefits | 52 |
| 8.5 | Disposition of Unclaimed Benefits | 53 |
| 8.6 | Non-Assignability | 54 |
| 8.7 | Substitute Payee | 55 |
| 8.8 | Satisfaction of Liability | 55 |
| 8.9 | Limit For 25 Highest Paid Employees | 55 |
| 8.10 | Direct Rollover to Eligible Retirement Plans | 57 |

**ARTICLE 9 - ADMINISTRATION OF THE PLAN**

| | | |
|---|---|---|
| 9.1 | Assignment of Administrative Authority | 60 |
| 9.2 | Organization and Operation of the Committee | 60 |
| 9.3 | Authority and Responsibility | 60 |
| 9.4 | Records and Reports | 61 |
| 9.5 | Required Information | 62 |
| 9.6 | Payment of Expenses | 62 |
| 9.7 | Indemnification | 62 |
| 9.8 | Qualified Domestic Relations Orders | 62 |

**ARTICLE 10 - AMENDMENT, MERGER AND TERMINATION OF THE PLAN**

| | | |
|---|---|---|
| 10.1 | Amendment | 65 |
| 10.2 | Merger of Plans | 67 |
| 10.3 | Partial Termination | 67 |
| 10.4 | Termination of Plan | 67 |

**ARTICLE 11 - PARTICIPATING COMPANIES**

| | | |
|---|---|---|
| 11.1 | Adoption by Other Entities | 71 |
| 11.2 | Actuarial Valuation | 71 |
| 11.3 | Alternative Provisions | 71 |
| 11.4 | Right to Withdraw (Plan Spinoff) | 71 |
| 11.5 | Procedure Upon Withdrawal | 71 |

**ARTICLE 12- TOP-HEAVY PROVISIONS**

| | | |
|---|---|---|
| 12.1 | Top-Heavy Provisions | 73 |
| 12.2 | Definitions | 73 |
| 12.3 | Minimum Accrued Benefit | 75 |
| 12.4 | Minimum Vesting | 76 |

01/20

**TABLE OF CONTENTS**

**Page No.**

**ARTICLE 13 - BENEFIT RESTRICTIONS UNDER CODE SECTION 436**

13.1   Limitations Applicable if the Plan's Adjusted Funding Target
      Attainment Percentage Is Less Than 80%, But Not Less Than 60%.   78
13.2   Limitations Applicable if the Plan's Adjusted Funding Target
      Attainment Percentage Is Less Than 60%   79
13.3   Limitations Applicable if the Plan Sponsor Is In Bankruptcy   80
13.4   Provisions Applicable After Limitations Cease To Apply   80
13.5   Notice Requirement   81
13.6   Methods to Avoid or Terminate Benefit Limitations   81
13.7   Special Rules   81
13.8   Definitions   85
13.9   Effective Date   85

**ARTICLE 14 - GENERAL PROVISIONS**

14.1   Exclusiveness of Benefits   86
14.2   Limitation of Rights   86
14.3   Construction of Agreement   86
14.4   Severability   86
14.5   Titles and Headings   86
14.6   Counterparts as Original   87
14.7   Qualified Military Service   87

**THE COLLEGE OF SAINT ROSE**

**NON-CONTRACT EMPLOYEES'**

**PENSION PLAN**

**(AS AMENDED 2019)**

**STATEMENT OF PURPOSE**

The College of Saint Rose has had in effect since July 1, 1973 The College of Saint Rose Non-Contract Employees' Pension Plan, to which it made contributions for the purpose of providing benefits for its eligible employees and their beneficiaries, in the manner and to the extent set forth in such plan, which plan was fully restated in 1997 and 2011.

The College of Saint Rose Non-Contract Employees' Pension Plan, hereinafter set forth, and its related trust agreement constitutes an amendment in its entirety to said plan which is continued effective as of July 1, 2019, with respect to employees and Participants who have not yet retired, terminated employment or died as of such date. The rights of anyone covered under the plan before July 1, 2019, who retired, terminated employment or died before that date, shall be determined in accordance with the terms and provisions of the plan in effect on the date of such retirement, termination of employment or death, except as otherwise specifically provided herein.

**ARTICLE 1**

**DEFINITIONS**

For purposes of the Plan, the following words and phrases shall have the following meanings unless a different meaning is plainly required by the context. Wherever used, the masculine pronoun shall include the feminine pronoun and the feminine pronoun shall include the masculine and the singular shall include the plural and the plural shall include the singular.

**1.1    "Accrued Benefit"**

    (a)    Subject to the maximum benefit limitation under Section 4.5, the Normal Form of Retirement Income payable at Normal Retirement Date in an amount equal to the benefit under Subsection 4.1(a), on the basis of the Participant's Average Compensation and Credited Service to the date he last ceased to be an Active Participant.

    (b)    Notwithstanding the above, the Accrued Benefit of any Participant with at least one Hour of Employment in a Plan Year beginning after January 1, 1994 shall be equal to the greater of (i) or (ii)

        (i)    the Participant's "Frozen Accrued Benefit", which shall mean his Accrued Benefit, determined under the Plan provisions in effect as of the close of the last Plan Year beginning prior to January 1, 1994, calculated as if the Participant terminated employment with the Employer on December 31, 1993.

(ii)    the Participant's Accrued Benefit determined under the current benefit formula and total Credited Service before and after January 1, 1994.

(iii)    The provisions of this Paragraph shall only be applicable to 401(a)(17) employees. A 401(a)(17) employee means an Employee whose current Accrued Benefit as of a date on or after the first day of the first Plan Year beginning on or after January 1, 1994, is based on Compensation for a year beginning prior to the first day of the first Plan Year beginning on or after January 1, 1994, that exceeded $150,000.

(iv)    If the Participant has not had a fresh-start, the Participant's Frozen Accrued Benefit will be zero.

If, as of the Participant's latest fresh-start date, the amount of a Participant's Frozen Accrued Benefit was limited by the application of Code Section 415, the Participant's Frozen Accrued Benefit will be increased for years after the latest fresh-start date to the extent permitted under Code Section 415(d)(1). In addition, the Frozen Accrued Benefit of a Participant whose Frozen Accrued Benefit includes the Top-Heavy minimum benefits provided in Article 12, will be increased to the extent necessary to comply with the average compensation requirement of Code Section 416(c)(1)(D)(i).

With respect to Plan Years beginning after the latest fresh-start date, the current benefit formula will provide each Participant in the fresh-start group a benefit of not less than .5% of the Participant's Average Compensation times the Participant's Years of Service after the latest fresh-start date.

The minimum benefit below take into account on an Employee's past Service in determining the Participant's Accrued Benefit under the Plan and may cause the Plan to fail to satisfy the safe harbor for past service in Section 1.401(a)(4)-5(a)(3) of the Income Tax Regulations.

The Frozen Accrued Benefit in an excess benefit Plan of each Participant in the fresh-start group will be increased, to the extent necessary, if any, so that the base benefit percentage, determined with reference to all of the Participant's Years of Service as of the latest fresh-start date, is not less than 50% of the excess benefit percentage as of the latest fresh-start date, determined with reference to all of the Participant's Years of Service as of the latest fresh-start date.

(c)    In no event shall a Participant's Accrued Benefit be (i) less than the Accrued Benefit as of any preceding day, (ii) decreased due to subsequent increases in social security benefits or (iii) ceased, nor the rate of accrual decreased, because of the attainment of any age.

(d)    Notwithstanding the above, the Actuarial Equivalent of the Accrued Benefit payable in any form or at any time shall not be less than the benefit, in such form and at such time, which would have been payable in accordance with the terms and rates specified in the Plan before the adoption of any amendment affecting Accrued Benefits based on the Participant's Accrued Benefit at such date of adoption, unless provided by law.

Notwithstanding any provisions of the Plan to the contrary, for Plan Years beginning before Code Section 411 is applicable hereto, the Participant's Accrued Benefit shall be the greater of the benefit provided by the Plan in effect prior to September 2, 1974 or 1/2 of the benefit which would have accrued had the provisions of this Section been in effect.  In the event the Accrued Benefit as of the effective date of Code Section 411 is less than that provided by this Section such difference shall be accrued in accordance with this Section.

**1.2    "Actuarial Equivalent"**

Subject to the maximum benefit limitation under Section 4.5, a form of benefit differing in time, period or manner of payment, that replaces another and has the same value, based on actuarial assumptions, as the benefit or amount it replaces.  Before the date of adoption of this restated Plan by the Board of Trustees, Actuarial Equivalencies shall be determined on the basis of the provisions of the Plan then in effect.  On or after such date, Actuarial Equivalencies shall be determined as follows:

(a)    For purposes of determining the lump sum value of any benefit payable, the Applicable Interest Rate and the Applicable Mortality Rate shall be used.

For Participants eligible for Normal or Deferred Retirement or whose benefit commences in accordance with Subsection 8.3(g) prior to eligibility for Retirement, such lump sum shall be valued as an immediate benefit.

In the event of termination of employment before Normal or Deferred Retirement, the lump sum payable to a Vested Participant shall be determined as the value of a deferred benefit commencing at his Normal Retirement Date.

(b)    For purposes of determining the amount of any optional form of retirement income payable other than a lump sum distribution, an interest rate of 8%, compounded annually and 2-year age setback mortality rates in accordance with UP84 shall be used.

(c)    If any benefit is payable before a Participant's Normal Retirement Date

(i)    for a reason other than Disability, the Participant's Accrued Benefit will be reduced by 5/9 of 1% for each of the first 60 months and 5/18 of 1% for each of the next 60 months by which the commencement of benefits precedes the Participant's Normal Retirement Date.

(ii)    as a result of Disability Retirement, the Participant's Accrued Benefit will be actuarially reduced using the interest and mortality rates in

Subsection (b), with respect to the period the commencement occurs prior to a Participant's Normal Retirement Date.

(d)    If any benefit determined as of or after a Participant's Normal Retirement Date is payable at a later date, it shall be actuarially increased using the interest and mortality rates in Subsection (b), with respect to the period commencement is deferred.

(e)     If the commencement of any survivorship benefit commences before or after the Earliest Commencement Date, the lifetime income payable upon commencement will be adjusted to reflect the early or deferred commencement date.

(f)     Applicable Interest Rate and Applicable Mortality Rate shall be determined as follows:

(i)     "Applicable Interest Rate" shall mean, the adjusted first, second and third segment rates described in Code Section 417(e)(3).

For this purpose, the segment rates are the spot segment rates that would be determined for the applicable month under Code Section 430(h)(2)(C) without the 24-month averaging under Code Section 430(h)(2)(D), and determined without regard to the adjustment for the 25-year average segment rates provided in Code Section 430(h)(2)(C)(iv).

For distributions with Annuity Starting Dates occurring during Plan Years beginning on or after January 1, 2008 and before January 1, 2012, these rates are adjusted by blending with the rate of interest for 30-year Treasury securities under the transition percentages specified in Code Section 417(e)(3)(D)(iii).

The rates described above shall be the rate or rates for the third month immediately preceding the Anniversary Date preceding or coincident with the date selected for payment of the benefit.

(ii)    "Applicable Mortality Rate" shall mean the table prescribed in accordance with Code Section 417(e)(3).

## 1.3   "Anniversary Date"

The first day of each July 1.

## 1.4   "Annuity"

A nontransferable single premium annuity contract or an annuity under a group annuity contract purchased by the Trustee or Funding Agent on behalf of a Participant or Beneficiary from an insurance company for purposes of providing the benefits payable under the terms of the Plan.

## 1.5   "Annuity Starting Date"

The first day of the first period for which an amount is payable as an annuity.  If a benefit is not payable in the form of an annuity, the first day on which all events have occurred which entitle the Participant to such benefit.

## 1.6   "Applicable Computation Period"

(a)     For purposes of Hours of Employment for eligibility in accordance with Section 2.1, an Eligible Employee's first Applicable Computation Period shall be the 12-consecutive month period beginning as of the date a person first completed an Hour of Employment with an Employer.  Thereafter, such Eligible Employee's

Applicable Computation Period shall be each Plan Year, commencing with the Plan Year which begins after the date he first completed an Hour of Employment.

(b)    For purposes of determining Service for vesting and benefits, Applicable Computation Period shall be the 12-consecutive month period beginning as of the first day of the month during which a person first completed an Hour of Employment with the Employer and each anniversary thereof.

**1.7    "Average Compensation"**

The Compensation of a Participant during the last 60 consecutive calendar months of Service, (or the total number of calendar months if less than 60) divided by five.

If a Participant has less than 60 months of service from his date of employment to his Severance From Employment Date, his Average Annual Compensation will be based on his actual number of months for which compensation is received.

**1.8    "Beneficiary"**

The person designated to receive benefits payable under the Plan in the event of death. In the event a Beneficiary is not designated, the Participant's surviving spouse shall be deemed his Beneficiary or in the absence of a surviving spouse, the benefits shall be paid to the Participant's estate.  Such person is the designated beneficiary under Code Section 401(a)(9) and Treasury Regulation Section 1.401(a)(9)-4.

**1.9    "Board of Trustees"**

The Board of Trustees of The College of Saint Rose.

**1.10    "Code"**

The Internal Revenue Code of 1986, as it may from time to time be amended or supplemented.

**1.11    "Committee"**

The person or persons appointed in accordance with Section 9.1 to administer the Plan. In the absence of such designation, the Company shall serve as the Committee and in such case, all references herein to the Committee shall be deemed a reference to the Company.

**1.12    "Company"**

(a)    The College of Saint Rose and any successor which shall maintain this Plan; and

(b)    any other business entity which duly adopts the Plan with the approval of the Board of Trustees.

**1.13    "Compensation"**

(a)    The amount described in Subsection (b), exclusive of any (i) amount which is paid by the Employer but not by the Company (ii) amount paid by the Company for any period during which the Participant's employment status did not meet the

requirements of Section 1.20; (iii) welfare benefits, fringe benefits (cash and non-cash), reimbursements of other expense allowances and moving expenses; and (iv) amount paid prior to becoming a Participant.

(b)     For purposes of Sections 1.24, 4.5, 14.7(c) and Article 12, the Participant's wages for the Plan Year paid by the Employer of the type reported in box 1 of Form W-2.   Such wages shall include amounts within the meaning of Section 3401(a) of the Code plus any other amounts paid to the Participant by the Employer for which the Employer is required to furnish a written statement under Sections 6041(d), 6051(a)(3) and 6052 of the Code, determined without regard to any rules that limit the amount required to be reported based on the nature or location of the employment or services performed,

(i)     exclusive of any amounts paid or reimbursed by the Employer for moving expenses which the Employer reasonably believes at the time of such payment to be deductible by the Employee under Section 217 of the Code; and

(ii)    increased by the amount of any contributions made by the Employer under any salary reduction or similar arrangement to

(A)    a qualified cash or deferred arrangement under Code Section 401(k);

(B)    a simplified employee pension plan described in Section 408(k) of the Code (SAR-SEP);

(C)    a SIMPLE arrangement under Code Section 408(p);

(D)    an Annuity contract described in Section 403(b) of the Code;

(E)    a deferred compensation plan within the meaning of Section 457(b) of the Code;

(F)    a cafeteria plan under Code Section 125; and

(G)    a plan providing for qualified transportation fringe benefits under Code Section 132(f)(4).

For purposes of Subparagraph (F) above, Code Section 125 shall include any amounts not available to a Participant in cash in lieu of group health coverage because the Participant is unable to certify that he or she has other health coverage.   An amount will be treated as an amount under Code Section 125 only if the Employer does not request or collect information regarding the Participant's other health coverage as part of the enrollment process for the health Plan.

(c)     For Plan Years beginning on or after July 1, 2007, Compensation described in Section (b) above shall also include Compensation paid by the later of 2-1/2 months after an Employee's severance from employment with the Employer or the end of the Plan Year that includes the date of the Employee's severance from employment with the Employer, provided the payment

(i)    is for regular Compensation for services during the Employee's regular working hours, other hours (such as overtime or shift differential), commissions, bonuses or other similar payments and absent a Severance of Employment the payments would have been paid to the Employee while employed;

(ii)    is for unused accrued bona fide sick, vacation or other leave that the Employee would have been able to use if employment had continued; or

(iii)    is received by the Employee pursuant to a nonqualified unfunded deferred Compensation plan and would have been paid at the same time if employment had continued, but only to the extent includible in gross income.

(d)    Compensation described in Section (b) above shall not include amounts earned but not paid during the Plan Year solely because of the timing of pay periods and pay dates, provided the amounts are paid during the first few weeks of the next Plan Year, the amounts are included on a uniform and consistent basis with respect to all similarly situated Participants, and no compensation is included in more than one Plan Year.

(e)    In addition to other applicable limitations set forth in the Plan, and notwithstanding any other provision of the Plan to the contrary, the annual Compensation of each Employee taken into account under the Plan shall not exceed $200,000 as adjusted for increases in the cost-of-living in accordance with Code Section 401(a)(17)(B). The cost-of-living adjustment in effect for a calendar year applies to any Plan Year not exceeding 12 months, over which Compensation is determined beginning in such calendar year.

In the event of a short Plan Year, such dollar limitation shall be divided by 12 and multiplied by the number of months in the short Plan Year.

## 1.14 "Controlled or Affiliated Service Group"

(a)    **"Controlled Group"** - Any group of business entities under common control, including but not limited to proprietorships and partnerships, or a controlled group of corporations within the meaning of Sections 414(b), (c) and (o) of the Code. For purposes of Section 4.5, the phrase "more than 50%" is substituted for the phrase "at least 80%" each place it appears in Section 1563(a)(1) of the Code.

(b)    **"Affiliated Service Group"** - Any group of business entities within the meaning of Section 414(m) of the Code.

## 1.15 "Defined Benefit Plan"

An employee benefit plan defined in Section 3(35) of ERISA, which meets the requirements for tax qualification under the Code.

## 1.16 "Disability"

Any physical or mental condition which may reasonably be expected to be both continuous and permanent and which renders a Participant incapable of continuing as an Eligible Employee for his customary Hours of Employment and for which the

Participant shall be eligible to receive benefits under the disability insurance provisions of the Social Security Act, provided that such condition

(a)    prevents him from performing any substantial gainful activity;

(b)    occurs on or after the Effective Date but prior to the Participant's Normal Retirement Date; and

(c)    is not the result of injury or disease sustained by the Participant subsequent to the date his employment terminated.

**1.17    "Earliest Commencement Date"**

The first day of the month coincident with or next following the day before the Participant's death if the Participant was eligible for Early Retirement and, if the Participant was not eligible for Early Retirement, the first date the Participant would have been eligible to commence his retirement income had he survived but did not continue in or return to Service with the Employer.

**1.18    "Effective Date"**

July 1, 1973, the date as of which the Plan was established.

**"Supplemental Effective Date"**

July 1, 2019, the last date as of which the Plan was amended in its entirety.

**1.19    "Election Period"**

The period commencing no less than 30 days and no more than 180 days before the Annuity Starting Date and ending on such date.

**1.20    "Employee"**

Any person in the employ of the Employer.

Leased Employees shall be included as Employees unless (a) such individual is covered by a money purchase pension plan providing (i) a nonintegrated employer contribution rate of at least 10% of compensation, as defined in Section 415(c)(3) of the Code, but including amounts contributed by the Employer pursuant to a salary reduction agreement which are excludable from the Leased Employee's gross income under Section 125, 402(e)(3), 403(h)(1)(B) or 403(b) of the Code; (ii) immediate participation; and (iii) full and immediate vesting; and (b) Leased Employees do not constitute more than 20% of the Employer's Nonhighly Compensated Employee workforce.

**"Leased Employee"**

Any person (other than an Employee of the recipient) who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Section 414(n)(6) of the Code) on a substantially full time basis for a period of at least one year, and such services are performed under the primary direction or control of the recipient employer.   Contributions or benefits provided a Leased

Employee by the leasing organization which are attributable to services performed for the recipient employer shall be treated as provided by the recipient employer.

Notwithstanding the foregoing, Employee shall not include any person considered to be an independent contractor in accordance with Treasury Regulation Sections 31.3121(d)-1 and 31.3306(i)-1, notwithstanding the fact that such person is later determined to be a common-law employee of the Employer.

**"Eligible Employee"**

An Employee of the Company for whom the Company is required to contribute Federal Insurance Contributions Act taxes excluding persons who are (a) Leased Employees, (b) faculty, (c) Administrative (Salaried) Staff, (d) self-employed individuals, (e) temporary employees and (f) students.

Any person who is not treated as a common law employee of the Employer on its payroll records is not an Eligible Employee and is excluded from Plan participation even if a court or governmental agency determines that such person is a common law employee.

**1.21    "Employer"**

The Company and any other business entity in a Controlled or Affiliated Service Group which includes the Company.

**1.22    "ERISA"**

The Employee Retirement Income Security Act of 1974, as it may from time to time be amended or supplemented.

**1.23    "Highly Compensated Employee"**

(a)    An Employee who is a Highly Compensated Active Employee or a Highly Compensated Former Employee.

(b)    A Highly Compensated Active Employee is any Employee who performs Service with the Employer during the Determination Year who (i) was at any time during the Determination Year or Look-Back Year a 5% owner, as defined in Section 416(i)(1) of the Code and (ii) received Compensation from the Employer during the Look-Back Year in excess of $80,000 adjusted annually for increases in the cost-of-living in accordance with Section 415(d) of the Code, effective as of January 1 of the calendar year such increase is promulgated and applicable to the Plan Year which begins with or within such calendar year.

(c)    A Highly Compensated Former Employee for a Determination Year is any former Employee who separated from Service prior to such Determination Year and was a Highly Compensated Active Employee for either the year in which such Employee separated from Service or any Determination Year ending on or after such Employee's 55th birthday.

(d)    A Participant is a Highly Compensated Employee for a particular Determination Year if he or she meets the definition of a Highly Compensated Employee in effect for that Determination Year.

(e)    The Determination Year is the applicable Plan Year for which a determination is being made and the Look-Back Year is the preceding 12-month period.

**"Nonhighly Compensated Employee"**

An Employee who is not deemed to be a Highly Compensated Employee.

A Participant is a Nonhighly Compensated Employee for a particular Determination Year if he or she does not meet the definition of a Highly Compensated Employee in effect for that Determination Year.

**1.24    "Normal Form of Retirement Income"**

A pension payable for life beginning as of the Participant's Retirement Date or, if later, the income commencement date, but in the event of the Participant's death before receiving 36 monthly payments, his pension continues to his Beneficiary until the balance of the 36 monthly payments has been paid.

**1.25    "PBGC"**

The Pension Benefit Guaranty Corporation, as established under Section 4002 of ERISA.

**1.26    "Participant"**

All classifications as hereinafter defined:

(a)    **"Active Participant"** - An Eligible Employee who is participating in the Plan in accordance with Section 2.1.

(b)    **"Inactive Participant"** - A person who is no longer an Active Participant of the Plan (i) in accordance with Section 2.2 or (ii) because his basis of employment no longer meets the requirements set forth in Section 1.20 while he continues in the employ of the Employer.

(c)    **"Retired Participant"** - A former Eligible Employee whose employment terminated, but who is eligible for or receiving a benefit in accordance with Section 5.1.

(d)    **"Vested Participant"** - A current or former Eligible Employee other than a Retired Participant who has qualified for a vested interest in his Accrued Benefit in accordance with Article 5, but whose benefit has not been fully distributed.

(e)    **"Facilities Union Participant"** - A Participant who is a member of the Facilities Union.

(f)    **"Non Union Hourly Participant"** - A Participant who is not a Facilities Union Participant and who is not a Security Participant.

(g)    **"Security Union Participant"** - A Participant who is a member of the Security Union.

**1.27**  **"Plan"**

The pension plan of the Company, as herein set forth and as from time to time supplemented and amended.

**1.28**  **"Plan Year"**

A period of 12 consecutive months commencing on the Effective Date and each Anniversary Date thereafter.

**1.29**  **"Protected Spouse"**

The spouse to whom the Participant had been legally married on the earlier of the date of the Participant's death or the Participant's Annuity Starting Date. For purposes of Section 7.2 Protected Spouse means the person to whom the Participant has been married for at least 12 months preceding the Participant's death. Neither the Committee nor the Trustee is required at any time to inquire into the validity of any marriage, the effectiveness of a common-law relationship or the claim of any alleged spouse which is inconsistent with the Participant's report of his marital status and the identity of his spouse.

**1.30**  **"Qualified Domestic Relations Order"**

A domestic relations order as defined in Section 9.8 in accordance with Section 414(p) of the Code.

**1.31**  **"Retirement"**

The termination of employment of a Participant on his Normal, Early, Deferred or Disability Retirement Date.

**1.32**  **"Retirement Dates"**

(a)  **"Normal Retirement Date"** - The date on which a Participant attains age 65.

The Participant's retirement income shall be computed and payable as of the first day of the month coincident with or next following his Normal Retirement Date.

(b)  **"Early Retirement Date"** - The first day of any month coincident with or following the date on which a Participant attains age 55, provided he has completed 10 Years of Service as of such date.

(c)  **"Deferred Retirement Date"** - The first day of any month subsequent to the Participant's Normal Retirement Date.

(d)  **"Disability Retirement Date"** - The first day of the month coincident with or next following the date on which an Active or Inactive Participant is deemed to have incurred a Disability, provided he completed at least 10 Years of Service as of such date.

**1.33** **"Service"**

(a)     All periods of employment with the Company, except as provided in Subsection (c), and except for purposes of determining benefits in accordance with Section 1.1, Article 4 and Article 12, all additional periods of employment with the Employer.

A period of employment begins as of the date the Employee first completes an Hour of Employment for the Employer and ends on the earlier of the date the Employee resigns, is discharged, retires or dies or, if the Employee is absent for any other reason, on the first anniversary of the first day of such absence (with or without pay) from the Employer. If an Employee is absent for any reason and returns to the employ of the Employer before incurring a Break-in-Service, as provided in Subsection (b), he shall receive credit for his period of absence up to a maximum of 12 months. Service subsequent to a Break-in-Service will be credited as a separate period of employment.

(b)     **"Break-in-Service"** - A period of 12 consecutive months during which an Employee fails to accrue 500 Hours of Employment with the Employer. Such period begins on the earlier of the date the Employee resigns, is discharged, retires or dies or, if the Employee is absent for any other reason, on the first anniversary of the first day of such absence (with or without pay) from the Employer. If an Employee is absent by reason of (i) the pregnancy of the Employee, (ii) the birth of a child of the Employee, (iii) the placement of a child with the Employee in connection with an adoption of such child by such Employee, (iv) caring for such child immediately following such birth or placement or (v) any other family medical leave, such Employee will not be treated as having retired, resigned or been discharged and the period between the first and second anniversary of the first day of such absence shall not be considered a Break-in-Service.

(c)     If an Employee, who did not have a vested interest in his Accrued Benefit, incurs five or more consecutive Breaks-in-Service and is then reemployed by the Employer, he shall be deemed a new Employee and shall not receive credit for his Service before the date he incurred such Breaks-in-Service unless his Service was equal to or greater than the period of his absence.

(d)     **"Month of Service"** - A calendar month any part of which is in a period of employment or credited absence.

(e)     **"Year of Service"** – 12 consecutive Months of Service.

(f)     **"Hour of Employment"**

(i)     For an Employee paid on an hourly basis or for whom hourly records of employment are required to be maintained, each hour for which the person is directly or indirectly paid or entitled to payment for the performance of duties or for the period of time when no duties are performed, irrespective of whether the employment relationship has terminated, such as vacation, holiday or illness.

(ii)    For an Employee paid on a non-hourly basis or for whom hourly records of employment are not required to be maintained, each week for which

01/20

the person is directly or indirectly paid or entitled to payment shall be equal to 45 Hours of Employment.

(iii)   A person shall receive an Hour of Employment for each hour for which back pay has been awarded or agreed to irrespective of mitigation of damages, provided that each such hour shall be credited to the Applicable Computation Period to which it pertains, rather than the Applicable Computation Period in which the award or agreement is made, and further provided that no such award or agreement shall have the effect of crediting an Hour of Employment for any hour for which the person previously received credit under (i) or (ii) above.

(iv)   Notwithstanding the foregoing, Hours of Employment shall be computed and credited in accordance with Department of Labor Regulation 2530.200(b)-2, Subparagraphs (b) and (c).

(g)   Notwithstanding the foregoing, an Inactive Participant, as defined in Subsection 1.26(b)(i) or (iii), shall not be credited with any periods of employment while an Inactive Participant for purposes of determining benefits in accordance with Section 1.1, Article 4 and Article 12.

(h)   Notwithstanding the foregoing, Service for purposes of determining benefits in accordance with Section 1.1, Article 4 and Article 12 for a Participant as the result of a period of absence due to an approved leave of absence for service in the Armed Forces of the United States of America (to the extent required by law in accordance with Section 14.7) shall include imputed Service. Determination of the amount of imputed Service will be based on Service reasonably representative of what such Participant would have received during the period during which Service is imputed if the Participant had continued to perform services during that period.

(i)   **"Credited Service"** - The Participant's Service  measured in full and fractional years.

Notwithstanding the foregoing, an Inactive Participant, as defined in Subsection 1.26(b)(i) or (iii), shall not be credited with any periods of employment while an Inactive Participant or prior to becoming an Eligible Employee.

**1.34   "Severance From Employment Date"**

The date when an Employee ceases to be an Employee of the Employer maintaining the Plan.  An Employee does not have a Severance from Employment if, in connection with a change of employment, the Employee's new employer maintains the Plan with respect to the Employee.

**1.35   "Social Security Retirement Age"**

Age 65 in the case of a Participant attaining age 62 before January 1, 2000, age 66 for a Participant attaining age 62 after December 31, 1999 and before January 1, 2017 and age 67 for a Participant attaining age 62 after December 31, 2016.

**1.36** **"Straight Life Annuity"**

An annuity payable in equal installments for the life of the Participant that terminates upon the Participant's death.

**1.37** **"Trust Agreement" or "Insurance Contract"**

In the event that the Plan is funded by a

(a)    Trust Fund with a Trustee, the instrument executed by the Company and the Trustee fixing the rights and liabilities of each with respect to holding and administering the Trust Fund for the purposes of the Plan; or

(b)    Pension Fund with a Funding Agent, the group annuity contract executed by the Company or Funding Agent fixing the rights and liabilities of each with respect to holding and administering the Pension Fund for the purposes of the Plan.

**1.38** **"Trustee" or "Funding Agent"**

In the event that the Plan is funded by a

(a)    Trust Fund, the Trustee or any successor Trustee, appointed by the Board of Trustees, acting in accordance with the terms of the Trust Agreement.

(b)    Pension Fund, the legal reserve life insurance company selected by the Company to hold and invest the Company's contributions in accordance with the terms of the Insurance Contract and to administer the Pension Fund  for the purposes of the Plan.

**1.39** **"Trust Fund" or "Pension Fund"**

In the event that the Plan utilizes the services of a

(a)    Trustee in accordance with the terms of a Trust Agreement, all assets held by the Trustee in accordance with the terms of such Trust Agreement.  Such Trust Fund shall be created in the United States of America and will be maintained at all times as a domestic trust in the United States of America.

(b)    Funding Agent in accordance with the terms of an Insurance Contract, all assets held by the Funding Agent in accordance with the terms of the such Insurance Contract.

## ARTICLE 2

## ELIGIBILITY AND PARTICIPATION

**2.1    Eligibility for Participation**

(a)    Each Eligible Employee on the Supplemental Effective Date who was a Participant of the Plan shall continue as a Participant as of the Supplemental Effective Date.

(b)    Each Eligible Employee shall become a Participant as of the January 1 or July 1 coincident with or next following the later of the date he attains age 21 or the Applicable Computation Period during which he first completes 1,000 Hours of Employment with the Employer.

(c)    If a former Participant is reemployed and he is not deemed a new Employee in accordance with Section 1.33, he shall be eligible to resume his participation as of the date of his reemployment.

(d)    In no event will an Eligible Employee be excluded on account of attainment of a maximum age.

**2.2    Change in Employment Status**

(a)    In the event a Participant ceases to be an Eligible Employee as the result of becoming part of an excluded class, only Compensation up to the date he ceased to be an Eligible Employee shall be considered for purposes of calculating Average Compensation.  Such Employee shall cease to be an Active Participant as of the date he ceased to be an Eligible Employee.

In the event such Participant returns to an eligible class and again becomes an Eligible Employee, he shall become an Active Participant as of the date he again became an Eligible Employee.

(b)    If a person otherwise satisfied the eligibility requirements of Section 2.1 and subsequently becomes an Eligible Employee, he shall be eligible to become a Participant as of the date he became an Eligible Employee unless he is deemed a new Employee in accordance with Section 1.33.

(c)    In the event a collective bargaining agreement is entered into between the Company and a representative for any class of Employees in the employ of the Company subsequent to the Supplemental Effective Date, eligibility for participation in the Plan by such Employees who are not Participants shall not be extended beyond the effective date of the collective bargaining agreement unless the agreement extends participation in the Plan to such Employees.  The provisions of Subsection (a) shall apply to those Employees who are currently Participants.

## ARTICLE 3

## CONTRIBUTIONS

### 3.1  Company Contributions

(a)  The Company intends to contribute such amounts as are actuarially required to fund the benefits of the Plan.  The annual valuation for actuarially determining such amounts shall be based on the method of funding adopted by the Committee and shall reflect adjustments for experience realized from the investment of the Trust Fund, mortality, turnover, future salary increments, forfeitures, and any dividends resulting from insurance, if applicable.  The Company does not, however, guarantee either the making of the contributions or the payment of the benefits under the Plan.  The Company reserves the right to reduce, suspend or discontinue its contributions under the Plan for any reason at any time, notwithstanding any excise tax which might result therefrom.

(b)  Notwithstanding the above, all Company contributions shall be conditioned on their deductibility by the Company under Section 404 of the Code.  If the deduction of any such contributions is disallowed, such contributions shall be returned to the Company within one year from the date of (i) such disallowance, or (ii) the actuarial certification in the case of the de minimis rule as provided for in Revenue Procedure 90-49.

### 3.2  Participant Contributions

No contributions shall be required of the Participants.

### 3.3  Payment of Contributions

The Company shall deposit contributions with the Trustee for a particular Plan Year at such times as the Company may decide.

### 3.4  Management of Trust Fund

The Trust Fund shall be held in trust by the Trustee appointed from time to time (before or after termination of this Plan) by the Board of Trustees pursuant to the Trust Agreement.

### 3.5  Payment of Expenses

In addition to its contributions, the Company may elect to pay all the administrative expenses of the Plan and all fees and retainers of the Plan's Trustee, actuary, accountant, counsel, consultant, administrator, or other specialist so long as the Plan or Trust Fund remains in effect.  If the Company does not pay all or part of such expenses, the Trustee shall pay these expenses from the Trust Fund.  All expenses directly relating to the investments of the Trust Fund, including taxes, brokerage commissions, and registration charges must be paid from the Trust Fund.

01/20

# ARTICLE 4

## AMOUNT OF RETIREMENT INCOME

**4.1**   **Upon Normal Retirement Date**

Upon Retirement at his Normal Retirement Date,

(a)   an Active or Inactive Participant shall be entitled to receive the Actuarial Equivalent of the monthly Normal Form of Retirement Income equal to 1/12 of the amount set forth below.  Such amounts shall be determined on the basis of the Participant's Average Compensation and  Credited Service at his Normal Retirement Date.

   (i)   Effective for Facilities Union Participants and Non-Union Hourly Participants who are Active Participants on or after July 1, 2005, 1.25% such Participant's Average Compensation, multiplied by his Years of Service Credited Service.

   (ii)   Effective for Security Union Participants who are Active Participants on or after July 1, 2005, 1.25% such Participant's Average Compensation, multiplied by his Years of Service Credited Service.

(b)   In no event shall the Actuarial Equivalent of the Normal Form of Retirement Income be less than (i) the Early Retirement benefit determined as of any date on or after the date the Participant first becomes eligible for Early Retirement or less than (ii) the Actuarial Equivalent of the Participant's Accrued Benefit.  For purposes of comparing such benefits in the same form, the greater benefit is determined by converting the benefit payable prior to Normal Retirement into the same form of annuity benefit payable at Normal Retirement and comparing the amount of such annuity payments.

   In the case of a Top-Heavy plan the Normal Form of Retirement Income shall not be smaller than the minimum benefit to which the Participant is entitled under Article 12.

**4.2**   **Upon Deferred Retirement Date**

Upon Retirement at his Deferred Retirement Date, an Active or Inactive Participant shall be entitled to the greater of

(a)   the amount determined under Subsection 4.1(a) based on the Participant's Average Compensation and Years of Credited Service at his actual Retirement Date, or

(b)   the Actuarial Equivalent of the amount determined under Subsection 4.1(a) as of the Participant's Normal Retirement Date.

(c)   Notwithstanding the above,

   (i)   if a Participant continues in the employ of the Employer after benefits have commenced in accordance with Subsection 8.3(g) or (h), such

01/20

Participant shall continue to accrue a benefit for each Plan Year in accordance with Subsection 4.2(a). These additional benefit accruals will be reduced each Plan Year by the amount of the actuarial increase that would have been provided with respect to the benefit in pay status had the payment of such benefit been delayed to the date the additional benefit accruals become payable.

(ii)   if a Participant has reached his Normal Retirement Date and benefits cannot be actuarially increased without violating Code Section 415, benefit must commence in accordance with Section 8.3(g).

## 4.3   Upon Early or Disability Retirement Date

Upon Retirement at his Early or Disability Retirement Date, a Participant shall be entitled to receive the Actuarial Equivalent of his Accrued Benefit as of such Retirement Date.

## 4.4   Upon Other Termination of Employment

Upon termination of employment for reasons other than Retirement, a Vested Participant, at his Normal Retirement Date, shall be entitled to receive his vested interest in accordance with Section 5.3. Such benefit may commence in accordance with Section 8.3.

## 4.5   Maximum Benefit Limitation

The limitations of this Section shall apply in Limitation Years beginning on or after July 1, 2007, except as otherwise provided herein.

The Annual Benefit otherwise payable to a Participant under the Plan at any time shall not exceed the Maximum Permissible Benefit. If the benefit the Participant would otherwise accrue in a Limitation Year would produce an Annual Benefit in excess of the Maximum Permissible Benefit, then the benefit shall be limited (or the rate of accrual reduced) to a benefit that does not exceed the Maximum Permissible Benefit.

If the Participant is, or has ever been, a Participant in another qualified defined benefit plan (without regard to whether the plan has been terminated) maintained by the Employer or a Predecessor Employer, the sum of the Participant's Annual Benefits from all such plans may not exceed the Maximum Permissible Benefit. Where the Participant's employer-provided benefits under all such defined benefit plans (determined as of the same age) would exceed the Maximum Permissible Benefit applicable at that age, the Employer shall limit a Participant's Accrued Benefit under the Plan to the extent necessary so that the total Annual Benefits payable at any time under such plans will not exceed the Maximum Permissible Benefit as specified in Subsection (g) below. To the extent this paragraph applies, the Employer must request a determination letter in order to have reliance with respect to the requirement of Section 415.

The application of the provisions of this Section 4.5 shall not cause the Maximum Permissible Benefit for any Participant to be less than the Participant's Accrued Benefit under all the Defined Benefit Plans of the Employer or a Predecessor Employer as of the end of the last Limitation Year beginning before July 1, 2007 under provisions of the plans that were both adopted and in effect before April 5, 2007. The preceding sentence applies only if the provisions of such Defined Benefit Plans that were both adopted and

in effect before April 5, 2007 satisfied the applicable requirements of statutory provisions, regulations, and other published guidance relating to Code Section 415 in effect as of the end of the last Limitation Year beginning before July 1, 2007, as described in Regulation Section 1.415(a)-1(g)(4).

**Definitions**

For the purposes of this Section 4.5, the following definitions shall apply:

(a)     **Annual Benefit.**

Annual Benefit means a benefit that is payable annually in the form of a Straight Life Annuity. Except as provided below, where a benefit is payable in a form other than a Straight Life Annuity, the benefit shall be adjusted to an actuarially equivalent Straight Life Annuity that begins at the same time as such other form of benefit and is payable on the first day of each month, before applying the limitations of this Section 4.5. For a Participant who has or will have distributions commencing at more than one Annuity Starting Date, the Annual Benefit shall be determined as of each such Annuity Starting Date (and shall satisfy the limitations of this Section 4.5 as of each such date), actuarially adjusting for past and future distributions of benefits commencing at the other Annuity Starting Dates. For this purpose, the determination of whether a new Annuity Starting Date has occurred shall be made without regard to Treasury Regulation Section 1.401(a)-20, Q&A 10(d), and with regard to Treasury Regulation Section 1.415(b)-1(b)(l)(iii)(B) and (C).

No actuarial adjustment to the benefit shall be made for survivor benefits payable to a surviving spouse under a qualified joint and survivor annuity to the extent such benefits would not be payable if the Participant's benefit were paid in another form; benefits that are not directly related to retirement benefits (such as a qualified disability benefit, preretirement incidental death benefits, and postretirement medical benefits); or the inclusion in the form of benefit of an automatic benefit increase feature, provided the form of benefit is not subject to Code Section 417(e)(3) and would otherwise satisfy the limitations of this Section 4.5, and the Plan provides that the amount payable under the form of benefit in any Limitation Year shall not exceed the limits of this Section 4.5 applicable at the Annuity Starting Date, as increased in subsequent years pursuant to Code Section 415(d). For this purpose, an automatic benefit increase feature is included in a form of benefit if the form of benefit provides for automatic, periodic increases to the benefits paid in that form.

The determination of the Annual Benefit shall take into account Social Security supplements described in Code Section 411(a)(9) and benefits transferred from another defined benefit plan, other than transfers of distributable benefits pursuant Regulation Section 1.411(d)-4, Q&A-3(c), but shall disregard benefits attributable to Employee contributions or rollover contributions.

Effective for distributions in Plan Years beginning after December 31, 2003, the determination of actuarial equivalence of forms of benefit other than a Straight Life Annuity shall be made in accordance with Paragraph (i) or (ii) below.

(i)     **Benefit forms not subject to Code Section 417(e)(3).** The Straight Life Annuity that is actuarially equivalent to the Participant's form of benefit

shall be determined under this Paragraph (i) if the form of the Participant's benefit is either a nondecreasing Annuity (other than a Straight Life Annuity) payable for a period of not less than the life of the Participant (or, in the case of a qualified pre-retirement survivor annuity, the life of the surviving spouse), or an Annuity that decreases during the life of the Participant merely because of the death of the survivor annuitant (but only if the reduction is not below 50% of the benefit payable before the death of the survivor annuitant), or the cessation or reduction of Social Security supplements or qualified disability payments (as defined in Code Section 401(a)(11)).

(A)     **Limitation Years beginning before July 1, 2007.** For Limitation Years beginning before July 1, 2007, the actuarially equivalent Straight Life Annuity is equal to the annual amount of the Straight Life Annuity commencing at the same Annuity Starting Date that has the same actuarial present value as the Participant's form of benefit computed using whichever of the following produces the greater annual amount: (I) the interest rate and mortality table (or other tabular factor) specified in the Plan for adjusting benefits in the same form; and (II) 5% interest rate assumption and the Applicable Mortality Table for that Annuity Starting Date.

(B)     **Limitation Years beginning on or after July 1, 2007**. For limitation Years beginning on or after July 1, 2007, the actuarially equivalent Straight Life Annuity is equal to the greater of (I) the annual amount of the Straight Life Annuity (if any) payable to the Participant under the Plan commencing at the same Annuity Starting Date as the Participant's form of benefit; and (II) the annual amount of the Straight Life Annuity commencing at the same Annuity Starting Date that has the same actuarial present value as the Participant's form of benefit, computed using a 5% interest rate assumption and the Applicable Mortality Table for that Annuity Starting Date.

(ii)     **Benefit Forms Subject to Code Section 417(e)(3)**. The Straight Life Annuity that is actuarially equivalent to the Participant's form of benefit shall be determined under this paragraph if the form of the Participant's benefit is other than a benefit form described in Paragraph (i) above. In this case, the actuarially equivalent Straight Life Annuity shall be determined as follows:

(A)     **Annuity Starting Date in Plan Years Beginning After 2005.** If the Annuity Starting Date of the Participant's form of benefit is in a Plan Year beginning after 2005, the actuarially equivalent Straight Life Annuity is equal to the greatest of (1) the annual amount of the Straight Life Annuity commencing at the same Annuity Starting Date that has the same actuarial present value as the Participant's form of benefit, computed using the interest rate and mortality table (or other tabular factor) specified in the Plan for adjusting benefits in the same form; (2) the annual amount of the Straight Life Annuity commencing at the same Annuity Starting Date that has the same actuarial present value as the Participant's form of benefit, computed using a 5.5% interest rate assumption and the

Applicable Mortality Table (3) the annual amount of the Straight Life Annuity commencing at the same Annuity Starting Date that has the same actuarial present value as the Participant's form of benefit, computed using the applicable interest rate and Applicable Mortality Table, divided by 1.05.

(B)     **Annuity Starting Date in Plan Years Beginning in 2004 or 2005.** If the Annuity Starting Date of the Participant's form of benefit is in a Plan Year beginning in 2004 or 2005, except as provided in the transition rule of Paragraph (C) below, the actuarially equivalent Straight Life Annuity is equal to the annual amount of the Straight Life Annuity commencing at the same Annuity Starting Date that has the same actuarial present value as the Participant's form of benefit, computed using whichever of the following produces the greater annual amount: (1) the interest rate and mortality table (or other tabular factor) specified in the Plan for adjusting benefits in the same form; and (2) a 5.5% interest rate assumption and the Applicable Mortality Table.

(C)     **Transition rule.** If the Annuity Starting Date of the Participant's benefit is on or after the first day of the first Plan Year beginning in 2004 and before December 31, 2004, the application of this Paragraph (C) shall not cause the amount payable under the Participant's form of benefit to be less than the benefit calculated under the Plan, taking into account the limitations of this Article, except that the actuarially equivalent Straight Life Annuity is equal to the annual amount of the Straight Life Annuity commencing at the same Annuity Starting Date that has the same actuarial present value as the Participant's form of benefit, computed using whichever of the following produces the greatest annual amount: (1) the interest rate and mortality table (or other tabular factor) specified in the Plan for adjusting benefits in the same form; (2) the Applicable Interest Rate and Applicable Mortality Table; and (3) the Applicable Interest Rate (as in effect on the last day of the last Plan Year beginning before January 1, 2004, under provisions of the Plan then adopted and in effect) and the Applicable Mortality Table.

(b)     **Defined Benefit Compensation Limitation**

Defined Benefit Compensation Limitation means 100% of a Participant's High Three-Year Average Compensation, payable in the form of a Straight Life Annuity. In the case of a Participant who has had a Severance from Employment with the Employer, the Defined Benefit Compensation Limitation applicable to the Participant in any Limitation Year beginning after the date of severance shall be automatically adjusted by multiplying the limitation applicable to the Participant in the prior Limitation Year by the annual adjustment factor under Code Section 415(d) that is published in the Internal Revenue Bulletin. The adjusted compensation limit shall apply to Limitation Years ending with or within the calendar year of the date of the adjustment, but a Participant's benefits shall not reflect the adjusted limit prior to January 1 of that calendar year.

In the case of a Participant who is rehired after a Severance from Employment, the Defined Benefit Compensation Limitation is the greater of 100% of the Participant's High Three-Year Average Compensation, as determined prior to the Severance from Employment, as adjusted pursuant to the preceding paragraph, if applicable; or 100% of the Participant's High Three-Year Average Compensation, as determined after the Severance from Employment.

(c) **Defined Benefit Dollar Limitation**

Defined Benefit Dollar Limitation means, effective for Limitation Years ending after December 31, 2001, $160,000, automatically adjusted under Code Section 415(d), effective January 1 of each year, as published in the Internal Revenue Bulletin, and payable in the form of a Straight Life Annuity. The new limitation shall apply to Limitation Years ending with or within the calendar year of the date of the adjustment, but a Participant's benefits shall not reflect the adjusted limit prior to January 1 of that calendar year. The automatic annual adjustment of the Defined Benefit Dollar Limitation under Code 415(d) shall not apply to Participants who have had a Separation from Employment.

(d) **Formerly Affiliated Plan of the Employer**

Formerly Affiliated Plan of the Employer means a plan that, immediately prior to the cessation of affiliation, was actually maintained by the Employer and, immediately after the cessation of affiliation, is not actually maintained by the Employer. For this purpose, cessation of affiliation means the event that (i) causes an entity to no longer be considered the Employer, such as the sale of a member of a controlled group of corporations, as defined in Code Section 414(b), as modified by Code Section 415(h), to an unrelated corporation, or (ii) causes a plan to not actually be maintained by the Employer, such as transfer of plan sponsorship outside a controlled group.

(e) **High Three-Year Average Compensation**

High Three-Year Average Compensation means the average Compensation for the three consecutive years of Credited Service (or, if the Participant has less than three consecutive years of Credited Service, the Participant's longest consecutive period of service, including fractions of years, but not less than one year) with the Employer that produces the highest average. A Participant's Compensation for a year of Credited Service shall not include 415 Compensation in excess of the limitation under Code Section 401(a)(17) that is in effect for the calendar year in which such year of Credited Service begins.

In the case of a Participant who is rehired by the Employer after a Severance from Employment, the Participant's High Three-Year Average Compensation shall be calculated by excluding all years for which the Participant performs no services for and receives no Compensation from the Employer (the break period) and by treating the years immediately preceding and following the break period as consecutive.

(f) **Limitation Year**

The Plan Year.

(g)   **Maximum Permissible Benefit**

Maximum Permissible Benefit means the lesser of the Defined Benefit Dollar Limitation or the Defined Benefit Compensation Limitation (both adjusted where required, as provided below).

(i)   **Adjustment for Less Than 10 Years of Participation or Credited Service**: If the Participant has less than 10 years of participation in the Plan, the Defined Benefit Dollar Limitation shall be multiplied by a fraction, the numerator of which is the number of Years of Participation in the Plan (or part thereof, but not less than one year), and the denominator of which is ten (10). In the case of a Participant who has less than ten years of Credited Service with the Employer, the Defined Benefit Compensation Limitation shall be multiplied by a fraction, the numerator of which is the number of years of Credited Service with the Employer (or part thereof, but not less than one year), and the denominator of which is ten (10).

(ii)   **Adjustment of Defined Benefit Dollar Limitation for Benefit Commencement Before Age 62 or after Age 65:** Effective for benefits commencing in Limitation Years ending after December 31, 2001, the Defined Benefit Dollar Limitation shall be adjusted if the Annuity Starting Date of the Participant's benefit is before age 62 or after age 65 as described below.

(A)   **Adjustment of Defined Benefit Dollar Limitation for Benefit Commencement Before Age 62:**

(1)   **Limitation Years Beginning Before July 1, 2007.** If the Annuity Starting Date for the Participant's benefit is prior to age 62 and occurs in a Limitation Year beginning before July 1, 2007, the Defined Benefit Dollar Limitation for the Participant's Annuity Starting Date is the annual amount of a benefit payable in the form of a Straight Life Annuity commencing at the Participant's Annuity Starting Date that is the actuarial equivalent of the Defined Benefit Dollar Limitation (adjusted for years of participation less than ten (10), if required) with actuarial equivalence computed using whichever of the following produces the smaller annual amount: (I) the interest rate and mortality table (or other tabular factor) specified in the Plan; or (II) a five-percent interest rate assumption and the Applicable Mortality Table.

(2)   **Limitation Years Beginning on or After July 1, 2007.**

(I)   **Plan Does Not Have Immediately Commencing Straight Life Annuity Payable at both Age 62 and the Age of Benefit Commencement.** If the Annuity Starting Date for the Participant's benefit is prior to age 62 and occurs in a Limitation Year beginning on or after July 1, 2007, and the Plan does not have an immediately commencing

Straight Life Annuity payable at both age 62 and the age of benefit commencement, the Defined Benefit Dollar Limitation for the Participant's Annuity Starting Date is the annual amount of a benefit payable in the form of a Straight Life Annuity commencing at the Participant's Annuity Starting Date that is the actuarial equivalent of the Defined Benefit Dollar Limitation (adjusted for years of participation less than ten (10), if required) with actuarial equivalence computed using a five percent interest rate assumption and the Applicable Mortality Table for the Annuity Starting Date (and expressing the Participant's age based on completed calendar months as of the Annuity Starting Date).

(II)   **Plan Has Immediately Commencing Straight Life Annuity Payable at both Age 62 and the Age of Benefit Commencement.** If the Annuity Starting Date for the Participant's benefit is prior to age 62 and occurs in a Limitation Year beginning on or after July 1, 2007, and the Plan has an immediately commencing Straight Life Annuity payable at both age 62 and the age of benefit commencement, the Defined Benefit Dollar Limitation for the Participant's Annuity Starting Date is the lesser of the limitation determined under Paragraph (I) above and the Defined Benefit Dollar Limitation (adjusted for years of participation less than ten (10), if required) multiplied by the ratio of the annual amount of the immediately commencing Straight Life Annuity under the Plan at the Participant's Annuity Starting Date to the annual amount of the immediately commencing Straight Life Annuity under the Plan at age 62, both determined without applying the limitations of this Section 4.5.

(B)   **Adjustment of Defined Benefit Dollar Limitation for Benefit Commencement After Age 65:**

(1)   **Limitation Years Beginning Before July 1, 2007.** If the Annuity Starting Date for the Participant's benefit is after age 65 and occurs in a Limitation Year beginning before July 1, 2007, the Defined Benefit Dollar Limitation for the Participant's Annuity Starting Date is the annual amount of a benefit payable in the form of a Straight Life Annuity commencing at the Participant's Annuity Starting Date that is the actuarial equivalent of the Defined Benefit Dollar Limitation (adjusted for years of participation less than ten (10), if required) with actuarial equivalence computed using whichever of the following produces the smaller annual amount: (I) the interest rate and mortality table (or other

tabular factor) specified in the Plan; or (II) a five percent interest rate assumption and the Applicable Mortality Table as defined in the Plan.

(2)     **Limitation Years Beginning On or After July 1, 2007.**

(I)     **Plan Does Not Have Immediately Commencing Straight Life Annuity Payable at both Age 65 and the Age of Benefit Commencement.** If the Annuity Starting Date for the Participant's benefit is after age 65 and occurs in a Limitation Year beginning on or after July 1, 2007, and the Plan does not have an immediately commencing Straight Life Annuity payable at both age 65 and the age of benefit commencement, the Defined Benefit Dollar Limitation at the Participant's Annuity Starting Date is the annual amount of a benefit payable in the form of a Straight Life Annuity commencing at the Participant's Annuity Starting Date that is the actuarial equivalent of the Defined Benefit Dollar Limitation (adjusted for years of participation less than 10, if required), with actuarial equivalence computed using a 5% interest rate assumption and the Applicable Mortality Table for that Annuity Starting Date (and expressing the Participant's age based on completed calendar months as of the Annuity Starting Date).

(II)     **Plan Has Immediately Commencing Straight Life Annuity Payable at both Age 65 and the Age of Benefit Commencement.** If the Annuity Starting Date for the Participant's benefit is after age 65 and occurs in a Limitation Year beginning on or after July 1, 2007, and the Plan has an immediately commencing Straight Life Annuity payable at both age 65 and the age of benefit commencement, the Defined Benefit Dollar Limitation at the Participant's Annuity Starting Date is the lesser of the limitation determined under Paragraph (I) above and the Defined Benefit Dollar Limitation (adjusted for years of participation less than ten (10), if required) multiplied by the ratio of the annual amount of the adjusted immediately commencing Straight Life Annuity under the Plan at the Participant's Annuity Starting Date to the annual amount of the adjusted immediately commencing Straight Life Annuity under the Plan at age 65, both determined without applying the limitations of this Section 4.5. For this purpose, the adjusted immediately commencing Straight Life Annuity under the Plan at the Participant's Annuity Starting Date is the annual amount of such Annuity payable to the Participant, computed disregarding the

Participant's accruals after age 65 but including actuarial adjustments even if those actuarial adjustments are used to offset accruals; and the adjusted immediately commencing Straight Life Annuity under the Plan at age 65 is the annual amount of such Annuity that would be payable under the Plan to a hypothetical Participant who is age 65 and has the same accrued benefit as the Participant.

(C)     Notwithstanding the other requirements of this Subsection (g)(ii), in adjusting the Defined Benefit Dollar Limitation for the Participant's Annuity Starting Date under Subsection (g)(ii)(A)(1), (g)(ii)(A)(2)(I), (g)(ii)(B)(1) and (g)(ii)(B)(2)(I), no adjustment shall be made to the Defined Benefit Dollar Limitation to reflect the probability of a Participant's death between the Annuity Starting Date and age 62, or between age 65 and the Annuity Starting Date, as applicable, if benefits are not forfeited upon the death of the Participant prior to the Annuity Starting Date. To the extent benefits are forfeited upon death before the Annuity Starting Date, such an adjustment shall be made. For this purpose, no forfeiture shall be treated as occurring upon the Participant's death if the Plan does not charge Participants for providing a qualified preretirement survivor annuity, as defined in Code Section 417(c), upon the Participant's death.

(iii)     **Minimum benefit permitted:** Notwithstanding anything else in this Section to the contrary, the benefit otherwise accrued or payable to a Participant under this Plan shall be deemed not to exceed the Maximum Permissible Benefit if:

(A)     the retirement benefits payable for a Limitation Year under any form of benefit with respect to such Participant under this Plan and under all other defined benefit plans (without regard to whether a plan has been terminated) ever maintained by the Employer do not exceed $10,000 multiplied by a fraction, the numerator of which is the Participant's number of years (or part thereof, but not less than one year) of Credited Service (not to exceed ten (10)) with the Employer, and the denominator of which is ten (10); and

(B)     the Employer (or a Predecessor Employer) has not at any time maintained a defined contribution plan in which the Participant participated (for this purpose, mandatory Employee contributions under a defined benefit plan, individual medical accounts under Code Section 401(h), and accounts for post-retirement medical benefits established under Code Section 419A(d)(1) are not considered a separate defined contribution plan).

(h)     **Predecessor Employer**. Predecessor Employer means, with respect to a Participant, a former employer of such Participant if the Employer maintains a Plan that provides a benefit which the Participant accrued while performing services for the former employer. A former entity that antedates the Employer is also a Predecessor Employer with respect to a Participant if, under the facts and

circumstances, the Employer constitutes a continuation of all or a portion of the trade or business of the former entity. For this purpose, the formerly affiliated plan rules in Regulations Section 1.415(f)-1(b)(2) apply as if the Employer and Predecessor Employer constituted a single employer under the rules described in Regulation Section 1.415 (a)-1(f)(1) and (2) immediately prior to the cessation of affiliation (and as if they constituted two, unrelated employers under the rules described in Regulation Section 1.415 (a)-1(f)(1) and (2) immediately after the cessation of affiliation) and cessation of affiliation was the event that gives rise to the Predecessor Employer relationship, such as a transfer of benefits or plan sponsorship.

(i)   **Severance from Employment**. Severance from Employment means, with respect to any individual, cessation from being an Employee of the Employer maintaining the Plan. An Employee does not have a Severance from Employment if, in connection with a change of employment, the Employee's new employer maintains the Plan with respect to the Employee.

(j)   **Year of Participation**. Year of Participation means, with respect to a Participant, each accrual computation period (computed to fractional parts of a year) for which the following conditions are met: (i) the Participant is credited with at least the number of Hours of Employment for benefit accrual purposes, required under the terms of the Plan in order to accrue a benefit for the accrual computation period, and (ii) the Participant is included as a Participant under the eligibility provisions of the Plan for at least one day of the accrual computation period. If these two conditions are met, the portion of a Year of Participation credited to the Participant shall equal the amount of benefit accrual service credited to the Participant for such accrual computation period. A Participant who is permanently and totally disabled within the meaning of Code Section 415(c)(3)(C)(i) for an accrual computation period shall receive a Year of Participation with respect to that period.

In addition, for a Participant to receive a Year of Participation (or part thereof) for an accrual computation period, the Plan must be established no later than the last day of such accrual computation period. In no event shall more than one Year of Participation be credited for any 12-month period.

## ARTICLE 5

### BENEFITS PAYABLE UPON TERMINATION OF EMPLOYMENT

**5.1    Upon Retirement**

Upon eligibility for Retirement, a Participant shall have a 100% vested interest in his Accrued Benefit. A Participant shall have the right to retire on his Normal, Early, Deferred or Disability Retirement Date.

**5.2    Special Rules Upon Disability Retirement**

(a)    If a Participant is reemployed by the Company following the cessation of his Disability, he shall resume the classification of an Active or Inactive Participant and future benefits payable on his subsequent termination of employment will be reduced in accordance with Subsection 8.1(b). The Participant shall remain 100% vested in the Accrued Benefit determined as of his Disability Retirement Date, but his vested interest with respect to additional benefit accruals will be determined in accordance with this Article 5. In addition, such Participant shall also receive Service credit for the period beginning on his Severance From Employment Date due to Disability and ending on the date he is reemployed by the Company.

(b)    If a Participant eligible for Disability Retirement is also a Vested Participant or is eligible for Early Retirement, he may, in lieu of the Disability Retirement benefit payable under this Section, elect to receive the benefit applicable under Section 5.3 or the Early Retirement Benefit.

**5.3    Upon Other Termination of Employment**

(a)    Upon termination of employment by an Active or Inactive Participant before qualifying for any other benefits under the Plan and before his completion of three Years of Service, there shall be no benefits payable under the Plan.

(b)    Upon termination of employment by an Active or Inactive Participant after his completion of three Years of Service, he shall have a vested interest in his Accrued Benefit equal to the percentage determined in accordance with the following schedule on the basis of his Years of Service.

| Number of Years | Percentage of Accrued Benefit |
|---|---|
| Less than 3 years | 0% |
| 3 years | 20% |
| 4 years | 40% |
| 5 years | 60% |
| 6 years | 80% |
| 7 or more years | 100% |

If the Plan's vesting schedule is amended or the Plan is amended in any way that directly or indirectly affects the computation of a Participant's nonforfeitable percentage, or if the plan is deemed amended by an automatic change to or from a Top-Heavy vesting schedule, each Participant with at least three years of service with the Employer may elect within a reasonable period after the adoption

01/20

of the amendment or change, to have his nonforfeitable percentage computed under the Plan without regard to such amendment or change.

For Participants who do not have at least one hour of service in any Plan Year beginning after December 31, 1988, the preceding sentence shall be applied by substituting "five years of service" for "three years of service" where such language appears.

The period during which the election may be made shall commence with the date the amendment is adopted or deemed to be made and shall end on the latest of:

    (i)      60 days after the amendment is adopted;

    (ii)     60 days after the amendment becomes effective; or

    (iii)    60 days after the Participant is issued written notice of the amendment by the Employer or Committee.

(c)    The portion of a Participant's Accrued Benefit which is not vested shall be forfeited on the earlier of the date on which the Participant receives a distribution of his vested interest in accordance with Section 8.3 or the date on which such Participant incurs five consecutive Breaks-in-Service.

Notwithstanding the above, if the Actuarial Equivalent of a Participant's vested Accrued Benefit is zero, he shall be deemed to have received an immediate distribution as of the date on which such Participant terminated employment and such non vested Accrued Benefit shall be forfeited as of such date.

(d)    If a former Participant is reemployed and he is not deemed a new Employee in accordance with Section 1.33, he shall continue to vest, starting at the point in the vesting schedule where he was at the date of termination, in both pre-termination and post-termination accruals.

**5.4    Reemployment and Repayment of Benefits**

(a)    If a Participant is reemployed by an Employer prior to incurring five consecutive Breaks-in-Service and his vested interest had been wholly or partially distributed, that portion of the Participant's Accrued Benefit (including all optional forms of benefits and subsidies relating to such benefits) which was subject to forfeiture in accordance with Subsection 5.3(c) will be restored provided the Participant repays the amount of such distribution with interest, at the rate specified under Section 411(c)(2)(C)(iii) of the Code or any regulations relative thereto, as effective on the date of such repayment, compounded annually from the date he received such benefit to the date of such repayment. Such amounts must be repaid to the Trust Fund in a lump sum within five years from the date such Participant resumes his employment with the Employer. If the Participant does not make repayment within the specified time, the provisions of Subsection 8.1(b) shall be applicable. If a Participant who is deemed to receive a distribution pursuant to Section 5.3(c) is reemployed by the Employer prior to incurring five consecutive Breaks-in-Service, that portion of such Participant's Accrued Benefit which was subject to forfeiture in accordance with such Subsection will be restored.

(b)     Notwithstanding the above, no restoration of such benefits shall be made and no repayment of such distributions will be permitted in the case of

(i)     any Participant who was fully vested or

(ii)    any Participant who is reemployed after incurring five consecutive Breaks-in-Service.

## 5.5     Suspension of Benefits

If a Participant is reemployed as an Employee after the commencement of a retirement benefit under any of the provisions of the Plan, payment of the Participant's monthly retirement benefit shall be suspended as provided in Subsection (b) below, except as permitted or required in Subsection 8.3(g) or (h), subject to the following requirements:

(a)     Prior to such suspension, each Participant whose monthly retirement benefit is suspended under this section shall be notified of the suspension.  The notification shall be made by personal delivery or first class mail during the first calendar month or payroll period (if applicable) in which the Participant's monthly retirement benefit is suspended.  The notification shall contain the following information (either expressly or by reference to the Plan's Summary Plan Description):

(i)     A description of the specific reasons why benefit payments are suspended;

(ii)    A general description and copy of the Plan provisions relating to the suspension of benefit payments;

(iii)   A statement that applicable Department of Labor Regulations may be found in Section 2530.203-3 of the Code of Federal Regulations; and

(iv)    A description of the Plan's claims procedure for affording review of the suspension of benefits.

(b)     After a Participant's retirement benefit commences, such Participant's monthly retirement benefit may be suspended under this section for each month or, if applicable, during each four or five-week payroll period ending in a calendar month during which the Participant completes ERISA Section 203(a)(3)(B) Service. During each calendar month or payroll period (if applicable) in which a Participant meets the preceding requirements, he shall be deemed to be in the service of the Employer for purposes of this section. A Participant who does not perform ERISA Section 203(a)(3)(B) Service during any calendar month or payroll period (if applicable) shall be deemed to have terminated employment with the Employer and, as a result, shall be entitled to a monthly retirement benefit in accordance with Section 8.3.

(c)     If benefit payments are suspended, payments shall resume no later than the first day of the third calendar month after the calendar month in which the Participant ceases to be employed in ERISA Code  Section 203(a)(3)(B) Service.  In the event the Plan has not recovered amounts which should not have been paid under this section before such third calendar month, the Participant's monthly retirement benefit will be reduced by 25% until such amounts are recovered. The Plan shall recover all amounts attributable to a delay in the suspension of

benefits pending notice in subparagraph (a) above.  The initial payment upon resumption shall include the payment scheduled to occur in the calendar month when payments resume and any amounts withheld during the period between the cessation of ERISA Section 203(a)(3)(B) Service and the resumption of payments.

(d)    For purposes of this Section 5.5, "ERISA Section 203(a)(3)(B) Service" means service during a calendar month, or during a four or five-week payroll period in which the Participant is credited with at least forty (40) Hours of Service

(e)    Notwithstanding any provisions of the Plan to the contrary, the actuarial increase provided in Section 1.2(d) for any benefit determined as of or after the April 1 following the calendar year in which the Participant attains age 70-1/2 shall apply during any period of suspension in accordance with this Section.

(f)    Where benefits are suspended under this Section, the suspended amount shall be:

(i)    In the case of benefits payable periodically on a monthly basis for as long as a life (or lives) continues, such as a straight life annuity or a qualified joint and survivor annuity, an amount equal to the portion of a monthly benefit payment derived from employer contributions

(ii)    In the case of a benefit payable in a form other than the form described above, an amount of the Employer-provided portion of the benefit payments for a calendar month in which the employee in ERISA Section 203(a)(3)(B) Service, equal to the lesser of:

(A)    The amount of benefits which would have been payable to the Employee if he had been receiving monthly benefits under the Plan since actual retirement based on a straight life annuity commencing at actual retirement age; or

(B)    The actual amount paid or scheduled to be paid to the Employee for such month.  Payments, which are scheduled to be, paid less frequently than monthly may be converted to monthly payments for purposes of the preceding sentence.

(g)    This Section does not apply to the minimum benefit to which the Participant is entitled under the Top-Heavy rules of Article 12.

## ARTICLE 6

## OPTIONAL FORMS

All distributions required under this Article shall be determined and made in accordance with Section 401(a)(9) of the Internal Revenue Code, including the incidental death benefit requirement in Code Section 401(a)(9)(G), and the Income Tax Regulations thereunder.   Such provisions shall be effective for calendar years beginning after December 31, 2002 unless otherwise specified herein.

**6.1**   **Optional Forms**

(a)   If the Actuarial Equivalent of any benefit totals more than $5,000, in lieu of the Normal Form of Retirement Income, a Participant may, subject to the provisions of Subsection 6.1(b) and Sections 6.2, 6.3, 8.3 and 8.4 elect to receive his retirement income under one of the following optional forms.

**Option A**   Joint and 100% Survivor provides an adjusted income during the Participant's retired lifetime. Upon his death, if the Participant's Beneficiary survives him, the same income will continue to the Beneficiary until the Beneficiary's death.  This option is available only if one individual is to be designated as Beneficiary.

**Option B**   Joint and 75% Survivor provides an adjusted income during the Participant's retired lifetime. Upon his death, if the Participant's Beneficiary survives him, 75% of the Participant's income will continue to the Beneficiary until the Beneficiary's death.   This option is available only if one individual is to be designated as Beneficiary.

**Option C**   Joint and 66-2/3% Survivor provides an adjusted income during the Participant's retired lifetime. Upon his death, if the Participant's Beneficiary survives him, 66-2/3% of the Participant's income will continue to the Beneficiary until the Beneficiary's death.   This option is available only if one individual is to be designated as Beneficiary.

**Option D**   Joint and 50% Survivor provides an adjusted income during the Participant's retired lifetime. Upon his death, if the Participant's Beneficiary survives him, 50% of the Participant's income will continue to the Beneficiary until the Beneficiary's death.   This option is available only if one individual is to be designated as Beneficiary.

**Option E**   60 Months Certain and Continuous provides a reduced income during the Participant's retired lifetime.  Upon his death during the first 60 months, the same income will continue to the Participant's Beneficiary until the expiration of such 60-month period.

**Option F**   120 Months Certain and Continuous provides a reduced income during the Participant's retired lifetime.  Upon his death during the first 120 months, the same income will continue to the

Participant's Beneficiary until the expiration of such 120-month period.

**Option G** Life Only provides an increased income during the Participant's retired lifetime.  Such income will cease upon the Participant's death.

**Option H** Lump Sum Option provides the Participant's retirement income payable in one lump sum payment.  The determination of the lump sum value shall be on the basis of the Participant's actual age in years and months as of the Annuity Starting Date.

(b) In no event shall any optional form be permitted which would (i) result in the benefits being payable over a period extending beyond the life of such Participant, or the lives of such Participant and his Beneficiary, or the Life Expectancy of such Participant, or the Life Expectancy of such Participant and his Beneficiary; or (ii) distribute any remaining balance, in the event of a Participant's death after the commencement of his benefits, less rapidly than the method of distribution in effect prior to his death.

If the Participant's interest is being distributed in the form of a joint and survivor annuity for the joint lives of the Participant and a non-spouse Beneficiary, annuity payments to be made on or after the Participant's required beginning date, in accordance with Section 8.3(g), must not at any time exceed the applicable percentage of the annuity payment for such period that would have been payable to the Participant using the table set forth in Q&A-2(c)(2) of Section 1.401(a)(9)-6, of the Treasury regulations. If the form of distribution combines a joint and survivor annuity for the joint lives of the Participant and a non-spouse Beneficiary and a period certain annuity, the requirement in the preceding sentence will apply to annuity payments to be made to the designated Beneficiary after the expiration of the period certain. If the Annuity Starting Date precedes the year in which the Participant reaches age 70, in determining the applicable percentage, the Participant/Beneficiary age difference is reduced by the number of years that the Participant is younger than age 70.

Unless the Participant's Protected Spouse is the sole designated Beneficiary and the form of distribution is a period certain and no life annuity, the period certain for an annuity distribution commencing during the Participant's lifetime may not exceed the applicable distribution period for the Participant under the Uniform Lifetime Table set forth in Q&A-2 of Section 1.401(a)(9)-9 of the Treasury regulations for the calendar year that contains the Annuity Starting Date. If the Annuity Starting Date precedes the year in which the Participant reaches age 70, the applicable distribution period for the Participant is the distribution period for age 70 under the Uniform Lifetime Table set forth in Q&A-2 of Section 1.401(a)(9)-9 of the Treasury regulations plus the excess of 70 over the age of the Participant as of the Participant's birthday in the year that contains the Annuity Starting Date. If the Participant's Protected Spouse is the Participant's sole designated beneficiary and the form of distribution is a period certain and no life annuity, the period certain may not exceed the longer of the Participant's applicable distribution period, as determined under this Section, or the joint life and last survivor expectancy of the Participant and the Participant's Protected Spouse as determined under the Joint and Last Survivor Table set forth in Q&A-3 of Section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's and

spouse's attained ages as of the Participant's and spouse's birthdays in the calendar year that contains the Annuity Starting Date.

Life Expectancy shall mean the life expectancy as computed by use of the Single Life Table in Treasury regulation Section 1.401(a)(9)-9 Q&A-1.

**6.2    Rules and Regulations**

(a)    No consent to a distribution or election of an optional form shall be valid until after written notification of the provisions of Section 6.3 is received by the Participant.  The Committee shall provide such notice no less than 30 days nor more than 180 days before the Annuity Starting Date.

    (i)    Such notice shall contain a written explanation of

        (A)    the terms and conditions of the Automatic Spouse Benefit in accordance with Section 6.3;

        (B)    the Participant's right to make and the effect of an election to waive the Automatic Spouse Benefit;

        (C)    the rights of the Protected Spouse; and

        (D)    the right to make, and the effect of, a revocation of a previous election to waive the Automatic Spouse Benefit.

    (ii)    Such notice shall also contain a description of

        (A)    the optional forms available under Section 6.1,

        (B)    the eligibility conditions for such optional forms,

        (C)    the financial effect of electing an optional form,

        (D)    the relative value of each optional form compared to the Automatic Spouse Benefit as described in Section 6.3,

        (E)    any other material features of each optional form, and

        (F)    effective January 1, 2007, a description of how much larger benefits will be if the commencement of distributions is deferred.

The election of or subsequent change of any optional form must be filed with the Committee no later than the date of the Participant's Retirement or, if applicable and later, the last day of a Participant's Election Period.  The consent of the Participant's Protected Spouse will be required in the event of any election or change of election made by a Participant, to the extent provided in Section 6.3.  In no event may the Participant or Beneficiary change any optional form subsequent to the Annuity Starting Date.

(c)    Notwithstanding any provisions of the Plan to the contrary, any distribution may commence less than 30 days after the notice required in Subsection (a) is given, provided that:

(i)     the Committee clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option),

(ii)    the Participant, after receiving the notice, affirmatively elects a distribution,

(iii)   the Participant must be permitted to revoke an affirmative distribution election at least until the Annuity Starting Date, or, if later, at any time prior to the expiration of the seven-day period that begins the day after the notice is provided to the Participant; and

(iv)    distribution in accordance with the affirmative election does not commence before the expiration of the seven-day period that begins the day after the notice is provided to the Participant.

(d)   The Committee may promulgate any other specific rules and requirements it deems advisable.

## 6.3   Automatic Spouse Benefit

Subject to Subsection 6.2(b), if the Actuarial Equivalent of any benefit totals more than $5,000, each Participant eligible for the commencement of a retirement income shall be provided with written notice in accordance with Section 6.2 that his retirement income shall be paid to him as if he elected Option D, commencing immediately, with his Protected Spouse designated as his Beneficiary on his Annuity Starting Date, unless the Participant elects to have his retirement income paid to him in the Normal Form of Retirement Income or any other optional form available in accordance with Section 6.1, including a lump sum distribution or elects to defer commencement of his retirement income in accordance with Section 8.3(f).  Such election, other than the election of Option A, B or C with his Protected Spouse designated as his Beneficiary, must include the irrevocable written acknowledgment and consent of such spouse and be witnessed by a Plan representative or notary public during the Election Period to the extent required by law and the Committee.  Any spousal consent will be limited to a specific alternate Beneficiary and form of payment and any change in such Beneficiary or form will require a new spousal consent.  If the Participant is not married, the automatic form of benefit payment will be Option G.

The Participant shall have the right to elect, revoke or change any election under this Section at any time during his Election Period provided the Participant obtains any necessary written spousal acknowledgment and consent as required above and under Sections 6.2 and 8.3.  If it is established to the satisfaction of the Committee that there is no spouse because the spouse cannot be located or such other circumstances as may be promulgated by the Internal Revenue Service or established by law, such consent will not be required.

## 6.4   Determination of Amount to be Distributed each Year

(a)   If the Participant's interest is paid in the form of annuity distributions under the Plan, payments under the annuity will satisfy the following requirements:

(i)    The annuity distributions will be paid in periodic payments made at uniform intervals not longer than one year.

(ii)    Once payments have begun over a period certain, the period certain will not be changed even if the period certain is shorter than the maximum permitted except to the extent otherwise permitted in accordance with Section 6.5.

(iii)    Payments will either be non-increasing or increase only as follows:

    (A)    by an annual percentage increase that does not exceed the percentage increase in an Eligible Cost-of-Living Index for a 12-month period ending in the year during which the increase occurs or a prior year;

    (B)    by a percentage increase that occurs at specified times and does not exceed the cumulative total of annual percentage increases in an Eligible Cost-of-Living Index since the Annuity Starting Date, or if later, the date of the most recent percentage increase;

    (C)    by a constant percentage of less than 5 percent per year, applied not less frequently than annually;

    (D)    as a result of dividend or other payments that result from Actuarial Gains provided;

        (1)    Actuarial Gain is measured not less frequently than annually,

        (2)    the resulting dividend or other payments are either paid no later than the year following the year for which the actuarial experience is measured or paid in the same form as the payment of the annuity over the remaining period of the annuity (beginning no later than the year following the year for which the actuarial experience is measured),

        (3)    the Actuarial Gain taken into account is limited to Actuarial Gain from investment experience,

        (4)    the assumed interest rate used to calculate such Actuarial Gains is not less than 3 percent, and

        (5)    the annuity payments are not increased by a constant percentage as described in Paragraph (C) above;

    (E)    to the extent of the reduction in the amount of the Participant's payments to provide for a survivor benefit, but only if there is no longer a survivor benefit because the beneficiary whose life was being used to determine the distribution period described in Section 6.1(b) dies or is no longer the Participant's beneficiary pursuant to a qualified domestic relations order within the meaning of Section 414(p) of the Code;

(F)    to provide a final payment upon the Participant's death not greater than the excess of the actuarial present value of the Participant's accrued benefit (within the meaning of Section 411(a)(7) of the Code) calculated as of the Annuity Starting Date using the Applicable Interest Rate and the Applicable Mortality Table defined in Section 1.2(f) (or, if greater, the total amount of Employee contributions) over the total of payments before the Participant's death;

(G)    to allow a beneficiary to convert the survivor portion of a joint and survivor annuity into a single sum distribution upon the Participant's death; or

(H)    to pay increased benefits that result from a plan amendment.

(b)    The amount that must be distributed on or before the Participant's required beginning date (or, if the Participant dies before distributions begin, the date distributions are required to begin under Subsection 8.3(h)(i) or 8.3(h)(ii) is the payment that is required for one payment interval. The second payment need not be made until the end of the next payment interval even if that payment interval ends in the next calendar year. Payment intervals are the periods for which payments are received, e.g., bi-monthly, monthly, semi-annually, or annually. All of the Participant's benefit accruals as of the last day of the first Distribution Calendar Year will be included in the calculation of the amount of the annuity payments for payment intervals ending on or after the Participant's required beginning date.

(c)    Any additional benefits accruing to the Participant in a calendar year after the first Distribution Calendar Year will be distributed beginning with the first payment interval ending in the calendar year immediately following the calendar year in which such amount accrues.

(d)    For purposes of this Section, the following definitions shall be applicable:

(i)    **Actuarial Gain**

The difference between an amount determined using the actuarial assumptions (i.e., investment return, mortality, expense and other similar assumptions) used to calculate the initial payments before adjustment for any increases and the amount determined under the actual experience with respect to those factors. Actuarial gain also includes differences between the amount determined using actuarial assumptions when an Annuity was purchased or commenced and such amount determined using actuarial assumptions used in calculating payments at the time the Actuarial Gain is determined.

(ii)    **Distribution Calendar Year**

A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first Distribution Calendar Year is the calendar year immediately preceding the calendar year which contains the Participant's required beginning

date.  For distributions beginning after the Participant's death, the first Distribution Calendar Year is the calendar year in which distributions are required to begin pursuant to Section 8.3(g).

(iii)  **Eligible Cost-of-Living Index**

An index described in Paragraphs (b)(2), (b)(3) or (b)(4) of Treasury Regulations Section 1.401(a)(9)-6 Q&A-14.

**6.5    Changes to Annuity Payment Period**

(a)    An annuity payment period may be changed only in association with an annuity payment increase described in Section 6.4(a)(iii) or in accordance with Subsection (b) below.

(b)    An annuity payment period may be changed and the annuity payments modified in accordance with that change if the conditions in Subsection (c) below are satisfied and;

(i)    the modification occurs when the Participant retires or in connection with the plan termination;

(ii)    the payment period prior to modification is a period certain without life contingencies; or

(iii)    the Annuity payments after modification are paid under a qualified joint and survivor annuity over the joint lives of the Participant and a designated beneficiary, the Participant's spouse is the sole designated beneficiary, and the modification occurs in connection with the Participant's becoming married to such spouse.

(c)    The conditions in this Subsection (c) are satisfied if:

(i)    the future payments after the modification satisfy the requirements of Code Section 401(a)(9), Section 1.401(a)(9) of the regulations and this Section (determined by treating the date of the changes as a new Annuity Starting Date and the actuarial present value of the remaining payments prior to modification as the entire interest of the Participant);

(ii)    for purposes of Section 415 and Section 417 of the Code, the modification is treated as a new Annuity Starting Date;

(iii)    after taking into account the modification the annuity (including all past and future payments) satisfies the requirements of Section 415 of the Code (determined at the original Annuity Starting Date, using the interest rates and mortality tables applicable to such date); and

(iv)    the end point of the period certain, if any, for any modified payment period is not later than the end point available to the employee at the original Annuity Starting Date under Section 401(a)(9) of the Code and this Section.

## ARTICLE 7

### BENEFITS PAYABLE UPON DEATH

**7.1**    **Before Income Commencement**

Upon the death of an Active or Inactive Participant before becoming a Vested Participant, there shall be no benefits payable under the Plan.

(a)    Upon the death of a married Participant before the commencement of a retirement income, a 50% Survivor Annuity shall be provided to his Protected Spouse commencing on the Earliest Commencement Date.

Alternatively, the Participant may elect to provide for the payment of the 50% Survivor Annuity to any other designated Beneficiary provided the Participant's Protected Spouse consents to such election. Such election must include the irrevocable written acknowledgment and consent of such spouse and be witnessed by a Plan representative or notary public during the Election Period to the extent required by law and the Committee. Any spousal consent will be limited to a specific alternate Beneficiary. Any change in such Beneficiary or form will require a new spousal consent. If it is established to the satisfaction of the Committee that there is no spouse because the spouse cannot be located or such other circumstances as may be promulgated by the Internal Revenue Service or established by law, such consent will not be required.

Any waiver of death benefits to the Participant's Protected Spouse before the date a Participant terminates employment or the first day of the Plan Year during which a Participant attains age 35, will be null and void as of the earlier of such date, but may be renewed by executing a new waiver which meets the consent requirement above. The revocation of a prior waiver may be made at any time without the consent of the Protected Spouse. The number of revocations shall not be limited.

In the event of the Participant's death on or subsequent to the indicated dates and prior to the submission of a new waiver, the Protected Spouse shall be entitled to the 50% Survivor Annuity.

The designation of a Beneficiary other than the Protected Spouse to receive the balance of benefits payable remains valid after the earlier of the dates described above.

Any waiver prior to the first day of the Plan Year during which such Participant attains age 35 which is made by a Participant whose employment was terminated but who is subsequently reemployed is not revoked by this rule at any time but applies solely to benefits accrued before the date of termination.

(b)    Upon the death of an unmarried Participant before the commencement of a retirement income, a the 50% Survivor Annuity shall be paid to his Beneficiary.

(c)    Notwithstanding the foregoing provisions, if the Participant has made an election to receive his retirement income under either Option A, B, C or D in accordance

01/20                                                                                   39

with Article 6 with his Protected Spouse as his Beneficiary, any benefit payable upon the death of such Participant before his Annuity Starting Date shall be based on such elected form.

**7.2    Subsequent to Income Commencement**

Upon the death of a Vested or Retired Participant for whom no optional form had been in effect in accordance with Article 6, but before his having received 36 monthly retirement income payments, his Beneficiary shall be entitled to receive the balance of such 36 monthly payments. If an optional form had been in effect, the provisions of such optional form shall apply. A married Participant is assumed to have elected Option D with his Protected Spouse as Beneficiary unless he has elected otherwise.

**7.3    Definitions and Rules Governing Death Benefits**

All distributions required under this Section shall be determined and made in accordance with Code Section 401(a)(9), including the incidental death benefit requirement in Code Section 401(a)(9)(G), and the Income Tax Regulations thereunder. Such provisions shall be effective for calendar years beginning after December 31, 2002 unless otherwise specified herein.

(a)    In lieu of a lifetime income, the Beneficiary may elect to have the Actuarial Equivalent of the amount payable in accordance with Section 7.1 payable as a lump sum.

The determination of the lump sum value shall be on the basis of the Beneficiary's actual age in years and months as of the Annuity Starting Date.

(b)    **"50% Survivor Annuity"** means a monthly lifetime income payable to the Participant's Beneficiary equal to 50% of the monthly retirement income the Participant would have received had he elected to receive the Actuarial Equivalent of his vested Accrued Benefit as of his date of death commencing on the later of the date of death or the Earliest Commencement Date under Option D payable as an immediate annuity with such Beneficiary as the specified survivor.

(c)    Each Participant, upon becoming eligible for participation in the Plan, may designate a primary Beneficiary to receive the benefits payable in the event of his death, or, absent the applicability of a Survivor Annuity, may designate a secondary Beneficiary to receive any benefits payable in the event of the death of the primary Beneficiary. If a Participant designates a primary Beneficiary but not a secondary Beneficiary or if any such secondary Beneficiary dies, the Beneficiary last in receipt of or entitled to any benefit shall have the right to designate a successor Beneficiary to receive any benefits payable in the event of his death. In the absence of any such designation, the Actuarial Equivalent of benefits payable upon the death of the last living Beneficiary shall be paid in a lump sum to his estate. A Participant may change his Beneficiary at any time. All Beneficiary designations and changes shall be made on an appropriate form and filed with the Committee. If the primary Beneficiary designated by the Participant is anyone other than the Participant's Protected Spouse, such designation must include the written acknowledgment and irrevocable consent of such spouse and be witnessed by a Plan representative or a notary public, to the extent required by law and the Committee. Such consent will be limited to a

01/20

specific alternate Beneficiary and any change in such alternate Beneficiary will require a new spousal consent.

(d)    The Committee shall provide notice of the availability of any election which results in a waiver of 50% of the amount described in Section 7.1(a) with the Protected Spouse as Beneficiary within the Applicable Period.  Such notice shall be in such terms and such manner as would be comparable to the notice described in Section 6.2.

For purposes of this Subsection, the term Applicable Period means, with respect to a Participant, whichever of the following periods ends last:

(i)    The period beginning with the first day of the Plan Year in which the Participant attains age 32 and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains age 35.

(ii)    A reasonable period ending after the individual becomes a Participant.

(iii)    A reasonable period ending after this Section first applies to the Participant.

(iv)    A reasonable period ending after separation from service in the case of a Participant who separates before attaining age 35.

A reasonable period ending after the events described in Paragraphs (ii), (iii) and (iv) is the end of the two-year period beginning one year prior to the date the applicable event occurs, and ending one year after that date.  In the case of a Participant who separates from service before the Plan Year in which age 35 is attained, notice shall be provided within the two-year period beginning one year prior to separation and ending one year after separation.  If such Participant thereafter returns to employment with the Company, the Applicable Period for such Participant shall be redetermined.

(e)    If the Participant dies before the date distribution of his or her interest begins and there is a designated beneficiary, the Participant's entire interest will be distributed, beginning no later than the time described in Section 8.3(h), over the life of the designated beneficiary or over a period certain not exceeding:

(i)    Unless the Annuity Starting Date is before the first Distribution Calendar Year, the Life Expectancy of the designated beneficiary determined using the beneficiary's age as of the beneficiary's birthday in the calendar year immediately following the calendar year of the Participant's death; or

(ii)    If the Annuity Starting Date is before the first Distribution Calendar Year, the Life Expectancy of the designated beneficiary determined using the beneficiary's age as of the beneficiary's birthday in the calendar year that contains the Annuity Starting Date.

(f)    If the Participant dies before the date distributions begin and there is no designated beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(g)     If the Participant dies before the date distribution of his or her interest begins, the Participant's surviving spouse is the Participant's sole designated beneficiary, and the surviving spouse dies before distributions to the surviving spouse begin, this section will apply as if the surviving spouse were the Participant, except that the time by which distributions must begin will be determined without regard to Section 8.3(h).

(i)     Payments made to a Participant's surviving child until the child reaches the age of majority (or dies, if earlier) shall be treated as if such payments were made to the Protected Spouse to the extent the payments become payable to the surviving spouse upon cessation of the payments to the child.  A child shall be treated as having not reached the age of majority if the child has not completed a specified course of education and is under the age of 26.  In addition, a child who is disabled within the meaning of Code Section 72(m)(7) when the child reaches the age of majority shall be treated as having not reached the age of majority so long as the child continues to be disabled.

## ARTICLE 8

## REGULATIONS GOVERNING PAYMENT OF BENEFITS

**8.1   Duplication of Benefits**

Notwithstanding any provisions of the Plan to the contrary,

(a)   If a Participant is entitled to any retirement income or other benefits attributable to Employer contributions from any other qualified retirement defined benefit plan and if such other plan is sponsored or provided by any trade or other type organization or established by reason of any collective bargaining agreement covering such Participant, the benefits to which such Participant may be entitled under this Plan shall be reduced by an amount equal to such other retirement income or benefits, to the extent such benefits are attributable to concurrent periods of employment.

(b)   In the determination of any benefit to which a Participant or Beneficiary will be entitled under the Plan, adjustments shall be made to reflect any amounts previously distributed under the Plan unless such amount had been repaid in accordance with Section 5.4 and to reflect any amounts required to be paid to the Participant's Protected Spouse or former spouse under any law or Qualified Domestic Relations Order.

**8.2   Claim Procedure For Benefits**

(a)   Any request for specific information with respect to benefits, under the Plan must be made to the Committee in writing by a Participant or his Beneficiary. Oral communications will not be recognized as a formal request or claim for benefits.

When making a determination or a calculation, the Committee shall be entitled to rely upon information furnished by the Participant, Protected Spouse or Beneficiary, the Committee, the legal counsel of the Company, the Company or the actuary of the Plan.

(b)   The Committee shall provide any Participant or Beneficiary whose claim for benefits under the Plan has been wholly or partially denied with adequate written or electronic notification of such denial. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104(b)-1(c)(1)(i), (iii) and (iv). The notification shall set forth, in a manner calculated to be understood by the Participant or Beneficiary

(i)   the specific reasons for such denial;

(ii)   specific references to pertinent plan provisions on which the determination is based;

(iii)   a description of any additional material and/or information necessary for the Participant or Beneficiary to perfect the claim and an explanation of why such material or information is necessary;

01/20

(iv)    that any appeal of such adverse determination must be in writing to the Committee; and

(v)    a description of the Plan's appeal procedures (e.g. that any appeal of such adverse determination must be in writing to the Committee) and the time limits applicable to such procedures, including a statement of the Participant or Beneficiary's right to bring civil action under Section 502(a) of ERISA following an adverse benefit determination on appeal.

(c)    With respect to a Disability benefit, in addition to the information described in Subsection (b), a notice that a claim for benefits is partially or wholly denied shall be provided in a culturally and linguistically appropriate manner to the extent required under applicable ERISA regulations, and shall also include:

    (i)    A discussion of the decision, including an explanation of the basis for disagreeing with or not the following:

        (A)    The views presented by the claimant to the Plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant;

        (B)    The views of medical or vocational experts whose advice was obtained on behalf of the Plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination; and

        (C)    A disability determination regarding the claimant presented by the claimant to the Plan made by the Social Security Administration;

    (ii)    If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request;

    (iii)    Either the specific internal rules, guidelines, protocols, standards or other similar criteria of the Plan relied upon in making the adverse determination or, alternatively, a statement that such rules, guidelines, protocols, standards or other similar criteria of the Plan do not exist; and

    (iv)    A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

(d)    With respect to a benefit other than a Disability benefit, the Committee shall provide such notice of initial denial within a reasonable period of time but not later than 90 days after receiving the initial claim, unless the Committee determines that special circumstances require an extension of time for processing the claim.

Under such special circumstances, the 90-day period may be extended to 180 days. A notice of such extension shall be furnished to the Participant or Beneficiary before the expiration of the initial 90-day period indicating the special

circumstances requiring the extension and the date by which the Plan expects to render the benefit determination.

(e)     With respect to a Disability benefit, the Committee shall provide such notice of initial denial within a reasonable period of time but not later than 45 days after receiving the initial claim. Notwithstanding the foregoing, such period may be extended for up to 30 days, provided the Committee both determines that matters beyond the control of the plan require an extension of time for processing the claim and notifies the Participant, prior to the expiration of the initial 45-day period, of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision. If, prior to the end of the first 30-day extension period, the Committee determines that, due to matters beyond the control of the Plan, a decision cannot be rendered within the extension period, the period for making the determination may be extended for up to an additional 30 days, provided the Committee notifies the Participant prior to the expiration of the first 30-day extension period, of the circumstances requiring the extension and the date the Plan expects to render a decision. In the case of any extension under this Subsection, the notice of extension shall specifically explain the standards on which the entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues. The Participant shall be given 45 days to provide the specified information.

(f)     The Participant or Beneficiary may appeal the adverse determination within such period of time designated by the Committee but, until changed, not more than 60 days (180 days for a Disability Benefit) after receipt of such notification, and must include a full description of the pertinent issues and basis of claim.  In addition, the Participant or Beneficiary shall

(i)     have the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits; and

(ii)    be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information "relevant to the Participant or Beneficiary's claim for benefits."  For purposes of this Section, documents, records, and other information shall be considered "relevant to the Participant or Beneficiary's claim for benefits" if such items

(A)    were relied upon in making the benefit determination;

(B)    were submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; or

(C)    demonstrate compliance with the administrative processes and safeguards required by the Plan's claim procedures in making the benefit determination.

If the Participant or Beneficiary fails to appeal such action to the Committee in writing within the prescribed period of time, the Committee's adverse determination shall be final.

01/20

(g)    With respect to a benefit other than a Disability benefit, if such an appeal is filed with the Committee, the Committee shall conduct a review that takes into account all comments, documents, records, and other information submitted by the Participant or Beneficiary relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

Upon its re-examination of all such evidence and facts, the Committee shall make a final determination as to whether the denial of benefits is justified under the circumstances. The Committee shall provide the Participant or Beneficiary with adequate written or electronic notification of its decision. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104(b)-1(c)(1)(i), (iii) and (iv). In the case of an adverse determination, the notification shall set forth, in a manner calculated to be understood by the Participant or Beneficiary

(i)    the specific reasons for the adverse determination;

(ii)    specific reference to pertinent plan provisions on which the benefit determination is based;

(iii)    a statement that the Participant or Beneficiary is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information "relevant to the Participant or Beneficiary's claim for benefits." For purposes of this Section, "relevant to the Participant or Beneficiary's claim for benefits" shall have the same meaning as in Subsection (c)(ii) of these regulations; and

(iv)    a statement of the Participant or Beneficiary's right to bring civil action under Section 502(a) of ERISA.

The Committee shall provide such notice of an adverse determination within a reasonable period of time but not later than 60 days after receipt of the Participant or Beneficiary's request for an appeal by the Plan unless the Committee determines that special circumstances require an extension of time for processing the claim.

Under such special circumstances, the initial 60-day period may be extended to 120 days. A notice of such extension shall be furnished to the Participant or Beneficiary before the expiration of the initial 60-day period indicating the special circumstances requiring the extension and the date by which the Plan expects to render the benefit determination on review.

(h)    With respect to a Disability benefit, the following provisions shall apply to such review:

(i)    Such review shall take into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

(ii)  Deference shall not be afforded to the initial adverse benefit determination and will be conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual;

(iii)  In deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment;

Such health care professional shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual;

(iv)  The claimant shall be provided the identification of medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination;

(v)  Before the Plan can issue an adverse benefit determination on review on a disability benefit claim, the Committee shall provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the Plan, insurer, or other person making the benefit determination (or at the direction of the Plan, insurer or such other person) in connection with the claim; such evidence will be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided to give the claimant a reasonable opportunity to respond prior to that date; and

(vi)  Before the Plan can issue an adverse benefit determination on review on a disability benefit claim based on a new or additional rationale, the Committee shall provide the claimant, free of charge, with the rationale; the rationale will be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided to give the claimant a reasonable opportunity to respond prior to that date.

(i)  Upon its re-examination of all evidence and facts described in Subsection (g), the Committee shall make a final determination as to whether the denial of benefits is justified under the circumstances. The Committee shall provide the Participant with adequate written or electronic notification of its decision. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104(b)-1(c)(1)(i), (iii) and (iv). In the case of an adverse determination, the notification shall set forth, in a manner calculated to be understood by the Participant

(i) the specific reasons for the adverse determination;

(ii) specific reference to pertinent Plan provisions, rules, guidelines, protocol or criteria on which the benefit determination is based;

(iii) a statement that the Participant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information "relevant to the Participant's claim for benefits." For purposes of this Section, "relevant to the Participant's claim for benefits" shall have the same meaning as in Subsection (f)(ii);

(iv) a statement of the Participant's right to bring civil action under Section 502(a) of ERISA; and

(v) the following statement: "You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State Insurance regulatory agency."

The Committee shall provide such notice of an adverse determination within a reasonable period of time but not later than 45 days after receipt of the Participant's request for an appeal by the Plan unless the Committee determines that special circumstances require an extension of time for processing the claim.

(j) With respect to a Disability benefit, In addition to the information described in Subsection (i), a written decision providing the final determination shall be provided in a culturally and linguistically appropriate manner to the extent required under applicable ERISA regulations, and shall also include:

(i) A description of any applicable contractual limitations period that applies to the claimant's right to bring an action under Section 502(a) of ERISA, including the calendar date on which the contractual limitations period expires for the claim;

(ii) A discussion of the decision, including an explanation of the basis for disagreeing with or not following:

(A) The views presented by the claimant to the Plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant;

(B) The views of medical or vocational experts whose advice was obtained on behalf of the Plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination;

(C) A disability determination regarding the claimant presented by the claimant to the Plan made by the Social Security Administration;

(D) If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's

medical circumstances, or a statement that such explanation will be provided free of change upon request; and

(E)    Either the specific internal rules, guidelines, protocols, standards or other similar criteria of the Plan relied upon in making the adverse determination or, alternatively, a statement that such rules, guidelines, protocols, standards or other similar criteria of the Plan do not exist.

### 8.3    Commencement of Benefits

All distributions required under this Section shall be determined and made in accordance with Section 401(a)(9) of the Internal Revenue Code, including the incidental death benefit requirement in Code Section 401(a)(9)(G) and Treasury Regulation Section 1.401(a)(9)-6, Q&A 2. Such provisions shall be effective for calendar years beginning after December 31, 2002 unless otherwise specified herein.

(a)    Unless otherwise provided in Subsection (e), in the event of termination of employment, if the Actuarial Equivalent of any benefit totals $1,000 or less, such benefit will commence as soon as administratively feasible following such termination.

(b)    Unless otherwise provided in this Section, if the Actuarial Equivalent of any benefit totals more than $1,000 with respect to Paragraph (i) or $5,000 with respect to Paragraph (ii) and (iii),

    (i)    in the event of termination of employment, such benefit will commence as soon as administratively feasible following such termination, provided that if the Participant has not attained his Normal Retirement Date, the Participant consents to such distribution within his Election Period.

    (ii)    if the distribution is payable to the Participant's Protected Spouse, payment of benefits will commence as soon as administratively feasible following the Participant's Earliest Commencement Date, provided that if such distribution payable to the Protected Spouse prior to the date the Participant would have attained his Normal Retirement Date the written acknowledgment and irrevocable consent of such spouse is obtained within 180 days of the Annuity Starting Date.

    (iii)    if the distribution is payable to a Beneficiary other than the Protected Spouse, payment of benefits will commence as soon as administratively feasible following the Participant's death.

Notwithstanding the above, no consent to a distribution prior to the date the Participant attained his Normal Retirement Date shall be valid until after written notification of the right to defer is received by the Participant. The Committee shall provide such written notification of the right to defer any benefit payable no less than 30 days nor more than 180 days before the Annuity Starting Date, subject to the provisions of Subsection 6.2(c).

(c)    If a Retired Participant does not consent to the distribution at the time specified above and fails to elect deferral in accordance with Subsection (f), benefits will commence as of the 60th day following the last day of the Plan Year during

which the Participant's Normal Retirement Date occurs.  If the Committee cannot establish contact with the Retired Participant, such Retired Participant is deemed to be missing and benefits shall be disposed according to Section 8.5.

If the Participant's Protected Spouse as Beneficiary does not consent to the distribution at the time specified above and fails to elect deferral in accordance with Subsection (i), benefits will commence as of the 60th day following the last day of the Plan Year during which the Participant's Normal Retirement Date would have occurred.  If the Committee cannot establish contact with the Protected Spouse as Beneficiary, such Beneficiary is deemed to be missing and benefits shall be disposed according to Section 8.5.

(d)   If such termination of employment is a result of an event other than Retirement, Disability or death and the Actuarial Equivalent of a Participant's Accrued Benefit is more than $5,000,

   (i)   except as provided in Paragraph (ii), payment will be deferred until his Normal Retirement Date, at which time the Participant may elect to commence his benefits by filing an application with the Committee.

   Notwithstanding the foregoing provision, a Vested Participant who terminated his employment and who had completed 10 Years of Service may elect to commence payment of his Accrued Benefit at any time on or after attaining age 55 by filing his application with the Committee.

   (ii)   a Participant may elect to commence his benefits as soon as administratively possible following such termination in accordance with Subsection (b) and subject to the provisions of Article 6

      (A)   in the form of a lump sum,

      (B)   if married, in the form of a Joint and 50% or 75% Joint Survivor Pension, with his Protected Spouse named as the Beneficiary, or

      (C)   if not married, in the Normal Form of Retirement Income.

All applications for commencement of benefits must be made on an appropriate form filed with the Committee no earlier than 180 days before the date the Participant specifies for the commencement of his benefits.  Payment of a Participant's benefits shall commence not later than 60 days following the last day of the Plan Year during which payments are requested to commence in accordance with the application filed by the Participant.

(e)   Unless otherwise elected by the Participant and subject to Subsection (f), distribution shall occur no later than the 60th day following the last day of the Plan Year during which occurs the latest of

   (i)   the date a Participant attains the earlier of his Normal Retirement Date or age 65;

   (ii)   the tenth anniversary of the year during which the Participant commenced participation in the Plan; or

01/20

50

(iii)    the date the Participant terminates his employment.

(f)    A Participant who terminates employment may elect that payment of the Actuarial Equivalent of his retirement benefits commence at a date later than specified above by submitting a signed, written statement describing the benefit and the date on which the payment of such benefit shall commence, provided such date is not later than the April 1 following the calendar year during which the Participant attains or would have attained age 70-1/2. In the event a Participant fails to elect to commence his benefits and fails to notify the Committee of his intent to defer commencement, it shall be deemed that he elected to defer commencement of his benefit until the April 1 following the calendar year during which the Participant attains or would have attained age 70-1/2.

(g)    Notwithstanding the above,

(i)    distribution of the Actuarial Equivalent of retirement benefits to each Participant who is a 5% owner, within the meaning of Section 416(i)(1)(B)(i) of the Code at any time during the Plan Year ending with or within the calendar year in which such owner attains age 70-1/2, must commence not later than the April 1 following the calendar year in which the Participant attains age 70-1/2, whether or not the Participant terminates employment in that year and whether or not the Participant applies for benefit payment.

Once distributions have begun to a 5% owner under this Subsection, they must continue to be distributed even it the Participant ceases to be a 5% owner in a subsequent year.

(ii)    distribution of the Actuarial Equivalent of retirement benefits to each Participant who is not a 5% owner, within the meaning of Section 416(i)(1)(B)(i) of the Code, must commence not later than the April 1 following the later of the calendar year in which the Participant attains age 70-1/2 or the calendar year in which the Participant terminates employment.

Such Participant's Accrued Benefit is actuarially increased in accordance with Subsection 1.2(d) to take into account the period after age 70-1/2 in which the Participant does not receive any benefits under the Plan. The amount of the actuarial increase payable as of the end of the period for actuarial increases as described in Subsection 1.2(d) must be no less than the Actuarial Equivalent of the Participant's benefits that would have been payable as of the date the benefit must commence plus the Actuarial Equivalent of additional benefits accrued after that date, reduced by the Actuarial Equivalent of additional distributions made after that date. The actuarial increase is generally the same as, and not in addition, to the actuarial increase required for that same period under Code Section 411 and Section 4.2 of the Plan to reflect the delay in payments after Normal Retirement Date, except that the actuarial increase required under code Section 401(a)(9)(C) must be provided even during the period during which a Participant is in ERISA Section 203(a)(3)(B) service in accordance with Section 5.5.

(i)    If the designated Beneficiary is,

(i)    the Participant's Protected Spouse, such spouse may elect that benefit payments commence at a date later than specified in Subsection (b) by submitting a signed written statement describing the benefit and the date on which the payment of such benefit shall commence, provided such date is not later than the latest of (A) December 31 of the calendar year in which the Participant dies or (B) December 31 of the calendar year during which the Participant would have attained age 70-1/2 or (C) such later date as may be promulgated by the Internal Revenue Service.

If such spouse dies prior to the commencement of benefits, and if the distribution of any death benefit payable to the spouse's Beneficiary is made in a form that may extend beyond the December 31 of the calendar year during which the fifth anniversary of such spouse's death occurs, such distribution must commence no later than the December 31 of the calendar year immediately following the date of such spouse's death or such later date as may be promulgated by the Internal Revenue Service. In the event the spouse fails to elect to commence his or her benefits and fails to notify the Committee of his or her intent to defer commencement, it shall be deemed that he or she elected to defer commencement of his or her benefit until the April 1 following the calendar year during which the Participant would have attained age 70-1/2.

(ii)    other than the Participant's Protected Spouse, and the death benefit payable is made in a form that may extend beyond the December 31 of the calendar year during which the fifth anniversary of such Participant's death occurs, such distribution must commence no later than the December 31 of the calendar year immediately following the date of such Participant's death or such later date as may be promulgated by the Internal Revenue Service.

(iii)    If there is no designated beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(j)    If a Participant is in receipt of benefits from the Company's insured long-term disability program, commencement of benefits shall be deferred to the first day of the month in which such Participant is no longer eligible to receive such benefits or, if earlier, the 60th day following the last day of the Plan Year during which the Participant's Normal Retirement Date occurs, provided the benefits payable under the long-term disability program would otherwise be reduced by the benefits payable under the Plan.

## 8.4    Method and Form of Payment of Benefits

All distributions required under this Section shall be determined and made in accordance with Section 401(a)(9) of the Internal Revenue Code, including the incidental death benefit requirement in Code Section 401(a)(9)(G) and Treasury Regulation Section 1.401(a)(9)-6, Q&A 2. Such provisions shall be effective for calendar years beginning after December 31, 2002 unless otherwise specified herein.

(a) Subject to Article 6 and Section 8.3, if the Actuarial Equivalent of any benefit payable to a Participant or Beneficiary totals $5,000 or less, such benefit will be distributed in a lump sum.

(b) Subject to Article 6 and Section 8.3, if the Actuarial Equivalent of any benefit payable to a Participant totals more than $5,000, such benefit will be used to provide a retirement income directly from the Trust Fund, unless the Participant elects to have such amount distributed in a lump sum in accordance with Section 6.1.

(c) Subject to Section 8.3 and Subsection (a) above, before the Participant's Annuity Starting Date, any benefit payable to a Participant's Beneficiary will be distributed in accordance with the provisions of Article 7.

(d) The present value of a Participant's vested Accrued Benefit will be treated as greater than $5,000 at all times after the commencement of benefits that were subject to the spousal consent requirements under Sections 6.2, 6.3 and 8.3.

(e) Notwithstanding the provisions of Subsection (b), in lieu of a retirement income payable directly from the Trust Fund the Committee in its sole discretion, may purchase an immediate Annuity.

Any immediate Annuity contract purchased and distributed to a Participant shall be nontransferable and shall comply with the requirements of this Plan.

If the Participant's interest is distributed in the form of an Annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Section 401(a)(9) of the Code and the Treasury regulations. Any part of the Participant's interest which is in the form of an individual account described in Section 414(k) of the Code will be distributed in a manner satisfying the requirements of 401(a)(9) of the Code and the Treasury regulations that apply to individual accounts.

(f) If a Participant's benefits are required to commence in accordance with Subsection 8.3(g), such Participant shall make an irrevocable election as to the optional form of payment. All such benefits shall be paid directly from the Trust Fund. Subject to Section 6.3, the options available will include options available to retirees in accordance with Section 6.1, including a lump sum distribution. Upon subsequent termination of employment for any reason, the optional form or forms previously elected will remain in effect.

(g) The distribution of a lump sum payment or an Annuity to the Participant or his Beneficiary will constitute the complete discharge of all obligations of the Plan.

**8.5   Disposition of Unclaimed Benefits**

In the event that any check or final notice of payment of benefits under the Plan remains outstanding at the expiration of six months from the date of mailing of such check or notice to the last known address of the payee, the Committee shall notify the Trustee to stop payment on all outstanding checks and to suspend the issuance of further checks or notice, if any, to such payee. If the Committee cannot establish contact with the payee after the date

(a)     of mailing of the first such check or

(b)     of notice that a benefit is due under the Plan

by taking such action as it deems appropriate in accordance with the provisions of Department of Labor Field Assistance Bulletin 2014-01, and the payee does not make contact with the Committee, any benefits to which such payee is entitled shall be forfeited.  Any benefit so forfeited shall be restored if a claim is made for the unpaid benefit at any subsequent date and the Plan has not been terminated as of such date. Contributions required to be made in accordance with Section 3.1 shall reflect such forfeitures and restoration in the same manner as expense gains and losses are reflected in the funding method used by the Plan.

**8.6     Non-Assignability**

(a)     No benefit or interest under the Plan shall be subject in any manner either voluntarily or involuntarily to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge and any such action shall be void for all purposes of the Plan.  No benefit shall in any manner be subject to the debts, contracts, liabilities, engagements or torts of any person, nor shall it be subject to attachments or other legal process for or against any person, except with respect to a Qualified Domestic Relations Order or domestic relations order entered before January 1, 1985 and in such other instances and to such extent as may be permitted by law.

(b)     The provisions of Subsection (a) do not apply to any

(i)     amount that must be withheld because of the tax withholding provisions of the Code or a state's income tax act or amounts payable pursuant to a Qualified Domestic Relations Order or in such other instances and to such extent as may be required by law.

(ii)    offset of a Participant's benefits against an amount that the Participant is ordered or required to pay under a judgment or conviction for a crime involving the Plan, under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of Part 4 of Subtitle B of Title I of ERISA, or pursuant to a settlement agreement between the Secretary of Labor and the Participant in connection with a violation (or alleged violation) of Part 4 of such Subtitle by a fiduciary or any other person, on or after August 5, 1997.

Notwithstanding the above,

(A)    the judgment, order, decree or settlement agreement must expressly provide for the offset of all or part of the amount ordered or required to be paid to the Plan against the Participant' s Plan benefits; and

(B)    if the provisions of Sections 6.3 apply to the Protected Spouse, either

01/20                                                                                        54

      (1)    the Protected Spouse has consented to such offset in accordance with the consent requirements of Section 6.3,

      (2)    a waiver of spousal benefits in accordance with Section 6.3 is in effect,

      (3)    such spouse is ordered or required in such judgment, order, decree or settlement agreement to pay an amount to the Plan in connection with a violation of Part 4 of Subtitle B of title 1 of ERISA, or

      (4)    in such judgment, order, decree or settlement agreement such spouse retains the rights of the Protected Spouse in accordance with Section 6.3.

## 8.7  Substitute Payee

If a Participant or Beneficiary entitled to receive benefits hereunder is in his minority, or is, legally, physically, or mentally incapable of personally receiving and receipting for any distribution, the Committee shall instruct the Trustee to make distributions to his court appointed legal guardian, a person with a valid power of attorney or any other person authorized under state law to receive the benefit.

## 8.8  Satisfaction of Liability and Misstatements of Participant

(a)    After all benefits have been distributed in full to a Participant or to his Beneficiary, all liability to such Participant or to his Beneficiary shall cease.

(b)    If a Participant, in any election forms or other documents furnished by him in connection with the administration of the Plan, makes any statement which is erroneous or omits any material fact or fails before receiving his first benefit payment to correct any information that he previously incorrectly furnished to the Committee for its records, the amount of his benefit shall be adjusted on the basis of the facts, and the amounts of any overpayment or any underpayment therefor made to such Participant, Protected Spouse, contingent annuitant, or Beneficiary shall be deducted from or added to the next succeeding amount payable under the Plan.

## 8.9  Limit For 25 Highest Paid Employees

(a)    **Restrictions on Benefits**

In the event of termination of the Plan, the benefit of any Restricted Employee shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

(b)    **Restrictions on Distributions**

(i)    Except as provided below, annual payments to Restricted Employees shall be limited to an amount equal to the payments that would be made on behalf of such Restricted Employee under a single life annuity that is the Actuarial Equivalent of the sum of such Restricted Employee's

Accrued Benefit and any other benefits under the Plan as described in Paragraph (iv)(B).

(ii)    The restrictions of Paragraph (i) do not apply, however, if

    (A)    after payment of the benefits described in Paragraph (iii)(B) to a Restricted Employee, the value of Plan assets equals or exceeds 110% of the value of current liabilities, as defined in Section 412(l)(7) of the Code, or

    (B)    the value of the benefits described in Paragraph (iii)(B) for Restricted Employees is less than one percent of the value of current liabilities.

    (C)    the Actuarial Equivalent of the benefit payable to the Restricted Employee totals $5,000 or less.

(iii)    A Restricted Employee's otherwise restricted benefit may be distributed in full to the affected Restricted Employee if prior to receipt of the Restricted Amount, the Restricted Employee enters into a written agreement with the Committee to secure repayment to the Plan of the Restricted Amount. The Restricted Employee may secure repayment of the Restricted Amount upon distribution by:

    (A)    entering into an agreement for promptly depositing in escrow with an acceptable depository property having a fair market value equal to at least 125 percent of the Restricted Amount,

    (B)    providing a bank letter of credit in an amount equal to at least 100 percent of the Restricted Amount, or

    (C)    posting a bond equal to at least 100% of the Restricted Amount. If the Restricted Employee elects to post bond, the bond will be furnished by an insurance company, bonding company or other surety for federal bonds.

The escrow arrangement may provide that a Restricted Employee may withdraw amounts in excess of 125 percent of the Restricted Amount. If the market value of the property in an escrow account falls below 110 percent of the remaining Restricted Amount, the Restricted Employee must deposit additional property to bring the value of the property held by the depository up to 125 percent of the Restricted Amount. The escrow arrangement may provide that the Restricted Employee may have the right to receive any income from the property placed in escrow, subject to the Restricted Employee's obligation to deposit additional property, as set forth in the preceding sentence.

A surety or bank may release any liability on a bond or letter of credit in excess of 100 percent of the Restricted Amount.

If the Committee certifies to the depository, surety or bank that the Restricted Employee (or the Restricted Employee's estate) is no longer obligated to repay any Restricted Amount, a depository may redeliver to

the Restricted Employee any property held under an escrow agreement, and a surety or bank may release any liability on an Restricted Employee's bond or letter of credit.

(iv)    For purposes of this Section,

(A)    Restricted Employees shall include all Highly Compensated Active Employees and Highly Compensated Former Employees.  The total number of such Restricted Employees shall be limited to those 25 Highly Compensated Active Employees and Highly Former Compensated Employees with the greatest Compensation.

(B)    benefit shall mean any periodic income and any death benefits payable not provided for by insurance on the Restricted Employee's life.

(C)    Restricted Amount shall mean the excess of the amounts distributed to the Restricted Employee (accumulated with reasonable interest) over the amounts that could have been distributed to the Restricted Employee under the Straight Life Annuity (accumulated with reasonable interest).

The above provisions of this Section are intended to conform the Plan to the requirements of Treasury Regulation 1.401(a)(4)-5(b) and shall be construed accordingly.

**8.10    Direct Rollover to Eligible Retirement Plans**

(a)    Notwithstanding any provisions of the Plan to the contrary that would otherwise limit a Distributee's election under this Section, for distributions made on and after January 1, 2002, a Distributee may elect, at the time and in the manner prescribed by the Committee, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

(b)    **Definitions**

(i)    **Eligible Rollover Distribution**

An Eligible Rollover Distribution is any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include: (A) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or Life Expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary, or for a specified period of ten years of more; and (B) any distribution to the extent such distribution is required under Section 401(a)(9) of the Code.

A portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income.  However, such portion may be

paid only to an (A) individual retirement account or annuity described in Section 408(a) or (b) of the Code, (B) for taxable years beginning after December 31, 2001 and before January 1, 2007, to a qualified trust which is part of a defined contribution plan that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includable or (C) for taxable years beginning after December 31, 2006, to a qualified trust or to an annuity contract described in Section 403(b) of the Code, if such trust or contract provides for separate accounting for amounts so transferred (including interest thereon) including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(ii)     **Eligible Retirement Plan**

An Eligible Retirement Plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, a qualified defined contribution plan described in Section 401(a) of the Code, an annuity contract described in Section 403(b) of the Code and an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan, that accepts the Distributee's Eligible Rollover Distribution.  The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relation order, as defined in Section 414(p) of the Code.

Effective for distributions made after December 31, 2007, a Participant or Beneficiary may elect to roll over directly an Eligible Rollover Distribution to a Roth IRA described in Code Section 408A(b).

(iii)     **Distributee**

A Distributee includes an Employee or former Employee.  In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the alternate payee under a Qualified Domestic Relations Order, are Distributees with regard to the interest of the spouse or former spouse.

A non-spouse Beneficiary may also be considered a Distributee provided the following requirements are met:

(A)     The distribution is paid directly to an individual retirement account described in Section 408(a) of the Code or an individual retirement annuity described in Section 408(b) of the Code that is established solely to receive the death benefit (IRA).

(B)     Such IRA is treated as an inherited IRA as described in Code
Section 408(d)(3)(C) subject to the minimum distributions rules of
Section 401(a)(9) of the code that apply to Beneficiaries.

(C)     No rollovers are permitted from the IRA.

(iv)     **Direct Rollover**

A Direct Rollover is a payment by the Plan to the Eligible Retirement Plan
specified by the Distributee.

(c)     **Non-spouse beneficiary rollover right**. For distributions after December 31,
2006, a non-spouse Beneficiary, may directly roll over all or any portion of his or
her distribution to an Individual Retirement Account (IRA) the Beneficiary
establishes for purposes of receiving the distribution. In order to be able to roll
over the distribution, the distribution otherwise must satisfy the definition of an
Eligible Rollover Distribution.

(i)     Distribution made prior to January 1, 2010, are not subject to the direct
rollover requirements of Code Section 401(a)(31), the notice
requirements of Code Section 402(f) or the mandatory withholding
requirements of Code Section 3405(c). If a non-spouse beneficiary
receives a distribution from the Plan, the distribution is not eligible for a
60-day (non-direct) rollover.

(ii)     If the Participant's named Beneficiary is a trust, the Plan may make a
direct rollover to an IRA on behalf of the trust, provided the trust satisfies
the requirements to be a Designated Beneficiary within the meaning of
Code Section 401(a)(9)(E).

(iii)     A non-spouse Beneficiary may not roll over an amount that is a required
minimum distribution. If the Participant dies before his or her required
beginning date and the non-spouse beneficiary rolls over to an IRA the
maximum amount eligible for rollover, the Beneficiary may elect to use
either the 5-year rule or the Life Expectancy rule, pursuant to Treasury
regulation Section 1.401(a)(9)-3, A-4(c), in determining the required
minimum distributions from the IRA that receives the non-spouse
beneficiary's distribution.

01/20

# ARTICLE 9

## ADMINISTRATION OF THE PLAN

### 9.1   Assignment of Administrative Authority

The Board of Trustees shall appoint a Committee to administer the Plan which shall be the "named fiduciary" for purposes of Section 402 of ERISA.  Upon acceptance of such appointment, the Committee shall serve at the pleasure of the Board of Trustees.  The Board of Trustees shall also appoint the Trustee and may appoint an investment manager.

Each named fiduciary and each fiduciary designated by a named fiduciary pursuant to the provisions of this Article 9 shall have only those specific powers, duties, responsibilities and obligations with reference to the Plan as are specifically given them under this Plan.  It is intended under this Plan that, to the extent permitted by any applicable law, each fiduciary shall be responsible for the proper exercise of his own powers, duties, responsibilities and obligations under this Plan and shall not be responsible for any act or failure to act of another fiduciary.  Each fiduciary in the performance of his duties hereunder shall use the care, skill, prudence and diligence that a prudent person acting in a like capacity and familiar with such matters would use in his conduct of a similar situation.

### 9.2   Organization and Operation of the Committee

(a)   Subject to the limitations of this Plan, the Committee may from time to time establish rules regarding the organization and operation of the Committee and additional rules for the administration of the Plan.

(b)   All such rules and regulations so adopted shall be binding upon the Committee and all Employers participating hereunder. Any provision hereof requiring such parties to comply with the terms of the Plan shall require them also to comply with all such rules and regulations.

(c)   The Committee may authorize any one or more of its members to execute any document on behalf of the Committee and shall notify the appropriate parties in writing of such action and the name or names of the member or members so designated.

(d)   The Committee may delegate specific authority and responsibilities to one or more of its members.  The member or members so designated shall be solely liable, jointly and severally, for their acts or omissions with respect to such delegated authority and responsibilities.  Members not so designated shall be relieved from liability for any act or omission resulting from such delegation.

### 9.3   Authority and Responsibility

The Committee and its delegates shall have full discretionary authority and responsibility for administration of the Plan.  Such discretionary authority and responsibility shall include, but shall not be limited to the

(a)     appointment of enrolled actuaries (as defined in ERISA), qualified accountants, consultants, administrators, counsel or other persons it deems necessary or advisable, who shall serve the Committee as advisors only and shall not exercise any discretionary authority, responsibility or control with respect to the management or administration of the Plan (any action of the Committee on the basis of advice, opinion, reports, etc. furnished by such enrolled actuaries, qualified accountants, consultants, administrators, or counsel shall solely be the responsibility of the Committee and members of the Committee shall not be precluded from serving the Committee in any other capacity, provided any compensation paid for such services is reasonable);

(b)     determination of eligibility to participate and all benefits, and resolution of all questions (including questions of fact) arising from the administration, interpretation and application of the Plan, including the validity of a Qualified Domestic Relations Order;

(c)     notification to the Trustee of all benefits payable under the Plan and the manner in which such benefits are to be paid;

(d)     adoption of forms and regulations for the administration of the Plan;

(e)     adoption of the funding method;

(f)     remedy of any inequity resulting from incorrect information received or communicated, or of administrative error;

(g)     assurance that its members, the Trustee and other persons who handle funds or other property of the Trust Fund are bonded as required by law;

(h)     settlement or compromise of any claims or debts arising from the operation of the Plan and the commencement of any legal actions or administrative proceeding;

(i)     direction to the Trustee as to specific investments, which under the terms of the Trust Agreement, may be made only upon written direction of the Committee or which are made in accordance with specific provisions of the Plan, such as annuity or group investment contracts (if a conflict should arise between the terms of the Plan and any such contract, the terms of the Plan will govern);

(j)     ability to act as agent for the service of legal process;

(k)     communication regarding the liquidity needs of the Plan so that investment discretion can be exercised to effect specific objectives; and

(l)     determination of all factual issues.

**9.4    Records and Reports**

(a)     The Committee shall keep a record of its proceedings and acts and shall keep such books of account, records and other data necessary for the proper administration of the Plan.

(b)     The Committee shall make its records available for examination by the Company, or any Participant or Beneficiary during business hours at the principal place of

business of the Company.  However, a Participant or Beneficiary may examine only records pertaining exclusively to himself and such other records specified by law.

(c)    The Committee shall make available to any Participant or Beneficiary any material required by law without cost.  The Committee may, upon written request by any Participant or Beneficiary, provide copies of such material as it deems appropriate and furnish copies of such material required by law.  The Participant or Beneficiary may be required to pay the reasonable cost, as determined by the Committee, of preparing and furnishing such material or the cost as prescribed by law.

## 9.5    Required Information

The Company, Participants or Beneficiaries entitled to benefits shall furnish to the Committee any forms, including but not limited to annuity applications, and any information or evidence, as requested by the Committee for the proper administration of the Plan.  Failure on the part of any Participant or Beneficiary to comply with such request within a reasonable period of time shall be sufficient grounds for delay in the payment of benefits until the information or evidence requested is received.

## 9.6    Payment of Expenses

Those members of the Committee who are full-time paid employees of the Company shall serve without compensation.  The expenses of the Committee, including reasonable compensation as may be agreed upon in writing between the Company and the Committee, for members of the Committee who are not full-time paid employees of the Company shall be deemed administrative expenses payable in accordance with Section 3.5.

## 9.7    Indemnification

The Company agrees to indemnify and hold harmless each member of the Committee against all liability incurred in the administration of the Plan, except for the gross negligence or willful misconduct of such member.

## 9.8    Qualified Domestic Relations Orders

(a)    **Qualified Domestic Relations Order**

(i)    A Qualified Domestic Relations Order (hereinafter referred to as "QDRO") is a Domestic Relations Order which creates or recognizes the existence of an Alternate Payee's right to, or assigns to an Alternate Payee the right to, receive all or a portion of the benefits payable with respect to a Participant under the Plan, and which the Committee has determined meets the requirements of Paragraphs (ii) and (iii).

(ii)    A Domestic Relations Order meets the requirements of a QDRO only if the order clearly specifies

(A)    the name and the last known mailing address (if any) of the Participant and the name and mailing address of each Alternate Payee covered by the order;

01/20

(B)    the amount or percentage of the Participant's benefits to be paid by the Plan to each such Alternate Payee, or the manner in which such amount or percentage is to be determined;

(C)    the number of payments or period to which such order applies; and

(D)    that the order applies to this Plan.

(iii)    A Domestic Relations Order meets the requirements of a QDRO only if the order does not require the

(A)    Plan to provide any type or form of benefits, or any option, not otherwise provided under the Plan;

(B)    Plan to provide increased benefits (determined on the basis of actuarial value); and

(C)    payment of benefits to an Alternate Payee which are required to be paid to another Alternate Payee under another Domestic Relations Order previously determined to be a QDRO.

(iv)    In the case of any payment before a Participant has separated from service, a QDRO shall not be treated as failing to meet the requirements of Subparagraph (iii)(A) above solely because the order requires the payment of benefits to an Alternate Payee

(A)    on or after the date on which the Participant attains (or would have attained) the Earliest Retirement Age;

(B)    as if the Participant had retired on the date such payment is to begin under such order; and

(C)    in any form in which such benefits may be paid under the Plan to the Participant (other than in the form of a joint and survivor annuity with respect to the Alternate Payee and his or her subsequent spouse).

(v)    For purposes of Paragraph (iv), Earliest Retirement Age means the earlier of

(A)    the date on which the Participant is entitled to a distribution under the Plan; or

(B)    the later of (1) the date the Participant attains age 50 or (2) the earliest date on which the Participant could begin receiving benefits under the Plan if such Participant separated from service.

Notwithstanding any provisions of the Plan to the contrary, for purposes of Subparagraph (A) above, a distribution to an Alternate Payee may be made prior to the date on which the Participant is entitled to a distribution

under Section 8.3 if requested by the Alternate Payee to the extent such distribution is permitted under the QDRO. Nothing in this provision shall permit the Participant to receive a distribution at a date otherwise not permitted under Section 8.3 nor shall it permit the Alternate Payee to receive a form of payment not permitted in Section 6.1 or 8.4.

(vi)   Effective April 6, 2007, a domestic relations order that otherwise satisfies the requirements for a QDRO will not fail to be a QDRO: (i) solely because the order is issued after, or revises, another domestic relations order or QDRO; or (ii) solely because of the time at which the order is issued, including issuance after the Annuity Starting Date or after the Participant's death.

## ARTICLE 10

## AMENDMENT, MERGER AND TERMINATION OF THE PLAN

**10.1   Amendment**

(a)   The Plan may be amended or otherwise modified by the Board of Trustees and copies of any such amendment or modification shall be sent to the governing body of each Company.  It shall be deemed each Company consented to such amendment or modification unless its governing body delivers written notice to the contrary to the Board of Trustees, the Committee and the Trustee within 30 days of its receipt of such amendment or modification.  The rights of anyone who retired, terminated employment or died before the effective date of any amendment to the Plan shall be determined in accordance with the terms and provisions of the Plan in effect on the date of such retirement, termination of employment or death, except as otherwise specifically provided in such amendment.

(b)   No amendment or modification shall

(i)   prior to the satisfaction of all expenses of the Trust Fund and all liabilities under the Plan with respect to all Participants or their Beneficiaries, permit any part of the Trust Fund to be used for or diverted to purposes other than the exclusive benefit of the employees of the Employer or their Beneficiaries and payment of taxes, administrative expenses and expenses incurred in effectuating such changes;

(ii)   reduce any Participant's Accrued Benefit unless such amendment is approved by the Secretary of the Treasury in accordance with the provisions of ERISA;

(iii)   (including a change in the actuarial basis for determining optional or early retirement benefits) reduce the value of nor eliminate any option or Retirement subsidies available to a Participant with respect to benefits previously accrued to the extent the Participant satisfied, either before or after the amendment, the conditions for the subsidy or form of payment except as otherwise permitted under Treasury regulations;

For purposes of this paragraph, a plan amendment that has the effect of (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy, or (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a Participant who satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy. Notwithstanding the preceding sentences, a Participant's Accrued Benefit, early retirement benefit, retirement-type subsidy, or optional form of benefit may be reduced to the extent permitted under Code Section 412(c)(8) (for Plan Years beginning on or before December 31, 2007) or Code Section 412(d)(2) (for Plan Years beginning after December 31, 2007), or to the extent permitted under Regulation Sections 1.411(d)-3 and 1.411(d)-4. For purposes of this

paragraph, a retirement-type subsidy is the excess, if any, of the actuarial present value of a retirement-type benefit over the actuarial present value of the Accrued Benefit commencing at Normal Retirement Age or at actual commencement date, if later, with both such actuarial present values determined as of the date the retirement-type benefit commences.

(iv)  reduce the vested percentage, determined as of the later of the effective date of the amendment or the date such amendment is adopted, of an Employee who was a Participant as of such date; or

(v)  reduce or cease the benefit accruals as a result of the attainment of any age.

(c)  A minimum Accrued Benefit value will apply if this Plan is or becomes a successor to a profit sharing plan, a defined contribution pension plan, a target benefit plan, or a defined benefit pension plan which was fully insured, or any plan under which the accrued benefit of a Participant was determined as a lump sum or account balance. The Actuarial Equivalent value of a Participant's Accrued Benefit will not be less than the Actuarial Equivalent value of his Accrued Benefit on the Effective Date of the Plan.

(d)  The volume submitter practitioner is Milliman, Inc. Effective as of the date of the advisory letter for this volume submitter plan, the practitioner may amend the plan on behalf of all adopting Companies, for changes in the Code, regulations, revenue rulings, other statements published by the Internal Revenue Service, including model, sample or other required good faith amendments, but only if their adoption will not cause such plan to be individually designed, and for corrections of prior approved Plans. These amendments will be applied to all employers who have adopted the Plan.

The practitioner will maintain, or have maintained on its behalf, a record of the Companies that have adopted the Plan, and the practitioner will make reasonable and diligent efforts to ensure that adopting Companies have actually received and are aware of all plan amendments and that such Companies adopt new documents when necessary.

(e)  The Company may (1) change the choice of options in the Plan; (2) add overriding language in the Plan when such language is necessary to satisfy Section 415 or Section 416 of the Code because of the required aggregation of multiple plans; (3) amend administrative provisions of the Trust Agreement and make more limited amendments such as the name of the Plan, Employer, Trustee, Committee and other fiduciaries and the Plan Year; (4) add certain sample or model amendments published by the Internal Revenue Service, which specifically provide that their adoption will not cause the plan to be treated as individually designed, or other required good faith amendments; and (5) add or change provisions permitted under the Plan and correct obvious and unambiguous typographical errors and/or cross references that merely correct a reference but that do not in any way change the original intended meaning of the provisions. In addition, the Employer may adopt certain interim or discretionary amendments. An Employer that amends the Plan for any other reason the Internal Revenue service may consider the Plan to be an individually designed plan depending on the nature of such amendment.

**10.2    Merger of Plans**

(a)    Upon the merger or consolidation of any other plan with this Plan or the transfer of assets or liabilities from this Plan to any other plan, all Participants of this Plan shall be entitled to a benefit immediately after the merger, consolidation or transfer (if the merged, consolidated or transferee plan had then been terminated) at least equal to the benefit they would have been entitled to receive immediately before such merger, consolidation or transfer (if the Plan had then terminated).

(b)    Effective as of October 1, 2008,

(i)    any transfer of assets and liabilities from the Fund to a nonqualified foreign trust, including a plan that satisfies Section 1165 of the Puerto Tax Code, shall be treated as a distribution from the Fund, even if the plan is described in section 1022(i)(1) of ERISA.  If the distribution fails to satisfy the applicable qualification requirements under the Internal Revenue Code, the distribution may result in disqualification of the Plan.

(ii)    any transfer of Plan sponsorship to an unrelated employer will result in the violation of the exclusive benefit rule of Code Section 401(a) if such transfer is not in connection with a transfer of business assets, operations, or Employees from the Employer to the unrelated employer.

**10.3    Partial Termination**

In the event of a partial termination of the Plan, the rights of all affected Participants to their Accrued Benefits accrued to the date of such partial termination shall be nonforfeitable, subject to Section 10.4 relative to the allocation of the Trust Fund assets where the Trust Fund assets are insufficient to pay Accrued Benefits in full.  Such benefits will be paid in the time and manner applicable under all other provisions of the Plan subsequent to termination of employment.

**10.4    Termination of Plan**

(a)    While the Plan and Trust Fund are intended to be permanent, they may be terminated at any time by the Board of Trustees, provided that before the satisfaction of all expenses (including any expenses incurred in effectuating the termination of the Plan and Trust Fund) and all liabilities with respect to Participants or their Beneficiaries, no part of the Trust Fund is to be used for or diverted to purposes other than for the Plan and the payment of the expenses of the Trust Fund.

Written notification of such termination shall be given to each Company, the Trustee, the Committee, and each Participant and each Beneficiary entitled to or receiving benefits.  In addition, notice of the proposed termination shall be filed with the PBGC.

Upon termination of the Plan, the rights of all Participants who are affected by such termination to their Accrued Benefits accrued to the date of such termination shall be nonforfeitable.

01/20

(b)    Notwithstanding the above, any termination (other than a partial termination) must satisfy the requirements and follow the procedures outlined herein and in Section 4041 or 4042 of ERISA and the regulations thereunder for a Standard Termination or a Distress Termination.  Upon any termination (full or partial), all amounts shall be allocated in accordance with the provisions thereof and the Accrued Benefit, to the extent funded as of such date, of each affected Participant shall become fully vested and shall not thereafter be subject to forfeiture.

(c)    **Standard Termination Procedure**

(i)    The Committee shall first notify all "affected parties" (as defined in Section 4001(a)(21) of ERISA) of the Employer's intention to terminate the Plan and the proposed date of termination.  Such termination notice must be provided at least sixty (60) days prior to the proposed termination date. However, in the case of a standard termination, it shall not be necessary to provide such notice to the Pension Benefit Guaranty Corporation (PBGC).  As soon as practicable after the termination notice is given, the Committee shall provide a follow-up notice to the PBGC setting forth the following:

(A)    a certification of an enrolled actuary of the projected amount of the assets of the Plan as of the proposed date of final distribution of assets, the actuarial present value of the "benefit liabilities" (as defined in Section 4001(a)(16) of ERISA) under the Plan as of the proposed termination date, and confirmation that the Plan is projected to be sufficient for such "benefit liabilities" as of the proposed date of final distribution;

(B)    a certification by the Committee that the information provided to the PBGC and upon which the enrolled actuary based his certification is accurate and complete; and

(C)    such other information as the PBGC may prescribe by regulation.

The certification of the enrolled actuary and of the Committee shall not be applicable in the case of a plan funded exclusively by individual insurance contracts.

(ii)    No later than the date on which the follow-up notice is sent to the PBGC, the Committee shall provide all Participants and Beneficiaries under the Plan with an explanatory statement specifying each such person's "benefit liabilities", the benefit form on the basis of which such amount is determined, and any additional information used in determining "benefit liabilities" that may be required pursuant to regulations promulgated by the PBGC.

(iii)    A standard termination may only take place if at the time the final distribution of assets occurs, the Plan is sufficient to meet all "benefit liabilities" determined as of the termination date.

(d) **Distress Termination Procedure**

    (i)    The Committee shall first notify all "affected parties" of the Employer's intention to terminate the Plan and the proposed date of termination. Such termination notice must be provided at least sixty (60) days prior to the proposed termination date. As soon as practicable after the termination notice is given, the Committee shall also provide a follow-up notice to the PBGC setting forth the following:

        (A)    a certification of an enrolled actuary of the amount, as of the proposed termination date, of the current value of the assets of the Plan, the actuarial present value (as of such date) of the "benefit liabilities" under the Plan, whether the Plan is sufficient for "benefit liabilities" as of such date, the actuarial present value (as of such date) of benefits under the Plan guaranteed under Section 4022 of ERISA, and whether the Plan is sufficient for guaranteed benefits as of such date;

        (B)    in any case in which the Plan is not sufficient for "benefit liabilities" as of such date, the name and address of each Participant and Beneficiary under the Plan as of such date;

        (C)    a certification by the Committee that the information provided to the PBGC and upon which the enrolled actuary based his certification is accurate and complete; and

        (D)    such other information as the PBGC may prescribe by regulation.

    The certification of the enrolled actuary and of the Committee shall not be applicable in the case of a plan funded exclusively by individual insurance contracts.

    (ii)    A distress termination may only take place if:

        (A)    the Employer demonstrates to the PBGC that such termination is necessary to enable the Employer to pay its debts while staying in business, or to avoid unreasonably burdensome pension costs caused by a decline in the Employer's work force;

        (B)    the Employer is the subject of a petition seeking liquidation in a bankruptcy or insolvency proceeding which has not been dismissed as of the proposed termination date; or

        (C)    the Employer is the subject of a petition seeking reorganization in a bankruptcy or insolvency proceeding which has not been dismissed as of the proposed termination date, and the bankruptcy court (or such other appropriate court) approves the termination and determines that the Employer will be unable to continue in business outside a Chapter 11 reorganization process and that such termination is necessary to enable the Employer to pay its debts pursuant to a plan of reorganization.

(e)     Upon termination of the Plan and Trust Fund, as soon as administratively feasible within the time prescribed by PBGC Regulation Sections 4041(a) and 4041.50, the Trustee as authorized and directed by the Committee, shall distribute the respective amount allocated for each Participant and Beneficiary, in cash, in property or through the purchase of irrevocable commitments form an insurer, in a manner consistent with the Plan.  Any excess balance remaining in the Trust Fund, after all liabilities to Participants and their Beneficiaries have been satisfied and after all expenses of the Plan and Trust Fund have been satisfied, shall be paid to the Company.

(f)     The termination of the Plan shall comply with such other requirements and rules as may be promulgated by the PBGC under authority of Title IV of ERISA, including any rules relating to time periods or deadlines for providing notice or for making a necessary filing.

## ARTICLE 11

## PARTICIPATING COMPANIES

### 11.1    Adoption by Other Entities

Any corporation or other business entity may, by resolution of its own governing body, and with the written approval of the Board of Trustees, adopt the Plan and thereby become a Company.  Notwithstanding the adoption of the Plan by other entities, the Plan will be administered as a single plan and all Plan assets will be available to pay benefits to all Participants under the Plan.

### 11.2    Actuarial Valuation

The Committee shall have the Plan's actuary make a single actuarial valuation with respect to the Plan to determine the contribution as required in accordance with Article 3.

### 11.3    Alternative Provisions

No Company may adopt alternative provisions as to itself or its Employees.

Upon request of the governing body of a Company, the Board of Trustees may amend the Plan with respect to the Employees of such Company provided that any change will only apply if the inequity resulting from changed Plan provisions is not found to be discriminatory on behalf of Highly Compensated Employees.

### 11.4    Right to Withdraw (Plan Spinoff)

Each Company having adopted the Plan shall have the right as of the last day of any month to withdraw from the Plan and/or Trust Agreement by delivering to the Board of Trustees, the Committee and the Trustee written notification from its own governing body of such action and setting forth the date as of which the withdrawal shall be effective.

### 11.5    Procedure Upon Withdrawal

(a)    If a Company withdraws from the Plan and Trust Agreement as the result of its adoption of a different plan, the Trustee shall segregate the portion of the Trust Fund attributable to the Company.

The Trustee shall then transfer the segregated assets to the insurance carrier or fiduciary designated by the Company as the agency through which the benefits of such successor plan are to be disbursed.

(b)    If a Company withdraws from the Plan and Trust Agreement as the result of its adoption of a resolution to terminate its participation in the Plan and to distribute assets to its Employees who are Participants, the Trustee shall segregate the portion of the Trust Fund attributable to the Participants who are employed solely by such Company, and the termination provisions of Article 10 shall apply with respect to such segregated assets.

(c)     The portion of the Trust Fund to be segregated shall be determined as the sum of the amounts allocated to such Participants as if the Plan had terminated and assets allocated in accordance with PBGC Regulation Section 4044, subject to Section 414(l)(2)(B) of the Code.

## ARTICLE 12

## TOP-HEAVY PROVISIONS

### 12.1   Top-Heavy Provisions

If the Plan is or becomes Top-Heavy in any Plan Year beginning after December 31, 1983, the provisions of this Article will supersede any conflicting provisions in the Plan.

### 12.2   Definitions

As used in this Article, each of the following terms shall have the meanings for that term set forth in this Section 12.2:

(a)   Determination Date means, for any Plan Year subsequent to the first Plan Year, the last day of the preceding Plan Year.  For the first Plan Year of the Plan, the last day of that year.

(b)   Determination Period means the Plan Year containing the Determination Date and the four preceding Plan Years.

(c)   Effective as of January 1, 2002, Key Employee means any Employee or former Employee (and the Beneficiaries of such Employee) who at any time during the Determination Period was:

   (i)   an officer of the Employer having an annual Compensation greater than $130,000 (as adjusted under Subsection 416(i)(1) of the Code) for any Plan Year within the Determination Period;

   (ii)   a "5-percent owner" (as defined in Section 416(i) of the Code) of the Employer; or

   (iii)   a "1-percent owner" (as defined in Section 416(i) of the Code) of the Employer who has an annual Compensation of more than $150,000.

The determination of who is a Key Employee will be made in accordance with Section 416(i)(1) of the Code and the regulations thereunder.

(d)   Non-Key Employee means an Employee who is not a Key Employee.

(e)   Permissive Aggregation Group means the Required Aggregation Group of plans plus any other plan or plans of the Company which, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of Sections 401(a)(4) and 410 of the Code.

(f)   Present Value means the present value used in computing the Top-Heavy ratio and shall be based on the interest and mortality rates specified in Subsection 1.2(a).  If the Required Aggregation Group includes two or more Defined Benefit Plans, the actuarial assumptions shall be the same for both plans and must be so specified in each such plan.

(g)   Required Aggregation Group means:

(i)     each qualified plan of the Employer in which at least one Key Employee participates or participated at any time during the Determination Period (regardless of whether the plan has terminated); and

(ii)    any other qualified plan of the Employer (regardless of whether the plan has terminated) which enables a plan described in (i) to meet the requirements of Sections 401(a)(4) or 410 of the Code.

(h)    Top-Heavy Plan means the Plan, if any of the following conditions exist:

(i)    If the Top-Heavy Ratio for the Plan exceeds 60% and the Plan is not part of any Required Aggregation Group or Permissive Aggregation Group of plans.

(ii)    If the Plan is a part of a Required Aggregation Group of plans but not part of a Permissive Aggregation Group and the Top-Heavy Ratio for the Group of plans exceeds 60%.

(iii)    If the Plan is a part of a Required Aggregation Group and part of a Permissive Aggregation Group of plans and the Top-Heavy Ratio for the Permissive Aggregation Group exceeds 60%.

(i)    Top-Heavy Ratio means:

(i)    If the Employer maintains one or more Defined Benefit Plans and the Employer has not maintained any defined contribution plan (including any simplified employee pension, as defined in section 408(k) of the Internal Revenue Code) which during the 5-year period ending on the determination date(s) has or has had account balances, the Top-Heavy ratio for this plan alone or for the required or permissive aggregation group as appropriate is a fraction, the numerator of which is the sum of the present value of accrued benefits of all key employees as of the determination date(s) (including any part of any accrued benefit distributed in the one-year period ending on the determination date(s)) (five-year period ending on the determination date in the case of a distribution made for a reason other than severance from employment, death or disability), and the denominator of which is the sum of the present value of accrued benefits (including any part of any accrued benefits distributed in the one-year period ending on the determination date(s)) (five-year period ending on the determination date in the case of a distribution made for a reason other than severance from employment, death or disability), determined in accordance with section 416 of the Internal Revenue Code and the regulations thereunder.

(ii)    If the Employer maintains one or more Defined Benefit Plans and the Employer maintains or has maintained one or more defined contribution plans (including any simplified employee pension) which during the 5-year period ending on the determination date(s) has or has had any account balances, the Top-Heavy ratio for any required or permissive aggregation group as appropriate is a fraction, the numerator of which is the sum of the present value of accrued benefits under the aggregated defined benefit plan or plans for all key employees, determined in accordance with (a) above, and the sum of account balances under the aggregated

defined contribution plan or plans for all key employees as of the determination date(s), and the denominator of which is the sum of the present value of accrued benefits under the defined benefit plan or plans for all Participants, determined in accordance with (a) above, and the account balances under the aggregated defined contribution plan or plans for all Participants as of the determination date(s), all determined in accordance with section 416 of the Internal Revenue Code and the regulations thereunder.  The account balances under a defined contribution in both the numerator and denominator of the Top-Heavy ratio are increased for any distribution of an account balance made in the one-year period ending on the determination date (five-year period ending on the determination date in the case of a distribution made for a reason other than severance from employment, death or disability).

     (iii)    For purposes of Subsections (i) and (ii) above the value of account balances and the present value of accrued benefits will be determined as of the most recent valuation date that falls within or ends with the 12-month period ending on the determination date, except as provided in section 416 of the Internal Revenue Code and the regulations thereunder for the first and second Plan Years of a defined benefit plan.  The account balances and accrued benefits of a Participant (A) who is not a key employee but who was a key employee in a prior year, or (B) who has not been credited with at least one hour of service with any employer maintaining the plan at any time during the five-year period ending on the determination date will be disregarded.  The calculation of the Top-Heavy ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with section 416 of the Internal Revenue Code and the regulations thereunder.  Deductible employee contributions will not be taken into account for purposes of computing the Top-Heavy ratio.  When aggregating plans the value of account balances and accrued benefits will be calculated with reference to the determination dates that fall within the same calendar year.

            The Accrued Benefit of a Participant other than a key employee shall be determined under the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the employer, or if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of section 411(b)(1)(C) of the Internal Revenue Code.

    (j)    Valuation Date means the most recent date used for determining costs under Section 412 of the Code which falls within the 12-month period ending on the Determination Date.

## 12.3   Minimum Accrued Benefit

    (a)    The Accrued Benefit of any non-Key Employee Participant on or after the first day of the first Plan Year the Plan is determined to be Top-Heavy shall not be less than 2% of his Average Compensation times his full and fractional Years of Service to a maximum of 10 Years of Service.  For purposes of this Subsection, Years of Service shall not include Service before January 1, 1984, before the Participant's date of Plan participation or during any Plan Year the Plan is determined not to be Top-Heavy or during any Plan Year during which a

Participant fails to accrue 1,000 Hours of Employment with the Employer. The minimum benefit payable upon such Participant's Retirement at his Deferred Retirement Date shall be the greater of the retirement income based on such Service at his actual Retirement Date or the Actuarial Equivalent of the minimum benefit which would have been provided at his Normal Retirement Date. Such benefit shall be reduced by the amount of any retirement income (converted to the life only annuity form) provided for him under all other Defined Benefit Plans maintained by the Employer.

If the Normal Form is other than a Straight Life Annuity, the Participant must receive an amount that is the Actuarial Equivalent of the minimum Straight Life Annuity benefit. If the benefit commences at a date other than at the Normal Retirement Date, the Participant must receive at least an amount that is the Actuarial Equivalent of the minimum Straight Life Annuity benefit commencing at the Normal Retirement Date.

(b)     For purposes of this Section, Average Compensation means the Participant's Compensation averaged over the five full consecutive years for which the Participant had the highest Compensation and which end before the Plan Year that the Plan ceases to be Top-Heavy. Compensation during any year the Participant is not credited with a full Year of Service shall not be included in this average.

(c)     A Participant who has completed a Year of Service shall accrue a minimum benefit under this Section even if he fails to made a mandatory contribution (required by the Plan), his Compensation is less than a stated amount, he is not employed on the last day of the accrual computation period or the plan is integrated with Social Security.

(d)     The minimum accrued benefit required (to the extent required to be nonforfeitable under Code Section 416(b)) may not be forfeited under Code Section 411(a)(3)(B) or 411(a)(3)(D).

(e)     An Eligible Employee who has not met the 1,000 hour requirement for eligibility in accordance with Article 2 shall not be considered a Participant for purposes of this Section.

(f)     Notwithstanding any provisions of this Article to the contrary, for purposes of this Section 12.3, Years of Service shall not include Service to the extent it was earned during a Plan Year during which the Plan does not benefit, within the meaning of Section 410(b) of the Code, any Key or former Key Employee.

**12.4    Minimum Vesting**

For any Plan Year in which this Plan is Top-Heavy, the minimum vesting schedule set forth below shall automatically apply to this Plan. The minimum vesting schedule applies to all benefits within the meaning of Section 411(a)(7) of the Code, except those attributable to Employee contributions by Participants, including benefits accrued before the effective date of Section 416 of the Code and benefits accrued before the Plan became Top-Heavy.

Further, no decrease in a Participant's nonforfeitable percentage may occur in the event the Plan's status as Top-Heavy changes for any Plan Year. However, this section does not apply to the Accrued Benefit of any Employee who does not have an hour of service after the Plan has initially become Top-Heavy and such Employee's Accrued Benefit attributable to Employer contributions and forfeitures will be determined without regard to this section.

(a)     The following vesting schedule shall be substituted for the vesting schedule under Section 5.3 as of the first day of the first Plan Year the Plan is determined to be Top-Heavy.

| Number of Years | Percentage of Accrued Benefit |
|---|---|
| Less than 2 years | 0% |
| 2 years | 20% |
| 3 years | 40% |
| 4 years | 60% |
| 5 years | 80% |
| 6 or more years | 100% |

(b)     The vesting schedule under Section 12.4(a), unless subsequently amended, shall remain applicable even if the Plan later ceases to be Top-Heavy.

## ARTICLE 13

### BENEFIT RESTRICTIONS UNDER CODE SECTION 436

13.1 **Limitations Applicable if the Plan's Adjusted Funding Target Attainment Percentage Is Less Than 80%, But Not Less Than 60%**

Notwithstanding any other provisions of the Plan, if the Plan's adjusted funding target attainment percentage for a Plan Year is less than 80% (or would be less than 80% to the extent described in Section 13.1(b) below) but is not less than 60%, then the limitations set forth in this Section 13.1 apply.

(a)   50% Limitation on Single Sum Payments, Other Accelerated Forms of Distribution, and Other Prohibited Payments

A Participant or Beneficiary is not permitted to elect, and the Plan shall not pay, a single sum payment or other optional form of benefit that includes a prohibited payment with an Annuity Starting Date on or after the applicable section 436 measurement date, and the Plan shall not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment, unless the present value of the portion of the benefit that is being paid in a prohibited payment does not exceed the lesser of:

(i)    50% of the present value of the benefit payable in the optional form of benefit that includes the prohibited payment; or

(ii)   100% of the PBGC maximum benefit guarantee amount (as defined in Section 1.436-1(d)(3)(iii)(C) of the Treasury Regulations).

The limitation set forth in this Section 13.1(a) does not apply to any payment of a benefit which under Section 411(a)(11) of the Code may be immediately distributed without the consent of the Participant. If an optional form of benefit that is otherwise available under the terms of the Plan is not available to a Participant or Beneficiary as of the Annuity Starting Date because of the application of the requirements of this Section 13.1(a), the Participant or Beneficiary is permitted to elect to bifurcate the benefit into unrestricted and restricted portions (as described in Section 1.436-1(d)(3)(iii)(D) of the Treasury Regulations). The Participant or Beneficiary may also elect any other optional form of benefit otherwise available under the Plan at that Annuity Starting Date that would satisfy the 50%/PBGC maximum benefit guarantee amount limitation described in this Section 13.1(a), or may elect to defer the benefit in accordance with any general right to defer commencement of benefits under the Plan.

(b)   Plan Amendments Increasing Liability for Benefits

No amendment to the Plan that has the effect of increasing liabilities of the Plan by reason of increases in benefits, establishment of new benefits, changing the rate of benefit accrual, or changing the rate at which benefits become nonforfeitable shall take effect in a Plan Year if the adjusted funding target attainment percentage for the Plan Year is:

01/20

(i)     Less than 80%; or

(ii)    80% or more, but would be less than 80% if the benefits attributable to the amendment were taken into account in determining the adjusted funding target attainment percentage.

The limitation set forth in this Section 13.1(b) does not apply to any amendment to the Plan that provides a benefit increase under a Plan formula that is not based on compensation, provided that the rate of such increase does not exceed the contemporaneous rate of increase in the average wages of Participants covered by the amendment.

**13.2    Limitations Applicable if the Plan's Adjusted Funding Target Attainment Percentage Is Less Than 60%**

Notwithstanding any other provisions of the Plan, if the Plan's adjusted funding target attainment percentage for a Plan Year is less than 60% (or would be less than 60% to the extent described in Section 13.2(b) below), then the limitations in this Section 13.2 apply.

(a)    Single Sums, Other Accelerated Forms of Distribution, and Other Prohibited Payments Not Permitted

A Participant or Beneficiary is not permitted to elect, and the Plan shall not pay, a single sum payment or other optional form of benefit that includes a prohibited payment with an Annuity Starting Date on or after the applicable section 436 measurement date, and the Plan shall not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment. The limitation set forth in this Section 13.2(a) does not apply to any payment of a benefit which under Section 411(a)(11) of the Code may be immediately distributed without the consent of the Participant.

(b)    Shutdown Benefits and Other Unpredictable Contingent Event Benefits Not Permitted to Be Paid

An unpredictable contingent event benefit with respect to an unpredictable contingent event occurring during a Plan Year shall not be paid if the adjusted funding target attainment percentage for the Plan Year is:

(i)     Less than 60%; or

(ii)    60% or more, but would be less than 60% if the adjusted funding target attainment percentage were redetermined applying an actuarial assumption that the likelihood of occurrence of the unpredictable contingent event during the Plan Year is 100%.

(c)    Benefit Accruals Frozen

Benefit accruals under the Plan shall cease as of the applicable section 436 measurement date. In addition, if the Plan is required to cease benefit accruals under this Section 13.2(c), then the Plan is not permitted to be amended in a

manner that would increase the liabilities of the Plan by reason of an increase in benefits or establishment of new benefits.

**13.3   Limitations Applicable if the Plan Sponsor Is In Bankruptcy**

Notwithstanding any other provisions of the Plan, a Participant or Beneficiary is not permitted to elect, and the Plan shall not pay, a single sum payment or other optional form of benefit that includes a prohibited payment with an Annuity Starting Date that occurs during any period in which the Plan sponsor is a debtor in a case under title 11, United States Code, or similar Federal or State law, except for payments made within a Plan Year with an Annuity Starting Date that occurs on or after the date on which the Plan's enrolled actuary certifies that the Plan's adjusted funding target attainment percentage for that Plan Year is not less than 100%. In addition, during such period in which the Plan sponsor is a debtor, the Plan shall not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment, except for payments that occur on a date within a Plan Year that is on or after the date on which the Plan's enrolled actuary certifies that the Plan's adjusted funding target attainment percentage for that Plan Year is not less than 100%. The limitation set forth in this Section 13.3 does not apply to any payment of a benefit which under Section 411(a)(11) of the Code may be immediately distributed without the consent of the Participant.

**13.4   Provisions Applicable After Limitations Cease To Apply**

(a)   Resumption of Prohibited Payments

If a limitation on prohibited payments under Section 13.1(a), Section 13.2(a), or Section 13.3 applied to the Plan as of a section 436 measurement date, but that limit no longer applies to the Plan as of a later section 436 measurement date, then that limitation does not apply to benefits with Annuity Starting Dates that are on or after that later section 436 measurement date.

(b)   Resumption of Benefit Accruals

If a limitation on benefit accruals under Section 13.2(c) applied to the Plan as of a section 436 measurement date, but that limitation no longer applies to the Plan as of a later section 436 measurement date, then benefit accruals shall resume prospectively and that limitation does not apply to benefit accruals that are based on service on or after that later section 436 measurement date, except as otherwise provided under the Plan. The Plan shall comply with the rules relating to partial years of participation and the prohibition on double proration under Department of Labor regulation 29 CFR Section 2530.204-2(c) and (d).

(c)   Shutdown and Other Unpredictable Contingent Event Benefits

If an unpredictable contingent event benefit with respect to an unpredictable contingent event that occurs during the Plan Year is not permitted to be paid after the occurrence of the event because of the limitation of Section 13.2(b), but is permitted to be paid later in the same Plan Year (as a result of additional contributions or pursuant to the enrolled actuary's certification of the adjusted funding target attainment percentage for the Plan Year that meets the requirements of Section 1.436-1(g)(5)(ii)(B) of the Treasury Regulations), then that unpredictable contingent event benefit shall be paid, retroactive to the period

01/20

that benefit would have been payable under the terms of the Plan (determined without regard to Section 13.2(b)). If the unpredictable contingent event benefit does not become payable during the Plan Year in accordance with the preceding sentence, then the Plan is treated as if it does not provide for that benefit.

(d)     Treatment of Plan Amendments That Do Not Take Effect

If a Plan amendment does not take effect as of the effective date of the amendment because of the limitation of Section 13.1(b) or Section 13.2(c), but is permitted to take effect later in the same Plan Year (as a result of additional contributions or pursuant to the enrolled actuary's certification of the adjusted funding target attainment percentage for the Plan Year that meets the requirements of Section 1.436-1(g)(5)(ii)(C) of the Treasury Regulations), then the Plan amendment must automatically take effect as of the first day of the Plan Year (or, if later, the original effective date of the amendment). If the plan amendment cannot take effect during the same plan year, then it shall be treated as if it were never adopted, unless the plan amendment provides otherwise.

## 13.5    Notice Requirement

See Section 101(j) of ERISA for rules requiring the plan administrator of a single employer defined benefit pension plan to provide a written notice to Participants and beneficiaries within 30 days after certain specified dates if the plan has become subject to a limitation described in Section 13.1(a), Section 13.2, or Section 13.3.

## 13.6    Methods to Avoid Or Terminate Benefit Limitations

See Section 436(b)(2), (c)(2), (e)(2), and (f) of the Code and Section 1.436-1(f) of the Treasury Regulations for rules relating to employer contributions and other methods to avoid or terminate the application of the limitations set forth in Sections 13.1 through 13.3 for a plan year. In general, the methods a Plan sponsor may use to avoid or terminate one or more of the benefit limitations under Sections 13.1 through 13.3 for a Plan Year include employer contributions and elections to increase the amount of plan assets which are taken into account in determining the adjusted funding target attainment percentage, making an employer contribution that is specifically designated as a current year contribution that is made to avoid or terminate application of certain of the benefit limitations, or providing security to the Plan.

## 13.7    Special Rules

(a)     Rules of Operation for Periods Prior to and After Certification of Plan's Adjusted Funding Target Attainment Percentage.

(i)     In General

Section 436(h) of the Code and Section 1.436-1(h) of the Treasury Regulations set forth a series of presumptions that apply

(A)     before the Plan's enrolled actuary issues a certification of the Plan's adjusted funding target attainment percentage for the Plan Year and

(B)     if the Plan's enrolled actuary does not issue a certification of the Plan's adjusted funding target attainment percentage for the Plan Year before the first day of the 10th month of the Plan Year (or if the Plan's enrolled actuary issues a range certification for the Plan Year pursuant to Section 1.436-1(h)(4)(ii) of the Treasury Regulations but does not issue a certification of the specific adjusted funding target attainment percentage for the Plan by the last day of the plan year). For any period during which a presumption under Section 436(h) of the Code and Section 1.436-1(h) of the Treasury Regulations applies to the Plan, the limitations under Sections 13.1 through 13.3 are applied to the Plan as if the adjusted funding target attainment percentage for the Plan Year were the presumed adjusted funding target attainment percentage determined under the rules of Section 436(h) of the Code and Section 1.436-1(h)(1), (2), or (3) of the Treasury Regulations. These presumptions are set forth in Section 13.7(a)(ii) though (iv).

(ii)     Presumption of Continued Underfunding Beginning First Day of Plan Year

If a limitation under Section 13.1, 13.2, or 13.3 applied to the Plan on the last day of the preceding plan year, then, commencing on the first day of the current Plan Year and continuing until the Plan's enrolled actuary issues a certification of the adjusted funding target attainment percentage for the Plan for the current plan year, or, if earlier, the date Section 13.7(a)(iii) or Section 13.7(a)(iv) applies to the Plan:

(A)     The adjusted funding target attainment percentage of the Plan for the current Plan Year is presumed to be the adjusted funding target attainment percentage in effect on the last day of the preceding plan year; and

(B)     The first day of the current Plan Year is a section 436 measurement date.

(iii)     Presumption of Underfunding Beginning First Day of 4th Month

If the Plan's enrolled actuary has not issued a certification of the adjusted funding target attainment percentage for the Plan Year before the first day of the 4th month of the Plan Year and the Plan's adjusted funding target attainment percentage for the preceding Plan Year was either at least 60 percent but less than 70% or at least 80% but less than 90%, or is described in Section 1.436-1(h)(2)(ii) of the Treasury Regulations, then, commencing on the first day of the 4th month of the current Plan Year and continuing until the Plan's enrolled actuary issues a certification of the adjusted funding target attainment percentage for the Plan for the current plan year, or, if earlier, the date Section 13.7(a)(iv) applies to the Plan:

(A)     The adjusted funding target attainment percentage of the Plan for the current Plan Year is presumed to be the Plan's adjusted funding target attainment percentage for the preceding Plan Year reduced by 10 percentage points; and

(B)    The first day of the 4th month of the current Plan Year is a section 436 measurement date.

(iv)    Presumption of Underfunding On and After First Day of 10th Month

If the Plan's enrolled actuary has not issued a certification of the adjusted funding target attainment percentage for the Plan Year before the first day of the 10th month of the Plan Year (or if the Plan's enrolled actuary has issued a range certification for the Plan Year pursuant to Section 1.436-1(h)(4)(ii) of the Treasury Regulations but has not issued a certification of the specific adjusted funding target attainment percentage for the Plan by the last day of the plan year), then, commencing on the first day of the 10th month of the current Plan Year and continuing through the end of the plan year:

(A)    The adjusted funding target attainment percentage of the Plan for the current Plan Year is presumed to be less than 60%; and

(B)    The first day of the 10th month of the current Plan Year is a section 436 measurement date.

(b)    New Plans, Plan Termination, Certain Frozen Plans, and Other Special Rules

(i)    New Plans

A Plan is considered to be a New Plan for its first five Plan Years of existence. The limitations in Subsection 13.1(b), Subsection 13.2(b), and 13.2(c) do not apply to a New Plan for the first 5 plan years of the Plan, determined under the rules of Section 436(i) of the Internal Revenue Code and Section 1.436-1(a)(3)(i) of the Treasury Regulations.

(ii)    Plan Termination

The limitations on prohibited payments in Subsection 13.1(a), Subsection 13.2(a), and Subsection 13.3 do not apply to prohibited payments that are made to carry out the termination of the Plan in accordance with applicable law. Any other limitations under this Section of the Plan do not cease to apply as a result of termination of the Plan.

(iii)    Exception to Limitations on Prohibited Payments Under Certain Frozen Plans

The limitations on prohibited payments set forth in Subsection 13.1(a), 13.2(a) and 13.3 do not apply for a Plan Year if the terms of the Plan, as in effect for the period beginning on September 1, 2005, and continuing through the end of the Plan Year, provide for no benefit accruals with respect to any Participants. This Subsection 13.7(b)(ii) shall cease to apply as of the date any benefits accrue under the Plan or the date on which a plan amendment that increases benefits takes effect.

(iv)    Special Rules Relating to Unpredictable Contingent Event Benefits and Plan Amendments Increasing Benefit Liability.

01/20               83

During any period in which none of the presumptions under Subsection 13.7(a) apply to the Plan and the Plan's enrolled actuary has not yet issued a certification of the Plan's adjusted funding target attainment percentage for the plan year, the limitations under Subsection 13.1(b) and Subsection 13.2(b) shall be based on the inclusive presumed adjusted funding target attainment percentage for the Plan, calculated in accordance with the rules of Section 1.436-1(g)(2)(iii) of the Treasury Regulations.

(c)   Special Rules Under PRA 2010

   (i)   Payments Under Social Security Leveling Options

   For purposes of determining whether the limitations under Subsection 13.1(a) or 13.2(a) apply to payments under a social security leveling option, within the meaning of Section 436(j)(3)(C)(i) of the Code, the adjusted funding target attainment percentage for a Plan Year shall be determined in accordance with the "Special Rule for Certain Years" under Section 436(j)(3) of the Code and any Treasury Regulations or other published guidance thereunder issued by the Internal Revenue Service.

   (ii)   Limitation on Benefit Accruals

   For purposes of determining whether the accrual limitation under Subsection 13.2(c) applies to the Plan, the adjusted funding target attainment percentage for a Plan Year shall be determined in accordance with the "Special Rule for Certain Years" under Section 436(j)(3) of the Code (except as provided under Section 203(b) of the Preservation of Access to Care for Medicare Beneficiaries and Pension Relief Act of 2010, if applicable).

(d)   Special Rules under MAP-21.

   The Plan may use the special rules relating to pension funding stabilization as set forth in the provisions of the Moving Ahead for Progress in the 21st Century Act (MAP-21) and as provided by guidance issued in Regulations or other guidance from the Internal Revenue Service, including Notices 2012-55, and 2012-61.

(e)   Special Rules under HATFA

   Notwithstanding Subsection (d), in accordance with the Highway and Transportation Funding Act of 2014, for purposes determining the adjusted funding target attainment percentage under Section 13.3, the adjustment of the segment rates under Code Section 430(h)(2)(C)(iv) shall not be taken into account.

(f)   If more than one Employer has adopted this Plan, the rules in this Article apply separately to each Employer under the Plan, as if each such Employer maintained a separate plan.

(g)    Interpretation of Provisions.

The limitations imposed by this Section of the Plan shall be interpreted and administered in accordance with Section 436 of the Code and Section 1.436-1 of the Treasury Regulations.

**13.8    Definitions**

The definitions in the following Treasury Regulations apply for purposes of Sections 13.1 through 13.7: Section 1.436-1(j)(1) defining adjusted funding target attainment percentage; Section 1.436-1(j)(2) defining Annuity Starting Date; Section 1.436-1(j)(6) defining prohibited payment; Section 1.436-1(j)(8) defining section 436 measurement date; and Section 1.436-1(j)(9) defining an unpredictable contingent event and an unpredictable contingent event benefit.

**13.9    Effective Date**

The rules in Sections 13.1 through 13.8 are effective for Plan Years beginning after December 31, 2007.

## ARTICLE 14

## GENERAL PROVISIONS

**14.1 Exclusiveness of Benefits**

The Plan has been created for the exclusive benefit of the Participants and their Beneficiaries. No part of the Trust Fund shall ever revert to the Employer nor shall such Trust Fund ever be used other than for the exclusive benefit of the employees of the Employer and their Beneficiaries, except as provided in Sections 3.1, 3.5 and 9.8, provided, however, that contributions made by the Company by mistake of fact may be returned to the Company within one year of the mistaken payment of the contribution. No person shall have any interest in or right to any part of the Trust Fund, or any equitable right under the Trust Agreement, except to the extent expressly provided in the Plan or Trust Agreement.

**14.2 Limitation of Rights**

Neither the establishment of the Plan, nor any modification thereof, nor the creation of any fund, trust or account, nor the purchase of Annuities, nor the payment of any benefits shall be construed as giving any Participant, Beneficiary or any other person whomsoever, any legal or equitable right against the Employer, the Committee, or the Trustee, unless such right shall be specifically provided for in the Plan or conferred by affirmative action of the Committee or the Employer in accordance with the terms and provisions of the Plan; or as giving any Participant or any other employee of the Employer the right to be retained in the service of the Employer and all Participants and other employees shall remain subject to discharge to the same extent as if the Plan had never been adopted.

**14.3 Construction of Agreement**

The Plan shall be construed according to the laws of the State in which the Company named under Section 1.12 has its principal place of business, and all provisions hereof shall be administered according to, and its validity shall be determined under, the laws of such State, except where pre-empted by Federal law.

**14.4 Severability**

Should any provision of the Plan or any regulation adopted thereunder be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the other provisions or regulations unless such invalidity shall render impossible or impractical the functioning of the Plan, and, in such case, the appropriate parties shall immediately adopt a new provision or regulation to take the place of the one held illegal or invalid.

**14.5 Titles and Headings**

The titles and headings of the Sections in this instrument are, except for Article 1, for convenience of reference only and, in the event of any conflict, the text rather than such titles or headings shall control.

**14.6    Counterparts as Original**

The Plan has been prepared in counterparts, each of which so prepared shall be construed as an original.

**14.7    Qualified Military Service**

(a)    Effective December 12, 1994 and notwithstanding any provisions of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code Section 414(u).

(b)    In the case of a death or disability occurring on or after January 1, 2007, if a participant dies while performing qualified military service, the survivors of the Participant are entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service) provided under the Plan as if the participant had resumed and then terminated employment on account of death.

(c)    For years beginning after December 31, 2008, (i) an individual receiving a differential wage payment, as defined by Code Section 3401(h)(2), shall be treated as an Employee of the Employer making the payment, (ii) the differential wage payment shall be treated as Compensation, and (iii) the Plan shall not be treated as failing to meet the requirements of any provision described in Code Section 414(u)(1)(C) by reason of any contribution or benefit which is based on the differential wage payment.

01/20