CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
(516) 357-3700

*Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
                                          :
In re:                                    :  Chapter 11
                                          :
THE COLLEGE OF SAINT ROSE,                :  Case No. 24-11131 (REL)
                                          :
               Debtor.                    :
                                          :
------------------------------------------------------------- x
```

## MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363, AUTHORIZING PRIVATE SALE OF PERSONAL PROPERTY, FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES

**TO THE HONORABLE ROBERT E. LITTLEFIELD, JR., UNITED STATES BANKRUPTCY JUDGE:**

The College of Saint Rose (the "**Debtor**"), by and through its counsel Cullen and Dykman LLP, as and for its motion for an order authorizing the sale of personal property, respectfully alleges as follows:

### JURISDICTION

1.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and venue of this case and the Motion is proper in this District pursuant 28 U.S.C. §§ 1408 and 1409.

### RELIEF REQUESTED

2.    By this motion, the Debtor respectfully requests the entry of an order pursuant to sections 105 and 363 of title 11, United States Code (the "**Bankruptcy Code**") and Rule 6004 of

22484.3 21351598v2

the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), substantially in the form annexed hereto as Exhibit "A", authorizing and approving the Debtor's private sale of the personal property identified on Exhibit "B" hereto (the "**Property**")[1], free and clear of all liens, claims and encumbrances to the Albany County Pine Hills Land Authority (the "**Authority**").

## BACKGROUND

3.      On October 10, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

4.      The Debtor has remained in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      No official committee of unsecured creditors (the "**Committee**") was appointed by the Office of the United States Trustee for the Northern District of New York in this case.

6.      Simultaneously with the filing of its petition, the Debtor filed the First Day Declaration of Marcia J. White pursuant to Local Bankruptcy Rule 2015-2 (the "**First Day Declaration**"). A more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the First Day Declaration, the contents of which are incorporated herein by reference.

7.      The Debtor's largest asset consists of its Albany campus (the "**Campus**") from which it operated prior to the Petition Date.

8.      By order dated December 20, 2024, the Bankruptcy Court authorized the sale of the Campus to the Authority, which is scheduled to close March 13, 2025.

---

[1] Due to the fact that Exhibit "B" is approximately 2500 pages, it is not attached to this Motion and a link to the list will be made available by email to a party in interest who requests it.

22484.3 21351598v2

9.      As the Court is aware, the Debtor owns a substantial amount of personal property which is located in the buildings on Campus. Such property includes teaching materials, course materials, course books and textbooks, library books, pianos, artwork, grounds equipment, motor vehicles, religious artifacts, furniture and furnishings, office equipment, shop equipment and broadcasting equipment, to name a few categories of the Property. The Bondholders hold a lien against this Property.

10.     The Court previously approved the sales of pianos, artwork and de minimus property by orders dated November 14, 2024. Some property has been sold in accordance with those orders and the proceeds distributed to the holders of liens against same (or retained by the Debtor if there is no lien against such property). In connection with the closing of the sale of the Campus to the Authority, the Debtor has negotiated with the Authority for the sale of the remaining Property to the Authority, in an effort to obtain the most value to the estate.

11.     In furtherance thereof, the Debtor's financial consultants FTI Consultants Inc. prepared a report that valued the Property between $532,000 and $805,000. The most valuable property on the report were generators at the Property (valued at $361,000), which the Authority asserts are fixtures that were already sold to it as part of the sale of the Campus. Based on this and other consideration, the Authority offered to purchase the Property for $155,000. In conjunction with the sale of this Property, the Authority agreed that the Debtor and certain books and records could remain in certain space at the Campus without paying rent (other than utility costs) until June 30, 2025, in order for the Debtor to completely winddown operations and the bankruptcy case. A copy of the Use Agreement with the Authority for that purpose is attached as Exhibit "C" hereto. This, together with the fact that the Debtor would not incur the cost of removal and sale of the Property, is additional valuable consideration for the purchase of the Property by the Authority.

The Debtor has determined to accept this offer. The Court should note that the Bondholder Trustee consents to the terms of the sale.

12.    As a result, and as discussed below, the Debtor requests that it be authorized to sell the Property to the Authority in a private sale, free and clear of liens, claims and encumbrances.

## BASIS FOR RELIEF REQUESTED

### A.    The Sale of the Property is Authorized by Section 363(b) of the Bankruptcy Code

13.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(l). The terms of such sale are generally within the sound discretion of the Debtor. *See In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 679 (Bankr. S.D.N.Y. 1989).

14.    Courts have uniformly held that approval of a proposed use of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. *See e.g., In re Chrysler LLC*, 405 B.R. 84, 97–100 (Bankr. S.D.N.Y. 2009), aff'd, 576 F.3d 108 (2d Cir. 2009); *In re General Motors Corp.*, 407 B.R. 463 (S.D.N.Y. 2009); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *Ionosphere Clubs, Inc.*, 100 B.R. at 675; *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

15.    Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)).

4

16.     Here, since the Debtor is liquidating, it is necessary for the Debtor to sell the Property. Moreover, as set forth above, the sale to the Authority and the benefits to be derived therefrom represents the best terms for the sale of the Property, and the terms have been approved by the Bondholders, who hold liens against the Property.

17.     The Debtor therefore believes that the sale of the Property to the Authority is justified by sound business reasons and is in the best interest of the Debtor and its estate. Accordingly, pursuant to section 363(b) of the Bankruptcy Code, the Debtor requests approval of the sale to the Authority.

**B.    Private Sale**

18.     The Debtor believes that a private sale to the Authority is in the estate's best interest and should be authorized. Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004 govern the sale of assets outside of the ordinary course of a debtor's business.  Section 363 provides in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b)(1).  Under Bankruptcy Rule 6004(f)(1), a trustee is permitted to sell property of the estate pursuant to section 363(b) by private sale or public auction. Fed. R. Bankr. P. 6004(f)(1).

19.     While it is common to sell assets through an auction, private sales are expressly authorized and, in some instances, are more appropriate or are the only option. Here, it is more appropriate to sell the Property in a private sale, since if the Property is sold piecemeal, the Debtor will be forced to remove whatever is left over at a considerable cost to the estate. In addition, the sale is supported by the Bondholders.

20.     Courts have noted that private sales are appropriate under section 363 of the Bankruptcy Code. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted

by a trustee, who has ample discretion to conduct public or private sales of estate property."); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect sales of estate property pursuant to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction").

21.    Accordingly, courts in this and surrounding Districts have approved private sales of assets when they think the general standards for approval under section 363 of the Bankruptcy Code are satisfied. See, e.g., *In re Northeast Biofuels, LP*, 2009 Bankr. LEXIS 5393 (Bankr. N.D.N.Y. May 22, 2009, Nos. 09-30057-5-mcr, 09-30058-5-mcr, 09-30059-5-mcr) (court approved the private sale of the debtor's assets under section 363 of the Bankruptcy Code, concluding that the sale was a reasonable and sound exercise of the debtor's business judgment and in the best interests of the estate); *In re The College of New Rochelle*, Case No. 19-23694 (RDD) (Bankr. S.D.N.Y. May 13, 2020) (order approving sale of personal property to Mercy College by private sale, not subject to higher and better offers); *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2009) (order approving the sales of one of the debtors' facilities' by private sale, not subject to higher and better offers); *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Nov. 29, 2005) (order authorizing the sale of certain aircraft by private sale and stating that "no auction was necessary with respect to sale of the [a]ircraft").

22.    A private sale is warranted in this case. The purchase price for the Property is fair and reasonable. However, the value to be received would be significantly reduced if the Debtor were required to go through an entire auction process and be forced to remove any unsold Property. The terms of sale also avoid a legal battle to determine whether the generators were part of the sale

22484.3 21351598v2

of the Campus, and allows the Debtor to remain in the Campus post-closing in order wind down operations. Furthermore, it is supported by the Bondholders. As a result, selling the Property in a private sale will permit the Debtor to collect the proceeds of the sale while avoiding administrative costs and expenses.

23.    Moreover, this is an arms-length transaction negotiated in good faith with the Authority, which is not an insider of the Debtor. Accordingly, the Debtor believes that a private sale of the Property as requested herein should be approved.

**C.    The Property Should be Sold Free and Clear of Liens, Claims and Encumbrances**

24.    Pursuant to section 363(f) of the Bankruptcy Code, property may be sold . . . free and clear of any interest in such property of an entity other than the estate, only if:

> (i)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (ii)    such entity consents;
>
> (iii)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (iv)    such interest is in bona fide dispute; or
>
> (v)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Thus, a debtor may sell property of a bankruptcy estate free and clear if one of the five conditions under section 363(f) is satisfied. *See In re Grubb & Ellis Co.*, Case No. 12-10685 (MG), 2012 Bankr. LEXIS 1279, at *31 (Bankr. S.D.N.Y. Mar. 27, 2012) (discussing section 363(f) of the Bankruptcy Code); *In re Borders Group, Inc.*, 453 B.R.477, 483–84 (Bankr. S.D.N.Y. 2011) (same). Property may be sold free and clear to the extent that holders liens and encumbrances do not object. *See Borders Group*, 453 B.R. at 484 ("Under 363(f)(2), a lienholder

who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens.")

25.    Here, the Debtor submits that section 363(f)(3) of the Bankruptcy Code will be satisfied because the Bondholders, the only lienholder, consents to the sale free and clear of its liens.

**D.    Section 363(d) of the Bankruptcy Code is Satisfied by the Proposed Sale**

26.    Pursuant to section 363(d) of the Bankruptcy Code, a transfer of property by a not-for-profit entity must be made in compliance with applicable nonbankruptcy law governing such transfer. Specifically, section 363(d) provides that "[t]he trustee may use, sell or lease property under subsection (b) or (c) of this section - (1) in the case of a debtor that is a corporation or trust that is not a moneyed business, commercial corporation, or trust, only in accordance with nonbankruptcy law applicable to the transfer of property by a debtor that is such a corporation or trust." 11 U.S.C. § 363(d)(1).

27.    The inclusion of section 363(d) of the Bankruptcy Code was not intended to provide states with a "veto" of sales of a debtor's assets under the Bankruptcy Code that otherwise take into account legitimate interests of the state over the transfer or sale of a non-profit's assets. *See* H. REP. NO. 109-31, pt. 1, title XII (Judiciary. Comm.) (listing section 1221 of the BAPCPA under the heading "Technical Amendments").

28.    Here, the Debtor requests that this Court approve the sale of the Property as satisfying applicable non-bankruptcy law including without limitation the New York Not-for-Profit Corporation Law.  Outside of bankruptcy, an insolvent not-for-profit corporation that is seeking to sell all or substantially all of its assets is required, pursuant to Sections 510 and 511 of the New York Not-for-Profit Corporation Law, to submit a verified petition to the Supreme Court where the corporation has its principal office for approval of such sale transaction, on notice to the

8

Attorney General. The Supreme Court will approve the proposed sale transaction if it finds that "the consideration and the terms of the transaction are fair and reasonable to the corporation and that the purposes of the corporation or the interests of the members will be promoted." N.Y. Not-for-Profit Corp. Law § 511(d).

29.    As with the sale of the Campus, the Debtor requests that this Court approve the sale herein, on the grounds that the sale does not violate Sections 510 and 511 of the New York Not-for-Profit Corporation Law. The transfer of the Property does not invoke specific regulatory requirements which might restrict its transfer. The Debtor submits that the terms of the sale comply with all applicable not-for-profit laws, including the not-for-profit laws of the State of New York, and any applicable federal laws. Accordingly, the Debtor submits that the proposed sale satisfies the requirements of section 363(d) of the Bankruptcy Code.

## NOTICE AND NO PRIOR REQUEST

30.    The Debtor will provide notice of this motion in accordance with the Court's Order Establishing Notice Procedures dated October 16, 2024. The Debtor respectfully submits that in light of the nature of the relief requested, no other or further notice is necessary.

31.    No previous request for the relief sought herein has been made to this or any other Court.

22484.3 21351598v2

**WHEREFORE**, the Debtor respectfully requests that this Court grant the relief requested

herein, together with such further relief as this Court deems just and proper.

Dated: Albany, New York
      March 12, 2025

                                CULLEN AND DYKMAN LLP

                                By:    s/ Bonnie Pollack
                                             Matthew G. Roseman, Esq.
                                             Bonnie L. Pollack, Esq.
                                80 State Street, Suite 900
                                Albany, New York 12207
                                (516) 357-3700

                                *Counsel for The College of Saint Rose*

22484.3 21351598v2

## EXHIBIT A

## PROPOSED SALE ORDER

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:                                          :    Chapter 11
                                                :
THE COLLEGE OF SAINT ROSE,                      :    Case No. 24-11131 (REL)
                                                :
                        Debtor.                 :
                                                :
                                                :
------------------------------------------------------------ x

## ORDER APPROVING THE PRIVATE SALE OF PERSONAL PROPERTY
## FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES

Upon the motion (the "**Motion**") of The College of Saint Rose ("**Debtor**"), seeking entry

of an order pursuant to sections 105 and 363 of title 11, United States Code ("**Bankruptcy Code**")

and Rule 6004 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") approving a

private sale of the Debtor's personal property identified on Exhibit "B" to the Motion[2]; and a

hearing on the Motion having been held on April 9, 2025 (the "**Hearing**"); and good and sufficient

notice of the Motion and Hearing having been given and no other or further notice being required;

and objections, if any, having been overruled, withdrawn, or resolved:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND

---

[2] Defined terms not otherwise defined herein shall have the same meanings ascribed to them in the Motion.

CONCLUSIONS OF LAW:

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334.

B.      The statutory predicates for the relief sought in the Motion and the basis for the approvals and authorizations contained in this Order are Bankruptcy Code sections 105 and 363, and Bankruptcy Rules 2002, 6004 and 9014.

C.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

D.      Venue of this case and the Motion in this district is proper under 28 U.S.C. § 1408.

E.      Sufficient notice of the relief sought in the Motion has been given and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to interested persons and entities.

F.      The Debtor determined in its best business judgment that a private sale of the Property to the Albany County Pine Hills Land Authority (the "**Authority**") for $155,000 (the "**Purchase Price**") is in the best interests of the Debtor's estate and creditors.

G.      The Purchase Price to be paid by the Authority constitutes adequate and fair value for the Property. The sale was negotiated and entered into in good faith and from arm's length bargaining positions by and between the Debtor and the Authority.

H.      The Property may be sold free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code because the holders of such liens and encumbrances have consented, subject to the terms and conditions of this Order.

BASED ON THE FOREGOING, AND AFTER DUE CONSIDERATION AND GOOD CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

2

1.     All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, settled, or otherwise dealt with as expressly provided herein, and all reservation of rights included in such objections, are overruled on the merits with prejudice.

2.     Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized to sell the Property to the Authority for the Purchase Price pursuant to the Bill of Sale attached hereto as Exhibit "1", and upon such sale, all right title and interest of the Debtor in and to the Property shall vest in the Authority free and clear of any and all liens, claims and encumbrances of whatever kind or nature, with such liens, claims and encumbrances, if any, to attach to the proceeds of sale in order of their priority and each and every Entity (as defined in Bankruptcy Code section 101(15)) is forever barred from asserting against the Authority, as applicable, its successors and assigns, or against the Property, any mortgages, liens, interests, Claims (as defined in Bankruptcy Code 101(5)) or other encumbrances of any kind or nature (including, without limitation, any judgment liens) (collectively "Encumbrances") held by such Entity against the Debtor or the Property.

3.     The Debtor is authorized to take all actions and execute all documents necessary or appropriate to effectuate the sale of the Property to the Authority consistent with this Order.

4.     At the closing of the sale, the proceeds of the sale of the Property shall be paid directly to the Bondholder Trustee on behalf of the Bondholders.

5.     Following the closing of the sale, no holder of any Encumbrance against the Debtor or the Property shall interfere with the Authority's rights in, title to or use and enjoyment of the Property.

6.     The provisions of this Order authorizing the sale of the Property free and clear of liens, claims and encumbrances, shall be self-executing, and neither the Debtor nor the Authority shall be required to execute or file releases, termination statements, assignments, consents, or other

3

22484.3 21351598v2

instruments in order to effectuate, consummate and implement the provisions of this Order. However, the Debtor and the Authority, as applicable, and each of their respective employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtor or the Authority, as applicable, deems necessary or appropriate to implement and effectuate the terms of this Order. This Sale Order (i) shall be effective as a determination that, at the closing, all Encumbrances existing against the Property before the closing have been unconditionally released, discharged and terminated, and that the transfer and conveyance of the Property has been effected, and (ii) shall be binding upon and shall govern the acts of all persons and Entities. If any person or Entity that has filed financing statements or other documents or agreements evidencing any Encumbrances against the Property shall not have delivered to the Debtor before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all Encumbrances which the person or entity has with respect to the Property, then the Authority and/or the Debtor are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or Entity with respect to such Property. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorder to act to cancel any Encumbrances of record against the Property, and all such clerks and recorders are hereby directed to accept this Sale Order as proof that such Encumbrances have been extinguished and released. Notwithstanding the foregoing, the Debtor shall not be under any obligation to record a certified copy of this Sale Order.

7.    The Authority shall not be deemed for any purpose to: (i) be a successor, continuation or alter ego (or other such similarly situated party) to the Debtor or its estate by reason of any theory of law or equity, including, without limitation, any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability; or (ii) have, de facto or otherwise, merged with or into the Debtor;

22484.3 21351598v2

or (iii) be a mere continuation, alter ego, or substantial continuation of the Debtor. The Authority is not assuming, nor shall it be liable for, any of the Debtor's debts, obligations or liabilities, and shall have no successor or vicarious liabilities of any kind or character under any theory of law relating to the Debtor's debts, obligations and liabilities.

8.      No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the sale authorized by this Sale Order.

9.      The transaction contemplated by the Motion is undertaken without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code. The Authority is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.   Accordingly, the reversal or modification on appeal of the authorization provided herein by this Sale Order shall not affect the validity of the sale of the Property to the Authority.

10.     This Court shall retain jurisdiction to enforce the provisions of this Order and to resolve any disputes concerning this Order.

****

22484.3 21351598v2

## EXHIBIT 1


## BILL OF SALE

## BILL OF SALE

THIS BILL OF SALE is made and entered into as of the __ day of March, 2025 by THE COLLEGE OF SAINT ROSE, a New York not-for-profit educational corporation ("Seller"), and THE ALBANY COUNTY PINE HILLS LAND AUTHORITY, a New York public authority from Title 28-C of the Public Authorities Law (the "Buyer").

Seller and Buyer hereby agree that:

Seller does hereby bargain, grant, sell, convey, assign, transfer and deliver to Buyer, and its successors and assigns, the property set forth in Attachment A (the "Property"), for the sum of One Hundred Fifty-five Thousand ($155,000.00) and 00/100 Dollars.

THE PROPERTY IS BEING SOLD AND CONVEYED "AS IS", "WHERE IS", AND "WITH ALL FAULTS" AS OF THE DATE OF THIS BILL OF SALE, WITHOUT REPRESENTATION OR WARRANTY WHATSOEVER AS TO ITS CONDITION, FITNESS, FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESSED OR IMPLIED. ASSIGNOR SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESSED OR IMPLIED, CONCERNING THE PROPERTY OR SELLER'S TITLE THERETO EXCEPT THAT THE PERSONAL PROPERTY IS BEING SOLD FREE AND CLEAR OF ANY AND ALL LIENS AND ENCUMBRANCES.

This Bill of Sale shall be effective, and the Buyer shall take possession of the Property, no earlier than the entry of an Order of the United States Bankruptcy Court for the Northern District of New York approving the sale to Buyer of the Property (the "Effective Date").

The Buyer is required to have provided guaranteed funds (such as certified or bank cashier's check, or wire transfer) for payment prior to or at the time of sale.

This Bill of Sale shall be governed by and construed in accordance with the laws of the State of New York without regard to the principles of conflicts of law thereunder.

IN WITNESS WHEREOF, Seller and Buyer have executed this Bill of Sale effective as of the Effective Date.

Seller:                                              Buyer

THE COLLEGE OF SAINT ROSE               The Albany County Pine Hills Land Authority
432 Western Avenue
Albany, New York 12203

By: _____            By: _____
    Signature          Date                 Signature          Date

Marcia J. White                              Kevin W. O'Connor
President                                    CEO

## ATTACHMENT A

## LISTING OF PERSONAL PROPERTY

## EXHIBIT B

## LIST OF PROPERTY

Link available by email request to Debtor's Counsel

**EXHIBIT C**

**USE AGREEMENT**

Execution Version

## POST OCCUPANCY AGREEMENT

**THIS POST OCCUPANCY AGREEMENT** ("Agreement") is made this 13th day of March, 2025 (the "Effective Date") by and between **THE COLLEGE OF SAINT ROSE**, an education corporation chartered by the Board of Regents of the State of New York (the "Seller"), and **ALBANY COUNTY PINE HILLS LAND AUTHORITY**, a New York public authority formed under Public Authorities Law §2676-c (the "Purchaser") (collectively, the Seller and the Purchaser are hereinafter called the "Parties").

### WITNESSTH:

**WHEREAS**, the undersigned are the parties to that certain Asset Purchase Agreement dated December 19, 2024 (the "Contract") in connection with the Owned Real Property (as defined in the Contract) in the City of Albany, County of Albany and State of New York; and

**WHEREAS**, the transfer of title will take place on or about March 13, 2025 (the "Closing Date"); and

**WHEREAS**, pursuant to the terms, covenants and conditions of the Contract and this Agreement, the Purchaser is willing to allow the Seller to have the continued right of occupancy of certain areas within the Owned Real Property that are more particularly described on **Exhibit "A"** attached hereto for a period from the Closing Date and ending on June 30, 2025 (the "Term").

**NOW, THEREFORE**, in consideration of Ten ($10.00) Dollars and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.    <u>Possession</u>: Upon, and as of, the Closing Date, the Purchaser shall permit the Seller to remain in possession of the certain areas within certain of the buildings that are part of the Owned Real Property that are more particularly described on **Exhibit "A"** attached hereto for the Term (the "Premises") and to continue to utilize the personal property that it owns and which is contained in the Premises for the Term of this Agreement.

2.    <u>Occupancy Fee</u>: The Seller hereby agrees that the Purchaser shall not be obligated to make payments to the Seller for its occupancy during the Term except that solely for the month of March 2025, the Seller shall pay $3,200 month on account of water, sewer and utilities since the Premises is not separately metered (the "Utility Additional Rent"). At the Closing, the Seller pay the prorated per diem amount of the Utility Additional Rent for the month of March 2025 which amount shall be based on a per diem basis in the amount of $103.23 from and including the Closing Date to March 31, 2025. Thereafter for the months of April, May and June 2025, the Seller shall make a monthly Utility Additional Rent payment in the amount of $3,200/month to the Purchaser on the 1st business day of each and every month during the Term of this Agreement.

3.    <u>Network Access</u>: The Purchaser acknowledges that, for the duration of the Term, the Seller will continue to pay the monthly cost of $6,700 to maintain network lines providing 3 gigabytes of data to service the Premises (the "Network Access Fee"). As of the Closing Date, the Purchaser will be utilizing 1 gigabyte of such data. At the Closing, the Purchaser shall pay the

prorated per diem amount of the Network Access Fee for the month of March 2025 which amount shall be based on a per diem basis in the amount of $72.04 from and including the Closing Date to March 31, 2025. Thereafter for the months of April, May, and June 2025, the Purchaser shall make a monthly Network Access Fee payment in the amount of $2,233.33/month to the Seller on the 1st business day of each and every month during the Term of this Agreement.

4.    Term:  The Term shall commence on the Closing Date and shall expire on June 30, 2025.  In the event that the Seller desires to vacate all or any portion of the Premises earlier it shall provide notice of that early termination to the Purchaser with a designation of the portion of the Premises that it will be vacating.  The Seller has no further extension and/or renewal rights and must vacate the Premises on or before the expiration of the Term.

5.    Maintenance and Compliance:  During the Seller's use and occupancy of the Premises, the Seller shall utilize reasonable efforts keep said Premises in good maintenance, repair and condition, at the Seller's sole cost and expense, and shall comply with all governmental ordinances and regulations concerning same. However, in no event does this obligate Seller to repair or replace structural items or the mechanical systems. Seller agrees that it shall, throughout the Term of this Agreement, utilize reasonable efforts refrain from taking or permitting others under its control to take any action that would damage or destroy the Premises. Purchaser shall be solely responsible, at its sole cost and expense, for maintaining the Premises, including providing a dumpster so that the Seller may remove its trash from the Premises to the dumpster, and for taking all other actions as may be necessary to preserve the same in good order, condition, and state of repair and shall also be responsible for the HVAC, electrical, plumbing, and other mechanical building systems servicing the Premises. [1]. Purchaser shall utilize reasonable efforts to keep the exterior keep clean and free from dirt, snow, ice, rubbish, obstructions and encumbrances, the sidewalks, alleys, curbs and entrances in front of or adjacent to the Premises, including the designated parking spaces of Seller. Purchaser shall provide security services for the campus at no additional charge to Seller.

6.    No Alterations.  During the Term, the Seller shall not undertake any alterations or improvements to the Premises.

7.    Janitorial Services.  During the Term, the Seller shall maintain a janitorial services contract for the Premises with a service provider acceptable to the Purchaser.

8.    Event of Casualty.  In the event that any portion of the Premises is damaged by a casualty or other act of god, then the right of the Seller to occupy such portion of the Premises that is damaged by any casualty or other act of god shall automatically terminate effective immediately on the date of the casualty or other act of god without any notice by the Purchaser to the Seller. The intent of the parties is that the termination is self-effectuating automatically upon any casualty or other act of god.

9.    Risk of Loss:  The Seller shall suffer all risk of loss or damage to their property stored or located on the Premises and shall hold the Purchaser harmless from any and all claims,

---

[1] NTD I do not think that we will be providing separate services to the Premises.  College can occupy premises but has to provides all services beyond available and water utilities.

2

liabilities, causes of actions or demands whatsoever arising from their occupancy of the Premises. The Seller acknowledges that certain portions of the Premises are not demised and separated by walls such that all of the risk of loss is on the Seller and it shall not seek any contribution or payment from the Purchaser in the event that any of its personal property shall be destroyed, lost, moved, stolen or become missing.

10.    Insurance. The Seller agrees to carry public liability insurance in favor of the Purchaser during the Term with coverage limits of not less than $1,000,000 per occurrence and $2,000,000 in the aggregate (the "Liability Insurance Policies"). All certificates of insurance shall expressly name the Purchaser and the County of Albany as additional named insureds. The certificates of insurance shall also expressly provide mandatory waiver of subrogation and contractual liability endorsements in favor of the Purchaser and County of Albany. The Liability Insurance Policies shall provide the Purchaser with a mandatory minimum of thirty (30) day written notice of any amendment, cancellation or termination to the Purchaser. The Seller shall maintain its own policies of insurance in the standard extended coverage for the full insurable value for its trade fixtures, furnishings and other items of personal property. In the event that the Liability Insurance Policies are terminated and not renewed during the Term, then the right of the Seller to occupy any portion of the Premises shall automatically terminate on the date that the Liability Insurance Policies shall terminate without any notice from the Purchaser to the Seller.

11.    Indemnity. The Seller does hereby covenant and agree with the Purchaser that it will indemnify, defend and save the Purchaser harmless from and against any and all liability, damage, penalties, claims, causes of action or judgment arising from injury to person or property sustained by anyone in or about the Premises resulting from any acts or omissions of the Seller or its officers, agents, servants, employees, contractors or vendors. The Seller shall, at its own expense, indemnify, defend and hold the Purchaser harmless from and against all suits, causes of action or litigation, except for any acts or omissions caused by the Purchaser or its agents, servants, employees, contractors or vendors. The Liability Insurance Policy set forth above shall have a contractual liability endorsement in favor of the Purchaser recognizing the indemnification obligations under this Agreement.

12.    Relocation. In the event Purchaser shall have first received a *bona fide* third party offer for the purchase and/or lease of any portion of the Premises, the Purchaser may relocate the Seller's occupancy from such impacted portion of the Premises subject to such third party offer, upon not less than thirty (30) days written notice from the Purchaser to the Seller, which 30-day notice shall include reasonable documentation evidencing such third party offer, in which event the Seller will abide by the relocation notice served upon the Seller and move its materials, at Purchaser's cost and expense, to such designated areas which will be comparable in quality and further provided that such designated relocation areas shall be reasonably satisfactory to Seller.

13.    No Tenancy Created. It is expressly understood and agreed by the parties that no landlord-tenant relationship whatsoever is implied or created by this Agreement. The U.S. Bankruptcy Court for the Northern District of New York shall retain jurisdiction to resolve any and all disputes that may arise in connection with this Agreement.

14.    Waiver of Broom Clean Condition Precedent. It is acknowledged and agreed that the Contract has a condition precedent to Purchaser's obligation to acquire the Owned Real

3

Property that the Owned Real Property be in broom clean condition on the date of the Closing (the "Condition Precedent"). The Purchaser waives the Condition Precedent and agrees to proceed to the Closing subject to the terms of this Agreement and the Order of the Bankruptcy Court approving the sale of the Personal Property of the Seller pursuant to which the Personal Property will be acquired by the Purchaser subsequent to the Closing.

15.      Broom Clean Condition. At the expiration of the Term, it is acknowledged and agreed that the Seller will leave the Premises in a broom clean condition free of all debris and records of the Seller, except to the extent permitted under this Agreement with regards to certain personal property to be acquired by the Purchaser pursuant to a certain bankruptcy court order. The Seller will be solely responsible for the maintenance of its records and will not look to the Purchaser to protect such records. All of the Seller's obligations under this Agreement shall expressly survive the Term of this Agreement.

16.      Assignability: Neither this Agreement, nor any right or obligation hereunder, may be assigned without the express written consent of the Purchaser in each and every instance which may be withheld in the sole and absolute discretion of the Purchaser.

17.      Exclusive Agreement: This Agreement is intended by the Seller and the Purchaser as the final expression of their Agreement as to the Seller continued use and occupancy of the Premises, and as the complete and exclusive statement of the terms and conditions thereof, notwithstanding any representations or statements to the contrary previously made. No modification of this Agreement shall be effective unless in writing signed by the parties and specifically stating it is such a modification.

18.      New York Law: The construction, performance, and completion of this Agreement shall be governed the Laws of the State of New York.

19.      Waiver of Jury Trial. Both parties hereto acknowledge and agree that they are waiving any and/or all right to elect a jury trial for any dispute under this Agreement.

20.      Execution; Counterparts. This Agreement may be executed in any number counterparts all of which together shall constitute one and the same instrument. Electronic signatures delivered by "pdf" and/or email shall have the same binding effect as an original signature.

*[Remainder of Page Intentionally Left Blank – Signature Page Follows]*

4

22484.3 21357245v1

**IN WITNESS WHEREOF**, the parties have set their hands and seals the day and year first above written.

**SELLER:**

**THE COLLEGE OF SAINT ROSE**

By: _____
            Marcia J. White, President

**PURCHASER:**

**ALBANY COUNTY PINE HILLS
LAND AUTHORITY**

By: _____
            Kevin O' Connor, CEO

22484.3 21357245v1

## EXHIBIT "A"

---

| Building, Room | Rationale |
|---|---|
| 1. **959 Madison Avenue, Entryway** | The sculpture of the Ten Commandments is currently hanging in the entryway and is considered part of our religious artifacts.  The College's staff has been contacted by the donor/artist family to determine what will happen with this piece.  This is a large ceiling to floor hanging and relocating it at this time is not a possibility.  This space will not be needed once this decision and transition occurs.  **We are targeting this to occur in April 2025.** |
| 2. **985 Madison Avenue, Room 010** | There are over one thousand (1,000) boxes of records being stored in this location. These retained records are in compliance with the College's and regulatory record retention policy.  It is the intention to request a modified record retention schedule from the court.  Once the College receives the ruling from the bankruptcy court on what records need to be maintained and for how long, this space will be emptied out by sending boxes to off-site storage or shredding.  This space will not be needed once this decision and transition occurs.  **We are targeting this to occur in April 2025.** |
| 3. **985 Madison Avenue, Room 111** | This office is currently being used by our Principal Network Systems Engineer and is located directly next to the Network Operating System (NOC).  There are four (4) additional offices in the suite that could be used by another entity until the College staff completes its wind down operations.  **This space will be needed until June 30, 2025.** |
| 4. **985 Madison Avenue, Rooms 106, 129, 130 & 131** | These spaces make up the Network Operating System and the College staff will need access of some kind to continue to maintain the College's operating servers until the College staff completes its wind down operations. **This will space will be needed until June 30, 2025.** |

A-1

| 5. | 985 Madison Avenue, Entire 4th floor | One half of this floor currently houses the majority of the College's remaining administrators who will be **employed until June 30, 2025** to complete the College's wind down operations. The other half of the floor currently holds over two hundred (200) boxes and other documents that are being stored until a ruling is made by the bankruptcy court. Once the College receives the ruling, this space will not be needed. **We are targeting this to occur in April 2025.** |
|---|---|---|
| 6. | 1000 Madison Avenue, Entire Building | The President of the College and the Chief of Staff continue to work out of this property **until March 31, 2025** to complete the College's wind down operations. Additionally, governance, endowment, and other critical historical documents are being stored in the basement of the property until the College receives the ruling from the bankruptcy court regarding document storage. The President, Chief of Staff and any other staff of the College located in this building must relocate to St. Joseph's Hall on or before March 31, 2025 since it is the preference of Purchaser to have the Seller's operations consolidated into one location. All documents can stay in the Building until May 31, 2025 |
| 7. | 1002 Madison Avenue, Room L03 | There are four (4) pianos that the College has an executed agreement with Artist Pianos. Artist Pianos is still trying to sell these pianos in accordance with the consignment agreement with the College. These items are not able to be moved to their locations at this time due to space constraints. Once the pianos are sold this space will not be needed. **We are targeting this to occur no later than May 2025.** |
| 8. | 1002 Madison Avenue, Room 306 | There is one (1) organ that the College has an executed agreement with Artist Pianos. Artist Pianos is still trying to sell this organ in accordance with the consignment agreement with the College. They do not believe they can move it to L03 or to one of their locations at this time due to the size of the organ. Once the organ is sold this space will not be needed. **We are targeting a sale to occur no later than May 2025.** |
| 9. | 1009 Madison Avenue, Room 004 | This space is currently holding approximately forty (40) boxes of clinical records. These retained records are in compliance with the College's and regulatory record retention policy. It is the intention to request a modified record retention schedule from the court. Once the |

A-2

College receives the ruling from the bankruptcy court on what records need to be maintained and for how long, this space will be emptied out by sending boxes to off-site storage or shredding. This space will not be needed once this decision and transition occurs. **We are targeting this to occur in April 2025.**

| | | |
|---|---|---|
| 10. | **1009 Madison Avenue, Room 009** | This space is currently holding approximately one hundred (100) boxes of clinical records. These retained records are in compliance with the College's and regulatory record retention policy. It is the intention to request a modified record retention schedule from the court. Once the College receives the ruling from the bankruptcy court on what records need to be maintained and for how long, this space will be emptied out by sending boxes to off-site storage or shredding. This space will not be needed once this decision and transition occurs. **We are targeting this to occur in April 2025.** |
| 11. | **1009 Madison Avenue, Rooms 033 & 034** | This space is part of the Network Operating System and where the College's VPN is located. If the VPN goes down, this is the only location where it can be reset. **This space will need to be available until June 30 ,2025.** |
| 12. | **392 Western Avenue Rooms 315 & 316** | This space holds the remaining College archives and rare books collection. The College staff are still determining what will happen with these pieces. This space will not be needed once this decision and transition occurs. **We are targeting this to occur in May 2025.** |
| 13. | **Lally Parking Lot (10 spaces)** | Parking spaces for remaining administrative staff |

A-3