CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
(516) 357-3700

*Counsel for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| THE COLLEGE OF SAINT ROSE, | : Case No. 24-11131 (REL) |
| | : |
| Debtor. | : |
| | : |

---------------------------------------------------------------x

## DEBTOR'S MOTION FOR AN ORDER (A) APPROVING AND AND AUTHORIZING PROCEDURES FOR THE RETENTION AND DISPOSITION OF THE DEBTOR'S RECORDS, (B) AUTHORIZING THE DEBTOR TO ENTER INTO AGREEMENT WITH IRON MOUNTAIN FOR RECORD STORAGE UNDER 11 U.S.C. §§ 105 AND 363, AND (C) AUTHORIZING THE DEBTOR TO ABANDON AND DISPOSE OF UNNECESSARY RECORDS UNDER 11 U.S.C. §§ 105 AND 554

**TO THE HONORABLE ROBERT E. LITTLEFIELD, JR., UNITED STATES BANKRUPTCY JUDGE:**

The College of Saint Rose (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case, as and for its motion (the "Motion") for an order, substantially in the form attached hereto as Exhibit "A" (the "Records Order"), (a) approving and authorizing procedures (the "Record Retention Procedures") for the retention and disposition of the Debtor's records, (b) authorizing the Debtor to enter into an Agreement with Iron Mountain for the storage of the Debtor's records under 11 U.S.C. §§ 105 and 363 and (c) authorizing the Debtor to abandon and dispose of unnecessary records under 11 U.S.C. §§ 105 and 554, respectfully alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and

1334.  Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)

and (L).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 363(b)

and 554(a) of title 11, United States Code (the "Bankruptcy Code").

## BACKGROUND

3.      On October 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

Southern District of New York.

4.      The Debtor continues to manage its property as a debtor in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No Official Committee of Unsecured Creditors (the "Committee") has been

appointed in the Debtor's case.

6.      Simultaneously with the filing of the Petition, the Debtor filed the Declaration of

Marcia J. White pursuant to Local Bankruptcy Rule 2015-2 (the "First Day Declaration").  A

more detailed factual background of the Debtor's business and operations, as well as the events

leading to the filing of this chapter 11 case, is more fully set forth in the First Day Declaration,

incorporated herein by reference.

7.      The Debtor's primary asset is the college campus located in Albany, New York

(the "Campus").

8.    The Debtor's hardcopy files and records relating to its former operation as a College (the "Records")[1] are stored at buildings located on the Campus or electronically.

9.    The Debtor has begun reviewing the volume of Records in order to determine which were necessary to retain (the "Necessary Records"). Necessary Records include those dating from January 1, 2023 to date which may be required in connection with the Chapter 11 case or are required to be preserved for a certain time period to comply with regulatory requirements or other guidelines. Such Records include financial statements, documents associated with endowed funds or restricted gifts until transferred by the cy pres petition, Form 990s filed by the Debtor, open legal cases, certain educational records not included in the definition of Unnecessary Records below, accounting records, certain student loan records and other regulatory forms required to be maintained by the Debtor. By way of example, documents which are not necessary documents (the "Unnecessary Records") include, among other things, student services records, institutional research files, academic department files, old syllabi, multiple copies of institutional, area and department reports, expense reports, purchase requisitions, admissions letters, church/chapel records, faculty/job announcements, examination copies, grade statistics, degree audits, campus transportation logs, security logs, Board Minutes, President's correspondence, recommendation letters, resumes, student clubs, activities, student organizations, and residential life records. It is anticipated that the Debtor will ultimately have approximately 550 banker boxes and up to four terabytes of electronic data consisting of

---

[1] In addition to the Records described herein, there are records and information which are not being transferred to Iron Mountain. First, records related to former students of the Debtor including transcripts and related grade reports are in the process of being or have been turned over to University of Albany ("UA") pursuant to an Agreement for Retention of Records dated May 6, 2024. Neither this Motion nor the Record Retention Procedures are intended to impact or disrupt the turnover of such records to UA. Second, the Debtor utilized the Ellucian Banner enterprise resource planning and student information system ("Banner") to carry out various College functions. The data on the Banner system will be migrated to a cloud-based platform where such data will be retrievable if necessary. While that data will not be transferred to Iron Mountain, it too will be destroyed at the end of the Record Retention Period.

22484.3 21153138v1

Necessary Records. The Records that the Debtor proposes be deemed Necessary Records, and the ones to be deemed Unnecessary Records, are itemized in Exhibit "B" hereto.

10.     The closing of the sale of the Campus occurred on March 13, 2025. In order to effectuate the removal of the Necessary Records from the Campus and the storage of same, the Debtor desires to enter into agreements with Iron Mountain, one for paper documents and one for electronic data (collectively, the "Storage Agreement"), approval of which it seeks by this Motion. A copy of the Storage Agreement is annexed hereto as Exhibit "C".[2]

**RELIEF REQUESTED**

11.     By this Motion, the Debtor seeks approval of Record Retention Procedures by which it would, destroy the Unnecessary Records and maintain the Necessary Records in accordance with the Storage Agreement. The Debtor also seeks to limit the time period for retention and storage of the Necessary Records, after which the time period the Necessary Records would be destroyed by Iron Mountain.

**BASIS FOR RELIEF REQUESTED**

A.     **Record Retention Procedures**

12.     Although there are a myriad of rules, regulations and requirements applicable to retention of records by an operating institution of higher education, most of them do not address the circumstances of an institution that is liquidating through chapter 11. The Debtor is proposing by this Motion that the Court approve certain Record Retention Procedures which take into consideration the Debtor's current circumstances and the interests of the estate and creditors.

13.     Given the volume of the Debtor's Necessary Records, and that the Debtor's case is likely to be completed within approximately four (4) months, the Debtor submits that it would

---

[2] Pending approval of this motion, the Albany County Pine Hills Land Authority has agreed to allow the Debtor to leave the Records at the Campus pursuant to a Use Agreement.

be overly burdensome to store the Necessary Records for an extended period of time, even though such time period may be required under applicable regulations. Thus, as part of the Record Retention Procedures the Debtor requests that the Court find that only Necessary Records for the period of January 1, 2023 to date need to be retained for two (2) years from the date of entry of the Records Order (the "Record Retention Period"). This time period may be different than the retention period applicable under governing regulations, but weighs the need to preserve the Necessary Records for some period of time against the cost of preserving them for a substantial number of years, and well after the Debtor's case is closed.

14.     Necessary Records stored during the pendency of the Record Retention Period will automatically become Unnecessary Records at the end of the Record Retention Period, and shall be shred and disposed of by Iron Mountain in accordance with the Storage Agreement.

15.     The Debtor believes that these proposed Record Retention Procedures as well as the length of the Record Retention Period are reasonable given the volume of the Debtor's Records, the fact that the Debtor is no longer operating and therefore is only required to maintain the Records in accordance with regulations and not for any other business purpose, and the cost to the estate of storing the Records.

16.     The Debtor therefore submits that approval of the proposed Record Retention Procedures is in the best interest of the estate and that the Court should approve the same.

**B.      Approval of Storage Agreement**

17.     As to the Necessary Records, and due to the sale of the Campus, it is necessary for the Debtor to store those documents offsite until the expiration of the Record Retention Period. To that end, the Debtor proposes to enter into the Storage Agreement under section 363 of the Bankruptcy Code.

5

18.     Under section 363(b) of the Bankruptcy Code, the Debtor may use, sell, or lease, other than in the ordinary course of business, property of the estate. 11 U.S.C. §363(b).  That section of the Bankruptcy Code is often utilized for the purposes of approving post-petition agreements entered into by a debtor.  Further, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]". 11 U.S.C. §105(a).

19.     Under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable exercise of business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

20.     Entering into the Storage Agreement is a sound exercise of the Debtor's business judgment and should be authorized by the Court under section 363 of the Bankruptcy Code. Under the Storage Agreement, the Debtor will store Necessary Records until the expiration of the Record Retention Period.  The fees and expenses to be charged for Iron Mountain's storage and other services as contained within the Storage Agreement are standard and are reasonable for such services. Given that the Debtor will be completely wound down prior to the expiration of

the Record Retention Period, the Debtor intends to pay the cost of the Storage Agreement up front upon approval of this motion.

21.    As further set forth in the Storage Agreement, Iron Mountain will maintain confidentiality of all of the Necessary Records, an important component to the Storage Agreement.  Based on the necessity of off-Campus storage of the Necessary Records and the volume of such Records, the Debtor submits that the agreements with Iron Mountain are necessary, warranted and should be authorized as a reasonable exercise of the Debtor's business judgment.

C.    **Abandonment and Destruction of Unnecessary Records**

22.    Finally, many of the Records constitute Unnecessary Records which the Debtor will continue to dispose of upon approval of this motion. In addition, at the conclusion of the Record Retention Period, the Necessary Records will also need to be disposed of. As to all these documents, the Debtor seeks authority to abandon and dispose of the Unnecessary Records, and authority to have Iron Mountain destroy any remaining Records at the end of the term of the Storage Agreement.

23.    Although the records are property of the Debtor's estate, the Unnecessary Records, and the Necessary Records at the end of the Record Retention Period, are or will be of inconsequential value or benefit to the administration of the chapter 11 case.  Pursuant to section 554, "[a]fter notice and a hearing, the [Debtor] may abandon property of the estate that is burdensome or that is of inconsequential value and benefit of the estate".  11 U.S.C. §554(a).  In addition, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. §105(a).

7

24.      Courts apply the business judgment standard in reviewing a debtor's decision to abandon property that is of inconsequential value or burdensome to the estate. *See, e.g. In re Frostbaum v. Ochs*, 277 B.R. 470 (E.D.N.Y. 2002) (a trustee is to use "his best business judgment in deciding when … to renounce title and to abandon burdensome property" pursuant to section 554 of the Bankruptcy Code).

25.      Here, the Court should authorize the abandonment and destruction of the Unnecessary Records, and the Necessary Records after the expiration of the Record Retention Period, under section 554 of the Bankruptcy Code.

26.      As set forth above there are numerous banker boxes of documents at the Debtor's Campus, many of which contain Unnecessary Records.  If the Debtor is required to store these Unnecessary Records, the cost of doing so would be prohibitive considering the lack of benefit of maintaining such records.  Importantly, many of the documents contain confidential and/or personal information of the Debtor, its former students, staff, faculty, directors, contractors, vendors, and other related parties.  These documents must be properly disposed of and ultimately destroyed to protect that information. Accordingly, it is important that the Debtor have the ability to shred these records to not only dispose of same, but to also destroy any confidential material that may be contained in the Unnecessary Records.

27.      Moreover, since the Debtor is no longer an operating institution, it has no reason to maintain any records that are not absolutely necessary to administer the chapter 11 case or required by statute.  Any relevant student records have been and continue to be transferred to UA under the Agreement with UA, so those records are or will be no longer in the Debtor's possession.  Since the records sought to be destroyed have no bearing on the Debtor's case, the

8

continued storage of those documents at a large expense is not in the best interest of parties in interest in this case.

## **NOTICE**

28.    Notice of this Motion has been provided to the parties required by the Order Establishing Notice Procedures dated October 17, 2024 (which includes among others the Internal Revenue Service, the PBGC, the Department of Labor, the Securities and Exchange commission and the Pension Benefit Guaranty Corporation), as well as to Iron Mountain, NYS Education Department, the NYS Attorney General, the US Department of Education, the US Department of Labor, the NYS Department of Taxation and Finance, the NYS Department of Health, and various County Departments of Public Health and other services. The Debtor submits that no further notice is necessary.

## **NO PRIOR REQUEST**

29.    No previous request for relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order substantially similar to the proposed order attached hereto as Exhibit "A" granting the relief requested herein and granting the Debtor such other and further relief as is deemed just and proper.

Dated: Albany, New York
      March 13, 2025

                    CULLEN AND DYKMAN LLP


                    By:    s/ Bonnie Pollack
                            Matthew G. Roseman, Esq.
                            Bonnie L. Pollack, Esq.
                    80 State Street, Suite 900
                    Albany, New York 12207
                    (516) 357-3700

                    *Counsel for The College of Saint Rose*

**EXHIBIT A**

**PROPOSED ORDER**

22484.3 21153138v1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                   :

In re:                               :   Chapter 11
                                   :

THE COLLEGE OF SAINT ROSE,   :   Case No. 24-11131 (REL)
                                   :

          Debtor.             :
                                   :

------------------------------------------------------------------x

**ORDER (A) APPROVING AND AUTHORIZING PROCEDURES FOR THE
RETENTION AND DISPOSTION OF THE DEBTOR'S RECORDS,
(B) THE DEBTOR TO ENTER INTO AGREEMENT WITH
IRON MOUNTAIN FOR RECORD STORAGE UNDER 11 U.S.C. §§ 105
AND 363, AND (C) AUTHORIZING THE DEBTOR TO ABANDON AND
<u>DISPOSE OF UNNECESSARY RECORDS UNDER 11 U.S.C. §§ 105 AND 554</u>**

Upon the motion dated March 13, 2025 (the "Motion")[3] of The College of Saint Rose

(the "<u>Debtor</u>"), debtor and debtor-in-possession in the above-captioned chapter 11 case,

approving and authorizing procedures (the "<u>Record Retention Procedures</u>") for the retention

and disposition of the Debtor's records, (b) authorizing the Debtor to enter into an Agreement

with Iron Mountain for the storage of the Debtor's records under 11 U.S.C. §§ 105 and 363 and

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

22484.3 21153138v1

(c) authorizing the Debtor to abandon and dispose of unnecessary records under 11 U.S.C. §§ 105 and 554; and it appearing that the Court has jurisdiction to consider the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §157(b)92); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and appropriate notice of the Motion has been given under the circumstances; and it appearing that no other or further notice need be given; and after due deliberation; and sufficient cause appearing therefore, it is hereby

**ORDERED** that the Motion is granted; and it is further

**ORDERED** that the Debtor is authorized to and shall implement the following Record Retention Procedures:

- Necessary Records dating from January 1, 2023 to date shall be retained for a period of two (2) years from the date of entry of this Order (the "Record Retention Period").

- Necessary Records stored during the pendency of the Record Retention Period will automatically become Unnecessary Documents at the end of the Record Retention Period.

- At the end of the Record Retention Period, Iron Mountain shall destroy the Records being stored pursuant to the Storage Agreement;

and it is further

**ORDERED** that the Debtor is authorized to enter into the Storage Agreement with Iron Mountain under sections 105(a) and 363(b) of the Bankruptcy Code and is authorized to pay the entire cost of the Storage Agreement at the time of execution of the Storage Agreement; and it is further

13

**ORDERED** that the Debtor is authorized to immediately abandon and dispose of any Unnecessary Records, and after the expiration of the Record Retention Period, all Necessary Records shall be destroyed by Iron Mountain under the Storage Agreement pursuant to sections 105(a) and 554(a) of the Bankruptcy Code; and it is further

**ORDERED** that the Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion; and it is further

**ORDERED** that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and it is further

**ORDERED** that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

####

22484.3 21153138v1

# EXHIBIT B

# RECORDS

22484.3 21153138v1

NECESSARY RECORDS

| Department | Category |
|---|---|
| Bursar | Billing records covering "chargeback's" or services provided by the college |
| | •     Student's individual account |
| | •     External Vendor's payments to account |
| Financial Aid | Student financial aid folder including but not limited to a Financial Aid (FAF), applications for assistance, copies of income tax forms, financial aid transcripts from other schools, award and declination notices, verifications for nontaxable income, instructor requests for Work Study Student, student job description, and copies of time sheets to verify hours with student schedule |
| | Records of students receiving Federal Loans (external, such as FFEL, PLUS, Stafford, and Direct loans) – copies of loan applications, correspondence |
| | Scholarship file including but not limited to applications, recommendations, authorization of awards, financial statements, accounting data, and correspondence |
| Financial Services | General ledger showing summary receipts and disbursements from all funds and accounts |
| | Subsidiary ledger providing details of the general ledger accounts |
| | Journal recording chronological entries of all fiscal transactions |
| | •     With detailed entries that include information on payee or payor and purpose |
| | •     Citing only receipt or voucher number |
| | Accounting register, including but not limited to check register, transfer of funds register, encumbrance register, and register of claims presented for payment and paid claims |
| | Cash transaction record showing cash received from collection of various fees and petty cash disbursed |
| | Past due account fiscal records and summaries |
| | Abstract of receipts, disbursements, or claims |
| | Documents related to Tax Exempt Obligations including closing transcripts, documents relating to capital expenditure, itemization of property, copy of all contracts and arrangements, copy of all expenditures for project expenses and records of all investments, copy of expenditure reimbursements financed or refinanced by obligation proceeds, and financial statements. |
| | Banking |

| | |
|---|---|
| | • Banking communications, including but not limited to bank statement, reconciliation, notification of voiding or return of check, cancellation of payment, or other notice for checking or savings account |
| | • Canceled check, or other instrument of payment, such as bank check, warrant check, order check, or order to fiscal officer to pay when used as a negotiable instrument, including voided check.  Long term electronic storage of checks is maintained by our current banking partner.  The college no longer receives the cancelled checks. |
| Payroll | Summary report, record of payroll, or time information covering all employees or an individual employee |
| | Summary record of employee's payroll changes for terminated employees |
| | Employee's timecards (electronic) |
| | Record of employee absences or accruals.  NOTE: This item does not apply to an employee's time cards or sheets. |
| | Record of assignments, attachments, and garnishments of employee's salary |
| | • When employment was terminated prior to satisfaction |
| | • When satisfied |
| | Employee's voluntary payroll deduction request form |
| | Employee's personal earnings record used to prove end-of-year total earnings, retirement or other deductions and taxes withheld |
| | Quarterly report of wages paid prepared for Social Security, and report of any adjustments or corrections |
| | Copy of Federal determination of error in wage reports (Form OAR-S30 or equivalent record) |
| | Employee's Withholding Exemption Certificate (Form W-4), or equivalent form |
| | Employer's copy of New York State income tax records relating to employees |
| Property Records | Tax Exempt Application and approval |
| | Insurance Endorsements |
| Athletics | Athletic health information report determining student eligibility to participate in campus sports activities |
| Counseling Services | Student File: request for assistance relating to emotional, psychological, personal, social, academic, or vocational concerns. Date of sessions included in counselor's notes. |
| Discrimination, Harassment, & Sexual Assault | Insurance policies |
| Human Resources | Employee Records |
| | • Terminated employee I-9 forms |
| | • Employee Benefit records |

|  |  |
|---|---|
|  | • Workers compensation claims |
|  | Compliance reports and records |
|  | • Form 5500 |
|  | • Federal/state tax reports |
| Legal and Litigation | Legal case file, including logs, complaints, court orders, motions, notes, briefs and closing sheets |
|  | • Significant cases which have importance, or which set legal precedents |
|  | • Routine cases |
|  | Claim files with notices of intention to file a legal action |
|  | Individual complaint case file of human rights, economic opportunity, equal employment, community relations or similar agency, whether filed at federal, state or local level (includes cases referred to New York State Division of Human Rights but returned to local agency for adjudication). |
|  | Summary record for individual case and/or master summary record of all cases |

UNNECESSARY RECORDS

| Department | Category |
|---|---|
| | **Category**<br>Accreditation records for institutional or program accreditation including but not limited to correspondence, reports, questionnaires, guides and related documents between the college and such accrediting bodies as the Middle States Commission on Higher Education or other organizations responsible for accrediting specific programs. Middle States reports are maintained by the Provost's office and school program accreditation reports by the appropriate dean's office. |
| Academic Affairs | |

Academic program proposals including request for approval of changes in program title, HEGIS (Higher Education General Information System -- Federal Code) content, credit hours, curricular content, format, and/or resource commitment.

- For successful registration of program
- For failed proposal

Curriculum/program registration records including approvals and registration letters from the State Education Department.

Institutional evaluation files including institutional self-study documents sent to State Education Department or other accrediting bodies such as the Middle States Commission on Higher Education, reports and determination resulting from on-site visits for evaluation, and also including the college's response (plan or progress report) to deficiencies noted in determination letter.

Official copy of the Catalogues of UG and Grad study

Curriculum and Instruction

- Course syllabus
- Grade book or listing including class number and title, location, date and time class meets, student last date of attendance for F grade or withdrawal, and final grade
- Class schedule including class title, location, dates, and time of meeting
- Comprehensive examinations (completed)
- Comprehensive examination questions
- Course Evaluations

School and departmental meetings

Major/minor/curriculum change forms

| | |
|---|---|
| Admissions | Enrolled applicants - application materials (undergraduate and/or graduate admissions) |

- Upon matriculation, applications and copies of high school transcripts and test scores if applicable (and college transcripts for transfers) are transferred to the Registrar's Office from the Office of Admission.
- Upon matriculation, copies of graduate transcripts and relevant letters are transferred to the Registrar's Office from the Office of Graduate Admissions.

| | |
|---|---|
| Clinical Services Center | Early Intervention Program Records, including, but not limited to: |

(1) Written correspondence with or regarding the child/family and documentation of any relevant discussion with parents, other providers, or municipalities regarding the child and family;

(2) Signed and dated parental consents relevant to delivery of services to the child and/or family;

(3) Signed and dated consents related to the disclosure and/or exchange of information with other parties regarding services provided and/or the child's and family's participation in the Early Intervention Program;

(4) Copies of any written notice(s) sent to the parent by the provider, which shall contain the date of such notice;

(5) The child's and family's individualized family service plan and related documentation, including required six-month reviews, annual evaluations, amendments to the plan and periodic progress notes and other reports and documentation used at individualized family service plan meetings;

(6) Documentation of all authorizations by the municipality to provide early intervention services to the child and/or the child's family;

(7) Documentation of accidents and incidents that have been reported to the early intervention official;

(8) Written orders or recommendations from specific medical professionals when required for the services being provided to the child;

(9) Reports pertaining to the child and/or family, including evaluation reports, ongoing assessments related to the services provided, and relevant professional and medical reports produced by or transmitted to the provider with parental consent;

(10) Periodic progress notes shall be made by the provider and included in the child's record summarizing the effectiveness of the service and the progress being made toward outcomes included in the child's and family's individualized family service plan;

(11) Where applicable, originals or copies of all written correspondence to/from the provider regarding discontinuation of services to the child and reasons why early intervention services were discontinued;

(12) Documentation necessary for submission and substantiation of early intervention claims for payment by the municipality, third party payer, including the medical assistance program, and state aid reimbursement, including recipient identification (name, sex, and age of child); information on any insurance policy, plan, or contract under which the child has coverage; unit and specific type of service provided; date(s) of service; signature of parent or caregiver verifying the service was delivered; ICD diagnostic code for the condition or reasons for which care is provided; where applicable, the appropriate procedure code(s) for the service(s) provided; and, the name, address, and license, registration, certification, or where applicable, national provider identification number, of the professional delivering the service; and

(13) Any other documentation relevant to activities performed and services rendered related to the child's and family's participation in the Early Intervention Program.

Records relating to clients who received services from service providers registered, licensed, or certified under the New York State Education Law (including school psychologists, speech-language pathologists, audiologists, occupational therapists, and physical therapists)

Correspondence with New York State agencies regarding termination of the Early Intervention Services Program

**Students with Disabilities**

Student file including but not limited to information on disability, copies of accommodation memos to faculty, correspondence with student's sponsoring agency, records of accommodations which were utilized

Student complaints filed under the provisions of the Americans with Disabilities Act ("ADA"), Rehabilitation Act of 1973

Staff development materials relating to instructor orientation to disabled students and general disabilities

**International Students**

Identification of the school, to include name and full address

Identification of the student, to include name while in attendance (record any legal name change), date and place of birth, country of citizenship, and school's student identification number

Current address where the student and his or her dependents physically reside. In the event the student or his or her dependents cannot receive mail at such physical residence, the school must provide a mailing address in SEVIS. If the mailing address and the physical address are not the same, the school must maintain a record of both mailing and physical addresses and provide the physical location of residence of the student and his or her dependents to DHS upon request.

Whether the student has been certified for practical training, and the beginning and end dates of certification.

SEVIS termination date and reason.

Record of coursework

Record of transfer credit

Academic status

Statement of graduation (if applicable)

**Library System**

Interlibrary Loan Files

Requests from patrons and requests from a library to borrow or photocopy materials from other libraries, receipts for materials, photocopy logs, accounting records, and circulation records.

Catalogs of Holdings

Manual and automated catalogs and lists of books, journals, reports, serials, and other published materials.

Circulation and Use Records

Logs, charge-out cards, and related records documenting the loan of library materials to patrons or use of materials by patrons in the library.

Reference Requests Records

Call slips, requests for database searches, requests for research services, and related records created by patrons to request services such as database searches or retrieval of material from library stacks.

| | |
|---|---|
| | Collection Acquisition Records |
| | Copies of purchase requests, orders, vouchers, receipts, invoices, and related correspondence documenting the acquisition of books, serials, database services, brochures, and other publications for a library collection. |
| | Serials Subscription Records |
| | Logs, card files, databases, and other records used to check in serials and to prompt or plan subscription renewals. |
| | Library Subject and Correspondence Files |
| | Correspondence, reports, studies, surveys, copies of internal policies and procedures, articles, vendor materials, and related materials used to support library operations, arranged by subject, covering such topics as library methods, information services, library automation, relations with the New York State Library and other agency libraries, the American Library Association, and similar subjects. |
| Registrar/Student Academic Records | Grade submission sheets/data (original record), Graduation lists, Transcripts |
| | Student File, including but not limited to: <ul><li>Academic deficiency notices</li><li>Academic petitions/substitutions/waivers</li><li>Degree applications</li><li>Degree audits</li><li>Leave of absence notices</li><li>Name or personal data change documentation</li><li>Registration & enrollment records</li><li>Student correspondence</li><li>Teacher certifications</li><li>Transfer credit evaluations</li><li>VA certification records</li></ul> |
| | Academic integrity code violations (with sanctions) |
| | FERPA related Items: <ol><li>Access to student education records and participation in surveys on or activities in designated areas;</li><li>Request for hearing on content of student education records, decision of hearing, and student statement on content of disputed record;</li><li>Record of requests for access to and disclosures of personally identifiable information from the student education records, as required by FERPA regulations;</li><li>Request for nondisclosure of directory information or non-participation in surveys on or activities in designated areas;</li><li>Consent for records disclosure;</li><li>Waiver of right to inspect and review confidential letters and statements placed in student education records;</li><li>Directory Information Policy Statement;</li><li>Annual or other notice of rights under FERPA or related legislation concerning access to student records or participation in surveys or activities in designated areas.</li></ol> |
| | Grade change requests/forms |
| | Transcript requests |
| Environmental Programs | Records of employee exposure to hazardous chemicals are maintained by the Risk Management department. In addition, the Risk Management department maintains the following additional records:  master list of any chemical used by each work group, training records of employees who have received training in the hazards associated with chemicals, and all requests and replies for safety data sheets |
| | Contingency Plan/SPCC Plan/Emergency Response |
| | Hazardous Waste |
| | Waste Characterization Plan – reports received from vendor |
| | Manifest Systems Plan – reports received from vendor |

| | |
|---|---|
| | Asbestos Management Plan |
| | Inspections – DEC and OSHA |
| | Training |
| | EPCRA |
| | Backflow Prevention |
| | Lead Based Paint Management |
| Financial Aid | Applications for student employment |
| | Materials pertaining to student employment (TRFs, disciplinary letters, etc.) |
| | Statistical reports relating to enrollment, ethnicity, degrees and grades |
| Financial Services | Notice of encumbrance indicating funds encumbered and amount remaining unencumbered |
| | Past due account fiscal records and summaries |
| | Intermediary fiscal record of receipts and disbursements, including but not limited to detail record, analysis, proof sheet or trial balance worksheet, |
| | NOTE: It is recommended that a list of destroyed unused checks be created and maintained for legal or audit purposes. |
| | • Copy of check or check stub |
| | • Deposit book for checking account |
| | • Deposit book for savings account |
| | • Deposit slip |
| Payroll | Employee request for and/or authorization given to employee to use vacation, personal or other leave, or to work overtime |
| Physical Plant | Logs of service requests and computer record of requested and completed service requests |
| | Original and current blueprints of all buildings on campus |
| | Drawings, specs, inspections logs, O&M manuals, etc. |
| | Records/inspection logs for elevator, fire alarms, underground fuel storage tanks, etc. |
| | Tank Management |
| | Air Management – registration |
| | Site Remediation |
| | Pesticide Management |
| Property Records | Deeds and City related records (i.e.: Zoning, Planning) |
| Purchasing/Accounts Payable | Purchase order or purchase requisition, or similar record, used to submit purchase requirement or obtain materials, supplies, or services |
| | Purchasing file, including but not limited to bid (successful, unsuccessful),documentation supporting the evaluation of the proposals, contract and specifications for purchase of materials, supplies and services not connected with capital construction |
| | Performance guarantee or written warranty for products or similar record |
| | Invoice, statement or similar notification by vendor of supplies, materials, or equipment sent |
| Athletics | Player recruitment/scouting file concerning recruitment of student athletes for college sports programs, including but not limited to scouting reports, lists of prospects, recruitment proposals, and correspondence |
| | Special event file |
| | • Official copy of any program or promotional literature or photograph of events or games |
| | • Background materials and supporting documentation |
| | Athletic program records |
| | Parental consent record |

| | |
|---|---|
| Counseling Services | Academic termination record containing information about transfer to another college, reason for termination or future plans of student |
| | Statistical compilation or reports of students served |
| Discrimination, Harassment, & Sexual Assa | Individual complaint or problem case file involving discrimination, equal employment. or harassment (NOT including records relating to Title IX) |
| | All applications and other pertinent search materials (e.g., rating forms, interview schedules, references, etc.) are destroyed three years from the date the successful applicant is hired or from the date the search is closed if no one is hired. |
| | Records relating to complaints of alleged/reported sexual assault and related investigative records |
| Health Services | Medical Records (stored in paper format or electronically) including:<br>• Diagnostic and Treatment Records<br>• Visit Logs<br>• Patient and/or Parental Consent and Authorization Forms<br>• Disclosure of Protected Health Information |
| | Individual Immunization Records |
| | Laboratory Services Certificate |
| | Credentialing Certificates for Licensed Health Care Providers |
| Residence Life | Residency occupancy records including but not limited to room and board contracts and room assignation and room change request forms |
| | Damage records pertaining to room and furnishings or structure |
| Student Development | Judicial records - Student Conduct Code violating records including, but not limited to, grievance, investigative records, hearing proceedings, decision rendered, student appeal, final decision, and correspondence |
| | Student Association Minutes and other related materials |
| | Student Association Financial Records |
| Title IX | Records of each sexual harassment investigation (including any determination regarding responsibility and any audio or audiovisual recording or transcript, any disciplinary sanctions imposed on the respondent, and any remedies provided to the complainant designed to restore or preserve equal access to the College's education program or activity), any appeal and the result therefrom, and any informal resolution and the result therefrom |
| | All materials used to train Title IX coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process. |
| | Records of any actions, including supportive measures, taken in response to a report or formal complaint of sexual harassment. |
| Human Resources | Pre-employment records: |
| | • Resumes, applications and related employment materials, including interview records and notes, for applicants not hired |
| | • Resumes, applications and related employment materials, including interview records and notes, for employees |
| | • Background checks, drug test results, driving records, company employment verifications, letters of reference and related documents |
| | • Search material for non- faculty searches: All materials pertaining to searches for non-faculty employees are retained in the Human Resources Department. After that time, materials are reviewed and portions of the materials are retained move to  personnel renaming HR |
| | Employee Records |
| | • Compensation, job history and timekeeping records |
| | • FMLA and USERRA and related leave records |
| | • Performance appraisal and disciplinary action records |
| | • Disputed issues (records relating to issues 2 years after resolution of dispute involving external agencies or parties, wage hour investigation by DOL, EOC charge, arbitrations, court actions, etc.) OSHA and employee safety records |

|  |  |
|---|---|
|  | • Investigative records and disciplinary proceedings, including but not limited to statement of charge, transcript of hearing, notice of decision, letter of termination or resignation, letter of reinstatement, record of appeal procedure, and correspondence |
|  | Compliance reports and records |
|  | • State new hire reports |
|  | • EEO-1 |
|  | • OSHA 300/300A |
|  | Labor Unions |
|  | • Contracts |
|  | • Grievance documentation, labor management minutes and other union related documents |
| Safety and Security | Emergency call receipt and/or dispatch record |
|  | • When record contains no information on emergency medical treatment of an individual |
|  | • When record contains information on emergency medical treatment of an individual |
|  | Communications log (radio, telephone, alarm or other) recording each communication between caller and receiving unit or between dispatch unit and mobile unit or field personnel, for law enforcement agency |
|  | Recordings of serious incidents may warrant longer retention for legal reasons. These recordings should be retained until legal action is resolved. Such communications should be transferred onto a separate tape. |
|  | Security Officer's record of training course completed, including information on course content |
|  | Record of equipment (other than firearms) issued to campus safety personnel |
|  | Blotter (desk record book)containing chronological record of campus safety office activities |
|  | Case investigation record, including but not limited to complaint, investigation report, arrest report, property record, and disposition of the case. |
|  | • When offense involved was a Class A felony or arson |
|  | • When offense involved was a crime (misdemeanor or felony), except Class A felony or arson |
|  | • When offense involved was a violation |
|  | Security reports |
|  | • Daily activity, daily communications or other routine internal reports of security activity |
| Institutional Advancement | Alumni Association files containing records concerning its relations with the college, Association finances and information |
|  | Significant correspondence or records relating to decision-making or policy on IA network drive |
|  | Donor correspondence and related materials including but not limited to solicitations, proposals, acknowledgements and stewardship reports located on IA network drive |
|  | Daily Gift reports and gift acknowledgement reports located on the IA network drive. |
|  | Special gifts file documenting each non-routine gift to the college including but not limited to correspondence, endowment agreements, statements of intent, stipulations, descriptions of gifts, and accession information located in SharePoint Advancement Team |
|  | Summary data reports containing lists of individuals, organizations or corporations and gift amounts located on IA network drive |
|  | Fiscal year fundraising by constituency and campaign summary reports |
|  | Prospect Profiles on IA network drive and in Advancement Team SharePoint |
|  | Reunion and Special Events Information on IA network drive. |
| Institutional Effectiveness | Federal, State and Accreditor files stored for seven years.  Paper files stored in locked filing cabinet in Institutional Research offices.  Any digital work-product stored on College-owned drives.  Note:  other portions of the College's records retention policy may apply to documents produced by Institutional Research. |
| Legal and Litigation | Contracts (All contracts must be in writing) |

Minutes from formal Committee meetings shall be maintained by the Committee electronically or by the Committee's Secretary or Chair who shall be responsible for obtaining prior minutes when there is a change in the Secretary or Chair position.  Formal Committees include those Committees with Constitutions including, but not limited to, the Academic Grievance Committee, Academic Technology Committee, Faculty Review Committee (FRC), Graduate Academic Committee (GAC), Institutional Review Board (IRB), Library Committee, Security Advisory Committee, Strategic Planning and Priorities Committee, and Undergraduate Academic Committee (UAC).

Consent forms:

- Authorization and consent for use of name, photograph, images, recordings and comments
- Trip release and permission forms

Chartering documents concerning the college's corporate status and degree-granting authority

Board of Trustees minutes and other materials pertaining to the Board of Trustees are maintained by the secretary to the Board of Trustees.

**EXHIBIT C**

**STORAGE AGREEMENT**

16



IRON
MOUNTAIN®

## CUSTOMER AGREEMENT

### IRON MOUNTAIN INFORMATION MANAGEMENT, LLC

**Address of Iron Mountain Branch/District Office:**

| FOR IRON MOUNTAIN PURPOSES ONLY | |
|---|---|
| Account Number: | NAICS Code: |
| Branch/District Cost Ctr. No.: | |

**Contract Effective Date:** 2/11/2025

| CUSTOMER: The College of Saint Rose | | | BILLING ADDRESS (If Different): | | |
|---|---|---|---|---|---|
| **Street Address:** 432 Western AVE | | | **Street or Box No.:** | | |
| **City:** Albany | **State:** NY | **Zip + 4:** 12203 | **City:** | **State:** | **Zip + 4:** |
| **Primary Contact and Title:** Jen Richardson | | | **Billing Contact:** | | |
| **Telephone:** 518-454-2023 **E-mail:** richardj@strose.edu | **Fax:** | | **Telephone:** **E-mail:** | | **Fax:** |

Iron Mountain Information Management, LLC ("Iron Mountain" or "IM") will perform the services described on schedules annexed to this Agreement, either physically or by reference (each a "Schedule"), and Customer will pay IM for such services according to the rates and provisions in the Schedules. All services will be provided subject to this Agreement, which consists of this page, the Basic Terms and Conditions, the Schedules and the Glossary of terms that can be found at https://www.ironmountain.com/support/how-it-works.

**VALUE OF DEPOSITS.** Customer declares, for the purposes of this Agreement, that (a) with respect to hard-copy (paper) records, other materials, microfilm and microfiche stored pursuant to this Agreement, the value of such stored items is one dollar ($1.00) per carton, linear foot of open-shelf files, container or other storage unit, and (b) with respect to round reel tape, audio tape, video tape, film, data tape, cartridges or cassettes or other non-paper media stored pursuant to this Agreement, the value of such stored items is equal to the cost of replacing the physical media. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.

**LIMITATION OF LIABILITY.** IM's liability, if any, for loss or destruction of, or damage to, materials stored with IM ("Deposits") is limited to the value of each Deposit as described above, or as otherwise set forth herein. IM's maximum liability with respect to services not related to storage is the amount paid by Customer for a discrete project or, if the loss is related to service of an ongoing and continuing nature, six (6) months of fees paid by Customer for such service. Other limitations on IM's and/or Customer's liability are set forth on the following pages.

| CUSTOMER: THE COLLEGE OF SAINT ROSE | IRON MOUNTAIN |
|---|---|
| **Individual Signing:** [print name] | **Individual Signing:** [print name] |
| *Signature:* | *Signature:* |
| **Title:** | **Title:** |
| **Signing Date:** | **Signing Date:** |

*In order to keep Customer apprised of IM's service offerings, new regulations that may be of interest to customers and similar information, IM will add Customer's representative to its informational mailing list, if an email address is provided above, to receive newsletters and communications through email or postal delivery. Customer may elect to unsubscribe any time after receiving the first newsletter or communication.*

## BASIC TERMS AND CONDITIONS

**The following terms and conditions shall apply to this Agreement.**

1. **Term.** The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on the first page of this Agreement. The initial term of this Agreement shall continue for one (1) year after commencement. Upon expiration of the initial term, the term will continue with automatic renewals for additional one (1) year terms, unless written notice of non-renewal is delivered by either party to the other not less than ninety (90) days prior to the expiration date. In the event that IM continues to hold Deposits after the expiration or termination of this Agreement, the terms of this Agreement shall continue to apply until all Deposits have been removed from IM's facility, except that IM may adjust rates upon thirty (30) days' written notice.

2. **Charges.** Rates and charges shall be as specified in the Pricing Schedule (Schedule A) and/or other Schedules. Rates and charges for storage and services shall remain fixed for the first year of service by IM, and may thereafter be changed by IM upon thirty (30) days' notice. Transportation surcharges apply and change monthly without notice in accordance with IM's fuel surcharge policy, which may be found at https://www.ironmountain.com/support/how-it-works/resources/transportation/fuel-surcharge/us-fuel-surcharge. Customer requests requiring IM to alter its standard operations, billing or collections policies or procedures may be denied and if approved, subject to additional charges.

3. **Customer Instructions.** Customer warrants that it is the owner or legal custodian of the Deposits and has full authority to store and direct their disposition in accordance with this Agreement. IM will perform services pursuant to the direction of Customer's agent(s) identified pursuant to IM's standards. Authority granted to any persons on standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service, including disposal or removal of Deposits. Such orders may be given in person, by telephone or by email. Customer releases IM from all liability related to the destruction of materials pursuant to Customer's authorization.

4. **Operational Procedures.** Customer shall comply with IM's reasonable operational requirements, as modified from time to time, regarding cartons, carton integrity, delivery/pickup/account closing volumes, preparation for pickup, security, secure shredding protocols, access and similar matters. Extraordinary volume requests (defined as 125% of the average volume over the immediately preceding three month period) may involve additional costs, such as overtime, which Customer will pay at IM's overtime rates, provided Customer consents to such costs in advance.

5. **Force Majeure.** Neither party shall be liable for delay or inability to perform caused by acts of God, governmental actions, labor unrest, acts of terrorism, riots, unusual traffic delays or other causes beyond its reasonable control.

6. **Governmental Orders.** IM is authorized to comply with any subpoena or similar order related to the Deposits, at Customer's expense, provided that IM notifies Customer promptly upon receipt thereof, unless such notice is prohibited by law. IM will cooperate with Customer's efforts to quash or limit any subpoena, at Customer's expense.

7. **Confidentiality.** "Confidential Information" means any information concerning or relating to the property, business and affairs of the party disclosing such information that is furnished to the receiving party, and regarding this Agreement, its Schedules and IM's processes and procedures; except for information that was previously known to the receiving party free of any obligation to keep it confidential, is subsequently made public by the disclosing party or is disclosed by a third party having a legal right to make such disclosure. Confidential Information shall be used only in the manner contemplated by this Agreement and shall not be intentionally disclosed to third parties without the disclosing party's written consent, except as authorized in Section 6. IM shall not obtain any rights of any sort in or to the Confidential Information of Customer contained in Deposits. IM shall implement and maintain reasonable safeguards designed to protect Customer's Confidential Information.

8. **Limitation of Liability.**
   a. <u>Liability for Loss or Damage to Deposits.</u> IM shall not be liable for any loss or destruction of, or damage to, Deposits, including costs resulting from a loss of a Deposit constituting a breach of data security or confidentiality, unless such loss or damage resulted from IM's negligence. If liable, the amount of IM's liability is limited as provided on the first page hereof. Deposits are not insured by IM against loss or damage, however caused. Customer may insure Deposits through third-party insurers for any amount. Customer shall cause its insurers of Deposits to waive any right of subrogation against IM.
   b. <u>Liability for Non-Storage Services.</u> With respect to services not related to the storage of Deposits, IM shall not be liable for any loss or default, including direct damages resulting from a breach of data security or confidentiality, unless such loss or default is due to the negligence of IM.IM shall not be liable for the loss of contents of shredding bins unless and until the contents are in the custody and control of IM and only to the extent caused by IM's negligence. If liable under this subsection (b), the amount of IM's liability is limited as provided on the first page hereof.

 © 2021 Iron Mountain Incorporated

c.  <u>No Consequential Damages</u>. In no event shall either party be liable for any consequential, incidental, special or punitive damages, or for loss of profits or loss of data, regardless of whether an action is brought in tort, contract or under any other theory.

9.  **ITAR/EAR Compliance.** Customer represents that the Deposits stored by Iron Mountain pursuant to this Agreement do not contain technical information regarding defense articles or defense services within the meaning of the International Traffic in Arms Regulations (22 CFR 120) or technical data within the meaning of the Export Administration Regulations (15 CFR 730-774) (cumulatively, "controlled information"), and acknowledges that Iron Mountain will not handle such materials under its plan for compliance with export controls. Notwithstanding, if Customer notifies Iron Mountain that any of its Deposits contain controlled information, Iron Mountain will apply its Plan for compliance with export controls, and Customer acknowledges that special storage and service rates may apply.

10. **Non-Custodial Status.** Unless IM shall have explicitly agreed in writing, IM's performance of services shall not cause IM to be deemed a "custodian" of the records or "designee" of Customer under state or federal law with respect to such records.

11. **Notice of Claims.** Claims by Customer must be presented in writing within a reasonable time, in no event longer than ninety (90) days after delivery or return of the Deposits to Customer, or ninety (90) days after Customer is notified of loss, damage or destruction to part or all of the Deposits.

12. **Notice of Loss.** When Deposits have been lost, damaged or destroyed, IM shall, upon confirmation of the event, report the matter in writing to Customer.

13. **Payment Terms.** Payment terms are net, thirty (30) days from invoice date unless otherwise specified in the Pricing Schedule (Schedule A) and/or other Schedules. Customer shall be liable for late charges totaling one and a half percent (1.5%) per month of the outstanding balance unless otherwise specified in the Pricing Schedule (Schedule A) and/or other Schedules. Invoices will be sent electronically in IM's standard format via IM's standard delivery system to Customer. Customer shall provide written notice of any charges it disputes on an invoice no later than fifteen (15) days after the invoice date. Any credit issued will appear on the next invoice. Payment of the invoice in full will constitute agreement with the terms and charges of the invoice. All payments must be electronic payment. At any time during the term of this Agreement, IM may require Customer to enroll in autopay. Autopay will be required for customers who are consistently late payers or customers who meet our revenue thresholds. Any change to the IRM standard electronic payment method must be approved by Iron Mountain.    All payments shall include a remittance document identifying the IM invoices to which the payment relates. Prior to delivery of Deposits upon expiration, termination, or substantial withdrawal, IM will require full payment in advance.

14. **Customer Default.** If Customer fails to pay IM's charges (other than disputed charges) 60 days after the date of an invoice, IM may suspend service. If Customer fails to pay IM's charges (other than disputed charges) for three (3) <u>months after the due date of the invoice</u>, IM may securely destroy Deposits, provided IM shall have provided ninety (90) days' written notice to Customer and Customer shall pay IM's standard price for such destruction. Customer will be responsible and reimburse IM for any costs incurred by IM in collecting overdue amounts, including the use of third parties and reasonable attorneys' fees. IM shall have other rights and remedies as may be provided by law. In the event IM takes any actions pursuant to this Section 14, it shall have no liability to Customer or anyone claiming by or through Customer.

15. **Termination.** Either party may terminate this Agreement upon written notice to the other party in the event that the other party materially breaches the Agreement and fails to cure such default within forty-five (45) days after written notice of such default, subject to payment of the fees/charges set forth in the applicable Schedule(s). Upon the occurrence of the bankruptcy or insolvency of either party that is not discharged within sixty (60) days following any filing thereof, the other party may terminate this Agreement immediately. If Customer's financial performance materially deteriorates, IM may suspend performance and/or modify Customer's payment terms.

16. **Safe Materials and Premises.** Customer shall not store with IM or place in shredding bins any material that is highly flammable, may attract vermin or insects, is otherwise dangerous or unsafe to store or handle, or is regulated by federal or state law or regulation relating to the environment or hazardous materials. Customer shall not store (or place in shredding bins) negotiable instruments, jewelry, check stock or other items that have intrinsic value. Customer shall only place paper-based materials in the shredding bins. Customer warrants and covenants that its premises where IM employees perform services (including pickups and deliveries) are and shall be free of hazardous substances or dangerous conditions. Customer shall reimburse IM for damage to equipment or injury to personnel resulting from Customer's breach of this Section 16.

17. **Purchase Orders.** If a purchase order is required by Customer for payment, Customer shall issue an accurate and complete purchase order through IM's standard mediums prior to performance by IM of services. Customer will be responsible for keeping all necessary purchase order information up to date. If Customer rejects any IM invoice as a

result of an inaccurate, invalid, incomplete or expired purchase order, Customer shall correct such purchase order within forty-eight hours of request by IM. In this case, the original payment due date shall apply. In the event that Customer issues a purchase order to IM covering the services provided under this Agreement, any terms and conditions set forth in the purchase order which are in addition to or establish conflicting terms and conditions to those set forth in this Agreement are expressly rejected by IM.

18. **Miscellaneous.** IM may subcontract its obligations under this Agreement, in whole or in part, to an affiliate. Neither party may assign this Agreement in whole or in part, except to an affiliate, without the prior written consent of the other party. An affiliate means any entity controlling, controlled by, under common control with, or having a common parent with IM or Customer. Any notice made pursuant to this Agreement may be given in writing at the addresses set out on the first page hereof until written notice of a change of address has been received. Notices to IM shall be sent to the attention of its General Manager. IM may exercise all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where the Deposits are stored. In the event of inconsistency between these Basic Terms and Conditions and a Schedule, the Basic Terms and Conditions shall prevail as to the services covered thereby. Customer represents and covenants that upon the Effective Date of this Agreement and throughout the term of this Agreement, that: (i) it is not identified on any restricted party lists; or located in countries identified on any restricted country lists; or using the goods or services for any restricted end uses; including those promulgated by the U.S. Departments of State, Commerce and Treasury; and (ii) it is and shall remain compliant with all laws and regulations applicable to its performance under this Agreement, including but not limited to export control and economic sanctions, will not take any action that will cause Iron Mountain to be in violation of such laws and regulations, and will not require Iron Mountain to directly or indirectly take any action that might cause it to be in violation of such laws and regulations. Customer will not provide Iron Mountain any goods, software, services and/or technical data subject to export controls and controlled at a level other than EAR99/AT. This Agreement shall be governed by the laws of the state in which Customer's office identified in this Agreement is located except for conflicts of laws principles.

19. **Entire Agreement.** The terms contained in this Agreement, together with any schedules and/or statements of work, constitute the entire understanding of the parties with respect to the transactions and matters contemplated hereby and supersede all previous communications, representations, agreements and understandings relating to the services provided by IM to Customer with respect to the subject matter hereof.

# Schedule A:
## PROGRAM PRICING SCHEDULE

## Records Management

This Records Management Pricing Schedule is incorporated into and made part of the Customer Agreement ("Agreement") between Iron Mountain Information Management LLC, (the "Company" or "Iron Mountain") and The College of Saint Rose, (the "Customer").

List Price is the standard Iron Mountain price for a given service.

Please see our Customer Information Center at cic.ironmountain.com for a Glossary with definitions of the terms used in this Pricing Schedule and more detail regarding our services, standard processes, and billing practices. In addition, restrictions apply to volume and/or stated timeframes for some service transaction types and these may be found in the Glossary under each service type.

This Records Management Pricing Schedule supersedes and terminates any prior Records Management Pricing Schedule and/or Schedule A existing between Iron Mountain and the Customer for the accounts noted below. All other Records Management services not specifically listed on this Schedule A will be charged at Iron Mountain's then current rates.


District Name/Number:    |   Customer No.
Effective Date:  2/11/2025

## List Prices (as of 2/11/2025)

**STANDARD STORAGE AND SERVICES** (see http://cic.ironmountain.com/records/glossary for service definitions)

| DESCRIPTION | CURRENT LIST PRICE | PER |
|---|---|---|
| Carton Storage | $0.55 | Cubic Foot |
| Receiving and Entering - Carton | $3.33 | Cubic Foot |
| Regular Retrieval - Carton | $4.17 | Cubic Foot |
| Regular Retrieval - File from Carton | $5.60 | File |
| Regular Refile - Carton | $4.17 | Cubic Foot |
| Regular Refile - File to Carton | $5.60 | File |
| Archival Destruction - Carton | $6.58 | CF plus Regular Retrieval Charge |
| Permanent Withdrawal - Carton | $8.95 | CF plus Regular Retrieval Charge |
| Permanent Withdrawal - File from Carton | $2.35 | File plus Regular Retrieval Charge |
| Next Day Delivery | $39.13 | Visit plus Handling Charge |
| Regular Pickup | $39.13 | Visit plus Handling Charge |
| Handling Charge | $3.82 | Cubic Foot |

**PREMIUM STORAGE AND SERVICES** (see http://cic.ironmountain.com/records/glossary for service definitions)

| DESCRIPTION | CURRENT LIST PRICE | PER |
|---|---|---|
| Rush Retrieval - Carton | $8.85 | Cubic Foot |
| Rush Retrieval - File from Carton | $11.80 | File |
| Regular Interfile - Carton | $10.75 | Each |
| Half Day Delivery | $88.30 | Visit plus Handling Charge |
| Rush Delivery - Business Day | $175.00 | Visit plus Handling Charge |
| Rush Delivery - Weekends/Holidays/After Hours | $325.00 | Visit plus Handling Charge |
| Rush Pickup - Business Day | $175.00 | Visit plus Handling Charge |
| Archival Destruction - File from Carton | $6.75 | File plus Regular Retrieval Charge |
| Miscellaneous Services - Labor | $79.50 | Hour |
| Re-Boxing Charge | $8.00 | Labor plus New Carton Cost |

**OTHER PROGRAM FEES** (see http://cic.ironmountain.com/records/glossary for service definitions)

| DESCRIPTION | CURRENT LIST PRICE | PER |
|---|---|---|
| Administrative Fee (Summary Billing) | $64.95 | Account ID per Month |
| Administrative Fee (Detailed Billing) | $109.95 | Account ID per Month |
| Fuel Surcharge | * | Transportation Visit |

*A Fuel Surcharge is applied monthly based upon changes in the price of diesel fuel as published by the US Department of Energy. This charge is calculated monthly and included as a percentage of transportation related service charges. The current monthly Fuel Surcharge information can be found at http://cic.ironmountain.com/FuelSurcharge.

## Custom Pricing

| DESCRIPTION | CURRENT LIST PRICE | PER |
|---|---|---|
| **CUSTOM STORAGE AND SERVICES** (see http://cic.ironmountain.com/records/glossary for service definitions) | | |
| Initial Move - Carton | $FREE | Cubic Foot |
| Initial Move - Individual Listing | $0.94 | File |
| Initial Move - Labor | $79.50 | Hour |
| Individual Listing | $0.94 | File |
| Storage Minimum | $250.00 | Month |
| Minimum Service Order Charge | $20.10 | Order |
| Image on Demand - Imaging Minimum (includes first 50 images) | $29.00 | Order |
| Image on Demand - Digital Images Scanned (in excess of the first 50 images) | $0.33 | Image |
| Image on Demand - Hourly Labor | $79.50 | Hour |
| Image on Demand - Professional Services | $355.50 | Hour |
| RFID Z Label | $0.60 | File |
| RFID T Label | $0.60 | File |

**Note: Storage Minimum will not apply during the first 30 days following the effective date of your Agreement. Following this grace period, one of the accounts under this schedule designated by Customer will be assessed a Storage Minimum if the aggregate storage charges for the account(s) under this Schedule is less than the amount specified, even if no records have been moved into an Iron Mountain storage facility.

Image on Demand is not available in all markets. If the customer's requirements differ from those described in "Image on Demand - Overview" within the glossary of the Customer Information Center (http://cic.ironmountain.com/records/glossary), then custom services are available and must be described in an agreed upon statement of work.

Additional Services beyond those listed in this Pricing Schedule are available. For service descriptions, please go to Additional Services at cic.ironmountain.com/additionalservices.

## Initial Move

Initial Move prices apply for the services listed for Items received during the startup process (Initial Move) of a new customer program and applies to all initial volume received by Iron Mountain within three (3) months of the date of the date of the Agreement.



## COST ESTIMATE

## Records Management

**(Actual monthly cost may vary based on quantities or billing protocols.)**

Cost Estimate for **The College of Saint Rose**

| | |
|---|---|
| **Total Initial Move Pickup Costs** | **$0.00** |
| **Total Monthly Cost Estimate for Records Storage for 550 boxes** | **$363.00** |
| **Total Cost Estimate for Shredding 550 Boxes** | **$7,095.00** |
| **Total Cost Estimate for Electronic Records Storage** | **$4,620.00** |



## Access Authorization Form
## Records Management

New

Update

| | |
|---|---|
| **Customer Number/ID** | |
| **Customer Name** | The College of Saint Rose |
| **Division ID** | All Divisions |
| **Department ID** | All Departments |

***Strict Authorization will apply*** = *Only the names listed will have access to the account information*

**Authorized Users** ***Minimum of two authorized users required***
*If the account is Department Restricted, a minimum of two authorized users is required for each Department ID*

**Access #1:**

| | |
|---|---|
| Authorized Contact Name: | |
| Phone Number: | |
| Email Address: | |
| *Password (optional): | |
| Department (if department specific/restricted): | |
| Authorized Destruction: | |
| | |

**Access #2:**

| | |
|---|---|
| Authorized Contact Name: | |
| Phone Number: | |
| Email Address: | |
| *Password (optional): | |
| Department (if department specific/restricted): | |
| Authorized Destruction: | |

*Password security is optional. Passwords can be any alphanumeric combination up to 10 characters.

Authorized by:

Phone Number/Ext:



## IRON MOUNTAIN®

## CUSTODIAL RECORDS SOLUTION CUSTOMER AGREEMENT

### IRON MOUNTAIN INFORMATION MANAGEMENT, LLC

**Address of Iron Mountain Branch/District Office:**

| FOR IRON MOUNTAIN PURPOSES ONLY | |
|---|---|
| Account Number: | NAICS Code: |
| Branch/District Cost Ctr. No.: | |

**Contract Effective Date:**    02-21-2025

| CUSTOMER: The College of Saint Rose | | | BILLING ADDRESS (If Different): | | |
|---|---|---|---|---|---|
| Street Address: 432 Western Avenue | | | Street or Box No.: | | |
| City: Albany | State: NY | Zip + 4: 12203 | City: | State: | Zip + 4: |
| Primary Contact and Title: Jen Richardson | | | Billing Contact: | | |
| Telephone: 518.454.5187 E-mail:jennrichardj@mail.strose.edu | Fax: | | Telephone: E-mail: | | Fax: |

Iron Mountain Information Management, LLC ("Iron Mountain" or "IM") will perform the services described on schedules annexed to this Agreement, either physically or by reference (each a "Schedule"), and Customer will pay IM for such services according to the rates and provisions in the Schedules. All services will be provided subject to this Agreement, which consists of this page, the Basic Terms and Conditions, the Schedules and the Glossary of terms that can be found at http://cic.ironmountain.com.

**VALUE OF DEPOSITS.** Customer declares, for the purposes of this Agreement, that (a) with respect to hard-copy (paper) records, x-rays, microfilm, microfiche, and pathology assets (glass slides and paraffin blocks) stored pursuant to this Agreement, the value of such stored items is $1.00 per carton, linear foot of open-shelf files, container or other storage unit, and (b) with respect to round reel tape, audio tape, video tape, film, data tape, cartridges or cassettes or other non-paper media stored pursuant to this Agreement, the value of such stored items is equal to the cost of replacing the physical media. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.

**LIMITATION OF LIABILITY.** Iron Mountain's liability, if any, for loss or destruction of, or damage to, materials stored with Iron Mountain ("Deposits" or "Items") is limited to the value of each Deposit as described above, or as otherwise set forth herein. Iron Mountain's maximum liability with respect to services not related to storage is the amount paid by Customer for a discrete project or, if the loss is related to service of an ongoing and continuing nature, six months of fees paid by Customer for such service. Other limitations on Iron Mountain's and/or Customer's liability are set forth on the following pages. Customer is solely responsible for encrypting its Data. Iron Mountain assumes no liability whatsoever for Data that is (i) unencrypted; or (ii) modified or deleted by Customer.

| CUSTOMER: THE COLLEGE OF SAINT ROSE | IRON MOUNTAIN |
|---|---|
| Individual Signing: [print name] | Individual Signing: [print name] |
| Signature: | Signature: |
| Title: | Title: |
| Signing Date: | Signing Date: |

## BASIC TERMS AND CONDITIONS

**The following terms and conditions shall apply to this Agreement.**

1. **Term.** The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on the first page of this Agreement and shall continue for a period specified in the applicable Schedule.

2. **Charges.** Rates and charges shall be as specified in the Schedule, attached hereto.

3. **Customer Instructions.** Customer warrants that it is the owner or legal custodian of the Deposits and has full authority to store the Deposits and direct their disposition in accordance with this Agreement. Customer shall reimburse IM for any expenses reasonably incurred by IM by reason of (i) IM's compliance with the instructions of Customer in the event of a dispute concerning the ownership, access, disclosure, or disposition of Records by IM and (ii) any misrepresentation by Customer.

4. **Performance of Services.** IM will perform services pursuant to the direction of Customer's agent(s) identified pursuant to IM's standards. Authority granted to any persons on standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service, including disposal or removal of Deposits. Customer releases IM from all liability by reason of IM's use, disclosure, or destruction of materials pursuant to Customer's authorization.

5. **Operational Procedures.** Customer shall comply with IM's reasonable operational requirements, as modified from time to time, regarding cartons, carton integrity, delivery/pickup/account closing volumes, preparation for pickup, security, secure shredding protocols, access and similar matters.

6. **Force Majeure.** Neither party shall be liable for delay or inability to perform caused by acts of God, governmental actions, labor unrest, acts of terrorism, riots, unusual traffic delays or other causes beyond its reasonable control.

7. **Governmental Orders.** IM is authorized to comply with any subpoena or similar order related to the Deposits. IM will cooperate with Customer's efforts to quash or limit any subpoena, at Customer's expense.

8. **Confidentiality.** "Confidential Information" means any information (i) contained in the Deposits, (ii) concerning or relating to the property, business and affairs of the party disclosing such information that is furnished to the receiving party, and (iii) regarding this Agreement, its Schedules and IM's processes and procedures; except for information that was previously known to the receiving party free of any obligation to keep it confidential, is subsequently made public by the disclosing party or is disclosed by a third party having a legal right to make such disclosure. Confidential Information shall be used only in the manner contemplated by this Agreement and shall not be intentionally disclosed to third parties without the disclosing party's written consent. IM shall implement and maintain reasonable safeguards designed to protect Customer's Confidential Information.

9. **Limitation of Liability.**

   a. <u>Liability for Loss or Damage to Deposits</u>. IM shall not be liable for any loss or destruction of, or damage to, Deposits, including costs resulting from a loss of a Deposit constituting a breach of data security or confidentiality, unless such loss or damage resulted from IM's negligence. If liable, the amount of IM's liability is limited as provided on the first page hereof. Deposits are not insured by IM against loss or damage, however caused. Customer may insure Deposits through third-party insurers for any amount. Customer shall cause its insurers of Deposits to waive any right of subrogation against IM. If Deposits are placed in the custody of a third-party carrier for transportation, the carrier shall be solely responsible for any loss or destruction of, or damage to, such Deposits while in the custody of the carrier.

   b. <u>Liability for Non-Storage Services</u>. With respect to services not related to the storage of Deposits, IM shall not be liable for any loss or default unless such loss or default is due to the negligence of IM. If liable, the amount of IM's liability is limited as provided on the first page hereof. IM shall not be liable for the loss of contents of shredding bins unless and until the contents are in the custody and control of IM.

   c. <u>No Consequential Damages</u>. In no event shall either party be liable for any consequential, incidental, special or punitive damages, or for loss of profits or loss of Data, regardless of whether an action is brought in tort, contract or under any other theory.

10. **ITAR/EAR Compliance.** Customer represents that none of the Deposits stored by Iron Mountain pursuant to this Agreement require protection from access by foreign persons because they contain technical information regarding defense articles or defense services within the meaning of the International Traffic in Arms Regulations (22 CFR 120) or technical data within the meaning of the Export Administration Regulations (15 CFR 730-774). If any of Customer's Deposits do contain any such information, Customer shall notify Iron Mountain of the specific Deposits that contain such information and acknowledges that special storage and service rates shall apply thereto.

11. **Non-Custodial Status.** Unless Iron Mountain shall have explicitly agreed in writing, Iron Mountain's performance of services shall not cause Iron Mountain to be deemed a "custodian" of the records or "designee" of Customer under state or federal law with respect to such records.

12. **Notice of Loss.** When Deposits have been lost, damaged or destroyed, Iron Mountain shall, upon confirmation of the event, use reasonable efforts to report the matter in writing to Customer.

13. **Payment Terms.** All fees for Services billed to Customer shall be as specified in the Schedule, attached hereto. Payment terms are net, forty-five (45) days from receipt of invoice. Customer acknowledges that the pricing terms are predicated on information provided to Iron Mountain by Customer, including, without limitation the Estimated Volume of Requests, availability of Records, integrity of Records, and where applicable, accessibility to office equipment. If any information provided by Customer is incorrect, Customer may be subject to an Overage Charge and/or an additional Program Fee, as further described in the Schedule. If Customer is unable to supply Records as specified in the Schedule within thirty (30) days of the date Customer has notified their clients or end users to contact Iron Mountain for Records, Iron Mountain reserves the right to invoice Customer the full amount set forth in the Schedule. Iron Mountain and Customer agree to renegotiate in good faith the pricing, services, and other conditions of this Amendment if material conditions arise that are adverse to either Party.

14. **Customer Default.** If Customer fails to pay IM's charges (other than disputed charges) within sixty (60) days after the date of the invoice, IM may suspend service. If Customer fails to pay IM's charges (other than disputed charges) for six (6) months or longer, IM may securely destroy Deposits, and Customer shall pay IM's standard price for such secure destruction. IM shall have other rights and remedies as may be provided by law. In the event IM takes any actions pursuant to this Section, it shall have no liability to Customer or anyone claiming by or through Customer.

15. **Safe Materials and Premises.** Customer shall not store with IM any material that is highly flammable, may attract vermin or insects, or is otherwise dangerous or unsafe to store or handle, or any material that is regulated by federal or state law or regulation relating to the environment or hazardous materials. Customer shall not store negotiable instruments, jewelry, check stock or other items that have intrinsic value. Customer shall reimburse IM for damage to equipment or injury to personnel resulting from Customer's breach of this warranty.

16. **Miscellaneous.** IM may subcontract its obligations under this Agreement, in whole or in part, to an affiliate or third-party vendor. Neither party may assign this Agreement in whole or in part, except to an affiliate or third-party vendor, without the prior written consent of the other party. An affiliate means any entity controlling, controlled by, under common control with, or having a common parent with IM or Customer. In the event IM subcontracts its obligations under this Agreement, IM shall remain liable for the acts and omissions of such subcontractor. Any notice made pursuant to this Agreement may be given in writing at the addresses set out on the first page hereof until written notice of a change of address has been received. Notices to IM shall be sent to the attention of its General Manager. IM may exercise all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where the Deposits are stored. In the event of inconsistency between these Basic Terms and Conditions and a Schedule, the Basic Terms and Conditions shall prevail as to the services covered thereby. Customer represents and covenants that upon the Effective Date of this Agreement and throughout the term of this Agreement, that: (i) it is not identified on any restricted party lists; or located in countries identified on any restricted country lists; or using the goods or services for any restricted end uses; including those promulgated by the U.S. Departments of State, Commerce and Treasury; and (ii) it is and shall remain compliant with all laws and regulations applicable to its performance under this Agreement, including but not limited to export control and economic sanctions, will not take any action that will cause Iron Mountain to be in violation of such laws and regulations, and will not require Iron Mountain to directly or indirectly take any action that might cause it to be in violation of such laws and regulations. Customer will not provide Iron Mountain any goods, software, services and/or technical data subject to export controls and controlled at a level other than EAR99/AT. This Agreement shall be governed by the laws of the state in which Customer's office identified in this Agreement is located except for conflicts of laws principles.

17. **Entire Agreement.** The terms contained in this Agreement, together with any schedules and/or statements of work, constitute the entire understanding of the parties with respect to the transactions and matters contemplated hereby and

supersede all previous communications, representations, agreements and understandings relating to the services provided by IM to Customer with respect to the subject matter hereof.

18. **No Third Party Beneficiaries.** Nothing express or implied in this Agreement is intended to confer, nor shall anything herein confer, upon any person other than Customer and Iron Mountain and their respective successors assigns, any rights, remedies, obligations or liabilities whatsoever.

**Pricing Schedule**
**Iron Mountain® Custodial Records Solution**

This Pricing Schedule ("Schedule") for Custodial Records Solution is entered into by and between Iron Mountain Information Management, LLC, or its applicable Affiliate ("Iron Mountain") and **The College of Saint Rose** ("Customer"). This Schedule is incorporated into and made part of the Customer Agreement between Customer and Iron Mountain, along with the applicable schedules, exhibits and attachments (collectively, the "Agreement"). This Schedule supersedes and terminates any prior schedule between Customer and Iron Mountain for the same type of Services described below. Capitalized terms used but not defined herein shall have the meaning set forth in the Agreement.

This Schedule is effective as of the date of Customer's signature below (the "Effective Date"). The term of this Schedule will commence on the Effective Date and continue for **two (2) years ("Term").**

Pricing contained within this Schedule is only valid for acceptance by Customer for a period of ninety (90) calendar days from **February 21, 2025.**

The Parties agree as follows:

**1. Provision of Service.**

Commencing on the Effective Date of this Schedule, in consideration of Customer's payment of the applicable fees set forth herein, Iron Mountain shall provide to Customer that level and type of Service purchased by Customer, as set forth in Schedule A. Any variance in the volumes or scope reflected on Schedule A may result in the need for a revised Schedule reflecting the new volumes or scope and additional charges may apply.

**2. Services Description.**

As set forth in Schedule A.

**3. Pricing.**

3.1    Notwithstanding anything to the contrary set forth in the Agreement, in consideration of the Services provided to Customer by Iron Mountain under this Schedule, Customer agrees to pay a one-time, pre-paid fee in the amount of **$4,620**

(Plus applicable taxes, subject to final volume adjustments, if applicable, to be invoiced based on actual volume received), immediately payable upon receipt of Customer material. All fees shall be invoiced and paid by Customer in United States currency.

3.2    If Iron Mountain requires travel in order to implement the Services, Customer shall reimburse Iron Mountain for all reasonable, actual out-of-pocket travel expenses, upon mutual agreement of the Parties.

**4. Miscellaneous.**

Notwithstanding anything to the contrary set forth in the Agreement, Iron Mountain shall have no liability for any claims, damages, costs, or expenses arising from:

- Iron Mountain's compliance with the instructions of Customer regarding the use or disclosure of Deposits and/or Data;
- Customer's failure to provide accurate, complete, and/or legible Deposits and/or Data to Iron Mountain; and
- Customer's breach of any federal, state, or local law, statute, rule, regulation, or order applicable to the use, disclosure, access, maintenance, or security of personal data.

**~ Signature Page to Follow on Next Page ~**

Each person signing below represents and warrants that (i) he or she is duly authorized and has legal capacity to execute and deliver this Schedule, (ii) the execution and delivery of this Schedule and the performance of such Party's obligations hereunder have been duly authorized, (iii) this Schedule is a valid and legal agreement binding on such Party and enforceable in accordance with its terms and conditions, and (iv) this Schedule may be delivered by either or both Parties by delivery of scanned copies of signed signature pages, and will thereupon be legally effective and binding for all purposes.

**Customer:**           **The College of Saint Rose** _____

Individual Signing:     _____
                        (*print name*)

Title:                  _____


*Signature*:            _____

Date:                   _____


Authorized Requestor(s): _____

*(optional, in addition to Customer above)*


**Iron Mountain**

Individual Signing:     _____
                        (*print name*)

Title:                  _____


*Signature*:            _____

Date:                   _____


*Invoicing information*:

Invoicing Contact:      _____
Mailing Address:        _____
                        _____
                        _____
Phone Number:           _____

**Schedule A**
**Iron Mountain® Custodial Records Solution**
**Service Description**

*Services Description Overview:*

1. Total volume not to exceed **4TB (four terabytes) of Data.**

2. Customer will supply removable media (USB 3.0 compatible) containing client records stored in Adobe PDF format, with each file name (or folder name, if multiple files per client within) to include the client's full name and date of birth.

3. Iron Mountain will provide Release of Information Services for the duration of the Term, once all inventory has been uploaded and indexed where appropriate, including all requests to billable requestors as well as those that may not be billed, subject to and in accordance with all federal and state laws, rules and regulations. Customer must designate any additional Authorized Requestor(s) on the signature page of this Schedule.

4. Iron Mountain will store all Records for the Term, based on retention schedule established by Customer.

5. At the end of the Term, the Deposits and/or Data will be pulled from storage and securely **destroyed**. For the avoidance of doubt, the full execution of this Schedule shall constitute full and complete authorization of destruction upon completion of the Initial Term. No further authorization shall be required.