CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
(516) 357-3700

*Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                                 :
In re:                                                           :   Chapter 11
                                                                 :
THE COLLEGE OF SAINT ROSE,                                       :   Case No. 24-11131 (REL)
                                                                 :
                    Debtor.                                      :
                                                                 :
-----------------------------------------------------------------x

## CHAPTER 11 PLAN

## OF THE COLLEGE OF SAINT ROSE

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME AND GOVERNING LAW ........................................1**
   A.  Defined Terms ................................................................ 1
   B.  Rules of Interpretation ................................................ 9
   C.  Computation of Time ................................................ 10
   D.  Governing Law ......................................................... 10
   E.  Reference to Monetary Figures ................................ 10
   F.  Controlling Document ............................................. 10

**ARTICLE II. SUPERPRIORITY CLAIMS, ADMINISTRATIVE CLAIMS,
U.S. TRUSTEE FEES, PROFESSIONAL FEE CLAIMS AND PRIORITY
TAX CLAIMS ......................................................................................................11**
   A.  Superpriority Claims ................................................ 11
      1.  Payment of Superpriority Claims ................... 11
   B.  Administrative Claims ............................................. 11
      1.  Payment of Administrative Claims ................. 11
      2.  Requests for Payment of Superpriority Claims and Administrative Claims ........... 12
   C.  U.S. Trustee Fees .................................................... 12
   D.  Professional Fee Claims .......................................... 12
      1.  Final Fee Applications and Payment of Professional Fee Claims ........................... 12
      2.  Post-Effective Date Fees and Expenses .......... 13
   E.  Priority Tax Claims ................................................. 13

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS ...............13**
   A.  Summary of Classification ...................................... 13
      1.  Class Identification for the Debtor ................. 13
   B.  Treatment of Claims ............................................... 14
   C.  Special Provision Governing Unimpaired Claims ... 16
   D.  Elimination of Vacant Classes ................................ 17
   E.  Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ........................... 17

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ...................17**
   A.  Overview ................................................................. 17
   B.  Plan Administrator .................................................. 18
   C.  Prosecution of the Causes of Action ....................... 18
   D.  Release of Liens ...................................................... 18
   E.  Corporate Action .................................................... 19
   F.  Exemption from Certain Taxes and Fees ................. 19
   G.  Revocation of Charter/Dissolution of Entity/Disbanding of Board of Trustees ........... 19
   H.  Preservation of Rights of Action ............................. 19
   I.  Endowment and Restricted Funds ........................... 20
   J.  Pension Plan ........................................................... 20

i

K.  Workers' Compensation Recoveries................................................................. 20
L.  UE Deposits ................................................................................................. 21
M.  Cancellation of Bonds .................................................................................. 21

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ..............................................................................................21**
A.  Rejection of Executory Contracts and Unexpired Leases............................. 21
B.  Claims Based on Rejection of Executory Contracts and Unexpired Leases ................ 21
C.  Pre-existing Obligations to the Debtor or Estate Under Executory Contracts and
Unexpired Leases ............................................................................................... 22
D.  Modifications, Amendments, Supplements, Restatements, or Other Agreements ........ 22
E.  Reservation of Rights....................................................................................... 22

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...........................23**
A.  Timing and Calculation of Amounts to Be Distributed ................................. 23
B.  Rights and Powers of Debtor or the Plan Administrator as Disbursing Agent............ 23
    1.  Powers of the Debtor or the Plan Administrator as Disbursing Agent ................ 23
    2.  Post-Effective Date Expenses ................................................................... 23
C.  Distributions on Account of Claims Allowed After the Effective Date ........................ 23
    1.  Payments and Distributions on Disputed Claims......................................... 23
    2.  Special Rules for Distributions to Holders of Disputed Claims ............................... 24
    3.  Disputed Claims Reserve ............................................................................. 24
D.  Delivery of Distributions and Undeliverable or Unclaimed Distributions .................. 24
    1.  Delivery of Distributions in General ........................................................... 24
    2.  Undeliverable Distributions and Unclaimed Property ............................... 24
    3.  Manner of Payment Pursuant to the Plan.................................................... 25
E.  Compliance with Tax Requirements/Allocations ........................................... 25
F.  Claims Paid or Payable by Third Parties ........................................................ 25
G.  Distributions Relating to Bonds...................................................................... 25

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS ......................................................26**
A.  Resolution of Claims Against the Debtor ....................................................... 26
    1.  Allowance of Claims Against the Debtor .................................................... 26
    2.  Prosecution of Objections to Claims Against the Debtor ......................... 26
    3.  Time to File Objections to Claims Against the Debtor................................ 26
    4.  Estimation of Claims Against the Debtor .................................................... 26
    5.  Expungement or Adjustment to Claims Against the Debtor Without Objection...... 27
B.  Disallowance of Claims ................................................................................... 27
C.  Amendments to Claims.................................................................................... 28

**ARTICLE VIII. SETTLEMENT, EXCULPATIONS, INJUNCTIONS, AND
RELATED PROVISIONS ........................................................................................28**
A.  Compromise and Settlement of Claims and Controversies ........................... 28
B.  Discharge ......................................................................................................... 28
C.  Exculpations..................................................................................................... 28
D.  Indemnification ................................................................................................ 29

ii

E.  Injunction .......................................................................................................... 29
F.  Setoffs and Recoupments.................................................................................... 30
G.  Provisions as to Governmental Units.................................................................. 30

**ARTICLE IX. CONDITIONS PRECEDENT** ........................................................................**31**
A.  Condition Precedent to Confirmation of the Plan................................................ 31
B.  Conditions Precedent to the Effective Date of the Plan....................................... 32

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF
THE PLAN** ...................................................................................................................**32**
A.  Modification and Amendments............................................................................. 32
B.  Effect of Confirmation on Modifications ............................................................ 32
C.  Revocation or Withdrawal of the Plan................................................................. 33

**ARTICLE XI. RETENTION OF JURISDICTION** ..................................................................**33**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ...............................................................**35**
A.  Immediate Binding Effect.................................................................................... 35
B.  Additional Documents ......................................................................................... 35
C.  Post-Confirmation Reports ................................................................................. 35
D.  Reservation of Rights........................................................................................... 36
E.  Successors and Assigns........................................................................................ 36
F.  Service of Documents .......................................................................................... 36
with copies to: ........................................................................................................... 36
G.  Term of Injunctions or Stays................................................................................ 36
H.  Entire Agreement ................................................................................................ 37
I.  Nonseverability of Plan Provisions...................................................................... 37

21398949v1

## INTRODUCTION

The College of Saint Rose (the "Debtor") proposes the following Chapter 11 Plan, which provides for the resolution of all Claims against the Debtor in the Chapter 11 Case.

## ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A.    Defined Terms

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtor's Estate pursuant to Sections 503(b) or 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estate incurred after the Petition Date and through the Effective Date excluding Professional Fee Claims.

2.    "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days following the Confirmation Date of the Plan.

3.    "*Allowed*" means with reference to any Claim, (a) any Claim against the Debtor that has been listed on its Schedules (as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not Disputed or contingent and for which (1) no contrary Proof of Claim has been Filed, (2) no objection to allowance, request for estimation, or other challenge has been interposed, or (3) no motion to deem the Schedules amended has been Filed, (b)(1) any Proof of Claim that is timely Filed by the applicable Claims Bar Date, as to which no litigation (whether stayed or unstayed) is pending and to which no objection or other challenge has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, if any, and (2) any Claim that is not subject to any applicable Claims Bar Date, as to which no objection or other challenge has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if any, (c) any Claim expressly allowed by a Final Order or under the Plan, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to a Final Order or under the Plan, but only to the extent provided therein, (e) any Claim that is not otherwise subject to disallowance under Section 502 of the Bankruptcy Code or that has not been Disallowed, (f) any Claim arising from the recovery of property in accordance with Sections 550 and 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code (unless such Claim is otherwise Disputed), or (g) any Claim allowed by stipulation approved by the Bankruptcy Court. Except as otherwise provided in the Plan, for purposes of determining the amount of an "Allowed Claim," there shall be deducted therefrom an amount equal to the amount of any Cause of Action that the Debtor may hold against the Holder thereof, to the extent such Cause of Action may be offset pursuant to applicable non-bankruptcy law or subject to recoupment. Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by a Final Order of the Bankruptcy Court. For any purpose under the Plan, unless specifically

provided for herein, a Claim that has been Allowed shall not include amounts constituting interest, penalties, or late charges arising from or relating to the period from and after the Petition Date.  Any Claim that has been or is hereafter listed in the Schedules as Disputed, contingent, or unliquidated for which no Proof of Claim has been timely Filed and which is not included in subparts (a)-(g) herein, is not considered an Allowed Claim and shall be expunged and Disallowed without further action by the Debtor and without any further notice to or action, order, or approval of the Bankruptcy Court.

4.       "*Assets*" means any and all property owned by the Debtor, any Causes of Action held by the Debtor, any monies to which the Debtor is or may be entitled, and the Remaining Cash.

5.       "*Ballot*" means the ballot distributed to each eligible Holder of a Claim in the Voting Classes by the Balloting Agent, on which ballot such Holder of a Claim may, *inter alia*, vote for or against the Plan.

6.       "*Ballot Deadline*" means the date and time set forth by the Bankruptcy Court by which the Balloting Agent must receive all Ballots.

7.       "*Balloting Agent*" means Cullen and Dykman LLP, counsel to the Debtor.

8.       "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as applicable to the Chapter 11 Case, as may be amended from time to time.

9.       "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of New York, having jurisdiction over the Chapter 11 Case, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to Section 151 of title 28 of the United States Code, the United States District Court for Northern District of New York.

10.       "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under Section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, as may be amended from time to time.

11.       "*Becker*" means Carl Becker, purchaser of the President's House.

12.       "*Bond Documents*" means the documents executed and delivered in connection with the issuance of the Bonds.

13.       "*Bond Trustee*" means Manufactures and Traders Trust Company, as indenture trustee for the Bondholders.

14.       "*Bondholder Collateral*" means the Assets owned by the Debtor against which the Bondholders were granted liens and encumbrances pursuant to the Bond Documents including without limitation the real estate against which the Bondholders are secured and the personal property located thereon, the Unused Insurance Premiums, the Workers' Compensation

2

21398949v1

Recoveries and the UE Deposit. Bondholder Collateral does not include the Remaining Loan Proceeds.

15.    "*Bondholder Deficiency Claims*" means the amount of the Bondholder Secured Claims remaining after payment to the Bondholders of the proceeds due the Bondholders from the liquidation of the Bondholder Collateral.

16.    "*Bondholder Secured Claim*" means the Secured Claim of the Bondholders in the amount of $48,540,719 as of the Petition Date, secured by the Bondholder Collateral.

17.    "*Bondholders*" means the holders of the Bonds.

18.    "*Bonds*" means the City of Albany Capital Resource Corporation Tax Exempt Revenue Refunding Bonds (The College of Saint Rose Project), Series 2021.

19.    "*Budget*" means the initial budget and all subsequent budgets approved as part of the DIP Order.

20.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

21.    "*Campus*" means the Debtor's real property from which it operated The College of Saint Rose in Albany, New York, excluding the President's House.

22.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

23.    "*Causes of Action*" means any Claim, cause of action (including avoidance actions), controversy, right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, debt, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, Secured or unsecured, assertible directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort (including fraud), in law or in equity, or pursuant to any other theory of law, including violations of state or federal securities laws.

24.    "*Chapter 11 Case*" means the chapter 11 case commenced by the Debtor, which is currently pending before the Bankruptcy Court.

25.    "*Claim*" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

26.    "*Claims Bar Date*" means January 8, 2025, the deadline by which a Proof of Claim must be or must have been Filed, as established by order of the Bankruptcy Court entered on October 11, 2024 (or April 8, 2025 for Governmental Units).

21398949v1

27.    *"Claims Objection Bar Date"* means the date that is thirty (30) days after the Effective Date of the Plan or such later date as may be fixed by order of the Bankruptcy Court.

28.    *"Claims Register"* means the official register of Claims.

29.    "*Class*" means a category of Holders of Claims as set forth in Article III of the Plan in accordance with Section 1122(a) of the Bankruptcy Code.

30.    "*Confirmation*" means the entry on the docket of the Confirmation Order.

31.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order (within the meaning of Bankruptcy Rules 5003 and 9021).

32.    *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

33.    "*Confirmation Objection Deadline*" means the deadline for Filing objections to Confirmation of the Plan.

34.    "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

35.    "*Cure Obligations"* means all (a) amounts required to cure any monetary defaults and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults  (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed and assigned by the Debtor pursuant to Sections 365 or 1123 of the Bankruptcy Code.

36.    "*Debtor*" is The College of Saint Rose, debtor in the Chapter 11 Case.

37.    "*Diminution Claim*" means the diminution in value from and after the Petition Date of the valid, enforceable and non-avoidable interest of a Holder of a Claim in the Pre-Petition Collateral (as defined in the DIP Order).

38.    "*DIP Lender*" means SummitBridge National Investment VIII LLC.

39.    "*DIP Loan*" means the loan in the amount of $10,800,000 made by the DIP Lender to the Debtor as approved by Order of the Bankruptcy Court dated October 16, 2024.

40.    "*DIP Loan Documents*" means the documents executed and delivered in connection with the DIP Loan.

41.    "*DIP Motion*" means the motion filed by the Debtor on October 10, 2024 [Docket No. 19] seeking approval of the DIP Loan as well as the use of cash collateral.

4

42.    "*DIP Order*" means the interim order dated October 16, 2024 [Docket No. 60] and final order dated November 5, 2024 [Docket No. 103] approving the DIP Motion.

43.    "*DIP Secured Claim*" means the Secured Claim of the DIP Lender in the principal amount of $10,800,000 due to the DIP Lender pursuant to the DIP Loan Documents together with such other amounts due thereunder.

44.    "*Disallowed*" means any Claim that is not or that is no longer Allowed.

45.    "*Disclosure Statement*" means the disclosure statement relating to the Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

46.    "*Disclosure Statement Approval Order*" means the Order approving the Second Amended Disclosure Statement relating to the Plan and approving certain procedures for solicitation of votes on such Plan and granting related relief.

47.    "*Disputed*" means, with respect to any Claim, any Claim that is not yet Allowed, and shall include any Claim that is designated as disputed pursuant to the Plan.

48.    "*Disputed Claims Reserve*" means the reserve to be created by the Debtor for the benefit of Holders of subsequently Allowed Claims for distribution according to the procedures set forth in Article VI and Article VII.

49.    "*Distribution Date*" means the date that is within thirty (30) days of the Effective Date on which the distributions under the Plan shall be made.

50.    "*Effective Date*" means the date that the first Business Day after the later of (a) the Confirmation Order being a Final Order, (b) the date on which all conditions precedent specified in Article IX.B of the Plan have been satisfied or waived, in accordance with Article IX.C of the Plan, or (c) June 30, 2025.

51.    "*Endowment and Restricted Funds*" means monetary gifts granted to the Debtor pursuant to gift agreements which, by their terms, provide that the gifts are not wholly expendable by the Debtor and may only be used for the purposes specified in the applicable gift agreement.

52.    "*Entity*" shall have the meaning set forth in Section 101(15) of the Bankruptcy Code.

53.    "*Estate*" means the estate created for the Debtor on the Petition Date pursuant to Sections 301 and 541 of the Bankruptcy Code, which shall include the estate on and after the Confirmation Date.

54.    "*Exculpation*" means the exculpation provision set forth in Article VIII.C of the Plan.

55.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

56.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

57.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court.

58.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

59.    "*General Unsecured Claim*" means any Claim against any Debtor that is not: (a) a Superpriority Claim; (b) an Administrative Claim; (c) a Professional Fee Claim; (d) a Priority Tax Claim; (e) an Other Priority Claim; (f) an Allowed Bondholder Secured Claim; (g) an Allowed DIP Secured Claim; (h) an Allowed Other Secured Claim; or (i) an Allowed Bondholder Deficiency Claim.

60.    "*Governmental Unit*" shall have the meaning set forth in Section 101(*27*) of the Bankruptcy Code.

61.    "*Holder*" means any Entity holding a Claim.

62.    "*Impaired*" means a Class of Claims that is not Unimpaired.

63.    "*Indemnification Provision*" means any indemnification provisions of the Debtor in place as of the Effective Date, if any, whether in the bylaws, operating agreement, other formation documents, board resolutions, or employment contracts for the current and former trustees, officers, and managers, employees, attorneys, other professionals, and agents of the Debtor and such current and former trustees, officers, and managers' respective affiliates.

64.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

65.    "*Land Authority*" means the Albany County Pine Hills Land Authority, purchaser of the Campus.

66.    "*Lien*" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

6

67.     "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the Bankruptcy Court, as applicable to the Chapter 11 Case, as may be amended, modified, or supplemented from time to time.

68.     "*Other Priority Claim*" means any Claim against the Debtor entitled to priority in right of payment under Section 507 of the Bankruptcy Code, other than: (a) an Administrative Claim or (b) a Priority Tax Claim.

69.     "*Other Secured Claim*" means any Secured Claim against the Debtor that is not a Bondholder Secured Claim or a DIP Secured Claim.

70.     "*Pension Plan*" means The College of Saint Rose Non-Contract Employees' Pension Plan.

71.     "*Petition Date*" means October 10, 2024.

72.     "*Plan*" means this Chapter 11 Plan of Debtor, as may be amended, supplemented, or modified from time to time.

73.     "*Plan Administrator*" means Debra Lee Polley, the Vice President for Finance and Administration of the Debtor, who will serve as Plan Administrator in accordance with the Plan Administrator Agreement.

74.     "*Plan Administrator Agreement*" means the agreement providing for the appointment of the Plan Administrator, in the form attached as Exhibit "C" to the Disclosure Statement.

75.     "*Post-Effective Date Expenses*" means the amount of $520,065 to be held by the Debtor (the "Post-Effective Date Reserve") to pay expenses which may be incurred after the Effective Date in order to fully wind down the affairs of the Debtor, including without limitation salaries, costs and legal fees attendent to distributions to creditors, resolutions of claims, sales of any property remaining, advancement of the cy pres petition, winddown of the Pension Plan and bank accounts, the preparation and filing of Form 990s, quarterly reports and the preparation and filing of a Final Decree.

76.     "*President's House*" means the real property located at 90 South Manning Avenue, Albany, New York.

77.     "*President's House Proceeds*" means the net proceeds remaining from the Sale of the President's House after payment of Sale costs and expenses, and broker commissions attributable to the Sale.

78.     "*Priority Tax Claim*" means any unsecured Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

79.     "*Pro Rata*" means (a) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class or (b) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that

7

particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

80.      "*Professional*" means an Entity:  (a) retained in the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to Sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

81.      "*Professional Fee Claim*" means all Claims for accrued fees and expenses for services rendered by a Professional through and including the Effective Date, to the extent such fees and expenses have not been paid pursuant to any order of the Bankruptcy Court or the Local Bankruptcy Rules and regardless of whether a fee application has been Filed for such fees and expenses.

82.      "*Professional Fee Claim Bar Date*" means the first Business Day that is thirty (30) days following the Confirmation Date of the Plan, except as specifically set forth in the Plan or a Final Order.

83.      "*Professional Fee Escrow*" means the escrow account held by Cullen and Dykman LLP in accordance with the DIP Order, containing the amounts to be paid to Professionals in accordance with the Budget.

84.      "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

85.      "*Remaining Cash*" means the balance in the Debtor's bank accounts on the Effective Date, excluding the Remaining Loan Proceeds and Endowment and Restricted Funds, after payment of or reserve for expenses included in the Budget for the period prior to the Effective Date, less amounts necessary to fund the Post-Effective Date Expenses. The Debtor estimates that the amount of Remaining Cash will total $4,755,917.

86.      "*Remaining Loan Proceeds*" means the unspent balance remaining from the proceeds of the DIP Loan.

87.      "*Sale*" means the sale of the Campus to the Land Authority and/or the Sale of the President's House to Becker, as the case may be.

88.      "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to Section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

89.      "*Secured*" means when referring to a Claim:  (a) Secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such

21398949v1

Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

90.    "*Superpriority Claims*" means the Claims of the Bondholders and the DIP Lender, allowable pursuant to the DIP Order pursuant to sections 503(b) and 507(b) of the Bankruptcy Code with priority over all Claims other than the Carve-Out (as defined in the DIP Order), equal to the Diminution Claim.

91.    "*UE Deposit*" means the amount of profits of United Educators designated as owing to the Debtor and held in a subscriber savings account at United Educators in the amount of $625,107.99, required to be returned to the Debtor.

92.    "*U.S. Trustee Fees*" means all quarterly fees arising under 28 U.S.C. §1930(a)(6) including accrued interest thereon arising under 31 U.S.C. § 3717.

93.    "*Unencumbered Collateral*" means any Assets of the Debtor which is not secured by the Bondholders or the Holder of any Other Secured Claims.

94.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

95.    "*Unimpaired*" means, with respect to a Class of Claims, a Claim that is not *impaired* within the meaning of Section 1124 of the Bankruptcy Code.

96.    "*Unused Insurance Premiums*" means the amounts to be returned to the Debtor from the cancellation of property insurance upon the closing of the Sale of the Campus.

97.    "*Voting Classes*" means all Classes of the Plan.

98.    "*Voting Deadline*" means _____, 2025 at 5:00 p.m. Eastern Time.

99.    "*Voting Record Date*" means the close of business on the date that the Disclosure Statement Approval Order is entered by the Court.

100.    "*Workers' Compensation Recoveries*" means monies owed to the Debtor from excess reserves in the Self-Insured Workers Compensation Trust to which the Debtor was a party.

B.    Rules of Interpretation

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or

to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.       Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.       Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.       Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

F.       Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  The provisions of the Plan, and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that if there is determined to be any inconsistency between any provision in the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

21398949v1

# ARTICLE II.
## SUPERPRIORITY CLAIMS, ADMINISTRATIVE CLAIMS, U.S. TRUSTEE FEES, PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS

A.    Superpriority Claims

    1.    Payment of Superpriority Claims

Superpriority Claims include Claims pursuant to Section 503(b) and 507(b) of the Bankruptcy Code equal to the Diminution Claims (as that term is defined in the DIP Order), allowable to the Bondholders under the DIP Order.

Unless otherwise agreed to by the Holder of an Allowed Superpriority Claim and the Debtor or the Plan Administrator, each Holder of an Allowed Superpriority Claim will receive an exchange for full and final satisfaction, settlement, release, and compromise of its Superpriority Claim an amount of Cash equal to the amount of such Superpriority Claim either: (1) except as otherwise provided in the Confirmation Order, on the Effective Date or as soon as practicable thereafter; or (2) if the Superpriority Claim is not Allowed as of the Effective Date, no later than five (5) business days after the date in which an Order Allowing such Superpriority Claim becomes a Final Order, or as soon as reasonably practicable thereafter. The Superpriority Claims shall be paid prior to any Claims other than the Carve-Out as set forth in the DIP Order from the following Assets: Remaining Cash, Remaining Loan Proceeds, Bondholder Collateral and the Unencumbered Collateral.

The Debtor estimates that the amount of Superpriority Claims payable to the Bondholders totals $1,615,182.

B.    Administrative Claims

    1.    Payment of Administrative Claims

Administrative Claims include a Claim for costs and expenses of administration of the Debtor's Estate pursuant to Sections 503(b) or 507(a)(2) of the Bankruptcy Code, including the actual and necessary costs and expenses of preserving the Estate incurred after the Petition Date and through the Effective Date.

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Plan Administrator, each Holder of an Allowed Administrative Claim will receive in exchange for full and final satisfaction, settlement, release, and compromise of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either:  (1) except as otherwise provided in the Confirmation Order, on the Effective Date or as soon as practicable thereafter; (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than five (5) business days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) if the Allowed Administrative Claim is based on liabilities incurred by the

11

Debtor in the ordinary course of their business after the Petition Date, such Allowed Administrative Claims shall be paid pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims and without any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtor estimates that there will be no unpaid Administrative Claims as the Debtor is current, and has sufficient funds to remain current, on its post-petition obligations. However, to the extent any such Claims exist, they shall be paid from the following Assets: (a) after payment in full of the Bondholder Superpriority Claims: Remaining Cash, Remaining Loan Proceeds and the Unencumbered Collateral; (b) after payment in full of the Bondholder Superpriority Claim and the Bondholder Deficiency Claim: Bondholder Collateral; and (c) the President's House Proceeds.

2.      Requests for Payment of Superpriority Claims and Administrative Claims

**The deadline for filing requests for payment of Superpriority Claims and Administrative Claims (other than Professional Fee Claims) must be Filed and served on the Debtor and shall be no later than the Administrative Claims Bar Date.**  Holders of Superpriority Claims and Administrative Claims that are required to File and serve a request for payment of such Superpriority Claims and  Administrative Claims by the Administrative Claims Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Superpriority Claims and Administrative Claims against the Debtor and the Estate or any of the property of any of the foregoing, and such Superpriority Claims and Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the requesting party by the later of (a) 60 days after the Confirmation Date and (b) 60 days after the Filing of the applicable request for payment of Superpriority Claims and Administrative Claims, if applicable.

C.      U.S. Trustee Fees

The Debtor or the Plan Administrator shall pay all U.S. Trustee Fees by the Effective Date.  Thereafter, U.S. Trustee Fees shall be paid by the Debtor and/or the Plan Administrator until entry of a final decree closing the Chapter 11 Case, or order of dismissal or conversion of the Chapter 11 Case. All such payments are included in the Budget and shall be included in the Post-Effective Date Expenses.

D.      Professional Fee Claims

1.      Final Fee Applications and Payment of Professional Fee Claims

**All final requests for payment of Professional Fee Claims shall be Filed no later than thirty (30) days after the Confirmation Date of the Plan.**  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Local Bankruptcy Rules and any prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.  The Allowed amount of Professional Fee

12

Claims owing to the Professionals shall be paid in Cash to such Professionals when and to the extent such Claims are Allowed by a Final Order.

        2.        Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Plan Administrator, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Plan Administrator or the Estate.

E.        Priority Tax Claims

On the Distribution Date, in exchange for full and final satisfaction, settlement, release, and compromise of such an Allowed Priority Tax Claim, each Holder of such a Claim, unless agreed to otherwise by the Debtor or the Plan Administrator and the Holder of such a Claim, shall receive or amounts shall be reserved for payment of Cash up to the full amount of such Claims from the following Assets: (a) after payment in full of Allowed Superpriority Claims, Administrative Claims and Professional Fee Claims: Remaining Cash, Remaining Loan Proceeds and the Unencumbered Collateral; (b) after payment in full of the Bondholder Superpriority Claim, Bondholder Deficiency Claim, Administrative Claims and Professional Fee Claims: Bondholder Collateral; and (c) after payment in full of Administrative Claims and Professional Fee Claims: the President's House Proceeds. Priority Tax Claims amount to approximately $750,491.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Superpriority Claims, Administrative Claims, U.S. Trustee Fees, Professional Fee Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims set forth in this Article III.

A.        Summary of Classification

All Claims other than Superpriority Claims, Administrative Claims, U.S. Trustee Fees, Professional Fee Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and in connection with Sections 1122 and 1123(a)(1) of the Bankruptcy Code. Each Class shall be a Class of Claims in the Chapter 11 Case of the Debtor. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

        1.        *Class Identification for the Debtor*

The classification of Claims against the Debtor pursuant to the Plan is as follows:

21398949v1

| Class | Claims | Status | Voting Rights |
|-------|--------|--------|---------------|
| Class 1 | Allowed Other Priority Claims | Impaired | Entitled to Vote |
| Class 2 | Allowed Bondholder Secured Claim | Impaired | Entitled to Vote |
| Class 3 | Allowed Other Secured Claims | Impaired | Entitled to Vote |
| Class 4 | Allowed Bondholder Deficiency Claims | Impaired | Entitled to Vote |
| Class 5 | Allowed General Unsecured Claims | Impaired | Entitled to Vote |

B.     Treatment of Claims

    1.     The treatment provided to each Class relating to the Debtor for distribution purposes and voting rights are specified below:

### Class 1 – Allowed Other Priority Claims

(a)     *Classification*:  Class 1 consists of Allowed Other Priority Claims against the Debtor's estate, which includes any Claim against the Debtor entitled to priority in right of payment under Section 507 of the Bankruptcy Code, other than: (a) a Superpriority Claim, (b) an Administrative Claim, or (c) a Priority Tax Claim.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release and compromise of each and every Allowed Other Priority Claim against the Debtor, each holder of an Allowed Other Priority Claim shall be paid Cash up to the full amount of such Claims from the following Assets: (a) after payment in full of Allowed Superpriority Claims, Administrative Claims, Professional Fee Claims and Priority Tax Claims: Remaining Cash, Remaining Loan Proceeds and Unencumbered Collateral; (b) after payment in full of the Bondholder Superpriority Claim, Bondholder Deficiency Claim, Administrative Claims, Professional Fee Claims and Priority Tax Claims: Bondholder Collateral; and (c) after payment in full of Administrative Claims and Professional Fee Claims: the President's House Proceeds. Allowed Other Priority Claims amount to $993.

(c)     *Voting*: Class 1 is Impaired, and each Holder of an Allowed Other Priority Claim is entitled to vote to accept or reject the Plan.

### Class 2 – Allowed Bondholder Secured Claim

(a)     *Classification*:  Class 2 consists of the Allowed Bondholder Secured Claim, in the amount of $48,540,719 as of the Petition Date.

(b)     *Treatment*: The net proceeds of the Sale of the Campus remaining after payment of Sale costs and expenses, broker commissions, U.S. Trustee Fees attributable to the Sale and the DIP Loan in the amount of

14

$22,352,791.90, were paid to the Bond Trustee for distribution to the Bondholders. Additionally, the Bond Trustee received $49,945 during the Bankruptcy Case from the sale of Bondholder Collateral, and additional payments will be made to the Bond Trustee upon liquidation of Bondholder Collateral in the amount of approximately $1,274,083, further reducing the Bondholder Deficiency Claim. Finaly, the Bondholders will receive payment on the Superpriority Claim in the amount of $1,615,182 in reduction of the Bondholder Secured Claim.

As of the filing of the Plan, the Bondholder Deficiency Claim amounts to approximately $26,137,982 and will amount to approximately $23,248,718 after the payments noted above.

(c)     *Voting*:  Class 2 is Impaired, and the Holder of the Allowed Bondholder Secured Claim is entitled to vote to accept or reject the Plan.

## Class 3 – Allowed Other Secured Claims

(a)     *Classification*:  Class 3 under the Plan consists of Allowed Other Secured Claims.

(b)     *Treatment*:  The only Claimant within this Class is identified as Canon Financial Services. Such Claimant has a security interest in the collateral included in its financing statements filed against the Debtor's Assets, valued at $34,000. On or before the Effective Date, the collateral securing the Allowed Other Secured Claims shall be turned over to the Holder of such Claim in reduction or satisfaction of such Entity's Secured claim. The deficiency due and owing to such Claimant after liquidation of the collateral securing its Claim, amounting to $556,708, will be treated as a General Unsecured Claim and shall be paid in accordance with treatment of such Class.

(c)     *Voting*:  Class 3 is Impaired, and each Holder of an Allowed Other Secured Claim is entitled to vote to accept or reject the Plan.

## Class 4 – Allowed Bondholder Deficiency Claims

(a)     *Classification*:  Class 4 of the Plan consists of Allowed Bondholder Deficiency Claims. As set forth above, this Claim is estimated to amount to approximately $23,248,718.

(b)     *Treatment*:  The Bondholder Deficiency Claims shall be paid Pro Rata with General Unsecured Creditors from the following Assets: Remaining Cash, Remaining Loan Proceeds and the Unencumbered Collateral. It is estimated that Claims in this Class will receive a distribution of approximately $2,046,833, which is approximately an additional 8.8%

15

distribution. The Bondholder Deficiency Claims shall not be paid from the President's House Proceeds. In addition, the Bondholder Deficiency Claims shall be paid Pro Rata with General Unsecured Creditors from any unused portion of the Post-Effective Date Reserve at such time as the Plan Administrator Agreement terminates. This amount is not included in the above estimate.

(c)   *Voting*:  Class 4 is Impaired, and the Holder of the Claim in such Class is entitled to vote to accept or reject the Plan.

## Class 5 – Allowed General Unsecured Claims

(a)   *Classification*:  Class 5 of the Plan consists of General Unsecured Claims.

(b)   *Treatment*:  Holders of such Claims shall receive their Pro Rata share of any funds remaining from the Bondholder Collateral after the payment of all Allowed Superpriority Claims, Bondholder Deficiency Claims, Administrative Claims, Professional Fee Claims and Priority Tax Claims. General Unsecured Claims shall also be paid their Pro Rata share, *pari passu* with the Bondholder Deficiency Claim, from the Remaining Cash, Remaining Loan Proceeds and Unencumbered Collateral remaining after payment of the Bondholder Superpriority Claim, Administrative Claims, Professional Fee Claims and Priority Tax Claims. Finally, General Unsecured Creditors will receive their Pro Rata share of the President's House Proceeds after the payment of all Allowed Administrative Claims, Professional Fee Claims and Priority Tax Claims. Any payments to General Unsecured Creditors shall be made on the Distribution Date. The Debtor estimates that there will be $966,948 available for distribution to Allowed General Unsecured Claims, amounting to approximately 24.86% of Allowed General Unsecured Claims. In addition, holders of General Unsecured Claims will be paid Pro Rata with the Bondholder Deficiency Claims from any unused portion of the Post-Effective Date Reserve at such time as the Plan Administrator Agreement terminates. This amount is not included in the above estimate. The estimate is also subject to reduction based on the amount of Claims filed for rejection of Executory Contracts.

(c)   *Voting*:  Class 5 is Impaired, and each Holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

C.   Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing shall affect the rights of the Debtor or the Plan Administrator, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

21398949v1

D.    Elimination of Vacant Classes

Any Class of Claims that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement and Disclosure Statement Approval Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies Section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Debtor shall seek Confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims. The Debtor reserves the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    Overview

The Plan is a liquidating plan as all Assets of the Debtor have been or will be liquidated to pay Allowed Claims against the Debtor. The Debtor's primary Asset, the Campus, was sold pursuant to Order of the Bankruptcy Court dated December 20, 2024. In connection with the Sale of the Campus, the Debtor paid costs and expenses of sale, broker commissions, withheld U.S. Trustee Fees attributable to the Sale, and satisfied the DIP Lender's Claim in full. The remaining proceeds were paid to the Bond Trustee for distribution to the Bondholders.

The Bondholders were not paid in full from the Sale of the Campus. Their remaining claim is at least partially secured by virtue of filings made under the Uniform Commercial Code against the Bondholder Collateral. In addition, the Bondholders have a Superpriority Claim pursuant to the DIP Order, which Claim takes priority in payment from Unencumbered Collateral, subject to the Carve-Out.

In addition to the Campus, the Debtor sold the President's House to Becker pursuant to Order of the Court dated December 20, 2024. The net proceeds of that Sale remaining after the payment of costs and expenses and broker commissions, are being held in an account by Debtor's counsel for payment to the holders of Administrative Claims, Priority Tax Claims and General Unsecured Claims under the Plan. The Bond Trustee on behalf of the Bondholders has relinquished any claim to payments from the President's House Proceeds.

The Debtor also has personal property including without limitation artwork, gymnasium equipment, furniture, fixtures, and miscellaneous assets which the Debtor is liquidating for the benefit of the Holders of Claims, as set forth above. In addition, the Unused Insurance Premiums, the Workers' Compensation Recoveries and the UE Deposit, all of which constitute Bondholder Collateral, will be liquidated and paid to the Bond Trustee in reduction of the Bondholder Secured Claim. Finally, the Debtor may, but is not likely to, recover funds from the

17

litigation of any Causes of Action. To the extent that the Bondholders have a Lien against any such personal property, either such assets or the net proceeds of such Sales shall be distributed to the Bond Trustee on account of the Bondholder Secured Claims. To the extent of any such Assets or Causes of Action constitute Unencumbered Collateral, the proceeds shall be distributed to Holders of all Claims under the Plan.

B.    Plan Administrator

On the Effective Date, the Plan Administrator Agreement will take effect. The Plan Administrator shall have the power and authority to take any action necessary to administer, liquidate and distribute the remaining Assets of the Estate, including the collection of any receivables still outstanding, pursuit of Causes of Action, making any distributions remaining to be made, cooperating with the New York State Attorney General's Office and New York State Supreme Court in connection with the cy pres petition, terminating the Pension Plan if not already terminated, and negotiating any Claim Objections which may be necessary after the Effective Date. The Plan Administrator shall have the authority to retain attorneys and consultants, including without limitation Cullen and Dykman LLP and FTI Consultants Inc. in accordance with the Plan and the Liquidation Trust Agreement.

Debra Lee Polley will serve as the Plan Administrator. The compensation of the Plan Administrator will be as provided for in the Plan Administrator Agreement. The duties, responsibilities and powers of the Plan Administrator will terminate upon termination of the Plan Administrator Agreement.

C.    Prosecution of the Causes of Action

The Debtor or the Plan Administrator may take such action as is reasonably necessary to maximize the value of and liquidate the Causes of Action, including the commencement and prosecution of any adversary proceedings, contested matters, lawsuits, arbitrations or other proceedings (including the prosecution or defense of any appeals, writs of mandamus, writs of certiorari, discovery in aid of collecting or executing any judgment and the execution of any judgment, and the posting of any bond required by a court in connection therewith), either in the Bankruptcy Court or in such other appropriate venue having jurisdiction of such Causes of Action.  In connection with the foregoing, the Debtor or the Plan Administrator may defend and, if appropriate, settle, any counterclaims asserted by a defendant to a Cause of Action. The Debtor or the Plan Administrator may, if appropriate, settle any Cause of Action. Notwithstanding the foregoing, the Debtor does not believe that there are viable Causes of Action and does not intend on commencing any such causes of Action.

D.    Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on or before the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the

18

Estate shall revert to the Estate. Notwithstanding the foregoing and notwithstanding any other provision of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate securing the Allowed Bondholder Secured Claim shall not be released, settled or compromised unless and until such Claim Holder shall have received the proceeds of the Bondholder Collateral.

E.      Corporate Action

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects and all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), without any requirement of further action by the trustees of the Debtor or approval of the Bankruptcy Court. The authorization and approvals contemplated by this Article shall be effective notwithstanding any requirements under non-bankruptcy law.

F.      Exemption from Certain Taxes and Fees

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant or incidental to the Plan, including the Sales of the Campus and the President's House and the recording of any mortgages or liens or amendments thereto, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

G.      Revocation of Charter/Dissolution of Entity/Disbanding of Board of Trustees

Prior to the Effective Date, the Debtor shall arrange with the New York State Education Department (NYSED) for the revocation of the Debtor's Charter, effective as of the Effective Date. NYSED, together with all creditors and parties in interest, shall receive notice of the occurrence of the Effective Date. Upon the final distribution to Holders of Allowed Claims against the Debtor, the Debtor shall be deemed dissolved under state law without further action by the Debtor and/or the Plan Administrator, and without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity except as otherwise provided for in the Plan. Also effective as of the Effective Date, the Board of Trustees of the Debtor shall be disbanded without further action by the Debtor and without further notice to or action, order or approval of the Bankruptcy Court or any other Entity.

H.      Preservation of Rights of Action

The Debtor and the Plan Administrator shall have the right to reduce and/or disallow any Claim based upon the existence of a Cause of Action against the Holder of such Claim. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Plan Administrator will not pursue any and all available Causes of Action against them. All rights to prosecute any and all Cause of Actions against any Entity, except as otherwise expressly provided in the Plan,

19

are and shall be expressly reserved. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, all Cause of Actions are expressly reserved for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Cause of Actions upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

I.      Endowment and Restricted Funds

By their nature, the Endowment and Restricted Funds are restricted funds, unavailable for distribution to the Debtor's creditors. The Debtor will shortly be filing a cy pres petition in the New York State Supreme Court, with the concurrence of the New York State Attorney General's Office, to redistribute the Endowment and Restricted Funds as set forth in that petition. The Debtor and Plan Administrator shall reasonably cooperate in providing information to the New York State Attorney General's Office and New York State Supreme Court in connection with the cy pres petition to the extent reasonably available to the Debtor. In the event that such a petition is not agreed to by the Attorney General's Office and approved by the Supreme Court by the termination of the Plan Administrator Agreement, the Debtor or the Plan Administrator shall move to deposit the Endowment and Restricted Funds with the New York State Supreme Court or such other appropriate repository of charitable assets as may be approved by the Supreme Court.

J.      Pension Plan

On or about May 22, 2024, the College issued a Notice of Intent to Terminate the Pension Plan (the "NOIT") to the Pension Plan's participants stating that the Debtor intended to complete a standard termination. The NOIT contained a Pension Plan termination date of July 31, 2024. The Debtor is unable to complete a standard termination of the Pension Plan since the assets of the Pension Plan do not equal or exceed the amount of Plan benefits. The Pension Plan will therefore be involuntarily terminated. The Debtor is presently awaiting documentation from the PBGC to begin that process. As a result, to the extent of underfunding of the Pension Plan, the PBGC will guaranty payment of such underfunding up to statutory limits. Presently, the Debtor has authority to make annuity distributions, and lump sum distributions of $7,000 or lower, from the Pension Plan.

K.  Workers' Compensation Recoveries

Over the years, the Debtor has made contributions to a Self-Insured Workers' Compensation Trust, together with other members of the Trust, for payment of Workers' Compensation claims. Each year, the Trust calculates the amount of excess monies in the Trust for the prior years, based upon claims paid for those prior years, and distributes such excess monies to its members on a pro rata basis. Thus, there will be monies owed to the Debtor (i.e., the Workers' Compensation Recoveries) for several years into the future. Since the Debtor will be completely wound down by approximately June 30, 2025, the Debtor will arrange for such Workers' Compensation Recoveries, which constitute Bondholder Collateral, to be paid directly

20

to the Bond Trustee to be applied to the Bondholder Secured Claim, thereby reducing the Bondholder Deficiency Claim.

L.  UE Deposits

For several years, the Debtor has been a member of United Educators. United Educators, a reciprocal risk retention group, is a licensed insurance company owned and governed by approximately 1600-member educational institutions throughout the United States.  Each year, United Educators allocates a portion of its profits to each member and holds those funds in a subscriber savings account. At this time, the amount held in the subscriber savings account attributable to the Debtor amounts to approximately $625,107.99. Pursuant to the terms of the agreement between the Debtor and the United Educators, it could take up to 10 years to release those funds from the account. The Debtor intends to negotiate for an early release of funds and to submit any such settlement to the Bankruptcy Court for approval under Bankruptcy Rule 9019. Such funds constitute Bondholder Collateral and will be distributed to the Bond Trustee to be applied to the Bondholder Secured Claim, thereby reducing the Bondholder Deficiency Claim.

M.  Cancellation of Bonds

Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, the Bonds shall be cancelled, and the Bonds and related Bond Documents shall continue in effect solely to the extent they relate to and are necessary to (1) allow distributions pursuant to this Plan, (2) permit the Bond Trustee to be compensated for fees and reimbursed for expenses including expenses of its professionals, assert its charging lien, enforce its indemnity and other rights and protections with respect to and pursuant to the bond documents, (3) permit the Bond Trustee to set one or more record dates and distribution dates with respect to the distribution of funds to beneficial owners of the Bonds, (4) permit the Bond Trustee to appear in the Chapter 11 Case and exercise its rights specified in this Plan, and (5) permit the Bond Trustee to perform any functions that are necessary in connection with the foregoing clauses (1) through (4).

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.  Rejection of Executory Contracts and Unexpired Leases

Neither the Land Authority nor Becker requested to assume Executory Contracts and Unexpired Leases.  Thus, the Debtor made a motion to reject most Executory Contracts, particularly the ones dealing with the operation of the real estate, presently pending before the Court.  All Executory Contracts or Unexpired Leases other than those that are rejected pursuant to an Order prior to the Confirmation Date, shall pass through the Plan and shall neither be assumed or rejected.

B.  Claims Based on Rejection of Executory Contracts and Unexpired Leases

**Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed no later than the later of (a) thirty (30)**

21

**days after the effective date of rejection of such Executory Contract or Unexpired Lease and (b) thirty (30) days after the Confirmation Date.**

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim, (b) be permitted to vote to accept or reject the Plan, or (c) participate in any distribution in the Chapter 11 Case on account of such Claim, and such Claim shall be deemed fully satisfied, released, settled and compromised, and be subject to the permanent injunction set forth in Article VIII.E, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

C.    Pre-existing Obligations to the Debtor or Estate Under Executory Contracts and Unexpired Leases

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the right of the Debtor or the Estate to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtor from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases are expressly reserved and not waived.

D.    Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

E.    Reservation of Rights

Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or Plan Administrator has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption and assignment or rejection, the Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such Executory Contract or Unexpired Lease as otherwise provided herein.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided in the Plan, on the Distribution Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Claim against the Debtor shall receive the distribution to which such Claimant is entitled under the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim.

B.    Rights and Powers of Debtor or the Plan Administrator as Disbursing Agent

1.    Powers of the Debtor or the Plan Administrator as Disbursing Agent

The Debtor or the Plan Administrator in either of their capacity as disbursing agent shall be empowered to, as applicable: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities including without limitation Cullen and Dykman LLP; and (d) exercise such other powers as may be vested, pursuant to the Plan, or as deemed by the Debtor or the Plan Administrator to be necessary and proper to implement the provisions hereof.

2.    Post-Effective Date Expenses

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Plan Administrator after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including reasonable attorneys' fees and expenses) made by the Debtor or Plan Administrator shall be paid in Cash from the Post-Effective Date Reserve, without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    Distributions on Account of Claims Allowed After the Effective Date

1.    Payments and Distributions on Disputed Claims

Distributions made after the Distribution Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be deemed to have been made on the Distribution Date.

21398949v1

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtor, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

3.      Disputed Claims Reserve

On the Distribution Date (or as soon thereafter as is reasonably practicable), the Debtor or the Plan Administrator shall deposit in the Disputed Claims Reserve the amount of Cash that would have been distributed to the Holders of all Disputed Claims against the Debtor as if such Disputed Claims had been Allowed on the Distribution Date, with the amount of such Allowed Claims to be determined, solely for the purposes of establishing reserves and for maximum distribution purposes, to be the lesser of (a) the asserted amount of the Disputed Claim filed with the Bankruptcy Court, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code, or (c) amount otherwise agreed by the Debtor and the Holder of such Disputed Claim for reserve purposes.   To the extent the amount of Cash deposited in the Disputed Claims Reserve on account of Disputed Claims against the Debtor exceeds the amount of Disputed Claims against the Debtor (as of the funding of the Disputed Claims Reserve) that later become Allowed, the excess shall be distributed in accordance with the Plan.

D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.      Delivery of Distributions in General

Except as otherwise provided herein, the Debtor and/or the Plan Administrator shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's books and records as of the date of any such distribution; provided that the manner of such distributions shall be determined at the discretion of the Debtor; and provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.  If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim. The Debtor and the Plan Administrator shall have no duty to make a distribution on account of any Allowed Claim if the amount to be distributed  on  account  of  the Claim is less than $25.

2.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtor has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of three months from the date the distribution is mailed.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws

24

to the contrary) to the Estate, and shall be distributed in accordance with the Plan, and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

        3.      Manner of Payment Pursuant to the Plan

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Debtor or the Plan Administrator by check or by wire transfer.

E.      Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Debtor and the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtor and the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

F.      Claims Paid or Payable by Third Parties

The Debtor or the Plan Administrator shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Debtor or the Plan Administrator to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

G.      Distributions Relating to Bonds

For the avoidance of doubt, all distributions under this Plan relating to the Bonds shall be made to the Bond Trustee.

25

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      Resolution of Claims Against the Debtor

1.      Allowance of Claims Against the Debtor

The Debtor and the Plan Administrator shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

2.      Prosecution of Objections to Claims Against the Debtor

After Confirmation, the Debtor or, after the Effective Date, the Plan Administrator shall have the exclusive authority but not the obligation to File objections to Claims against the Debtor, and to settle, compromise, withdraw or litigate to judgment objections to any and all Claims against the Debtor, regardless of whether such Claims are in a Class or otherwise. The Debtor may settle or compromise any Disputed Claim against the Debtor without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that settlement of Disputed Claims against the Debtor which will amount to a Claim of $25,000 or more shall require the approval of the Bankruptcy Court. The Debtor and/or the Plan Administrator shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises of Claims against the Debtor without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Time to File Objections to Claims Against the Debtor

Any objections to Claims against the Debtor shall be Filed on or before the Claims Objection Bar Date.

4.      Estimation of Claims Against the Debtor

The Debtor or the Plan Administrator may, at any time, and shall have the exclusive authority but not the obligation  to, request that the Bankruptcy Court estimate (a) any Disputed Claim against the Debtor pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Plan Administrator have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim against the Debtor, contingent Claim against the Debtor or unliquidated Claim against the Debtor, including during the litigation concerning any objection to any Claim against the Debtor or during the

26

pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim against the Debtor that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim against the Debtor, contingent Claim against the Debtor, or unliquidated Claim against the Debtor, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Debtor or the Plan Administrator may elect to pursue additional objections to the ultimate distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim against the Debtor that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

5.      Expungement or Adjustment to Claims Against the Debtor Without Objection

Any Claim against the Debtor that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Debtor and any Claim that has been amended may be adjusted thereon by the Debtor in all cases without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

B.      Disallowance of Claims

All Claims against the Debtor held by any Entity from which property is sought by the Debtor or the Plan Administrator under Section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or the Plan Administrator alleges is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Debtor or the Plan Administrator on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned Sections of the Bankruptcy Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS PROVIDED FOR UNDER THE PLAN OR OTHERWISE AGREED TO BY THE DEBTOR OR THE PLAN ADMINISTRATOR ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE (THAT DO NOT AMEND TIMELY FILED CLAIMS) SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE OF THE PLAN WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE**

**ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.**

C.      Amendments to Claims

On or after the Effective Date, except as provided in Section II.A, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Debtor or the Plan Administrator, and any such unauthorized new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court.

# ARTICLE VIII.
## SETTLEMENT, EXCULPATIONS, INJUNCTIONS, AND RELATED PROVISIONS

A.      Compromise and Settlement of Claims and Controversies

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan or relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and is fair, equitable, and reasonable. Except as otherwise provided in the Plan, a vote by a Holder of a Claim for or against this Plan does not constitute a waiver or release of any rights of the Debtor, the Plan Administrator or the Estate, as applicable, to object to that Holder's Claim on any basis, including pursuant to Section 502(d) of the Bankruptcy Code on the basis that such Holder has received or was the beneficiary of a preferential, fraudulent, or other voidable transfer of assets, regardless of whether any Claims, Causes of Action, or other rights of the Debtor, the Plan Administrator or the Estate are specifically or generally identified herein.

B.      Discharge

The Debtor is not entitled to, and will not receive, a discharge since the Plan is a Liquidating Plan, and the Debtor will not be engaging in business after the Effective Date of the Plan.

C.      Exculpations

**To the extent permitted under section 1125(e) of the Bankruptcy Code, the Debtor, the Bondholders, the Bond Trustee, the DIP Lender, the Plan Administrator, and all of their professionals, attorneys, consultants, representatives, employees, officers, trustees, directors, managers and agents, and their successors and assigns, shall neither have, nor**

incur, any liability to any person or entity for any postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation of the Plan, including but not limited to the marketing of and sales process relating to the Sale, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor; provided that the foregoing "Exculpation" shall have no effect on the liability of any of the parties that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct or limit the liability of any professional to its client pursuant to DR 6-102 of the Code of Professional Responsibility; provided, further, that each of the foregoing Entities shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.  Notwithstanding the foregoing, nothing set forth above shall operate to limit or excuse compliance by any Entity with any of their respective obligations under the Plan or otherwise or to modify the effect or consequence of any such failure to comply with such obligations.

D.    Indemnification

        The Debtor's professionals, attorneys and consultants, the Plan Administrator and all of their representatives, employees, principals, officers, trustees, directors, managers and agents, and their successors and assigns shall be indemnified and held harmless by Debtor and the Estate, to the fullest extent permitted by law, solely from the Estate and the Assets, and any proceeds thereof, for any losses, claims, damages, liabilities, and expenses, including, without limitation, reasonable attorneys' fees, disbursements, and related expenses which such indemnified parties may incur or to which such indemnified parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of such indemnified parties on account of the acts or omissions in connection with any Exculpated matter; provided, however, that the Debtor and the Estate shall not be liable to indemnify any such indemnified party for any act or omission that has been determined by a Final Order as constituting gross negligence or willful misconduct.  Notwithstanding any provision herein to the contrary, such indemnified parties shall be entitled to obtain advances from the Estate to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of any such indemnified party in its capacity as such; provided, however, that the Entities indemnified pursuant to this Article receiving such advances shall repay the amounts so advanced upon the entry of a Final Order finding that such indemnified parties were not entitled to any indemnity under the provisions of this Article.

E.    Injunction

        EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE

**PLAN; (2) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.C; OR (3) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER. ALL PARTIES ARE ENJOINED FROM INTERFERING IN ANY MANNER WITH ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

F.       Setoffs and Recoupments

Except as otherwise provided herein, the Debtor or the Plan Administrator, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off or recoup against any Allowed Claim or the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor of any such Claims, rights, and Causes of Action that the Debtor may possess against such Holder.

G.       Provisions as to Governmental Units

As to any Governmental Unit, nothing in the Plan or Confirmation Order shall limit or expand the scope of the injunction to which the Debtor or the Plan Administrator is entitled to under the Bankruptcy Code, if any. Nothing in the Plan or Confirmation Order provides a discharge to the Debtor or the Plan Administrator from any liability to a Governmental Unit. The injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, subsequent to the Confirmation Order, pursuing any police or regulatory action.

Notwithstanding anything contained in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall release, impair or otherwise preclude: (1) any liability to any Governmental Unit that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any Claim of any Governmental Unit arising on or after the Effective Date; (3) any valid right of setoff or recoupment of any Governmental Unit against any of the Debtor; or (4) any liability of the Debtor or Plan Administrator under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee or operator of

property that such entity owns, operates or leases after the Confirmation Date. Nor shall anything in the Confirmation Order or the Plan: (i) enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by any Governmental Unit are discharged or otherwise barred by the Confirmation Order, the Plan, or the Bankruptcy Code.

Moreover, nothing in the Confirmation Order or the Plan shall exculpate any non-debtor, including any exculpated parties, from any liability to any Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the exculpated parties, nor shall anything in the Confirmation Order or the Plan enjoin any Governmental Unit from bringing any claim, suit, action or other proceeding against any non-debtor for any liability whatsoever; provided that if a Governmental Unit does not have an Allowed Claim against the Debtor, they may not seek payment of such Claim from a non-Debtor.

Nothing contained in the Plan or Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtor, nor shall the Plan or Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in this Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

Nothing herein shall constitute a waiver of the necessity (if any) of a Governmental Unit to file a Claim by the Claims Bar Date or Administrative Claims Bar Date, or the rights of any party as a result of the failure of a Governmental Unit to do so.

# ARTICLE IX.
## CONDITIONS PRECEDENT

A.    Condition Precedent to Confirmation of the Plan

It shall be a condition precedent to Confirmation of the Plan that the following conditions shall have been satisfied or waived by the Debtor in its sole and absolute discretion:

1.    The Bankruptcy Court shall have entered the Disclosure Statement Approval Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Disclosure Statement Approval Order shall not be stayed and shall be effective immediately upon their respective entry; and

2.    The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the

21398949v1

Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry.

B.    Conditions Precedent to the Effective Date of the Plan

It shall be a condition precedent to the occurrence of the Effective Date of the Plan that the following conditions shall have been satisfied or waived by the Debtor in its sole and absolute discretion:

1.    The Confirmation Date shall have occurred;

2.    The Confirmation Order shall become a Final Order; and

3.    The Plan Administrator Agreement shall have been executed.

Notwithstanding the foregoing, the Effective Date shall not occur until at least June 30, 2025. The Debtor shall file a Notice of the occurrence of the Effective Date with the Bankruptcy Court.

# ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    Modification and Amendments

Subject to the limitations contained herein, the Debtor reserves the right to modify the Plan as to immaterial terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves the right to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

B.    Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date or the Effective Date.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Effective Date does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption and assignment or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

# ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the occurrence of the Effective Date, the Court will retain such jurisdiction as is legally permissible, including, without limitation, for the following purposes:

1.      Except as otherwise provided in the Plan, Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to:  (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Obligations pursuant to Section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action or any conflicting claims or demands made or asserted with respect to Allowed Claims;

7.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      Resolve any case, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation or enforcement of the Plan;

11.     Resolve any case, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, injunctions, exculpations, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such injunctions, and other provisions;

12.     Resolve any case, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI;

13.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.     Determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

18.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.     Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

34

20.    Hear and determine matters concerning Section 1145 of the Bankruptcy Code;

21.    Hear and determine all disputes involving the existence, nature, or scope of the Exculpations, the Indemnifications and the Injunctions;

22.    Enforce all orders previously entered by the Bankruptcy Court;

23.    Enter an order concluding or closing the Chapter 11 Case; and

24.    Enforce the Exculpations, the Indemnifications and the Injunctions, as set forth in Article VIII.

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    Immediate Binding Effect

Subject to Article IX.B and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Estate, the Plan Administrator and any and all Holders of Claims against the Debtor, regardless of whether such Claims are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in such plan, each Entity acquiring property under such plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.  All Claims shall be as fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim has voted on the Plan.

B.    Additional Documents

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  All Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    Post-Confirmation Reports

The Debtor or the Plan Administrator shall file reports on its disbursements with the Bankruptcy Court on a quarterly basis, within fifteen (15) days after the conclusion of each such period until the entry of a final decree closing the Chapter 11 Case.  Any such reports shall be prepared consistent with (both in terms in content and format) the applicable Bankruptcy Court and United States Trustee Guidelines for such matters.

35

D.     Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order with respect to the Plan.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, or the Confirmation Order shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims prior to the Effective Date.

E.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.     Service of Documents

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor shall be served on:

> The College of Saint Rose
> 432 Western Avenue
> Albany, New York 12203
> Attn:   Marcia J. White
>         Debra Lee Polley
> Email:  Marcia.White@mail.Strose.edu
>         PolleyD@mail.Strose.edu
>
> with copies to:
>
> Cullen and Dykman LLP
> Attn:   Matthew G. Roseman, Esq.
>         Bonnie L. Pollack, Esq.
> 333 Earle Ovington Boulevard, 2nd Fl.
> Uniondale, NY 11553
> Telephone: (516) 296-9143
> Email: mroseman@cullenllp.com
>        bpollack@cullenllp.com

G.     Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force

36

and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      Entire Agreement

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

Dated: Albany, New York
        April 11, 2025

THE COLLEGE OF SAINT ROSE

By:   /s/*Marcia J. White*
Name: Marcia J. White
Title: President

37