EXHIBIT A



22484.3 21387205v1



22484.3 21387205v1



22484.3 21387205v1

# EXHIBIT B

**College of Saint Rose**
Illustrative Chapter 11 vs. Chapter 7 Liquidation Analysis

### Key Assumptions:

- Bondholder Collateral (Item C) includes (i) $49,945 already paid to the Bond Trustee during the Bankruptcy Case and (ii) $1,274,083 additional payments will be made to the Bond Trustee upon liquidation of Bondholder Collateral
- Estimated Sale Value of Canon Equipment (Item D) reflects estimated credit to Class 3 Allowed Other Secured Claim from Canon Financial Services for sale of their collateral. The remainder of their claim after return and sale of their collateral is assumed to be a deficiency claim under Class 5.
- Remaining Cash (Item E) reflects $4,755,917 less (i) $1,615,182 to be distributed for the Bondholder Superpriority Claim and (ii) $750,491 to be distributed for Priority Tax Claims.
- Per the Plan, the Bondholders agreed to *not* assert a claim on the President's House Proceeds (Item B), reserving the benefit of such proceeds for Class 5. However, in the event of a conversion to a Chapter 7, the Bondholders may assert a claim on these proceeds. Thus, the below assumes that, in a Chapter 7, the President's House Proceeds are distributed pro rata amongst *both* Classes 4 and 5.
- Negative Variance to Planned Operating Disbursements reflects 10% reduction in Remaining Cash (Item E).
- Incremental Chapter 7 Trustee Fees reflect the additional Trustee fees that would be required in a Chapter 7 vs. a Chapter 11.
  - Note: Chapter 11 Trustee fees are accounted for in Remaining Cash (Item E).
- Incremental Chapter 7 Professional Fees reflect increased professional fees as a result of the conversion to a Chapter 7, net of a $520,065 positive benefit due to removal of a post-effective date reserve in a Chapter 7.
- This analysis assumes no fluctuations in total distributable value (Items A – E). Estimated recoveries are subject to material change based on the size of the creditor pool (Classes 1 – 5).
- This analysis excludes any damages resulting from the rejection of executory contracts.

| Illustrative Chapter 11 vs. Chapter 7 Liquidation Analysis | | | | | | |
|---|---|---|---|---|---|---|
| USD | | | Ch. 11 Hypothetical Liquidated Value (Unaudited) | | Ch. 7 Hypothetical Liquidated Value (Unaudited) | |
| Asset | Est. Claim | | Low | High | Low | High |
| **Hypothetical Liquidation Scenario** | | | | | | |
| A. Sale of the Campus Proceeds | | | $ 22,352,792 | $ 22,352,792 | $ 22,352,792 | $ 22,352,792 |
| B. President's House Proceeds | | | 624,530 | 624,530 | 624,530 | 624,530 |
| C. Bondholder Collateral | | | 1,324,028 | 1,324,028 | 1,324,028 | 1,324,028 |
| D. Estimated Sale Value of Canon Equipment | | | 34,000 | 34,000 | 34,000 | 34,000 |
| E. Remaining Cash | | | 2,390,244 | 2,390,244 | 2,390,244 | 2,390,244 |
| **Total Distributable Value** | | | $ 26,725,593 | $ 26,725,593 | $ 26,725,593 | $ 26,725,593 |
| **Possible Deductions** | | | | | | |
| Negative Variance to Planned Operating Disbursements | | | $ (239,024) | $ - | $ (239,024) | $ - |
| Incremental Chapter 7 Trustee Fees | | | n.a. | n.a. | (229,679) | (229,679) |
| Incremental Chapter 7 Professional Fees | | | n.a. | n.a. | (1,500,000) | (1,000,000) |
| **Total Deductions** | | | $ (239,024) | $ - | $ (1,968,704) | $ (1,229,679) |
| **Net Distributable Value** | | | $ 26,486,569 | $ 26,725,593 | $ 24,756,889 | $ 25,495,914 |
| **Recovery Waterfall** | | | | | | |
| Class 1: Allowed Other Priority Claims | $ | 993 | 100.00% | 100.00% | 100.00% | 100.00% |
| Class 2: Allowed Bondholder Secured Claim | $ | 46,925,537 | 50.46% | 50.46% | 50.46% | 50.46% |
| Class 3: Allowed Other Secured Claims | $ | 590,708 | 5.76% | 5.76% | 5.76% | 5.76% |
| Class 4: Allowed Bondholder Deficiency Claims | $ | 23,248,718 | 7.92% | 8.80% | 3.85% | 6.57% |
| Class 5: Allowed General Unsecured Claims | $ | 3,889,317 | 23.98% | 24.86% | 3.85% | 6.57% |

# EXHIBIT C

# PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the *"Agreement"*), dated as of _____, 2025, by and between The College of Saint Rose, as debtor and debtor-in-possession (the *"Debtor"*), and Debra Lee Polley, as Plan Administrator (the *"Plan Administrator"*), is executed in connection with the Debtor's Chapter 11 Plan filed on April 11, 2025 (as may be amended from time to time, the *"Plan"*) and confirmed by the United States Bankruptcy Court for the Northern District of New York (the *"Bankruptcy Court"*) by order dated _____ (the *"Confirmation Order"*). Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to such terms in the Plan.

## RECITALS

**WHEREAS**, the Plan provides for the appointment of a Plan Administrator, who will administer the wind down of the Debtor's Estate; and

**WHEREAS**, this Agreement is executed to facilitate and implement the Plan; and

**NOW, THEREFORE** in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Debtor and the Plan Administrator agree as follows:

## ARTICLE I

### APPOINTMENT OF PLAN ADMINSITRATOR

1.1

(a) <u>Appointment of Plan Administrator</u>. The Plan Administrator is hereby appointed as Plan Administrator as of the Effective Date, to have all the rights, powers and duties set forth herein.

(b) <u>Acceptance of Appointment</u>. The Plan Administrator agrees to accept the appointment as Plan Administrator and agrees to observe and perform all duties imposed under this Agreement, the Plan and the Confirmation Order.

## ARTICLE II

### AUTHORITY, LIMITATIONS, AND DUTIES

2.1  <u>Authority of Plan Administrator</u>.

Except as set forth in this Agreement, the Plan Administrator is authorized to perform any and all acts necessary or desirable to wind down the Debtor's Estate. Without limiting, but subject

22484.3 21366579v2

to, the foregoing and to Section 2.2 hereof, the Plan Administrator shall be expressly authorized, but shall not be required to:

(a) administer, liquidate and distribute any assets remaining in the Estate;

(b) collect any receivables still outstanding;

(c) make any distributions remaining to be made;

(d) cooperate with the New York State Attorney General's Office and New York State Supreme Court in connection with the *cy pres* petition;

(e) finalize the termination of the Debtor's pension plan and distributions to participants thereunder;

(f) negotiate any objections to claims;

(g) complete all regulatory and tax filings including without limitation Form 990s, 941s, W-2s, 1099s;

(h) pursuit of any Causes of Action:

(i) assert or waive any privilege or defense on behalf of the Estate relating to the Causes of Action;

(j) retain and pay Cullen and Dykman LLP and FTI Consulting, Inc., or any other law firms and other professionals, to assist in her duties as Plan Administrator without Bankruptcy Court approval;

(k) seek any relief from, or resolution of any disputes by, the Bankruptcy Court;

(l) appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Estate; and

(m) without limitation, to do any and all things necessary to accomplish the purposes of the Plan and this Agreement.

2.2   Additional Powers.

Except as otherwise set forth in this Agreement or in the Plan, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, without prior or further authorization the Plan Administrator may control and exercise authority over the Assets of the Estate. No person dealing with the Plan Administrator shall be obligated to inquire into the authority of the Plan Administrator in connection with her exercise of duties hereunder.

2

# ARTICLE III

# THE PLAN ADMINISTRATOR

3.1     Generally.

The Plan Administrator will initially be Debra Lee Polley. The Plan Administrator shall serve as Plan Administrator until resignation, death or removal. The Plan Administrator's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Agreement and not otherwise.

3.2     Responsibilities of Plan Administrator.

Except as expressly set forth herein, the Plan Administrator shall have absolute discretion to pursue or not to pursue any settlements of claims, monetization of Assets, and any Causes of Action as she determines are in the best interests of the Estate and consistent with the purposes of this Agreement and shall have no liability for their outcome of their decision. The Plan Administrator shall have authority to bind the Estate and, for all purposes of this Agreement, shall be acting as Plan Administrator, and not in her individual capacity.

3.3     Expense Reimbursement and Compensation.

The Plan Administrator shall be paid compensation at the rate of $250 per hour. The Plan Administrator shall be paid on the first day of each month of the term of this Agreement, commencing August 1, 2025, for services performed in the prior month. Such compensation shall be paid from the Post-Effective Date Reserve.

3.4     No Bond.

The Plan Administrator shall serve without bond.

3.5     Confidentiality.

The Plan Administrator shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which her actions relate or of which she has become aware in her capacity as Plan Administrator, except as otherwise required by law.

22484.3 21366579v2

# ARTICLE IV

## SUCCESSOR PLAN ADMINISTRATOR

4.1   Resignation.

The Plan Administrator may resign by giving not less than thirty (30) days' prior written notice thereof to counsel for the Debtor. Such resignation shall become effective on the later to occur of: (a) the day specified in such notice; and (b) the appointment of a successor Plan Administrator and the acceptance by such successor of such appointment. If a successor Plan Administrator is not appointed or does not accept such appointment within thirty (30) days following delivery of notice of resignation, the Plan Administrator may petition the Bankruptcy Court for appropriate relief.

4.2   Appointment of Successor Plan Administrator.

In the event of the death or incompetency of the Plan Administrator, the Bankruptcy Court shall appoint a successor Plan Administrator. Every successor Plan Administrator appointed hereunder shall execute, acknowledge, and deliver to the Bankruptcy Court an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Plan Administrator, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Plan Administrator.

4.3   Continuity.

Unless otherwise ordered by the Bankruptcy Court (or another court of competent jurisdiction), the death, resignation, incompetence or removal of the Plan Administrator shall not terminate or remove any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Plan Administrator. In the event of the resignation or removal of the Plan Administrator, the Plan Administrator shall promptly execute and deliver such documents instruments, final reports, and other writings as may be reasonably requested from time to time by the Bankruptcy Court (or another court of competent jurisdiction).

# ARTICLE V

## TERM OF AGREEMENT

5.1   Term of Agreement.

This Agreement shall be for a term of six (6) months and may be renewed for an additional six (6) month period.

# ARTICLE VI

# LIMITATIONS ON LIABILITY; INDEMNIFICATION

6.1     Liability of Plan Administrator; Indemnification.

The Plan Administrator and her attorneys or professionals, or any of their duly designated agents or representatives (the *"Covered Persons"*) shall not be personally liable for any claim asserted against any of them or the Estate for any actions taken or omitted in their capacity as Plan Administrator in furtherance of their responsibilities hereunder except to the extent that their conduct is determined by a Final Order to be due to their own willful misconduct, gross negligence, fraud, self-dealing, or *ultra vires* acts. The Estate shall indemnify and hold harmless the Covered Persons from and against and in respect of all liabilities, losses damages, claims costs, and expenses, including, but not limited to, attorneys fees and costs payable monthly in arrears arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the implementation or administration of this Agreement and the Plan; *provided, however,* that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence, fraud, self-dealing, or *ultra vires* acts as determined by a Final Order. Any indemnification claim of a Covered Person shall be satisfied solely from the Assets of the Estate.

6.2     Reliance by Plan Administrator. The Plan Administrator may absolutely and unconditionally rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database believed by her to be genuine and to have been signed or presented by the proper party or parties, and may consult with legal counsel, financial or accounting advisors, and other professionals to be selected by the Plan Administrator and may rely, in good-faith, on the advice thereof, and shall not be liable for any action taken or omitted to be taken in accordance with the advice thereof.

6.3     Recourse Limited to Estate Assets.

Any liability incurred by the Covered Persons in carrying out the terms of this Agreement shall only be satisfied from the Assets of the Estate, and neither the Plan Administrator nor any of the other Covered Persons shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability. Nothing contained in this Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by the Plan Administrator of any of the liabilities, obligations or duties of the Debtor and shall not be deemed to be or contain a covenant or agreement by the Plan Administrator to assume or accept any such liability, obligation or duty.

6.4     Non-Liability for Acts of Others.

The Plan Administrator may, in connection with the performance of her functions, and in her sole and absolute discretion, consult with her attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith reliance upon the advice or opinions rendered by such persons, regardless of whether such

5

advice or opinions are provided in writing. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and her determination not to do so shall not result in the imposition of liability on the Plan Administrator or her agents, unless such determination is based on willful misconduct, gross negligence, fraud, self-dealing, or *ultra vires* acts as determined by a Final Order. Nothing contained in this Agreement, the Plan, or the Confirmation Order shall be deemed to be an assumption by the Plan Administrator of any of the liabilities, obligations, or duties of the Debtor or a covenant or agreement by the Plan Administrator to assume or accept any such liability, obligation or duty. Any successor Plan Administrator may accept and rely upon any statement or representation made by a predecessor Plan Administrator or its agents as to any fact bearing upon the prior administration of the Estate, so long as they have a good faith basis to do so. A successor Plan Administrator shall not be liable for having accepted and relied in good faith upon any such statement or representation if it is later proved to be incomplete, inaccurate, or untrue. A successor Plan Administrator shall not be liable for any act or omission of any predecessor Plan Administrator, nor have a duty to enforce any claims against any predecessor Plan Administrator on account of any such act or omission.

      6.5      Confirmation of Survival of Provisions.

Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Plan Administrator, or the termination of this Agreement, and shall inure to the benefit of the Plan Administrator's respective heirs, successors, and assigns.

## ARTICLE VII

## AMENDMENT AND WAIVER

      7.1      Amendment and Waiver.

Any substantive provision of this Agreement may be amended or waived by the Plan Administrator or by an Order of the Bankruptcy Court. Technical or immaterial amendments to this Agreement may be made, as necessary, to clarify this Agreement or enable the Plan Administrator to effectuate the terms of this Agreement by the Plan Administrator without Bankruptcy Court approval. Notwithstanding this Section 7.1, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Plan.

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

      8.1      Preservation of Privilege and Defenses.

Any attorney-client privilege, work-product privilege, or other privilege or immunity shall vest in the Plan Administrator and her representatives, and the Debtor and the Plan Administrator are authorized to take all necessary actions to effectuate the transfer of such privileges and

available defenses. Any and all work-product created by on or behalf of the Plan Administrator, her retained professionals (including, but not limited to, its counsel), agents, representatives, and employees shall be deemed confidential to the extent that such work-product is not protected by any applicable attorney work-product privilege.

    8.2    <u>Laws as to Construction</u>.

This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York, without giving effect to provisions, policies, or principles thereof governing conflict or choice of laws.

    8.3    <u>Severability</u>.

If any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

    8.4    <u>Notices</u>.

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by telecopy addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this <u>Section 8.4)</u>:

*If to the Plan Administrator:*

Debra Lee Polley
578 Conover Road
Esperance, NY 12066
Email: <u>PolleyD2066@gmail.com</u>

*If to the Debtor:*

Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
Cullen and Dykman LLP
333 Earle Ovington Blvd. 2nd Fl.
Uniondale, NY 11553
(516) 357-3700
Email: bpollack@cullenllp.com
       mroseman@cullenllp.com

---

### 8.5 Headings.

The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

### 8.6 Relationship to the Plan.

The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates the provisions of the Plan. To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Agreement. If any provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of this Agreement shall control.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**DEBTOR:**

The College of Saint Rose

By:_____
    Marcia J. White
    President

**PLAN ADMINISTRATOR:**

_____
Debra Lee Polley

8