CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
(516) 357-3700

*Counsel for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
THE COLLEGE OF SAINT ROSE,                          :    Case No. 24-11131 (REL)
                                                    :
                        Debtor.                     ::
---------------------------------------------------------------x

### DECLARATION IN SUPPORT OF
### CONFIRMATION OF FIRST AMENDED CHAPTER 11 PLAN AND, PURSUANT TO LOCAL RULE 3020-1(c), IN SUPPORT OF CRAM DOWN

MARCIA J. WHITE, declares under penalty of perjury, as follows:

1. On October 10, 2024 (the "Petition Date"), The College of Saint Rose (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

2. I am the President of the Debtor.

3. The Debtor filed a First Amended Chapter 11 Plan (the "Plan")[1] on May 19, 2025. I submit this affidavit in support of confirmation of the Plan. If I were called upon to testify, I would testify to the facts set forth herein. This affidavit is based upon my personal knowledge and the explanation of the confirmation requirements of the Bankruptcy Code by counsel, except as otherwise stated.

---

[1] Any capitalized terms used but not defined herein shall have the meanings ascribed in the Plan.

1

21471488.v1

4. I have reviewed and am familiar with the terms and provisions of the Plan. Based upon my actual knowledge and my review of documents in this case, I believe that the Plan complies with all applicable provisions of the Bankruptcy Code as explained to me by counsel, that it was proposed in good faith, and that the Debtor conducted itself in a manner that complies with applicable law in relation to the formulation and negotiation of, and voting on, the Plan.

## CLASSIFICATION OF CLAIMS AND INTERESTS

5. The Plan contains the following classification of claims and interests:

(a) Unclassified Claims – Superpriority Claims, Administrative Claims, U.S. Trustee Claims, Professional Fee Claims and Priority Tax Claims.

(b) Class 1 – Other Priority Claims.

(c) Class 2 – Bondholder Secured Claim.

(d) Class 3 – Other Secured Claims.

(e) Class 4 – Bondholder Deficiency Claims.

(f) Class 5 – General Unsecured Claims.

6. The holders of Superpriority Claims, Administrative Claims, U.S. Trustee Claims, Professional Fee Claims, and Priority Tax Claims are unimpaired by the Plan and are conclusively presumed to have accepted the Plan.

7. The holders of Claims in Classes 2 through 5 are impaired under the Plan[2]. The Certification of Ballots filed by the Debtor (the "Certification") sets forth the tabulation of the voting by those Claimants. All Classes which cast votes (Classes 2, 4 and 5) voted in favor of the Plan. Only Class 3 did not vote.

8. I believe that the classification of Claims in the Plan is based upon the legal nature of the Claims and is not proposed for an improper purpose.

---

[2] The Plan mistakenly states that Claims in Class 1 are impaired. They are not, since they are being paid in full.

2

21471488.v1

9. I believe that the applicable requirements of sections 1129(a) and 1129(b) of the Bankruptcy Code have been met.

### THE PLAN COMPLIES WITH SECTION 1129(a) OF THE BANKRUPTCY CODE

10. Section 1129(a)(1). The Plan complies with section 1129(a)(1) of the Bankruptcy Code since it complies with each of the requirements set forth in sections 1122 and 1123(a) of the Bankruptcy Code, as follows:

- Section 1123(a)(1): Article III of the Plan designates the classification of Claims as required by section 1123(a)(1) of the Bankruptcy Code. The classification complies with section 1122(a) of the Bankruptcy Code because each Class contains only Claims that are substantially similar to each other. The classification created by the Plan is based upon the similar nature of claims or interests contained in each Class. Additionally, Article II of the Plan designates (but does not classify) claims of the types described in sections 507(a)(2) (Superpriority and Administrative Claims), 507(a)(8) (Priority Tax Claims) and 503(b) (Professional Fee Claims).

- Section 1123(a)(2): Article III of the Plan identifies whether each Class of Claims is impaired or not impaired under the Plan.

- Section 1123(a)(3): Article III of the Plan sets forth the treatment of each Class of Claims.

- Section 1123(a)(4): Article III of the Plan provides that the treatment of each Claim in each particular Class is the same as the treatment of each other Claim in such Class, unless the holder of a particular Claim has agreed to a less favorable treatment of such particular Claim.

3

21471488.v1

- Section 1123(a)(5): The Plan set forth the means for implementation of the Plan. The Plan will be implemented through the sales of the Debtor's Assets. The Sale of the Campus closed on March 13, 2025 and the proceeds of that sale were distributed to the DIP Lender, Bondholders, and U.S. Trustee fees were paid (among other closing costs). The Sale of the President's House closed on March 5, 2025 and the net proceeds of that sale are being held in escrow pending confirmation of the Plan, for distribution to claimants in Claim 5 of the Plan.

- Section 1123(a)(6): Section 1123(a)(6) of the Bankruptcy Code, prohibiting the issuance of non-voting equity securities, is inapplicable since no such securities are being issued.

- Section 1123(a)(7): This section requires the Plan to contain provisions that are consistent with the interest of creditors and with public policy with respect to any officers, directors or trustees under a plan, or any successor thereto. The Plan provides that Debra Lee Polley, the Vice President of Finance of the Debtor, will act as Plan Administrator post-Effective Date. The Debtor believes that this selection is in all parties' best interests given her tenure as Vice President of Finance and her inherent knowledge of all matters attendant to this case, the Debtor's operations, the Assets, their value and the Claims against the Debtor.

11. It is my understanding and belief that the Plan contains additional provisions that are consistent with the Bankruptcy Code. These provisions include but are not limited to Article II, which provides for a supplemental bar date for Superpriority and Administrative Claims and a deadline for the filing of final fee applications by the professionals retained in this case. Under Article II of the Plan, and as shall be contained in the Confirmation Order, the Debtor is

21471488.v1

requesting that an Administrative Bar Date be set with respect to Superpriority and Administrative Claims arising subsequent to the Petition Date, to quantify with certainty any claims that may have arisen from and after the Petition Date. The Debtor is requesting that the Administrative Bar Date be set at a date which shall be thirty (30) days after the Effective Date, by which proofs of claim or applications for payment of Superiority and Administrative Claims, other than Fee Claims, arising subsequent to the Petition Date and before the Confirmation Date must be filed with the Court. Similarly, the Debtor is requesting a deadline of the thirty (30) days after the Effective Date by which professionals retained in this case must file applications for payment for services rendered through the Effective Date. It is my understanding and belief that these provisions, as well as the other provisions provided for under the Plan, are permissible under section 1123(b) of the Bankruptcy Code and are not inconsistent with any provision of the Bankruptcy Code, and may be approved as part of the confirmation of the Plan.

12.    <u>Section 1129(a)(2)</u>. By this Court's order dated May 22, 2025, the Disclosure Statement was approved. The Solicitation Package was transmitted to creditors in the manner required thereby. I believe that the Debtor has complied with sections 1125 and 1126 of the Bankruptcy Code, and that section 1129(a)(2) of the Bankruptcy Code is satisfied. An Affidavit of Service of the Solicitation Package was filed with the Court by Debtor's counsel on May 27, 2025.

13.    <u>Section 1129(a)(3).</u> The Plan was filed in good faith and not by any means prohibited by law. The Plan was the product of cooperation and negotiation with the Bondholders, DIP Lender, certain taxing authorities, and the Pension Benefit Guaranty Corporation. The Debtor has not made any misrepresentations to the Court in connection with

5

21471488.v1

the case, and has disclosed all material facts to the Court. It is my understanding that the Plan therefore complies with section 1129(a)(3) of the Bankruptcy Code.

14. <u>Section 1129(a)(4).</u> The Plan provides that all payments made or to be made for services or costs and expenses in or in connection with the chapter 11 case have been approved by, or are subject to approval of, the Court as reasonable. All professionals have filed interim fee applications which have been approved by the Court, and will file final fee applications to be approved. In addition, the Plan Administrator has agreed to be paid a monthly flat fee for her services, the amount of which will be approved by inclusion in the Confirmation Order. Therefore, I believe that the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

15. <u>Section 1129(a)(5).</u> This section also requires the Plan to contain provisions that are consistent with the interest of creditors and with public policy with respect to any officers, directors or trustees under a plan. As set forth above, the Plan provides for Ms. Polley to act as Plan Administrator, and this selection is in all parties' best interests.

16. <u>Section 1129(a)(6).</u> Section 1129(a)(6) of the Bankruptcy Code, which requires that any governmental regulatory commission with jurisdiction over the rates of a debtor has approved a rate change provided for in a plan, is inapplicable in this case.

17. <u>Section 1129(a)(7).</u> With respect to each impaired Class of Claims, each holder of a Claim has either accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. In a chapter 7 case, no creditor other than the Bondholders would receive a distribution since the value of the Debtor's Assets is insufficient to pay the Bondholders in full. Under the Plan, General Unsecured Creditors have the opportunity to receive funds due to the negotiated terms of the Plan.

18. In a chapter 7 liquidation, there would also be increased costs and expenses arising from fees payable to a chapter 7 trustee and to its professionals. Accordingly, I believe that each nonaccepting holder of a Claim under the Plan would receive on account of such Claim property with at least as much value as such holders would be entitled to receive in a hypothetical chapter 7 liquidation.

19. Based on the foregoing, I believe that the Plan satisfies the "best interest test" set forth in section 1129(a)(7) of the Bankruptcy Code.

20. <u>Section 1129(a)(8) and 1129(b).</u> The Holder of the only Claim in Class 3, Canon Financial Services, did not vote, and is therefore deemed to reject the Plan. Notwithstanding the foregoing and the provisions of section 1129(a)(8) of the Bankruptcy Code, which requires that each class under a plan either accept a plan or not be impaired under the plan, it is my understanding that the Plan may nevertheless be confirmed pursuant to section 1129(b) of the Bankruptcy Code. It is my understanding that the Plan may be confirmed over the rejection because the Plan is fair and equitable, and does not discriminate unfairly. Specifically, the Plan does not discriminate unfairly in that the Claim in the deemed rejecting Class is dissimilar to other Classes, being the only secured creditor other than the Bondholders with a claim secured by specific equipment. The Plan's segregation of Class 3 therefore has a rational basis. Accordingly, I believe that the Plan does not discriminate unfairly against the deemed rejecting Classes.

21. In addition, the Plan is fair and equitable as to Class 3. Specifically, this Class consists of Canon Financial Services which has liens in photocopier equipment that it valued at $34,000. The equipment subject to Canon's liens is being returned to Canon. Canon is therefore receiving the indubitable equivalent of its Claim, in accordance with section 1129(B)(2)(A)(iii)

7

of the Bankruptcy Code. Accordingly, notwithstanding the deemed rejection by Class 3, it is my understanding that the Plan may be confirmed.

22. <u>Section 1129(a)(9).</u> The Plan provides that all holders of Allowed Priority Claims, including Priority Tax and Priority Non-Tax Claims, and Administrative Claims will be paid in full on the later of the Effective Date or the date of allowance of said Claims, except to the extent that the holder of such Claims has agreed to different treatment. Therefore, I believe that the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

23. <u>Section 1129(a)(10).</u> At least one impaired Class of Claims entitled to vote on the Plan has accepted the Plan. As set forth above, impaired Classes 2, 4 and 5 have accepted the Plan. Therefore, it is my understanding that the Plan complies with section 1129(a)(10) of the Bankruptcy Code.

24. <u>Section 1129(a)(11).</u> Since this is a liquidating Plan where all Plan payments will be made from the proceeds of the sale of the Debtor's Assets and the distribution of all monies of the Debtor, the Plan is feasible under this section of the Bankruptcy Code. Further, I believe that the Post-Effective Date Reserve will be sufficient to cover the costs of Plan administration after the Effective Date.

25. <u>Section 1129(a)(12).</u> The Plan provides for the payment of all fees payable pursuant to 28 U.S.C. § 1930 (U.S. Trustee fees) and I believe that the Plan therefore complies with section 1129(a)(12) of the Bankruptcy Code.

26. <u>Section 1129(a)(13).</u> There are no longer any retiree benefits required to be paid by the Debtor since, by their terms, the pension benefits ceased being paid into the Pension Plan in July 2024. Recently, on April 21, 2025, the PBGC took over trusteeship of the Pension Plan. Section 1129(a)(13) of the Bankruptcy Code is therefore satisfied here.

27. <u>Section 1129(a)(14).</u> Since the Debtor is not required to pay domestic support obligations, this section of the Bankruptcy Code is inapplicable.

28. <u>Section 1129(a)(15).</u> Since the Debtor is not an individual, section 1129(a)(15) is inapplicable.

29. <u>Section 1129(a)(16).</u> Finally, under applicable non-bankruptcy law, since the Debtor is a not-for-profit entity, its Assets may only be transferred provided that an Order of a court of competent jurisdiction is entered authorizing such transfer. The entry of the Orders of this Court approving any sales of the Debtor's property under section 363 of the Bankruptcy Code and confirming the Debtor's Plan satisfy this requirement of Not-for-Profit law and thus, section 1129(a)(16) of the Bankruptcy Code is satisfied.

## CONCLUSION

30. Based on the foregoing, I believe that the Plan satisfies the requirements of sections 1129(a) and 1129(b) of the Bankruptcy Code, and should be confirmed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct.

s/ Marcia J. White
MARCIA J. WHITE

21471488.v1