CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, NY  12207
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
(516) 357-3700

*Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                          Chapter 11

THE COLLEGE OF SAINT ROSE,                  Case No.:  24-11131 (REL)

                                 Debtor.

-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## CONFIRMATION OF FIRST AMENDED CHAPTER 11 PLAN

# **TABLE OF CONTENTS**

I.      BACKGROUND AND BRIEF DESCRIPTION OF THE PLAN ............................. 2

II.     THE PLAN MEETS EACH REQUIREMENT FOR CONFIRMATION
        UNDER SECTION 1129 OF THE BANKRUPTCY CODE ..................................... 3

   A.   Section 1129(a) Requirements ....................................................................... 3

      1.   The Plan Complies with the Applicable Provisions of  Title 11 (Section 1129(a)(1)) .....4

      2.   The Debtor Has Complied with the Applicable Provisions  of Title 11 (Section
           1129(a)(2)) ...........................................................................................................11

      3.   The Plan Was Proposed in Good Faith (Section 1129(a)(3)) .........................................11

      4.   The Plan Provides for Payment for Services and Expenses  (Section 1129(a)(4))..........13

      5.   The Plan Provides for the Disclosure of the Service of Certain  Individuals (Section
           1129(a)(5)) ...........................................................................................................14

      6.   The Plan Does Not Provide for Rate Changes Subject to  Section 1129(a)(6)...............14

      7.   The Plan Satisfies The Best Interests of Creditors Test  (Section 1129(a)(7))...............15

      8.   Acceptance by All Impaired Classes (Section 1129(a)(8))..............................................16

      9.   Treatment of Priority Claims (Section 1129(a)(9)) ........................................................17

      10.  Acceptance of at Least One Impaired Class (Section 1129(a)(10)) ...............................17

      11.  The Plan is Feasible (Section 1129(a)(11)) ...................................................................18

      12.  The Plan Provides for Payment of Certain Fees (Section 1129(a)(12)) ..........................19

      13.  The Plan Does Not Need To Provide for Continuation of Retiree Benefits (Section
           1129(a)(13))..........................................................................................................19

      14.  The Provisions of The Provisions of Sections 1129(a)(14) and (15) are Inapplicable in
           This Case...............................................................................................................20

      15.  The Transfer of Assets Satisfies Applicable Non-Bankruptcy Law (Section 1129(a)(16)20

      16.  The Provisions of Sections 1129(a)(1) Through 1129(a)(16), Other Than 1129(a)(8)
           Have Been Satisfied.  The Plan May Be Confirmed Notwithstanding the Failure to
           Satisfy Section 1129(a)(8) of the Bankruptcy Code ......................................................21

i

B.       **Section 1129(b) Requirements** ...................................................................................... 22

   1.   The Plan Does Not Discriminate Unfairly With Respect To  The Deemed Rejecting Classes........................................................................................................................22

   2.   The Plan is Fair and Equitable With Respect To The  Deemed Rejecting Classes ........23

**III.      CONCLUSION** ........................................................................................................... 24

21480966.v1

CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, NY  12207
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
(516) 357-3700

*Attorneys for The College of Saint Rose*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                                    Chapter 11

THE COLLEGE OF SAINT ROSE,                          Case No.:  24-11131 (REL)

                                    Debtor.

-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>CONFIRMATION OF FIRST AMENDED CHAPTER 11 PLAN</u>

The College of Saint Rose (the "Debtor"), submits this memorandum of law in support of

confirmation of its First Amended Chapter 11 Plan dated May 19, 2025 (the "Plan").[1]

The Plan has been accepted by three (3) impaired Classes of Claims entitled to vote under

the Plan, and deemed to have been rejected by one (1) impaired Class entitled to vote, as that

Class did not cast a vote. Notwithstanding the deemed rejection by that Class and the provisions

of section 1129(a)(8) of the Bankruptcy Code, which requires that each class under a plan either

accept the plan or not be impaired under the plan, the Plan may nevertheless be confirmed

pursuant to section 1129(b) of the Bankruptcy Code because the Plan is fair and equitable, and

does not discriminate unfairly, as those terms are applied under section 1129(b), as is more fully

discussed below.

---

[1]      All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or
the Disclosure Statement (as defined herein).

21480966.v1

The Court set June 24, 2025 as the deadline for filing any objections to confirmation of the Plan.  No objections to confirmation have been filed or received.

This Memorandum of Law, together with the affidavit of Marcia J. White, the Certificate of Ballots filed on June 18, 2025 and the arguments to be made and/or any other evidence to be adduced at the Confirmation Hearing, will prove that the Plan meets the requirements of section 1129 of the Bankruptcy Code, and should be confirmed by the Court.

## I.    BACKGROUND AND BRIEF DESCRIPTION OF THE PLAN

On April 11, 2025, the Debtor filed its initial plan and disclosure statement.  Thereafter, the Debtor negotiated certain of the terms of its plan and disclosure statement with various constituencies in the Debtor's case including the DIP Lender, the Bondholders, and the Pension Benefit Guaranty Corporation.  By virtue of those discussions, the Debtor filed the First Amended Chapter 11 Plan and Amended Disclosure Statement (the "Disclosure Statement") on May 19, 2025.

By Order dated May 22, 2025 (the "Approval Order") the Court*, inter alia*, approved the Disclosure Statement as containing adequate information in accordance with section 1125 of the Bankruptcy Code; authorized the transmittal of the Disclosure Statement, the Plan, the Ballot, and the Approval Order (collectively the "Solicitation Package") to all creditors and parties in interest; set June 17, 2025 as the last date for receipt of Ballots accepting or rejecting the Plan; fixed June 24, 2025 as the last date for filing objections to Confirmation of the Plan; and scheduled the hearing on Confirmation of the Plan to occur on July 1, 2025 (the "Confirmation Hearing").  The Solicitation Package was served in accordance with the Approval Order and the Ballots of acceptances and rejections of the Plan by the holders of Claims entitled to vote were received and tallied by the Balloting Agent, Cullen and Dykman LLP ("Cullen").

The Plan is a Liquidating Plan as all Assets of the Debtor have been or will be liquidated to pay Allowed Claims against the Debtor.  The Debtor's primary asset, the Campus, was sold to the Land Authority for $35 million pursuant to Order of the Bankruptcy Court dated December 20, 2024, and the closing occurred on March 13, 2025.  The proceeds of Sale paid the sale costs and expenses, broker commissions, the DIP Loan, and U.S. Trustee Fees related to the Sale, and the remainder was paid to the Bondholders on account of their Secured Claim.

In addition to the Sale of the Campus, the President's House was sold to Becker for $675,000 pursuant to order dated December 20, 2024.  That closing occurred on March 5, 2025. The net proceeds of that Sale, amounting to $624,529.57, are being held in escrow for payment to holders of Claims in Class 5 of the Plan.

In addition to the foregoing, the Debtor has personal property including without limitation artwork, gymnasium equipment, furniture, fixtures, accounts receivable and miscellaneous assets which it has and will continue to liquidate for the benefit of the Bondholders, who hold liens against such assets. Post-confirmation, all assets will be administered by the Plan Administrator in accordance with the Plan Administrator Agreement and paid to the appropriate Claimants under the Plan.

## II.    THE PLAN MEETS EACH REQUIREMENT FOR CONFIRMATION UNDER SECTION 1129 OF THE BANKRUPTCY CODE

### A.    <u>Section 1129(a) Requirements</u>

The Court may confirm a chapter 11 plan under section 1129(a) of the Bankruptcy Code only if the requirements of its various subsections are met. The following discussion demonstrates that the Plan meets these requirements.

1.     <u>The Plan Complies with the Applicable Provisions of
Title 11 (Section 1129(a)(1))</u>

Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the
"applicable provisions" of title 11. 11 U.S.C. §1129(a)(1). The legislative history of section
1129(a)(1) explains that this provision embodies the requirements of sections 1122 and 1123 of
the Bankruptcy Code governing the classification of claims and the contents of the plan,
respectively. H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *see also
Kane v. Johns-Manville Corp.,* 843 F.2d 636, 648 (2d Cir. 1988) (stating that "the legislative
history of subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable
provisions' in this subsection to mean provisions of Chapter 11 that concern the form and
content of reorganization plans"); *In re Texaco, Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y.
1998). Accordingly, in determining whether a plan complies with section 1129(a)(1), a court
must consider: (i) section 1122 of the Bankruptcy Code, which governs classification of
claims; and (ii) section 1123(a)(1) of the Bankruptcy Code, which sets forth certain items that
a plan must contain.

(a)     The Plan Properly Designates Classes of Claims
<u>(Sections 1123(a)(1) and 1122)</u>

Section 1123(a)(1) of the Bankruptcy Code requires that a plan classify all claims, with
the exception of certain priority claims, and all interests, and requires that such classification
comply with section 1122 of the Bankruptcy Code. 11 U.S.C. § 1123(a)(1); *In re Texaco Inc.,* 84
B.R. 893, 905 (Bankr. S.D.N.Y. 1988).

(i)     <u>The Plan's Classification Scheme</u>

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Article III of the Plan designates
Classes of Claims as follows:

21480966.v1

- Unclassified Claims pursuant to 11 U.S.C. § 1123(a)(1) (not impaired and not entitled to vote on the Plan; deemed to have accepted the Plan):

  Superpriority Claims
  Administrative Claims
  Professional Fee Claims
  Priority Tax Claims
  U.S. Trustee Fees

- Impaired Classes of Claims (entitled to vote on the Plan):

  Class 1 – Other Priority Claims[2]
  Class 2 – Bondholder Secured Claims
  Class 3 – Other Secured Claims
  Class 4 – Bondholder Deficiency Claims
  Class 5 – General Unsecured Claims

(ii)    Each Claim Is Substantially Similar to the Other Claims in Such Class

Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). The relevant inquiry under section 1122(a) is whether all of the claims in any given class are substantially similar.

The Plan's classification of Claims and Interests into five (5) Classes and five (5) groups of unclassified Claims is proper because each of these Classes of Claims differ in legal and factual nature and the Claims contained within each Class are substantially similar in nature.  The relevant inquiry under section 1122(a) of the Bankruptcy Code is whether all of the claims in any given class are substantially similar.  "[S]ubstantially similar", as used in section 1122(a) of the Bankruptcy Code, generally has been interpreted to mean similar in legal character to other claims against a debtor's estate or interests in a debtor. *In re MCorp Fin., Inc.*, 137 B.R. 219, 226 (Bankr. S.D. Tex. 1992).  The "substantially similar" requirement found in section 1122(a) does not require that all substantially similar claims be placed in the

---

[2] The Plan mistakenly states that Claims in Class 1 are impaired. They are not, since they are being paid in full.

21480966.v1

same class, but rather that all claims within a class be substantially similar to one another.  *See Barnes v Whelan (In re Barnes)*, 689 F.2d 193, 201 (D.C. Cir. 1982); *see also In re 11,111, Inc.*, 117 B.R. 471, 476 (Bankr. D. Minn. 1990).  As long as there is some rational basis to do so, courts have granted plan proponents significant flexibility in placing similar claims into different classes under section 1122(a).  *See Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 934, 956-57 (2nd Cir. 1993) (approving of separate classification of two types of claims where there was a rational basis for such a separation); *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3rd Cir. 1987) (recognizing that a class of claims must be reasonable and allowing a plan proponent to group similar claims in different classes).

Here, all Classes hold similar Claims and there is a rational basis for all of the separate Classes, since the Claims in each of the Classes differ from Claims in each of the other Classes. While the Bondholder Deficiency Claims do constitute General Unsecured Claims, they have been classified separately because the Bondholders have waived certain distributions in favor of other Unsecured Creditors. Moreover, even if the Bondholder Deficiency Claims were included in the Class of General Unsecured Claims, the results of voting on the Plan, and the distributions, would remain the same. Accordingly, the Plan satisfies section 1122(a) of the Bankruptcy Code.

       (b)      The Plan Properly Specifies Unimpaired Classes (Section 1123(a)(2))

Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify any class of claims or interests that is not impaired under the plan. 11 U.S.C. § 1123(a)(2). Article III of the Plan specifies whether or not each Class is impaired under the Plan. The Plan therefore meets the requirement of section 1123(a)(2) of the Bankruptcy Code.

21480966.v1

(c)      The Plan Properly Specifies the Treatment of Impaired
Classes (Section 1123(a)(3))

Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. §1123(a)(3). Article III of the Plan sets forth the treatment of all Impaired Classes of Claims. The Plan, therefore, satisfies the requirement of section 1123(a)(3) of the Bankruptcy Code.

(d)      The Plan Provides for Equal Treatment Within Classes
(Section 1123(a)(4))

Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). In this case, the Plan uniformly provides for the same treatment of each Claim of a particular Class except that, with respect to the proceeds of the Sale of the President's House, the Bondholders agreed that they will waive participation on the distribution of such proceeds, which will inure solely to the benefit of General Unsecured Creditors. Thus, the Plan does not discriminate as to any of the Classes of Claims, and the Plan meets the requirement of section 1123(a)(4) of the Bankruptcy Code.

(e)      The Plan Provides for Adequate Means of Implementation
(Section 1123(a)(5))

Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means" for its implementation and sets forth specific examples of such adequate means, including, but not limited to: cancellation or modification of indentures or other instruments, amendment of the debtor's charter, issuance of new securities, retention by the debtor of all or any part of property of the estate, sales of the debtor's property, extension of maturity dates or changes in interest rates or other terms of outstanding securities. 11 U.S.C. § 1123(a)(5).

21480966.v1

The Plan meets this requirement. Articles III and IV of the Plan describe the liquidation of the Debtor's Assets and the resulting distribution to the various Classes of Claims of Claims. This liquidation is the mechanism for implementation of the Plan. Accordingly, the Plan provides a procedure for its implementation and, thus, satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

(f)     Contents of the Plan With Respect to Charter Provisions
Inapplicable (Section 1123(a)(6))

Section 1123(a)(6) of the Bankruptcy Code requires that a plan provide for the inclusion of provisions in a corporate debtor's charter (i) prohibiting the issuance of nonvoting equity securities, and (ii) providing for an "appropriate distribution" of voting power among those securities possessing voting power. 11 U.S.C. § 1123(a)(6). Since the Plan is a liquidating plan which provides for a distribution of all the assets of the Debtor, section 1123(a)(6) of the Bankruptcy Code is inapplicable in this case.

(g)     The Plan Provides for the Manner of Selection of Officers,
Directors, and Trustees and Their Successors (Section 1123(a)(7))

Section 1123(a)(7) of the Bankruptcy Code requires that a plan's provisions regarding the manner of selection of any director, officer, or trustee, or any successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1123(a)(7). This section requires the Plan to contain provisions that are consistent with the interest of creditors and with public policy with respect to any officers, directors or trustees under a plan, or any successor thereto. While there will no longer be any officers or trustees of the Debtor, the Plan provides that Debra Lee Polley will act as Plan Administrator. The services of the Plan Administration will be limited. The main functions of the Plan Administrator will be to finalize the cy pres process and the termination of the Pension Plan, and complete the distributions to Claimants. The Debtor believes that this selection is in all parties' best interests

21480966.v1

given her tenure as Vice President of Finance of the Debtor and her inherent knowledge of all matters attendant to this case, the Debtor's operations, the Assets, their value and the Claims against the Debtor. The Debtor believes that the Plan, therefore, satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

        (h)        The Plan Contains No Provision Inconsistent with the Applicable
                        Provisions of the Bankruptcy Code (Section 1123(b))

Section 1123(b) of the Bankruptcy Code permits the inclusion of a broad variety of additional provisions in a plan. Here, the Plan impairs or leaves unimpaired claims (section 1123(b)(1)). The Plan provides for the sale of any remaining Assets and modifies the rights of the Bondholders (section 1123(b)(4), (5)).

Finally, the Plan includes other appropriate provisions not inconsistent with the applicable provisions of title 11 (section 1123(b)(6)). Article II of the Plan contemplates that the Court will set an Administrative Claim Bar Date for the filing of proofs of claim or applications for payment of Superpriority and Administrative Claims, arising subsequent to October 10, 2024 and before the Effective Date. The Debtor is requesting that the Administrative Bar Date be set for a date which shall be thirty (30) days following the Effective Date. Similarly, Article II of the Plan also provides for the setting of a deadline for the filing of applications for Professional Fee Claims, also thirty (30) days after the Effective Date.

It is well established that the Bankruptcy Court has the power to establish deadlines or bar dates by which a claim must be filed and such bar dates may prevent the payment of a claim that was not filed in a timely fashion. *In re Centurion Health of Carrolwood Inc.* 177 B.R. 371, 373 (Bankr. M.D. Fl. 1994). Similarly, courts routinely set bar dates for the filing of administrative claims as an administrative aid designed to assist with the conclusion of the chapter 11 case. *Wallach v. Frink America, Inc. (In re Nuttall Equipment Co. Inc.)* 188 B.R.

21480966.v1

732, 738 (Bankr. W.D.N.Y.  1995)  and *Centurion Health* at 373.  It is essential that administrative claims which are entitled to first priority in a bankruptcy distribution, be established with finality before any distribution may be made to any subordinate class of creditors. *In re Honeywell Corporation*, et al., 68 B.R. 135, 137 (Bankr. S.D. Fla.  1986).

Furthermore, Bankruptcy Rule 3020(c) provides that "notwithstanding the entry of an order of confirmation, the court may issue any other order necessary to administer the estate."  It is routinely acknowledged that a Chapter 11 debtor may seek to impose an administrative claims bar date by establishing an administrative claims filing deadline as a provision of a confirmed plan. *Polysat, Inc. v. Union Tank Car (In re Polysat, Inc.)* 152 B.R. 886, 896 (Bankr. E.D. Pa. 1993). In addition, the setting of an administrative expense claim bar date is clearly within the Court's reasonable discretion under section 105(a) of the Bankruptcy Code. *Honeywell* at 137.

In addition, Article VIII of the Plan provides for certain exculpations and injunctions. The Debtor believes that the injunction, indemnification and exculpation provisions are appropriate under case law and necessary to the case.  Under the Plan, there are no third party releases and no release of the Debtor or discharge of the Debtor given that the Plan is a liquidating Plan.  The exculpations and indemnifications are extremely limited in nature, and extend only to acts in connection with the bankruptcy case and the Plan.  The indemnification and injunction provisions are closely tailored, and are provisions that are typically approved through chapter 11 plans. The Plan contains provisions regarding the effect of the releases, injunctions and exculpations on governmental units in general, and on the PBGC (as requested by such entity) specifically. The Debtor therefore believes that the exculpations, indemnifications and injunctions contained within the Plan are permissible under Section 1123(b)(6) of the Bankruptcy Code.

21480966.v1

2.      The Debtor Has Complied with the Applicable Provisions
of Title 11 (Section 1129(a)(2))

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "complies with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The primary purpose of section 1129(a)(2) is to ensure that the plan proponents have complied with the disclosure and solicitation requirements of sections 1125 and 1126. See H.R. Rep. 95-595, at 412 (1977); S. Rep. 95-989, at 126 (1978); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636 (2d Cir. 1988); In *re Toy & Sports Warehouse, Inc.,* 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

On May 22, 2025, the Court entered the Approval Order, which approved (i) certain notice and solicitation procedures in connection with the Plan and (ii) the adequacy of the Disclosure Statement. The Debtor has filed affidavits of service indicating compliance with section 1125 of the Bankruptcy Code and the Approval Order with regard to the mailing and transmittal of the Solicitation Documents. As provided in the affidavits of service, the Solicitation Documents were sent to all applicable creditors and parties in interest of the Debtor, in compliance with sections 1125 and 1126 of the Bankruptcy Code and the Approval Order. The Debtor has therefore established compliance with the requirements of section 1129(a)(2) of the Bankruptcy Code.

3.      The Plan Was Proposed in Good Faith (Section 1129(a)(3))

Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Debtor believes that this requirement is satisfied in this case. "Good faith" is not defined in the Bankruptcy Code, but a plan is considered to be proposed in good faith if there is a reasonable likelihood that the plan will lead to a result

consistent with the standards and provisions set forth in the Bankruptcy Code. *See In re Leslie Fay Cos., Inc.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y 1997) (citations omitted); *see also In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984. The standard for "good faith" is that the plan "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *In re Bd. of Directors of Telecom Argentina, S.A.*, 528 F.3d 162, 174 (2d Cir. 2008) (quoting *Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984)) (internal quotation marks omitted); *In re Mid-State Raceway, Inc.*, No. 04-65746, 2006 WL 4050809, at *16 (Bankr. N.D.N.Y. Feb. 10, 2006) ("The 'good faith test' requires that the proposed plan 'bear some relationship to the statutory objective of resuscitating a financially-troubled corporation.'" (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988))).

When applying this standard, courts consider "the totality of the circumstances surrounding the establishment of a chapter 11 plan." *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 261 (Bankr. S.D.N.Y. 2014) (quoting *In re Leslie Fay Companies, Inc.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997)) (internal quotation marks omitted); *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010). Thus, "[s]ection 1129(a)(3) speaks more to the process of plan development than to the content of the plan." *Chemtura Corp.*, 439 B.R. at 608 (citation and internal quotation marks omitted); *In re Quigley Co., Inc.*, 437 B.R. 102, 125 (Bankr. S.D.N.Y. 2010).

To determine whether or not a plan has been proposed in good faith, a court should look at the totality of the circumstances regarding the development and proposal of the plan. *Mabey v. Southwestern Electric Power Co. (In re Cajun Electric Power Co-op, Inc.)*, 150 F.3d 503, 519 (5th Cir. 1998; *In re Leslie Fay*, 207 B.R. at 781. The "good faith" standard is satisfied when "the

plan has been proposed for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate, and delivering that value to creditors." *Genco Shipping*, 513 B.R. at 261. ("Generally, a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code. The primary goal of chapter 11 is to promote the restructuring of the debtor's obligations so as to preserve the business and avoid liquidation." (internal quotation marks and citations omitted)).

A finding of absence of good faith generally requires "misconduct in bankruptcy proceedings, such as fraudulent misrepresentations or serious nondisclosures of material facts to the court." *In re River Vill. Assocs.,* 161 B.R. 127, 140 (Bankr. E.D. Pa. 1993), aff'd, 181 B.R. 795 (E.D. Pa. 1995).

Here, there has been no misconduct in the proceedings, no fraudulent misrepresentations, no non-disclosure. All actions taken by the Debtor to date have been approved by the Court. Nothing has been without full disclosure. The Debtor has clearly demonstrated that it proposed the Plan with honesty and good intentions when viewed in light of the circumstances surrounding the sale process and the plan development process.  Accordingly, the Plan has clearly been proposed for the purpose of preserving the value of the bankruptcy estate, and delivering that value to creditors.

4.    The Plan Provides for Payment for Services and Expenses
        (Section 1129(a)(4))

Section 1129(a)(4) requires certain payments "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," to be approved by, or subject to approval of, the Court as reasonable. 11 U.S.C. § 1129(a)(4).  It is well established law that section 1129(a)(4) requires that professional fees paid by a debtor's estate are subject to review and approval by the court as reasonable.  *See In re Drexel Burnham*

*Lambert Group, Inc.*, 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992.  Also, fees and expenses payable under section 503(b) of the Bankruptcy Code can be allowed only after "notice and a hearing."  *See* 11 U.S.C §503(b).

Article II of the Plan sets forth the procedure by which the retained professionals must seek final allowance of compensation for their services rendered and reimbursement of their expenses incurred through the Effective Date.  As Article II provides, the retained professionals shall have thirty (30) days from the Effective Date to file their fee applications for allowance of fees and expenses incurred in the case, which fees and expenses are subject to review for reasonableness by the Court. In addition, the Plan Administrator has agreed to be paid a monthly flat fee for her services, the amount of which will be approved by inclusion in the Confirmation Order. The requirements of section 1129(a)(4) are therefore satisfied.

     5.    <u>The Plan Provides for the Disclosure of the Service of Certain Individuals (Section 1129(a)(5))</u>

Section 1129(a)(5) of the Bankruptcy Code requires the disclosure of the identity of certain individuals who will hold positions with the debtor or successors after confirmation of the Plan. This section requires the Plan to contain provisions that are consistent with the interest of creditors and with public policy with respect to any officers, directors or trustees under a plan. As set forth above, the Plan provides that Debra Lee Polley will act as Plan Administrator, which the Debtor believes is in all parties' best interests.

     6.    <u>The Plan Does Not Provide for Rate Changes Subject to Section 1129(a)(6)</u>

Section 1129(a)(6) of the Bankruptcy Code requires that, with respect to a debtor whose rates are subject to governmental regulation following confirmation, appropriate governmental approval has been obtained for any rate change provided for in the plan, or that such rate change

is expressly conditioned on such approval. 11 U.S.C. § 1129(a)(6).  This section is inapplicable in this case.

> 7.      The Plan Satisfies The Best Interests of Creditors Test
> (Section 1129(a)(7))

Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors. Specifically, section 1129(a)(7) provides that holders of impaired claims who vote to reject the plan must

> receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 [of the Bankruptcy Code] on such date.

11 U.S.C. § 1129(a)(7)(A)(ii).

The best interests of creditors test focuses on individual dissenting creditors belonging to impaired classes.  *See Bank of Am. Nat'l Trust & Sav. Ass'n* v. 203 *North LaSalle St. P.ship*, 526 U.S. 434, 441 n. 13 (1999);  *Toy & Sports Warehouse,* 37 B.R. at 150. The analysis requires that each non-accepting claimant or interest holder in classes that voted to reject the plan or that were deemed to have rejected the plan receive as much under the plan as they would have if the debtor were liquidated under chapter 7. *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007); *see also 203 North LaSalle St. P'ship, 526 U.S. at 441 n.13; United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 228 (1996); In re Best Prods. Co.,* 168 B.R. 35, 72 (Bankr. S.D.N.Y. 1994), *appeal dismissed,* 177 B.R. 791 (S.D.N.Y. 1995), *aff'd,* 68 F.3d 26 (2d Cir. 1995). Accordingly, if each non-accepting member of an impaired class will receive at least as much under the plan as it would receive in a chapter 7 liquidation, the plan satisfies the best interests of creditors test. *See, e.g., Best Prods. Co.,* 168 B.R. at 72.

Here, all creditors are receiving at least what they would in a case under Chapter 7. In Chapter 7, no creditor other than the DIP Lender and the Bondholders, and possibly the

Department of Labor, would receive a distribution since the value of the Debtor's Assets is less than the amount of such Claims. Through the Plan, the Bondholders have carved out monies to which they are entitled to pay pre- and post-Confirmation budget expenses, and carved out the proceeds of the sale of the President's House for payment to General Unsecured Creditors. Additionally, in a Chapter 7 case, there would likely be additional costs attendant to a conversion to Chapter 7 and the administration of the estate by a Chapter 7 trustee and its professionals that are not otherwise present here.

As a result, each holder of a Claim has either accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.   Accordingly, the Debtor believes that the "best interest test" of section 1129(a)(7) of the Bankruptcy Code is met in this case.

8.    Acceptance by All Impaired Classes (Section 1129(a)(8))

Section 1129(a)(8) of the Bankruptcy Code mandates that a plan must either provide for the non-impairment of claims or be accepted by all impaired classes. 11 U.S.C. § 1129(a)(8). Section 1129(b) of the Bankruptcy Code provides an exception to this requirement, allowing confirmation of a plan as long as at least one impaired class of claims has accepted it and the plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted the plan.

Here, the Debtor has four (4) impaired Classes of Claims[3], three (3) of which voted in favor of the Plan. While Class 3 is deemed to have rejected the Plan, the Debtor is seeking

---

[3] As set forth above, the Plan mistakenly states that Claims in Class 1 are impaired. They are not, since they are being paid in full.

confirmation of the Plan with respect to that Class in accordance with the cram-down provisions of Section 1129(b) of the Bankruptcy Code, as further discussed below.

9.     Treatment of Priority Claims (Section 1129(a)(9))

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code receive specified payments under the plan.  The Plan here meets the requirements of all relevant subsections of section 1129(a)(9). In accordance with section 1129(a)(9)(A) of the Bankruptcy Code, the Plan provides that, except to the extent that the Debtor and holders of Allowed Superpriority, Administrative and Professional Fee Claims agree to less favorable treatment, holders of such Claims shall receive full payment of their Claims in cash upon the later of as soon as practicable following the Effective Date of the Plan or the allowance of said Claims.

Likewise, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, the Plan provides that each holder of an Allowed Priority Tax Claim shall also be entitled to receive full payment of their Claims in cash upon the later of as soon as practicable following the Effective Date or the allowance of said Claims.

10.     Acceptance of at Least One Impaired Class (Section 1129(a)(10))

If a plan has any impaired class of claims, section 1129(a)(10) of the Bankruptcy Code requires that at least one such impaired class of claims vote to accept the plan, "determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). This requirement is satisfied because Classes 2, 4, and 5, which are impaired under the Plan, have accepted the Plan.

11.    <u>The Plan is Feasible (Section 1129(a)(11))</u>

Section 1129(a)(11) of the Bankruptcy Code requires the Court to determine whether a plan is feasible as a condition precedent to confirmation. Specifically, the Court must determine that

> [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11). As demonstrated below, the Plan is feasible within the meaning of this provision.

The feasibility test set forth in section 1129(a)(11) requires the Court to determine whether a plan is workable, has a reasonable likelihood of success and is not likely to be followed by liquidation or another reorganization. *See In re Leslie Fay Cos.,* 207 B.R. 764, 788-89 (Bankr. S.D.N.Y. 1997); *Johns-Manville*, 843 F.2d at 649. This provision requires only a probability of success, not a guarantee of success. *See Johns-Manville*, 843 F.2d at 649; *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II),* 994 F.2d 1160, 1166 (5th Cir. 1993) ("Only a reasonable assurance of commercial vitality is required." (quoting *In re Lakeside Global II, Ltd.,* 116 B.R. 499, 507 (Bank. S.D. Tex. 1989)); *Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.),* 755 F.2d 1336, 1341 (8th Cir. 1985) ("Success need not be guaranteed."); *see also In re Eddington Thread Mfg. Co.,* 181 B.R. 826, 833 (Bankr. E.D. Pa. 1995) ("[T]here is a relatively low threshold of proof necessary to satisfy the feasibility requirement."). A key element of feasibility is whether there exists the reasonable probability that the provisions of the plan can be performed.  *See Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.),* 761 F.2d 1374, 1382 (9th Cir. 1985).

Although this requirement is not technically necessary in this case because the Plan is a liquidating plan, the Plan must nevertheless be feasible in what it proposes to do. In this regard, all Assets have already been sold. The main functions of the Plan Administrator will be to finalize the cy pres process and the termination of the Pension Plan, and complete the distributions to Claimants. There are sufficient funds in the Post-Effective Date Reserve to cover the costs of finishing the work needed to accomplish the foregoing. Accordingly, the Debtor believes that section 1129(a)(11) is satisfied in this case.

12. The Plan Provides for Payment of Certain Fees (Section 1129(a)(12))

Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. §1930 be paid or that provision be made for their payment under such plan. 11 U.S.C. § 1129(a)(12). The Plan provides that such fees will be paid in full by the Debtor through the entry of a Final Decree closing the Chapter 11 Case. Thus, section 1129(a)(12) of the Bankruptcy Code is satisfied.

13. The Plan Does Not Need To Provide for Continuation of Retiree Benefits (Section 1129(a)(13))

Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of certain retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code for the duration of the period that the debtor has obligated itself to provide such benefits. 11 U.S.C. § 1129(a)(13). Retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, previously provided by the Debtor ceased to be payable on July 31, 2024, and do not need to continue post-confirmation. In addition, the PBGC took over as trustee of the Pension Plan on April 21, 2025. Thus, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

21480966.v1

14.     The Provisions of Sections 1129(a)(14) and (15) are
        Inapplicable in This Case

Since the Debtor is not an individual, the provisions of section 1129(a)(14) and

1129(a)(15) of the Bankruptcy Code are not applicable in this case.

15.     The Transfer of Assets Satisfies Applicable Non-Bankruptcy
        Law (Section 1129(a)(16)

Finally, section 1129(a)(16) of the Bankruptcy Code provides that all transfers of

property under the plan shall be made in accordance with the applicable provisions of non-

bankruptcy law that govern transfers of property by a not-for-profit corporation.

Outside of bankruptcy, an insolvent not-for-profit corporation that is seeking to sell all or

substantially all of its assets is required, pursuant to Sections 510 and 511 of the New York Not-

for-Profit Corporation Law, to submit a verified petition to the supreme court where the

corporation has its principal office for approval of such sale transaction, on notice to the

Attorney General. The supreme court will approve the proposed sale transaction if it finds that

"the consideration and the terms of the transaction are fair and reasonable to the corporation and

that the purposes of the corporation or the interests of the members will be promoted." N.Y. Not-

for-Profit Corp. Law § 511(d)."

However, separate state court approval is not necessary if the not-for-profit corporation is

in bankruptcy. Once in bankruptcy, a proposed sale of a debtor's assets is subject to various

provisions of the Bankruptcy Code, in particular Sections 363(d)(1) and 541(f) of the Bankruptcy

Code.   In fact, section 363 permits the bankruptcy court to authorize a sale "in the case of a

debtor that is a corporation or trust that is not a moneyed business, commercial corporation, or

trust, only in accordance with nonbankruptcy law applicable to the transfer of property by a

debtor that is such a corporation or trust." 11 U.S.C. § 363(d)(1).   In *In re HHH Choices Health

Plan, LLC*, 554 B.R. 697, 700 (Bankr. S.D.N.Y. 2016), the Bankruptcy Court for the Southern

21480966.v1

District of New York determined that the bankruptcy court, rather than the state court, was the appropriate court to determine whether to approve the proposed sale transaction of an insolvent not-for-profit corporation under Sections 510 and 511 of the New York Not-for-Profit Corporation Law. In its decision, the Court relied on Section 1221(e) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") when interpreting Sections 363(d)(1) and 541(f) of the Bankruptcy Code. Section 1221(e) of BAPCPA provides, in relevant part that "[n]othing in this section shall be construed to require the court in which a case under chapter 11 of title 11, United States Code, is pending to remand or refer any proceeding, issue, or controversy to any other court or to require the approval of any other court for the transfer of property. Pub. L. No. 109–8, § 1221(e)(2005)….The court interpreted Section 1221(e) of BAPCPA to require the bankruptcy court, rather than the state court, to ensure that the requirements of the New York Not-for-Profit Corporation law are met in the case of an insolvent not-for-profit corporation seeking to sell all or substantially all of its assets. *Id*. at 700–01….

Since this Court has entered orders permitting transfers of property under section 363 of the Bankruptcy Code, and presumably will enter an order confirming the Plan, which provides for the transfer of the Debtor's Assets, the Debtor believes that this section of the Bankruptcy Code is satisfied in this case.

16.   The Provisions of Sections 1129(a)(1) Through 1129(a)(16), Other Than 1129(a)(8) Have Been Satisfied.  The Plan May Be Confirmed Notwithstanding the Failure to Satisfy Section 1129(a)(8) of the Bankruptcy Code

As demonstrated above, the requirements of sections 1129(a)(1) through 1129(a)(16) of the Bankruptcy Code have been satisfied, other than section 1129(a)(8) of the Bankruptcy Code since Class 3 did not vote and is therefore deemed to have rejected the Plan.  As set forth below, the Plan may nevertheless be confirmed under section 1129(b) of the Bankruptcy Code.

21480966.v1

B.      **Section 1129(b) Requirements**

Section 1129(b) of the Bankruptcy Code provides a mechanism, commonly known as the "cram down," whereby a court may confirm a plan when all impaired classes do not accept the plan. A plan may be confirmed under section 1129(b) without each class's affirmative acceptance of the plan if "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). To be confirmed, therefore, the Plan must be "fair and equitable" and must "not discriminate unfairly" with respect to Class 3 (all other Classes have either voted to accept, or are deemed to accept, the Plan).  The Plan clearly satisfies both of these requirements as to the rejecting Class.

1.      The Plan Does Not Discriminate Unfairly With Respect To
        The Deemed Rejecting Classes

Section 1129(b)(1) of the Bankruptcy Code does not prohibit all discrimination between classes, but only discrimination that is unfair. See *In re 11,111, Inc.,* 117 B.R. 471, 478 (Bankr. D. Minn. 1990); cf. *In re Rochem, Ltd.,* 58 B.R. 641, 643 (Bankr. D.N.J. 1985) (question of "unfair" treatment concerns whether there is a reasonable basis for discrimination between classes). Although Congress did not define "discriminate unfairly," courts have held that a dissenting class must "receive relative value equal to the value given to all other similarly situated classes." *In re Johns-Manville Corp.,* 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986*), aff'd in part, rev'd on other grounds,* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd,* 843 F.2d 636 (2d Cir. 1988) As long as there is a reasonable basis for disparate treatment, taking into account the particular facts and circumstances of the case, a plan does not discriminate unfairly. *See In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); *Johns-Manville Corp.,* 68 B.R. at 636. Thus, this requirement prevents a plan's proponents from segregating similar claims or groups of

claims into separate classes and providing disparate treatment for those classes unless they can provide a reasonable basis for doing so.

Under the Plan, Class 3 is dissimilar to all others, and the Plan's segregation of such Classes has a rational basis. Class 3 consists solely of the Canon Secured Claim, secured by a lien in photocopy equipment. The same type of Claims are not included in any other Class, nor do any other Creditors have a lien on that equipment.   Accordingly, the Plan does not discriminate unfairly against the deemed rejecting Class, thereby satisfying the first prong of section 1129(b)(1).

>       2.       The Plan is Fair and Equitable With Respect To The
>               Deemed Rejecting Classes

In addition to not discriminating unfairly, section 1129(b)(1) of the Bankruptcy Code requires a plan to be fair and equitable with respect to rejecting classes. See 11 U.S.C. § 1129(b)(2) (defining the meaning of "fair and equitable").

Class 3 is secured in certain of the Debtor's equipment.

With respect to secured Claims, section 1129(b)(2)(A) requires that:

> (i)     the holders of such claims retain the liens securing such claims and the holders receive on account of such claims property of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
> (ii)    for the sale of any property that is subject to the liens securing such claims, with the liens to the attach to the proceeds of such claims; or
>
> (iii)   for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A).

The Debtor believes that the Plan satisfies the requirements of section 1129(b)(2)(A) as to Class 3. Canon Financial Services (the Class 3 Claimant) is receiving the equipment securing its claim, and thus is receiving the indubitable equivalent of its Claim. The deficiency owed

21480966.v1

beyond the value of the equipment is allowed as a General Unsecured Claim in Class 5 of the

Plan. The Debtor therefore believes that the Plan is confirmable under 11 U.S.C. § 1129(b).

## III.    CONCLUSION

Based upon the foregoing, the Debtor respectfully submits that the Plan complies with

and satisfies all of the requirements of section 1129 of the Bankruptcy Code, and that the Court

should confirm the Plan and grant the Debtor such other and further relief as is just and proper.

Dated:   Albany, New York
         June 25, 2025

                                        CULLEN AND DYKMAN LLP

                                        By:  /s/*Bonnie Pollack*
                                        Matthew G. Roseman, Esq.
                                        Bonnie L. Pollack, Esq.
                                        80  State Street, Suite 900
                                        Albany, New York 12207
                                        (516) 357-3700
                                        mroseman@cullenllp.com
                                        bpollack@cullenllp.com
                                        *Counsel for The College of Saint Rose*

24